# Morgan Lewis

**David J. Butler**
202.373.6723
david.butler@morganlewis.com

December 11, 2017

**Via ECF**
The Honorable Cathy Seibel
United States District Judge
United States District Court
300 Quarropas Street
White Plains, NY 10601-4150

Re: *NAACP, et al. v. E. Ramapo Cent. Sch. Dist., et al.*, No. 7:17-cv-08943-CS

Dear Judge Seibel:

This firm represents the East Ramapo Central School District ("District"), one of the defendants in the referenced matter. Pursuant to Rule 2A of this Court's Individual Practices, this letter outlines the bases for the District's intended motion to dismiss the claim asserted against it for lack of standing and for failure to state a claim under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

## Plaintiffs' Allegations

Plaintiffs are the NAACP of Spring Valley and several voters who have sued the District and New York's Commissioner of Education under the Voting Rights Act. ECF No. 1 ("Compl.") ¶ 1. Plaintiffs allege that the "at-large" voting system used to elect members to the District's Board of Education denies Black and Latino citizens equal opportunity to elect their preferred candidates in violation of Section 2 of the Voting Rights Act, 52 U.S.C. § 10301.

Voting is conducted "at large" when all voters in the community cast votes for candidates running for all seats on a multi-member elected board. This is in contrast to a "ward voting" system where voters in individual geographic districts cast votes only for the candidates running to represent the geographic district where they reside. Plaintiffs do not allege that the at-large voting system used to elect members to the District's Board of Education is the product of intentional discrimination. Instead, Plaintiffs allege that at-large voting tends to dilute the voting strength of minority voters in communities where racial groups are politically cohesive and tend to vote in blocs. Plaintiffs allege that these conditions exist in the District and that, as a result, it is difficult for minority citizens to elect the representatives they prefer to the Board of Education.

Plaintiffs also object to three other specific voting procedures or practices: (1) school board elections occur every year because members serve staggered three-year terms in classes of three members; (2) school board elections occur in May and are not undertaken concurrently with other municipal elections; and (3) there is no early or absentee voting. Compl. ¶ 63.

Plaintiffs claim that the alleged inability of minority voters to elect their preferred candidates to the Board of Education has resulted in a poorly run school district and disparate other social ills such as housing discrimination by landlords, over-policing, and racial profiling by local police. *See id.* ¶¶ 5–6, 65. Plaintiffs acknowledge that the New York State Education

The Honorable Cathy Seibel
December 11, 2017
Page 2

Department has, since 2014, provided the District with additional State funding and appointed monitors to assist in District administration. *Id.* ¶¶ 6, 51, 70. Plaintiffs allege this has resulted in the restoration of education programs lost to budget cuts in past years and in improved community relations. *Id.* Plaintiffs also acknowledge that the Board of Education is diverse—six members are alleged to be White,[1] and three members are alleged to be individuals of color who were elected with varying degrees of support from Black and White voters. *Id.* ¶¶ 67–68. However, Plaintiffs allege that two of the three members who are individuals of color are not preferred by certain minority voters because they hold different political views. *Id.*

Plaintiffs ask this Court to enter an order declaring that at-large voting in the District violates the Voting Rights Act; enjoining the District from conducting future elections using at-large voting; and directing implementation of a single-member, ward voting system. *Id.* at 31.

## School Board Elections Under New York Education Law

The at-large voting system was not created by the District's Board of Education. Voting procedures for school board elections are governed by NY Education Law, which only provides for at-large voting in ordinary school board elections. *See* N.Y. Educ. Law §§ 2018, 2032. Other than the New York City School District and a few other school districts in large cities with special governance structures, all 700-plus school districts in New York elect board members through at-large voting.

The District's Board of Education is powerless to implement a different voting system. "A board of education … possesses only those powers expressly delegated by statute or necessarily and reasonably implied therefrom." *Appeal of Bode*, Decision No. 13043, 1993 WL 13713151, at *1 (N.Y.S.E.D. 1993). No law delegates to New York's school boards the power to change from an at-large system to a ward system. The Education Law allows a board of education to divide a school district into election districts, N.Y. Educ. Law § 1702, but election districts are not "ward voting" and "in no way correspond to any type of elected representation—voters in each of the [districts] choose from the same slate of candidates in local elections." *U.S. v. Vill. of Port Chester*, No. 06 Civ. 15173, 2008 WL 190502, at *4 (S.D.N.Y., Jan. 17, 2008).

This fact is widely understood.[2] Indeed, the Legislature recently passed legislation to address this very issue, and it awaits the Governor's signature. If enacted, that legislation would, for the first time in the State's history, empower school boards to place a referendum before the voters asking whether an at-large or ward voting system should be used for school board elections. As the unsigned bill's preamble makes clear, "current law does not permit a school district to restrict candidates to run for office only in the election district where they reside, or to limit voters to elect a candidate only from the election district where they reside."[3]

---

[1] The Complaint curiously refers to the Board's voting majority, and to the District's Orthodox and Hasidic Jewish populations, either as "White" or the "private school community" when Plaintiffs actually mean "Jewish." *E.g.* Compl. ¶¶ 10, 11, 26, 27, 29, 30, 41, 48, 61, 64, 68, 69. This Court is well aware of the District's racially and religiously diverse make-up and the controversies that have arisen from friction among different communities.

[2] *E.g.,* Gerald Benjamin, *At-Large Elections in N.Y.S. Cities, Towns, Villages, and School Districts and the Challenge of Growing Population Diversity*, 5 Alb. Gov't L. Rev. 733, 738-740 ("There is no general provision in law to permit local choice of district-based school board elections.")

[3] http://www.nyssba.org/clientuploads/nyssba_pdf/gr/a8163-smemo-and-btext-05242016.pdf.

The Board of Education lacks authority to change the other voting procedures and practices Plaintiffs challenge. Board member elections must be staggered. N.Y. Educ. Law § 1702. The elections must be held in May irrespective of other state and local elections. *Id.* § 1804. And no law empowers school boards to implement absentee or early voting.

### **The District Is Not A Proper Target For Plaintiffs' Claim And Should Be Dismissed**

Plaintiffs' claim under Section 2 of the Voting Rights Act is an as-applied challenge to the legality and constitutionality of the various sections of the NY Education Law governing school board elections. However, the District is not responsible for, and has no power to redress, Plaintiffs' alleged harms arising under the Voting Rights Act. Plaintiffs' claim therefore must be directed to the appropriate State officials; the District is not a proper defendant.

This fundamental problem with Plaintiffs' claim against the District can be expressed in various ways—(i) as a failure of Article III standing because the Plaintiffs' alleged harm is neither fairly traceable to, nor redressable by, District action, *see, e.g.*, *Garelick v. Sullivan*, 987 F.2d 913, 919 (2d Cir. 1993) ("The causation component of the Article III standing test insures that any injury alleged by a plaintiff is attributable to the defendant."); *Coll v. First Am Title Ins. Co.*, 642 F.3d 876, 891-892 (10th Cir. 2011) (plaintiffs lacked standing to sue title insurers because they had no power to enforce statute); (ii) as a failure to state a claim for relief against the District, *see, e.g.*, *Lowery v. Governor of Georgia*, 506 F. App'x 885, 886 (11th Cir. 2013) (dismissing Voting Rights Act claim against the Governor because the Governor had "no power to provide any of the relief requested in this case"); (iii) or as generally non-justiciable because the Court cannot fashion an adequate remedy with the parties before it, *see, e.g.*, *Levy v. Miami-Dade Cnty.*, 358 F.3d 1303, 1305 (11th Cir. 2004) (dismissing as non-justiciable claim that voting rights were violated where there was "no viable remedy under the circumstances"); *see also Socialist Workers Party v. Leahy*, 145 F.3d 1240, 1248 (11th Cir. 1998) (suit dismissed because defendants lacked authority to alter election law).

Whatever the approach, the District "should not be required to expend its resources defending an action which challenges a state of affairs for which it bears no responsibility." *African Am. Legal Def. Fund v. NYSED*, 8 F. Supp. 2d 330, 334 (S.D.N.Y. 1998) (dismissing Voting Rights Act claim alleging dilution of minority voting power against the New York City Board of Education because it had no power to redress the plaintiffs' alleged harms). And since the method for electing board members "could only be changed by an act of the state legislature," additional parties must be joined to afford relief whether or not the District is a party. *Cunningham v. Municipality of Metropolitan Seattle*, 751 F. Supp. 885, 896 (W.D. Wash. 1990); Fed. R. Civ. P. 19(a). Plaintiffs' claim against the District should be dismissed.

We welcome the opportunity to discuss these issues with the Court at a pre-motion conference. Thank you for your time and attention to this matter.

Respectfully submitted,

s/ *David J. Butler*

David J. Butler

cc:  All Counsel of Record