

STATE OF NEW YORK
OFFICE OF THE ATTORNEY GENERAL

ERIC T. SCHNEIDERMANDIVISION OF STATE COUNSEL
ATTORNEY GENERALLITIGATION BUREAU

Writer's Direct Dial: (212) 416-8910

**Via ECF and Email:**December 20, 2017
Hon. Cathy Seibel
Southern District of New York
300 Quarropas Street, Room 621
White Plains, New York 10601-4150

     Re:    **NAACP, et al. v. ERCSD and MaryEllen Elia, Case No. 17-cv-8943 (CS)**

Your Honor:

     This Office represents Defendant MaryEllen Elia, Commissioner of the New York State Education Department in the above-referenced matter. Pursuant to Rule 2A of Your Honor's Individual Practices, Defendant Elia submits this letter in connection with her anticipated motion to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6).

*Plaintiffs' Complaint*

     In their Complaint, dated November 16, 2017 ("Compl."), Plaintiffs National Association for the Advancement of Colored People, Spring Valley Branch and seven registered voters residing in the East Ramapo Central School District ("the District" or "ERCSD") (collectively "Plaintiffs") allege that the at-large voting system employed in the District to elect the members of its Board of Education ("the Board") impermissibly denies Black and Latino (collectively "Minority") citizens in the District an equal opportunity to participate in the political process, in violation of Section 2 of the Voting Rights Act (VRA) of 1965, 52 U.S.C. § 10301 ("Section 2"). Plaintiffs bring this suit against the District and against Defendant Elia in her official capacity. Plaintiffs seek, *inter alia*, that the Court declare that the District's current voting system violates Section 2 and order the implementation by the District of a single-member ward system for school board elections in the District.

*Relevant Factual Background in Regard to School Board Elections*

     In a Central School District such as ERCSD, Board members are elected by an at-large system. N.Y. EDUC. LAW §§ 2018; 2032. State law tasks local districts with administering elections for their boards of education. *See*, *e.g.*, N.Y. ELECTION LAW 5-612; N.Y. EDUC. LAW §§ 2018(a); 2032(2)(b); 2032(4). Districts are responsible for actions including, but not limited to, collecting board candidates' petitions, appointing inspectors of election, preparing ballots and delivering them to the inspectors of election, counting election votes and announcing those results, declaring the results of elections, and notifying those elected. *See*, *e.g.*, N.Y. EDUC. LAW §§ 2018(a); 2607; 2032(4); 2034(1); 2034(5); 2034(7); 2034(9); 2121(5). When there is a dispute concerning a particular election, e.g. an issue with voting machines at a polling

place, the dispute is referred to the Commissioner for determination. *Id.* § 2037. There is no authority permitting the Commissioner to override the State law's at-large voting provisions.

*Plaintiffs' Allegations Against the District*
Plaintiffs allege that, as a result of the District's at-large voting system, White voters in the District organized slates of candidates which have consistently defeated candidates preferred by Minority voters and that this process has degraded the District's public schools and inflicted budget cuts disproportionately harming the public schools' Minority constituency. Compl. ¶¶ 27-30. Plaintiffs allege that this voting system, in combination with the actions of the District, have resulted in the dilution of "Minority voting strength" and thus violates Section 2.[1] *Id.* ¶ 55.

*Plaintiff's Allegations Against Defendant Elia*
In Plaintiffs' Complaint, all of the allegations against Defendant Elia are contained in paragraph 20 and footnote 5. Paragraph 20 states that "Defendant MaryEllen Elia is the New York State Commissioner of Education. The Commissioner is 'the chief executive officer of the state system of education and of the board of regents' and 'shall enforce all general and special laws relating to the educational system of the state,' pursuant to N.Y. EDUC. LAW § 305(1) ("Section 305(1)"). To the extent required by law, *the Commissioner is named as a defendant for purposes of implementing and enforcing the remedies sought in this action.*" Compl. ¶ 20 (emphasis added). Footnote 5 references N.Y. EDUC. LAW §§ 309 and 1801, which refer, respectively, to the Commissioner's general supervisory authority with regard to "the general supervision of boards of education and their management and conduct of all departments of instruction" and the formation of central school districts.

*Defendant Elia's Anticipated Motion to Dismiss*
Conditions in the District have long been the subject of litigation and of action by the Commissioner, much of which Plaintiffs have recognized herein. For example, in 2014, then-Commissioner John B. King appointed a monitor to review the fiscal practices of the District and offer potential recommendations. The monitor produced a report in 2014. Upon taking over as Commissioner, Defendant Elia appointed another team of monitors ("the Monitors") assigned to the District; the Monitors have been tasked with addressing issues including, but not limited to, educational practice, finances, operational infrastructure, and community trust. Compl. ¶¶ 31-50. The Commissioner has continued to appoint monitors and the State has provided supplemental funding to the District. *Id.* ¶ 51. Even Plaintiffs allege that the State's efforts have had some salutary effects despite some resistance from the Board. *Id.* ¶ 31-34, 39, 42-49. As Plaintiffs lay out, in 2013, State legislation would have permitted the District to apply for millions of dollars advanced from State lottery funds "provided that the District create an advisory committee—including a parent, a teacher, and an administrator from the public schools, as well as a Board member and the superintendent—to create a plan for spending the money." *Id*. ¶ 40. According to Plaintiffs, the District refused the funding, because it objected to the interference of an outside

---

[1] Plaintiffs have also asserted specific instances of alleged misconduct by the District since 2005 that they claim have resulted in or exacerbated the alleged voting dilution, including the Board's failure to administer the oath of office to a minority-backed candidate in order to shorten her term, the absence of transparency and violation of the Open Meetings Law by the Board, attempts to prevent public feedback and comment on Board actions, rejection of State funds to enact reform measures, intentional instances of voter intimidation, and refusal to allow for absentee balloting, which is required by N.Y. EDUC. LAW §§2018-a; 2018-b; Compl. ¶¶ 29, 34-35, 40, 56-71.

group into what the District viewed as the responsibility and authority of the Board and a violation of its right of local control of the schools. *Id.*

Absent from the Complaint is any allegation of wrongdoing or violations of law on the Commissioner's part. Instead, Plaintiffs have named her solely because she *may* be necessary, in their view, to implement the remedies sought. Compl. ¶ 20. Regardless of whether the motion is styled as Plaintiffs' lack of Article III standing to sue the Commissioner or as Plaintiffs' failure to state a claim, the Complaint cannot survive a motion to dismiss under Fed. R. Civ. P. 12.[2]

Plaintiffs neither allege, nor can they demonstrate, that any conduct on the part of the Commissioner is causally connected to the injury of which Plaintiffs complain. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). Plaintiffs do not set forth allegations sufficient to establish that Defendant Elia directly participates in the challenged system, *Ashe v. Bd. of Elections of City of New York*, 1988 WL 95427, *3 (E.D.N.Y. Sept. 8, 1988), or that she has the authority to fashion the remedy sought. *Lowery v. Governor of Georgia*, 506 F. App'x 885, 886 (11th Cir. 2013). Plaintiffs ostensibly rely upon Section 305(1) for the proposition that the Commissioner has the authority to implement and enforce the remedies sought by Plaintiffs in this lawsuit. Compl. ¶ 20. However, nothing in Section 305(1) demonstrates that Commissioner Elia has the authority to impose a new ward voting system upon ERCSD. Appeals invoking the VRA have come before the Commissioner of Education and, in dismissing one such appeal, the Commissioner noted that such claims "are properly before the federal court and not the Commissioner." *See*, *e.g.*, *Appeal of Fraser-McBride,* 36 Ed. Dep't Rep. 488, Decision No. 13,783 (June 25, 1997). Defendant Elia is not a proper party to this lawsuit and must be dismissed. *Romeu v. Cohen*, 121 F. Supp. 2d 264 (S.D.N.Y. 2000), *aff'd*, 265 F.3d 118 (2d Cir. 2001) (state official's general duty to take care that the laws are faithfully executed, standing alone, insufficient to render him proper party in voting rights suit); *Greater Birmingham*, 2017 WL 782776 at *5-10. Plaintiff's conclusory assertion that Commissioner Elia may be necessary to implement the requested relief cannot suffice to state a claim against her. *Id.* at *7-9.

Most significantly, there is no allegation, and Defendant Elia does not contest, that should the Court impose a remedy in this lawsuit, Commissioner Elia would not dutifully comply with such court-ordered relief in accordance with her authority as the Commissioner of Education to the extent required by such Order and by the laws of this State.

Defendant Elia would welcome the opportunity to discuss the present motion further with the Court at the pre-motion conference on January 2, 2018.

Respectfully submitted,

/s/

Elyce N. Matthews  
Assistant Attorney General

cc:     counsel of record (via ECF)

---

[2] Plaintiffs' claims against the Commissioner potentially raise Eleventh Amendment concerns. *See*, *e.g.*, *Mixon v. State of Ohio*, 193 F.3d 389 (6th Cir. 1999); *Greater Birmingham Ministries v. Alabama*, 2017 WL 782776 (N.D. Ala. Mar. 1, 2017).