# LATHAM&WATKINS LLP

53rd at Third
885 Third Avenue
New York, New York  10022-4834
Tel: +1.212.906.1200  Fax: +1.212.751.4864
www.lw.com

FIRM / AFFILIATE OFFICES

| | |
|---|---|
| Barcelona | Moscow |
| Beijing | Munich |
| Boston | New York |
| Brussels | Orange County |
| Century City | Paris |
| Chicago | Riyadh |
| Dubai | Rome |
| Düsseldorf | San Diego |
| Frankfurt | San Francisco |
| Hamburg | Seoul |
| Hong Kong | Shanghai |
| Houston | Silicon Valley |
| London | Singapore |
| Los Angeles | Tokyo |
| Madrid | Washington, D.C. |
| Milan | |

December 26, 2017

**VIA ECF, EMAIL, & HAND DELIVERY**

Hon. Cathy Seibel
United States District Judge
Southern District of New York
300 Quarropas Street
White Plains, New York 10601-4150

   Re: *National Association for the Advancement of Colored People, Spring Valley Branch v. East Ramapo Central School District*, No. 17 Civ. 8943

Dear Judge Seibel:

  We write on behalf of Plaintiffs National Association for the Advancement of Colored People, Spring Valley Branch, Julio Clerveaux, Chevon Dos Reis, Eric Goodwin, Jose Vitelio Gregorio, Dorothy Miller, Hillary Moreau, and Washington Sanchez (collectively, "Plaintiffs") in response to Defendant East Ramapo Central School District's (the "District") pre-motion conference letter seeking leave of the Court to file a motion to dismiss the District from the above-captioned action "for lack of standing and for failure to state a claim." *See* December 11, 2017 Letter (the "Letter") at 1, Dkt. No. 37. Specifically, the District claims that it is not empowered to change the method for electing members of its Board of Education (the "Board") from an at-large to a ward system, and for that reason, the complaint is deficient. Letter at 2-3. As discussed below, the District's request should be denied.

## I.  PLAINTIFFS' ALLEGATIONS

  In their complaint, Plaintiffs allege that the current at-large method for electing Board members, as applied in the District, violates Section 2 of the Voting Rights Act, 52 U.S.C. § 10301 ("Section 2"). Compl. ¶ 1, Dkt. No. 1. Section 2 prohibits any voting practice or procedure that "results in a denial or abridgement of the right . . . to vote on account of race or color . . . ." 52 U.S.C. § 10301(a). Under Section 2, any electoral procedure that "cause[s] an inequality in the opportunities enjoyed by black and white voters to elect their preferred representatives" is illegal. *Thornburg v. Gingles*, 478 U.S. 30, 47 (1986). These prohibited procedures include at-large elections that dilute minority voting strength. *Id.*; Compl. ¶¶ 2-3. Notably, proving a Section 2 violation does not require Plaintiffs to make any showing of discriminatory intent in enacting or enforcing these voting practices and procedures. *C.f.* Compl. ¶ 2; Letter at 1.

LATHAM&WATKINS LLP

In the District, the combination of an at-large method of electing Board members and a pattern of racially-polarized voting has consistently enabled a White voting bloc to defeat the candidates of choice of Black and Latino voters. Compl. ¶¶ 3, 27-29. Beginning in 2008, and continuing to the present, the White community[1] has voted as a bloc in order to defeat minority-preferred candidates in every contested election. *Id.* ¶ 59. As a result, the White community has been able to elect members representing its interests to eight out of the nine Board positions. *Id.* ¶¶ 28, 64. Based on the totality of the circumstances, minority voters have less opportunity than other members of the District's electorate to participate in the political process and elect representatives of their choice. *Id.* ¶¶ 60-71.

As a result of the foregoing, Plaintiffs request that the Court order the adoption of a single-member ward method of electing members of the Board that complies with Section 2, among other relief. *Id.* at 31. Plaintiffs submit that both the District and the Commissioner of Education (the "Commissioner") are proper defendants because they are in charge of administering or overseeing Board elections under the New York Education Law. *Id.* ¶¶ 18, 20.

## II. THE DISTRICT IS EMPOWERED TO CHANGE ITS VOTING SYSTEM

Plaintiffs agree with the District that New York Education Law governs procedures for school board elections. *See* Letter at 2; N.Y. EDUC. LAW §§ 2012-22, 2029-37. Yet, the District misinterprets its powers under the Education Law. The Education Law does not require the District to conduct its elections at-large and instead permits the District to create a ward system.[2]

First, the Education Law contains no requirement that central school districts—of which the District is one—use at-large voting systems to elect its board members.[3] *See generally* Education Law, Art. 41, Part I. Indeed, neither of the sections to which the District cites for this proposition, Sections 2018 and 2032, require at-large voting systems. Instead, Section 2018 establishes that candidates for the Board run for "specific offices," (i.e. numbered posts as

---

[1] The District's attempt to recast Plaintiffs' allegations regarding the race of East Ramapo's White community in a religious light is both inaccurate and irrelevant. *See* Letter at n.1. Plaintiffs' allegations are based on the composition of the electorate by race or color because the Section 2 inquiry focuses on denial or abridgement of the right to vote "on account of race or color." *See* 52 U.S.C. § 10301(a). The majority of the District's voters are White according to data from United States Census Bureau, and "this Court recognizes that Census data is presumptively accurate." *United States v. Village of Port Chester*, 704 F. Supp. 2d 411, 439 (S.D.N.Y. 2010).

[2] The Education Law also requires the District to institute absentee voting procedures, although the District asserts that "no law empowers school boards to implement absentee . . . voting," Letter at 3. To the contrary, Section 2018-a specifically requires central school districts to "provide for absentee ballots" in elections for board seats. N.Y. EDUC. LAW § 2018-a; *see also* Commissioner's Pre-Motion Conference Letter at n.1, Dkt. No. 45.

[3] Although the Education Law sections cited in this response state that they apply to "union free" school districts, Section 2038 directs that all provisions in Article 41, Part I of the Education Law also apply to central school districts. N.Y. EDUC. LAW § 2038.

opposed to running for all open positions), but permits the adoption of at-large voting by referendum.  *See* N.Y. EDUC. LAW § 2018(b).  Section 2032 also provides as a default that candidates run for "specific offices" and that voters must cast only one vote for each candidate.  *See* N.Y. EDUC. LAW § 2032.  Neither section prohibits districts from defining "specific offices" in terms of geographic areas.

Instead, the Commissioner has expressly interpreted Section 2017 of the Education Law to permit districts to form ward systems.  Section 2017 states that "the board of education may upon its own motion divide the school district into election districts . . . ."  N.Y. EDUC. LAW § 2017(1).  In *Appeal of Bradley Gravink*, the Commissioner, whose interpretation of the Education Law is entitled to substantial deference,[4] specifically addressed the power of school districts to divide into election wards pursuant to Section 2017.  In *Gravink*, the Commissioner held that a school district could create wards to achieve "the goal of proportionate representation of the various rural communities" in the school district on the school board.  37 Educ. Dep't Rep., Decision No. 13888, 1998 WL 35421154, at *4 (Mar. 13, 1998).  Given that Section 2017 permits a school district to implement wards for the discretionary objective of achieving "geographic representation," *id.*, a ward system must also be available to the District to achieve the mandatory objective of ensuring that its Board elections comply with federal law, including Section 2.

Moreover, the District's reliance on proposed legislation relating to the process by which school districts may adopt ward systems is a red herring.  As an initial matter, the Governor vetoed the proposed legislation on December 18.  *See* N.Y. State S. Assemb. B. A881A, https://www.nysenate.gov/legislation/bills/2017/a881/amendment/a.  Further, that the legislation would have created an additional or amended process by which districts may adopt ward systems does not alter the fact that school boards are currently empowered to adopt ward systems in the first instance.  Finally, the Letter shows that the proposed legislation was aimed at creating residency requirements for ward systems where the board members would have been required to live in the wards that they are elected to represent.  At this time, Plaintiffs do not seek any board member residency requirements as part of their relief.

Respectfully submitted,

/s/ Claudia T. Salomon
Claudia T. Salomon

cc:   All Counsel of Record

---

[4] If "an agency's construction [of a statute] is reasonable, courts defer to that interpretation." *Aponte v. Aviles*, No. 15 Civ. 236, 2015 WL 5148842, at *1 (S.D.N.Y. Aug. 18, 2015) (citing *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 843 (1984)); *see also Ass'n of Proprietary Colleges v. Duncan*, 107 F. Supp. 3d 332, 358 (S.D.N.Y. 2015) ("[c]ourts should defer to the agency's statutory interpretation as long as it is 'reasonable'"); *Young v. Aviles*, 99 F. Supp. 3d. 443, 447-48 (S.D.N.Y. 2015) (same).