UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------x

NATIONAL ASSOCIATION FOR THE :
ADVANCEMENT OF COLORED PEOPLE, :
SPRING VALLEY BRANCH; JULIO :
CLERVEAUX; CHEVON DOS REIS; ERIC :
GOODWIN; JOSE VITELIO GREGORIO; :
DOROTHY MILLER; HILLARY MOREAU; and :
WASHINGTON SANCHEZ, :  17 Civ. 8943 (CS) (JCM)
 :
      Plaintiffs, :
 :  Original to be filed by ECF
 - against - :
 :
EAST RAMAPO CENTRAL SCHOOL :
DISTRICT and MARYELLEN ELIA, IN :
HER CAPACITY AS THE :
COMMISSIONER OF EDUCATION OF :
THE STATE OF NEW YORK, :
 :
      Defendants. :

-------------------------------------------------------------------x

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT MARYELLEN ELIA'S MOTION TO DISMISS AND IN PARTIAL OPPOSITION TO PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION

ERIC T. SCHNEIDERMAN
Attorney General of the State of New York
*Attorney for Defendant MaryEllen Elia*
120 Broadway, 24th Floor
New York, New York  10271
(212) 416-8910

ELYCE N. MATTHEWS
MONICA CONNELL
Assistant Attorneys General
*Of Counsel*

February 16, 2018

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................... iii

PRELIMINARY STATEMENT .............................................................................................. 1

STATEMENT OF ALLEGED FACTS..................................................................................... 2

A.    Relevant Statutory Context Regarding School Board Elections......................................... 2

*N.Y. EDUC. LAW § 2012 – Voters Must Be Able to Vote at Any School Board Election* ................ 3
*N.Y. EDUC. LAW § 2102 – Candidates Must Be Qualified Voters and District Residents*............. 4
*N.Y. EDUC. LAW §§ 2018 and 2032 – Nomination and Balloting Procedures for Candidates* ....... 4
*N.Y. EDUC. LAW § 1804 – Election of School Board Members Must be Staggered* ...................... 5
*N.Y. EDUC. LAW § 2017 – Districts Can Divide Themselves into Election Districts* ..................... 6
*N.Y. EDUC. LAW § 2037 – Appeals of Election Irregularities to the Commissioner* ..................... 6

B.    Plaintiffs' Allegations against the District in the Complaint ............................................. 7

C.    Plaintiffs' Allegations against Commissioner Elia in the Complaint ................................. 8

D.    The State's Work in East Ramapo .................................................................................... 9

E.    Procedural Status of This Case ....................................................................................... 11

STANDARD OF REVIEW .................................................................................................... 12

*Fed. R. Civ. P. 12(b)(1)*...................................................................................................... 12
*Fed. R. Civ. P. 12(b)(6)*...................................................................................................... 12

ARGUMENT ........................................................................................................................ 13

POINT I      THE COURT LACKS SUBJECT MATTER JURISDICTION OVER
             PLAINTIFFS' CLAIM AGAINST THE COMMISSIONER BECAUSE
             THE PLAINTIFFS CANNOT DEMONSTRATE THEY HAVE
             STANDING TO SUE COMMISSIONER ELIA ................................................. 13

POINT II     COMMISSIONER ELIA IS NOT A PROPER PARTY TO THE
             ACTION ....................................................................................................... 15

POINT III    PLAINTIFFS' COMPLAINT FAILS TO STATE A CLAIM
             AGAINST COMMISSIONER ELIA ................................................................. 17

i

POINT IV    THE COMMISSIONER DOES NOT HAVE THE POWER TO
OVERRIDE STATE LAW AND UNILATERALLY IMPOSE THE
REMEDY PLAINTIFFS SEEK ........................................................................... 18

POINT V    PLAINTIFFS' PRELIMINARY INJUNCTION AS TO
COMMISSIONER ELIA SHOULD BE DENIED ............................................... 22

CONCLUSION .......................................................................................................................... 24

## TABLE OF AUTHORITIES

CASES                                                                                       Page(s)

*Agarwal v. United States*,
    2015 WL 5658712 (S.D.N.Y. July 14, 2015), *report and recommendation
    adopted*, 2015 WL 5667405 (S.D.N.Y. Sept. 11, 2015)........................................18

*Aldasoro v. Kennerson*,
    922 F. Supp. 339 (S.D. Cal. 1995).......................................................................16

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)..............................................................................................12

*Atlantic Mut. Ins. Co. v. Balfour Maclaine Int'l Ltd.*,
    968 F.2d 196 (2d Cir. 1992).................................................................................12

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007)..............................................................................................12

*Carter v. HealthPort Techs., LLC*,
    822 F.3d 47 (2d Cir. 2016).............................................................................. 13-14

*City of Los Angeles v. Lyons*,
    461 U.S. 95 (1983)................................................................................................13

*Correction Officers' Benevolent Ass'n v. City of New York*,
    192 F. Supp. 3d 369 (S.D.N.Y. 2016)..................................................................13

*Dove v. Fordham Univ.*,
    56 F. Supp. 2d 330 (S.D.N.Y. 1999), *aff'd sub nom. Dove v. O'Hare*, 210 F.3d
    354 (2d Cir. 2000)................................................................................................18

*Greater Birmingham Ministries v. Alabama*,
    2017 WL 782776 (N.D. Ala. Mar. 1, 2017) ........................................................15

*Harvell v. Blytheville Sch. Dist. No. 5*,
    71 F.3d 1382 (8th Cir. 1995) ...............................................................................15

*In re Elec. Books Antitrust Litig.*,
    14 F. Supp. 3d 525 (S.D.N.Y. 2014)....................................................................14

*Jenkins v. Red Clay Consol. Sch. Dist. Bd. of Educ.*,
    4 F.3d 1103 (3d Cir. 1993)...................................................................................16

*Koch v. Christie's Int'l. PLC*,
    785 F. Supp. 2d 105 (S.D.N.Y. 2011), *aff'd* 699 F.3d 141 (2d Cir. 2012)...........13

*League of United Latin Am. Citizens (LULAC) v. N. E. Indep. Sch. Dist.*,
   903 F. Supp. 1071 (W.D. Tex. 1995)...................................................................16

*Levy v. Lexington Cty., S.C., Sch. Dist. Three Bd. of Trustees*,
   2012 WL 1229511 (D.S.C. Apr. 12, 2012)...........................................................16

*Lowery v. Governor of Georgia*,
   506 Fed.Appx. 885 (11th Cir. 2013)......................................................................19

*Lujan v. Defs. of Wildlife*,
   504 U.S. 555 (1992)..........................................................................................13, 14

*Makarova v. United States*,
   201 F.3d 110 (2d Cir. 2000)...................................................................................12

*Marblegate Asset Mgmt. v. Educ. Mgmt. Corp.*,
   75 F. Supp. 3d 592 (S.D.N.Y. 2014).....................................................................23

*Martinez v. Bynum*,
   461 U.S. 321 (1983).................................................................................................3

*Mercator Corp. v. Windhorst*,
   159 F. Supp. 3d 463 (S.D.N.Y. 2016)...................................................................12

*Missouri State Conference of the Nat'l Ass'n for the Advancement of Colored
   People v. Ferguson-Florissant Sch. Dist.*,
   201 F. Supp. 3d 1006 (E.D. Mo. 2016)..................................................................16

*New York Civil Liberties Union v. State*,
   4 N.Y.3d 175 (2005).................................................................................................3

*Otoe–Missouria Tribe of Indians v. N.Y. Dep't of Fin. Servs.*,
   769 F.3d 105 (2d Cir.2014)....................................................................................23

*Perez v. Pasadena Indep. Sch. Dist.*,
   958 F. Supp. 1196 (S.D. Tex. 1997), aff'd, 165 F.3d 368 (5th Cir. 1999).............16

*Perkins v. City of Chicago Heights*,
   47 F.3d 212 (7th Cir. 1995)....................................................................................19

*Reyes v. City of New York*,
   992 F. Supp. 2d 290 (S.D.N.Y. 2014)...................................................................18

*Rollins v. Fort Bend Indep. Sch. Dist.*,
   1996 WL 560295 (S.D. Tex. June 30, 1994), *aff'd*, 89 F.3d 1205 (5th Cir.
   1996) ......................................................................................................................16

*Romeu v. Cohen*,
   121 F. Supp. 2d 264 (S.D.N.Y. 2000), aff'd, 265 F.3d 118 (2d Cir. 2001)............................15

*Sira v. Morton*,
   380 F.3d 57 (2d Cir. 2004).......................................................................................................13

*U.S. v. Alex. Brown & Sons, Inc.*,
   963 F. Supp. 235 (S.D.N.Y. 1997), *aff'd sub nom. U.S. v. Bleznak*, 153 F.3d
   16 (2d Cir. 1998).......................................................................................................................19

*United States v. Vill. of Port Chester*,
   704 F. Supp. 2d 411 (S.D.N.Y. 2010)..............................................................................16, 17

## UNITED STATE CONSTITUTION

Article III ..............................................................................................................................2, 13, 14

## FEDERAL STATUTES

Voting Rights Act of 1965, 54 U.S.C. § 10301 ...................................................2, 7, 8, 11, 19, 22

## FEDERAL RULES OF CIVIL PROCEDURE

Rule 12 ............................................................................................................1, 2, 12, 13, 15, 18

## STATE STATUTES

N.Y. EDUC. LAW
   § 101....................................................................................................................................3
   § 305....................................................................................................................................9
   § 309....................................................................................................................................9
   § 310.........................................................................................................................7, 19, 23
   § 1702.................................................................................................................5, 19, 20
   § 1801..................................................................................................................................9
   § 1804............................................................................................................3, 5, 19, 20
   § 2012...............................................................................................................3, 4, 19
   § 2017....................................................................................................................................6
   § 2018.....................................................................................................3, 4, 5, 8, 19
   § 2032..........................................................................................................3, 4, 5, 19

§ 2037...................................................................................................................6, 7, 19
§ 2102......................................................................................................................4, 19
§ 2502............................................................................................................................4
§ 2553..........................................................................................................................21

N.Y. Elec. Law 5-612 ................................................................................................3

**Administrative Decisions**

*Appeal of Fraser-McBride*, 36 Ed. Dep't Rep., Ed. Dep't Rep., Decision No.
    13783 (1997)............................................................................................................20

*Appeal of Gravink*, 37 Ed. Dep't Rep., Decision No. 13888, 1998 WL 35421154
    (1998)........................................................................................................................6

*Application of Grinnell*, 37 Ed. Dep't Rep., Decision No. 13914, 1998 WL
    35421168, *4 (1998)................................................................................................4

*Mtr. of Bd. of Educ. of the Guilderland CSD*, 23 Ed. Dep't Rep., Decision No.
    11211 (1984) ............................................................................................................4

*Appeal of Meyer, et al.*, 40 Ed. Dep't Rep., Decision No. 14413 (2000) ....................7

*Appeal of Mogel*, 41 Ed. Dep't Rep., Decision No. 14636 (2001) .............................20

*Appeal of a Student Suspected of Having a Disability*, 43 Ed. Dep't Rep.,
    Decision No. 15061 (2004)....................................................................................20

*Appeal of Weber*, 45 Ed. Dep't Rep., Decision No. 15349, 2006 WL 6862114, *1
    (2006)........................................................................................................................6

Defendant MaryEllen Elia, Commissioner of Education of the State of New York

("Commissioner Elia" or the "Commissioner"), by her attorney, Eric T. Schneiderman, Attorney

General of the State of New York, respectfully submits this memorandum of law in support of

her motion to dismiss the Complaint in this action ("Compl.") as against her in its entirety,

pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure ("Fed. R. Civ.

P."), and in partial opposition to Plaintiffs' preliminary injunction application.  Also submitted in

support of this motion, for the limited purpose of presenting documents cited herein, is the

Declaration of Assistant Attorney General Elyce N. Matthews ("Matthews Decl."), dated

February 16, 2018.

## PRELIMINARY STATEMENT

Plaintiffs Spring Valley Branch of the National Association for the Advancement of

Colored People ("NAACP Spring Valley"), Julio Clerveaux, Chevon Dos Reis, Eric Goodwin,

Jose Vitelio Gregorio, Dorothy Miller, Hillary Moreau, and Washington Sanchez (collectively

"Plaintiffs") bring this action against Defendants East Ramapo Central School District (the

"District" or "East Ramapo") and Commissioner Elia.  Plaintiffs allege that the "totality of the

circumstances" present in East Ramapo, including the "racial polarization in schooling and

politics" (Memorandum of Law in Support of Plaintiffs' Motion for a Preliminary Injunction

("Pl. Mem.") at pp. 1-2), the unified bloc voting of White voters, the demographics of the

District, and the at-large voting system that the District uses to elect the members of its Board of

Education (the "Board") result in the systemic dilution of the Black and Latino (collectively

"Minority") vote.  They claim that Minority citizens in the District are denied an equal

opportunity to participate in the political process and to elect candidates of their choice to serve

on the school board.  Consequently, Plaintiffs assert a single claim, alleging a violation of their

rights under Section 2 of the Voting Rights Act ("VRA") of 1965, 54 U.S.C. § 10301 ("Section 2").  Compl. at ¶ 1 (Ex. A to Matthews Decl.).  As relief, Plaintiffs seek the imposition of a "single-member ward election system" ("ward system"), which the Commissioner acknowledges is one of the many remedial options available if this Court were to find a Voting Rights Act violation by the District.  Compl. at Demand for Relief, pp.31.

Commissioner Elia now moves to dismiss.  Neither Plaintiffs' Complaint nor their pending application for a preliminary injunction contains even a single allegation of wrongdoing on the Commissioner's part. As more fully set forth below, it is respectfully submitted that Plaintiffs' claims against the Commissioner should be dismissed because: (i) Plaintiffs cannot establish standing to bring this action against the Commissioner and thus cannot properly invoke this Court's subject matter jurisdiction as required by Article III of the U.S. Constitution; (ii) Commissioner Elia is not a proper party to this lawsuit; and (iii) Plaintiffs' Complaint fails to state a claim against the Commissioner.  Further, because Plaintiffs will not be able to show a likelihood of success on the merits with respect to the Commissioner, the Plaintiffs' motion for a preliminary injunction should be denied as to Commissioner Elia.

In sum, for the reasons herein, Plaintiffs' Complaint as against Commissioner Elia cannot survive a motion to dismiss under Fed. R. Civ. P. 12(b)(1) and (6) and therefore the claims against her should be dismissed.

## STATEMENT OF ALLEGED FACTS[1]

### A.     Relevant Statutory Context Regarding School Board Elections

In organizing public education, New York State law generally vests school districts with

---

[1] The truth of Plaintiffs' non-conclusory factual allegations is assumed only for purposes of this motion to dismiss.

local control over their communities' schools, programs, and services and provides for state oversight of those districts. *See, e.g.*, N.Y. EDUC. LAW §§ 101; 1709; 1805; *see also Martinez v. Bynum*, 461 U.S. 321, 329 (1983) ("[n]o single tradition in public education is more deeply rooted than local control over the operation of schools[.]") (internal citations and quotations omitted); *New York Civil Liberties Union v. State*, 4 N.Y.3d 175, 181–82 (2005).  Consequently, New York law tasks school districts with administering elections for their boards of education. *See, e.g.*, N.Y. ELEC. LAW 5-612; N.Y. EDUC. LAW §§ 2018(a); 2032(2)(b); 2032(4); Compl. ¶ 18.  For example, districts are responsible for actions including, but not limited to, collecting board candidates' petitions, appointing inspectors of election, preparing ballots and delivering them to said inspectors, counting election votes and announcing those results, declaring the results of elections, and notifying those elected. *See, e.g.*, N.Y. EDUC. LAW §§ 2018(a); 2607; 2032(4); 2034(1); 2034(5); 2034(7); 2034(9); 2121(5).

The following statues lay out the at-large election scheme in place in central school districts.[2]

### N.Y. EDUC. LAW § 2012 – Voters Must Be Able to Vote at Any School Board Election

Section 2012, which addresses the qualifications of voters at district meetings, provides, in part, that "[a] person shall be entitled to vote at *any* meeting or election for the election of

---

[2] East Ramapo is a central school district as defined in New York State law.  School districts in New York are organized into different types of districts – *e.g.*, common school districts, central school districts, city school districts, etc. – to which certain specific statutory provisions apply. Some statutory provisions apply solely to central school districts, but these districts also share some provisions with union free school districts.  N.Y. EDUC. LAW § 1804(1) ("[e]xcept as provided in this article, all the provisions of this chapter or of any other general law relating to or affecting union free school districts shall apply to central districts organized as herein provided.").  More information on New York State school district organization is available at: http://www.p12.nysed.gov/mgtserv/sch_dist_org/GuideToReorganizationOfSchoolDistricts.htm#Structure.

school district officers[.]"  N.Y. EDUC. LAW § 2012 (emphasis added).[3]

### N.Y. EDUC. LAW § 2102 – Candidates Must Be Qualified Voters and District Residents

Section 2102, addressing the qualification of school district officers, requires only that every officer "must be a qualified voter of the district" and must be "a resident of the school district." N.Y. EDUC. LAW § 2102.  Beyond the statutory requirements prescribed in Section 2102, additional qualifications cannot be imposed on membership of a board of education.  *See*, *e.g.*, *Mtr. of Bd. of Educ. of the Guilderland CSD*, 23 Ed. Dep't Rep., Decision No. 11211 (1984) ("Petitioner has offered no authority, and I am aware of none, for its attempt to create an additional qualification to hold the office of member of a board of education."); *Application of Grinnell*, 37 Ed. Dep't Rep., Decision No. 13914, 1998 WL 35421168, *4 (1998) (same).  A central school district cannot therefore require that a candidate be a resident of a particular section of the district, or, using Plaintiffs' language, a "ward," in order to run for, or accept a position on, the district's board of education.

### N.Y. EDUC. LAW §§ 2018 and 2032 – Nomination and Balloting Procedures for Candidates

Sections 2018 and 2032 set forth nominating and balloting procedures for board elections and prescribe that each board vacancy "shall be considered a separate specific office," N.Y. EDUC. LAW § 2018, and thus election ballots group together all candidates running for each separate office.  N.Y. EDUC. LAW § 2032.  Pursuant to § 2018, district voters may elect to allow board candidates to run for any open office, rather than for a "separate specific office," which means an office denominated by the name of the incumbent or former holder of that seat on the board and the years in the particular term.  The requirements for candidates and voters remain

---

[3] A qualified voter is defined in the N.Y. EDUC. LAW.  *See*, *e.g.*, §§ 2102, 2012, 2502(7).

the same.  Nominations for office must still be made by residents of the district (as opposed to a

particular ward) and anyone who resides in the district (as opposed to a ward) may be nominated.

In other words, a district, and the ballot, specify the name of the incumbent or board member

vacating a specific seat, the years of the seat's term, and candidates running for a specific seat.[4]

### N.Y. EDUC. LAW § 1804 – Election of School Board Members Must be Staggered

Section 1804 of the New York State Education Law, which addresses the election and

terms of office of a central school district's board of education, provides that board elections in

such a district be "staggered."  Specifically, the relevant law requires that a board consist of five,

seven, or nine members, that elections be staggered "so that as nearly as possible an equal

number of members shall be elected to the board each year," N.Y. EDUC. LAW § 1804, and that

the board members' terms be set at three, four, or five years.  *Id.* § 1702.[5]  In East Ramapo, three

of the nine Board members' seats are up for election each year, the elections are held on the third

Tuesday in May pursuant to § 1804(4), and each Board member serves a three-year term.

Compl. ¶ 18.

Taken together, these statutes provide that each of the three seats up for election each

year is considered a separate office and that each and every qualified voter in East Ramapo is

entitled to vote for each of those separate offices in every school board election; in other words,

---

[4] Section 2018 includes a provision that a district may adopt a proposition that vacancies not be
considered separate offices, in which case nominating petitions would not describe any specific
board vacancy, but rather simply the number of vacancies open. In the event a district votes to
eliminate the 'separate office' condition, the names of all candidates for board vacancies are
arranged as prescribed in § 2032.  In that case, a district allows candidates to run for any open
office, without having to specify the particular vacancy. On the ballot, as set forth in § 2032, the
candidates are essentially listed in one group, as opposed to by separate office.

[5] Section 1702 addresses union free school districts.  As explained above, this provision also
applies to central school districts.

New York law mandates that board members in central school districts are elected at-large. The law does not permit or provide that only certain qualified voters vote only for certain seats in a central school district; all voters are entitled to vote for each seat in every election.

### N.Y. EDUC. LAW § 2017 – Districts Can Divide Themselves into Election Districts

Section 2017 of the Education Law allows districts, following a board motion and a district-wide vote, to divide their communities into "election districts" for school board elections. N.Y. EDUC. LAW § 2017. East Ramapo is divided into 10 election districts for purposes of school board elections, which are not the same districts as the community uses for other county elections. *See Appeal of Weber*, 45 Ed. Dep't Rep., Decision No. 15349, 2006 WL 6862114, *1 (2006) ("For school district election purposes, East Ramapo is divided into 10 election districts.").[6] This provision does not, and cannot, restrict the election of board candidates to those who live in a particular election district in which they and the voters of that district reside. Essentially, § 2017 allows a district to divide itself into polling places for geographic purposes. *Appeal of Gravink*, 37 Ed. Dep't Rep., Decision No. 13888, 1998 WL 35421154, *4 (1998) (informal "gentleman's agreement" dividing district into unofficial election districts had "no legal force and effect" and affirming that "candidates residing in any part of the district may be elected to any open seat" but district was free to formally divide itself into election districts pursuant to Section 2017, provided all statutory requirements could be met.).

### N.Y. EDUC. LAW § 2037 – Appeals of Election Irregularities to the Commissioner

Finally, Section 2037 provides that "all disputes concerning the validity of any district

---

[6] A list of East Ramapo's 10 election districts for purposes of school board elections are available at:
http://www.ercsd.org/pages/East_Ramapo_CSD/Departments/District_Clerk/Budget_Vote_and_Election_Infor/739724498086021556.

meeting or election…shall be referred to the commissioner of education for determination[.]"
N.Y. EDUC. LAW § 2037.  Thus, irregularities arising from a specific election within a district are
adjudicated by the Commissioner, who has the discretion to order a new meeting or election.
N.Y. EDUC. LAW §§ 310, 2037.  Analysis of alleged election irregularities requires a two-part
inquiry and both prongs of this analysis must be satisfied for the Commissioner to disturb the
outcome of an election.  First, a petitioner must prove improper conduct on the part of the
respondent, such as a violation of Education Law or Commissioner's regulations.  Second, a
petitioner must also establish that the alleged irregularities actually affected the outcome of the
election, were so pervasive that they vitiated the electoral process, or demonstrate a clear and
convincing picture of informality to the point of laxity in adherence to the Education Law.
*Appeal of Meyer, et al.*, 40 Ed. Dep't Rep., Decision No. 14413 (2000).  The Commissioner's
jurisdiction in this regard does not include general authority to adjudicate appeals invoking
Federal Voting Rights Act claims.  *See* point VI, *infra*.

B.    __Plaintiffs' Allegations against the District in the Complaint__

Plaintiffs allege that particular circumstances and specifically changes in demography
and actions by the District and the White community have led to challenges in East Ramapo as a
community.  With respect to the school district, Plaintiffs assert that the District's demographic
transformation has led to a Board comprised of the White community's preferred candidates
which has "implement[ed] a policy agenda that has increased support for private school students
and decreased public school expenditures."  Compl. ¶ 26.  According to the Complaint, during
the 2016-17 school year, Minority students constituted over 90% of the 8,472 public school
students, White students comprised 4% of the public school population, and White students

constituted 99.4% of the District's more than 27,000 students attending private schools.  Compl.
¶ 17.

Plaintiffs assert that, as a result of changing conditions in the District, White voters in the
District organize slates of candidates which have consistently defeated candidates allegedly
preferred by Minority voters.  Accordingly, Plaintiffs allege, the Board – comprised of the White
community's preferred candidates – has sought to increase District funding for private schools
and lower taxes that support the District's public school budget.  *Id*.  Plaintiffs claim that the
circumstances in the District have degraded the District's public schools and inflicted budget
cuts disproportionately harming the public schools' Minority constituency.  Compl. ¶¶ 26-30.
Plaintiffs allege that this voting system, in combination with other actions of the District, has
resulted in the dilution of Minority voting strength and thus violates Section 2 of the VRA.  *Id.* ¶
55.

Plaintiffs have also asserted specific instances of alleged misconduct by the District since
2005 that they claim have resulted in or exacerbated the alleged vote dilution, including the
Board's failure to administer the oath of office to a Minority-backed candidate in order to
shorten her term, the absence of transparency and violation of the Open Meetings Law by the
Board, attempts to prevent public feedback and comment on Board actions, rejection of State
funds to enact reform measures, intentional instances of voter intimidation, and refusal to allow
for absentee balloting, which is required by N.Y. EDUC. LAW §§2018-a; 2018-b; Compl. ¶¶ 29,
34-35, 40, 56-71.

C.     **Plaintiffs' Allegations against Commissioner Elia in the Complaint**

In contrast to Plaintiffs' allegations against the District, those against the Commissioner
Elia are not only few in number, they assert no allegations of wrongdoing on her part.  The

Complaint states that "Defendant MaryEllen Elia is the New York State Commissioner of Education.  The Commissioner is 'the chief executive officer of the state system of education and of the board of regents' and 'shall enforce all general and special laws relating to the educational system of the state,' pursuant to N.Y. EDUC. LAW § 305(1) ("Section 305(1)").  To the extent required by law, *the Commissioner is named as a defendant for purposes of implementing and enforcing the remedies sought in this action.*"  Compl. ¶ 20 (emphasis added).

Beyond that paragraph, footnote 5 references N.Y. EDUC. LAW §§ 309 and 1801, which refer, respectively, to the Commissioner's general supervisory authority with regard to "the general supervision of boards of education and their management and conduct of all departments of instruction" and the formation of central school districts.  These assertions constitute the entirety of the Plaintiffs' "allegations" against Commissioner Elia in this lawsuit.

**D.**     **The State's Work in East Ramapo**

Beyond those minimal references to Commissioner Elia, Plaintiffs' Complaint devotes multiple paragraphs to describing the significant support that the State has provided to the District and to the public school students through Commissioner-appointed Monitors, support of special legislation, funding, and other actions.  Plaintiffs describe at length the work done by the Monitors appointed by the Commissioner – both Commissioner Elia and her predecessor John B. King, Jr. – and to the District's progress and the improvements to the public schools in East Ramapo, due in part to the Monitors and the State's commitment. Compl. ¶¶ 31-51.[7]

Plaintiffs' Complaint relates several actions the State has taken to reform or improve the District, including but not limited to: the work of Henry (Hank) M. Greenberg, a fiscal monitor

---

[7] Since 2014, Commissioners King and Elia have appointed five monitors for East Ramapo: Henry M. Greenberg, Dennis M. Walcott, Monica George-Fields, John W. Sipple, and Charles A. Szuberla (the "Monitors").  Compl. ¶¶ 31, 42, 51.

appointed in 2014 by then-Commissioner John B. King, Jr. to review the District's fiscal practices and provide recommendations for improvement, and his extensive report (Compl. ¶¶ 31-41); the team of three Monitors appointed by Commissioner Elia in August 2015 to provide expertise in the areas of educational practice and finances, and their broad review and ensuing comprehensive report (Compl. ¶¶ 42-46); the "19 significant recommendations" made by the Monitors to reform and improve the District, in both the short- and long-term (Compl. ¶¶ 47-49); and the State's continued appointment of Monitors for the District (Compl. ¶ 51). The Monitors were appointed by the Commissioner and, in appointing them, the Commissioner "sought to provide the District an accountability structure that would provide oversight" of various operations and programs. To accomplish such, the Commissioner gave the Monitors four charges to guide their work: maintain a regular presence in the District; maintain a cooperative and collaborative relationship with the Board; communicate extensively with and be responsive to the community; and provide regular updates and reports on findings to SED, including a final report. Monitors' Report, Ex. 6 to Trotman Declaration, at pp. 5-6 (Docket Entry No. 25-6).

Further, the Legislature and Governor have taken the exceptional action of passing several pieces of special legislation to address the unique situation in East Ramapo, to which the Complaint refers. For example, in 2013, the State enacted legislation providing East Ramapo with a lottery advance totaling $3.5 million, in exchange for certain reforms, for which the District then refused to apply. Compl. ¶ 40; 2013 N.Y. Sess. Laws. Ch. 515 (A. 7514).   In June 2016, the Legislature passed and Governor Andrew Cuomo signed legislation through which the District was eligible for $3 million in reimbursement from State grant funds during the 2016-2017 school year. 2016 N.Y. Sess. Laws. Ch. 89 (S. 8131). According to Plaintiffs, these funds "help[ed] restore some of the deep cuts to public school services." Compl. ¶ 51. Following such

restoration, Superintendent Dr. Deborah Wortham "made a statement to the effect of: 'I don't even want to think about where we'd be without the $3 million.'" *Id.*   The enacted 2017-18 State Budget continued the District's eligibility for the $3 million in State funding.  2017 N.Y. Sess. Laws. Ch. 59 (A. 3009C).  In 2017, the Governor also signed a bill restoring Minority-preferred Board member Sabrina Charles-Pierre's full two-year term after the Board failed to give Ms. Charles-Pierre the oath of office in a timely manner, effectively limiting her term. Compl. ¶ 29; 2017 N.Y. Sess. Laws. Ch. 5 (S. 886).

Although many of these examples go well beyond the voting system that is central to this litigation, the Commissioner respectfully submits this contextual information, also discussed and referred to by Plaintiffs in their Complaint, to demonstrate the commitment the Commissioner – MaryEllen Elia and her predecessor John B. King, Jr. – and the State have had, and continue to have, to the public school students in the District.

E.    **Procedural Status of This Case**

On November 16, 2017, Plaintiffs filed the instant Complaint and on December 7, 2017, Plaintiffs filed for a preliminary injunction in this action. As set forth herein, neither the Complaint nor the preliminary injunction papers contain any allegation of wrongdoing by Commissioner Elia.  The Commissioner takes no position at this time as to whether the elements of a Voting Rights Act claim have been established as against the District.  If the Court finds a Voting Rights Act violation by the District, the Commissioner's position is that it is within the Court's jurisdiction to impose a remedy against the District.  However, she moves to dismiss on the grounds that she is not a proper party to this action, is not necessary for any remedy that may be imposed by the Court against the District, and her inclusion herein, particularly given the complete absence of any allegations of wrongdoing on her part, is not sufficient to invoke the

subject matter jurisdiction of this Court.  Further, Commissioner Elia submits that, for the same reasons, although she does not take a position as to the substance of the preliminary injunction, she is not a proper party to it and, as against her, it should be denied.

## STANDARD OF REVIEW

### Fed. R. Civ. P. 12(b)(1)

A claim is properly dismissed for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) when "the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).  "In considering a motion to dismiss for lack of subject matter jurisdiction, [courts] accept as true all material factual allegations in the complaint.  However, argumentative inferences favorable to the party asserting jurisdiction should not be drawn."  *Atlantic Mut. Ins. Co. v. Balfour Maclaine Int'l Ltd.*, 968 F.2d 196, 198 (2d Cir. 1992) (internal citations omitted).  The party asserting subject matter jurisdiction bears the burden of proving by a preponderance of the evidence that subject matter jurisdiction exists.  *Makarova*, 201 F.3d at 113.

### Fed. R. Civ. P. 12(b)(6)

To withstand a motion to dismiss under 12(b)(6), a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678; *Mercator Corp. v. Windhorst*, 159 F. Supp. 3d 463, 466 (S.D.N.Y. 2016). According to *Iqbal*, the "plausibility standard" asks for "more than a sheer possibility that a defendant has acted unlawfully."  *Iqbal*, 556 U.S. at 678.

In deciding a Rule 12(b)(6) motion to dismiss, a court considers the complaint, any written instrument attached to it as an exhibit, materials incorporated in the complaint by reference, and documents that are "integral" to the complaint.  *Sira v. Morton*, 380 F.3d 57, 67 (2d Cir. 2004).  Courts may also consider publicly-filed court documents where both parties had notice of their contents and the documents are integral to the complaint.  *Koch v. Christie's Int'l. PLC*, 785 F. Supp. 2d 105, 112 (S.D.N.Y. 2011) (citing cases), *aff'd* 699 F.3d 141 (2d Cir. 2012).

## ARGUMENT

### POINT I

### THE COURT LACKS SUBJECT MATTER JURISDICTION OVER PLAINTIFFS' CLAIM AGAINST THE COMMISSIONER BECAUSE THE PLAINTIFFS CANNOT DEMONSTRATE THEY HAVE STANDING TO SUE COMMISSIONER ELIA.

"[T]hose who seek to invoke the jurisdiction of the federal courts must satisfy the threshold requirement imposed by Article III of the Constitution by alleging an actual case or controversy."  *Correction Officers' Benevolent Ass'n v. City of New York*, 192 F. Supp. 3d 369, 371–72 (S.D.N.Y. 2016) (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 101 (1983)).  Plaintiffs' claims against the Commissioner fail because Plaintiffs cannot demonstrate that they have standing, a doctrine that is, according to the Supreme Court, "an essential and unchanging part of the case-or-controversy requirement." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992).

The "irreducible constitutional minimum" of standing contains three elements: first, the plaintiff must have suffered an "injury in fact;" second, there must be a causal connection between the injury and the conduct complained of; and third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.  *Carter v.*

13

*HealthPort Techs., LLC*, 822 F.3d 47, 55 (2d Cir. 2016) (citing to *Lujan*, 504 U.S. at 560-61).

The law is unequivocal that in order to satisfy the second element of Article III standing, a

plaintiff must demonstrate that his injury is traceable to the *challenged action of the defendant*.

*Lujan*, 504 U.S. at 560; *Carter*, 822 F.3d at 55 (emphasis added).  Standing must be established

for each and every claim asserted and form of relief sought.

Plaintiffs cannot establish Article III standing against the Commissioner because neither

Plaintiffs' Complaint nor their preliminary injunction application alleges any wrongdoing on the

part of the Commissioner and, as a result, Plaintiffs cannot show the requisite causal connection

between their alleged injury and Commissioner Elia's actions. The crux of this element is that

there exists a "*genuine nexus* between a plaintiff's injury and a defendant's alleged conduct."  *In

re Elec. Books Antitrust Litig.*, 14 F. Supp. 3d 525, 532 (S.D.N.Y. 2014) (emphasis added).

As there are no allegations of wrongdoing against the Commissioner, there is no nexus

between the Commissioner's actions and Plaintiffs' alleged injury.  Plaintiffs in fact concede that

the injury of which they complain is decisively not traceable to the Commissioner by

acknowledging that Commissioner Elia is named in this action *solely "for purposes of

implementing and enforcing" the remedy sought*.  Compl. ¶ 20.  There are simply no allegations

by Plaintiffs that could satisfy their burden to establish that their alleged injury is traceable to any

action by Commissioner Elia.  Moreover, as described above, not only do Plaintiffs fail to allege

any wrongdoing against the Commissioner, they also espouse the positive actions taken by the

Commissioner and the State that have generated improvements to and benefits for the public

schools and public school students in East Ramapo.  *Supra*, pp. 7-8.

14

Because Plaintiffs lack standing as against the Commissioner, the Commissioner's motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject-matter jurisdiction should be granted.

## POINT II

### COMMISSIONER ELIA IS NOT A PROPER PARTY TO THE ACTION.

Even if the Court were to determine that Plaintiffs have standing to sue Commissioner Elia, she is not a proper party to a Section 2 challenge to an at-large voting system in local school board elections. Analogous cases are informative to demonstrate that a State's Commissioner of Education is simply not a proper party to such a lawsuit.

First, a state official's general duty to take care that the laws are faithfully executed, without more, is not sufficient to render her a proper party in a voting rights lawsuit. *Romeu v. Cohen*, 121 F. Supp. 2d 264 (S.D.N.Y. 2000), *aff'd*, 265 F.3d 118 (2d Cir. 2001); *Greater Birmingham Ministries v. Alabama*, 2017 WL 782776, *5-10 (N.D. Ala. Mar. 1, 2017). Thus, the Commissioner's general oversight of education in New York State is not enough to make her a proper party to this action.

Further, almost uniformly – not only in the Second Circuit but throughout the country – analogous cases claiming that a local school board's at-large voting system violates Section 2 do not name a state defendant, even where the at-large system is imposed by state law. In these cases, named defendants frequently include, for example, a local school board, a board's trustees, the locality itself, and/or a local election official. However, other comparable cases, including those previously cited by Plaintiffs in this litigation, categorically lack a State defendant. *See, e.g.*, *Harvell v. Blytheville Sch. Dist. No. 5*, 71 F.3d 1382 (8th Cir. 1995) (Section 2 challenge of at-large voting for local school board election naming only district, district superintendent, and

individual members of the board as defendants); *Jenkins v. Red Clay Consol. Sch. Dist. Bd. of Educ.*, 4 F.3d 1103, 1112 (3d Cir. 1993) (Section 2 challenge of at-large voting for local school board election naming only local board of education and individual members of the board as defendants); *Missouri State Conference of the Nat'l Ass'n for the Advancement of Colored People v. Ferguson-Florissant Sch. Dist.*, 201 F. Supp. 3d 1006 (E.D. Mo. 2016) (Section 2 challenge of at-large voting for local school board election naming only school district and county board of elections commissioners as defendants); *United States v. Vill. of Port Chester*, 704 F. Supp. 2d 411, 416 (S.D.N.Y. 2010) (Section 2 challenge of at-large voting for local school board election naming only locality as defendant); *Levy v. Lexington Cty., S.C., Sch. Dist. Three Bd. of Trustees*, 2012 WL 1229511, at \*1 (D.S.C. Apr. 12, 2012), as amended (Apr. 18, 2012) (Section 2 challenge of at-large voting for local school board election naming only school district's board of trustees, individual board of trustees members, and county's election commission chair as defendants); *Perez v. Pasadena Indep. Sch. Dist.*, 958 F. Supp. 1196 (S.D. Tex. 1997), *aff'd*, 165 F.3d 368 (5th Cir. 1999) (Section 2 challenge of at-large voting for local school board election naming only school district and individual members of the school district's board of trustees as defendants); *Aldasoro v. Kennerson*, 922 F. Supp. 339, 341 (S.D. Cal. 1995) (Section 2 challenge of at-large voting for local school board election naming only school district and county's registrar of voters as defendants); *League of United Latin Am. Citizens (LULAC) v. N. E. Indep. Sch. Dist.*, 903 F. Supp. 1071, 1074 (W.D. Tex. 1995) (Section 2 challenge of at-large voting for local school board election naming only school district and individual members of the school district's board of trustees as defendants); *Rollins v. Fort Bend Indep. Sch. Dist.*, 1996 WL 560295, at \*4 (S.D. Tex. June 30, 1994), *aff'd*, 89 F.3d 1205 (5th Cir. 1996) (Section 2

16

challenge of at-large voting for local school board election naming only school district and school district's board of trustees as defendants).

The principle that general oversight authority does not render a state officer a proper defendant to any and all claims and the consistent and, indeed, almost uniform precedent evidencing the absence of any state defendant in Section 2 challenges to school districts' at-large voting systems demonstrate that a local defendant, such as the District, rather than the State Commissioner of Education, is the proper defendant in this lawsuit.

Further, if Plaintiffs are able to establish a Voting Rights Act violation by the District, the Commissioner is not necessary as a party to this action in order for the Plaintiffs to obtain a complete remedy.  Plaintiffs do not contend otherwise, either in their Complaint or their preliminary injunction application.  While the Plaintiffs name Commissioner Elia as a defendant in order to ostensibly facilitate a remedy, if they prevail on liability in this action, they can obtain a complete remedy from this Court even without the Commissioner named as a defendant.[8]

Accordingly, because Commissioner Elia is not a proper party to this action, the claims against her should be dismissed.

## POINT III

### PLAINTIFFS' COMPLAINT FAILS TO STATE A CLAIM AGAINST COMMISSIONER ELIA.

Even if this Court were to find that it had subject matter jurisdiction over Plaintiffs' claims and determine that she is a proper party to this action, Plaintiffs still fail to state a claim

---

[8] Notably, the law provides that the Court give the defendant district the first opportunity to suggest a remedial plan and, if the proposal is a legally acceptable remedy, *i.e.,* it cleanses the Section 2 violation, the Court must accept it regardless of any alternative remedies proposed by Plaintiffs and even if the Court believes another plan would be better.  *See, e.g., Vill. of Port Chester*, 704 F. Supp. 2d at 447–48.

17

against Commissioner Elia and the Complaint as against the Commissioner must be dismissed

pursuant to Fed. R. Civ. P. 12(b)(6). As discussed at length above, Plaintiffs' Complaint – as

well as their preliminary injunction application – lacks a single allegation that Commissioner

Elia engaged in any wrongdoing, violated any law, or took any action at all that resulted in an

injury to Plaintiffs.

The law is well-settled that where a complaint contains "no allegations indicating how

the defendant violated the law or injured the plaintiff, a motion to dismiss the complaint in

regard to that defendant should be granted." *Dove v. Fordham Univ.*, 56 F. Supp. 2d 330, 335

(S.D.N.Y. 1999), *aff'd sub nom. Dove v. O'Hare*, 210 F.3d 354 (2d Cir. 2000) (internal

quotations and citations omitted); *Reyes v. City of New York*, 992 F. Supp. 2d 290, 300 (S.D.N.Y.

2014) (internal citations omitted); *see also Agarwal v. United States*, 2015 WL 5658712, at *3

(S.D.N.Y. July 14, 2015), *report and recommendation adopted*, 2015 WL 5667405 (S.D.N.Y.

Sept. 11, 2015) (recommending dismissal where there were no factual allegations in

the complaint implicating the defendants in any wrongdoing). On their face, the Plaintiffs' own

papers demonstrate the appropriateness of dismissal here.

Therefore, as Plaintiffs fail to state a claim with respect to Commissioner Elia, she is

entitled to dismissal pursuant to Fed. R. Civ. P. 12(b)(6).

## POINT IV

### THE COMMISSIONER DOES NOT HAVE THE POWER TO OVERRIDE STATE LAW AND UNILATERALLY IMPOSE THE REMEDY PLAINTIFFS SEEK.

Plaintiffs have not alleged in their Complaint that Commissioner Elia has the unilateral

authority to impose the ward system that Plaintiffs seek as a remedy here (nor have they

explained why they seek this particular remedy, as opposed to others, including, for example,

cumulative voting). Nor do Plaintiffs, in demanding relief, request that the Court order

Commissioner Elia use such alleged authority to unilaterally act and impose a ward system. Compl. at Wherefore Cl., pp. 31.  However, to the extent that Plaintiffs are implicitly arguing or seeking the same, Commissioner Elia unequivocally does not have the authority to override state law, and the democratic process, and impose a ward voting system in the District.[9] *See, e.g., Lowery v. Governor of Georgia*, 506 Fed.Appx. 885, 886 (11th Cir. 2013) (holding that because "the Governor of Georgia has no power to provide any of the relief requested in this case … the Governor is not the proper party defendant.").

As explained above, the relevant statutory provisions governing local school board elections in central school districts in New York State provide for at-large voting and districts are prohibited from imposing additional qualifications to board of education membership.  *See*, *e.g.*, N.Y. EDUC. LAW §§ 1702, 1804, 2012, 2018, 2032, 2102.  The Legislature and the Governor have demonstrated agreement with this interpretation of state law such that they have made clear that legislative action is necessary to change the scheme.

To the extent that Plaintiffs would want the Commissioner to hear a Voting Rights Act case and impose a remedy for a violation thereof, they do not so specify and could point to no authority allowing her to do the same.  Moreover, through Commissioner's Decisions adjudicating appeals under Education Law §§ 2037 and 310 concerning alleged irregularities affecting a particular election, the Commissioner has consistently taken the position that

---

[9] Nor could Commissioner Elia sign a consent decree settling the case but, in doing so, disregarding state law, since she does not have the power to take such action individually.  *U.S. v. Alex. Brown & Sons, Inc.*, 963 F. Supp. 235, 240 (S.D.N.Y. 1997), *aff'd sub nom. U.S. v. Bleznak*, 153 F.3d 16 (2d Cir. 1998) (citing *Perkins v. City of Chicago Heights*, 47 F.3d 212, 216 (7th Cir. 1995) ("While parties can settle their litigation with consent decrees, they cannot agree to 'disregard valid state laws,' and cannot consent to do something together that they lack the power to do individually.")).

systemic and Federal claims are most properly raised in Federal court rather than through state administrative proceedings.  *See*, *e.g.*, *Appeal of Fraser-McBride*, 36 Ed. Dep't Rep., Decision No. 13783 (1997) ("the [petitioner's Federal] complaint raises alleged irregularities … including racial bias, and seeks to vindicate the above-referenced federal and constitutional claims which are properly before the federal court and not the Commissioner."). *See also*, *Appeal of a Student Suspected of Having a Disability*, 43 Ed. Dep't Rep., Decision No. 15061 (2004) ("Enforcement of § 504 [of the Rehabilitation Act] lies with the federal courts … and not with the Commissioner pursuant to Education Law §310."); *Appeal of Mogel*, 41 Ed. Dep't Rep., Decision No. 14636 (2001) ("an appeal to the Commissioner is not the proper forum in which to raise alleged violations of the ADA.").

Beyond the Commissioner's own interpretation of her power, both the State Legislature's actions and the Governor's actions demonstrate that they both similarly view the Commissioner's authority in this context as limited.  Indeed, in 2017, the New York State Legislature passed a bill ("A881-A") which proposed to add a subdivision to Section 1804 of the Education Law, addressing the issue of ward voting in central school districts.[10]  Specifically, A881-A would have amended § 1804 to provide that a board of education "may, by resolution and subject to a mandatory referendum, establish school election wards for purposes of electing individual school board members. There shall be five, seven or nine school election wards within a school district. One member shall be chosen from each ward by the qualified voters therein." New York State Assembly, "*An act to amend the education law, in relation to the establishment of school election wards in union free school districts and central school districts*," A881-A (S 6599), 2017-2018 Reg. Sess.  The Legislature obviously believed that a change in the law was

---

[10] The bill would also amend Section 1702, which governs union free school districts.

necessary because it *passed legislation in order to allow for the establishment of a ward system*

in union free and central school districts.  This is common sense.  Had the Commissioner or local

school districts been able to simply impose a ward-based election system, there would be no

need for the Legislature to pass a state law establishing a mechanism for adopting ward-based

voting.  Indeed, where the Legislature has deemed it appropriate to allow a "ward" system in the

context of school board elections, it has expressly passed legislation to accomplish such.  N.Y.

EDUC. LAW. § 2553.

       Moreover, in vetoing the aforementioned legislation, Governor Cuomo echoed the

Commissioner's and the Legislature's interpretation of the Commissioner's authority.  In his

veto message, the Governor acknowledged that it is up to the Legislature and the Governor to

address the issue of ward-based voting and provide districts with the opportunity to implement

such a system.  December 20, 2017 Veto Message – No. 248 ("Veto Message") (Ex. B to

Matthews Decl.).  The Governor also identified the need for caution in granting the authority to

implement ward based voting, given the potential for disenfranchisement absent a specific

demonstration of the need, desire and means of implementation, noting:

> [T]he [ward voting] bill does not provide adequate protections to guard
> against disenfranchisement or discrimination against citizens or groups of
> citizens. Specifically, the bill does not require prior analysis of potential
> disenfranchisement or discrimination based upon race, gender, ethnicity,
> religion, socio-economic status, or affiliation. It does not provide adequate
> opportunity for the public to weigh in on the new ward system or its
> effects prior to a public vote. It also lacks requirements to ensure that
> election wards appropriately represent communities, and it does not
> require school districts to provide open, transparent, and fair voting
> procedures to ensure a true determination of the public's desire to adopt
> such an election system.

*Id*.  Indicating that it is the Executive and Legislature that are tasked with pursuing such a law,

the Governor assured voters that he plans to "continue working with the Legislature to

21

accomplish legislation…that addresses these important concerns." *Id*.  Again, Commissioner

Elia, however, unequivocally does not have the authority to override state law, and the

democratic process, and impose a ward voting system in the District.

**POINT V**

**PLAINTIFFS' PRELIMINARY INJUNCTION AS
TO COMMISSIONER ELIA SHOULD BE DENIED.**

As the Court is aware, Plaintiffs have also filed a motion for a preliminary injunction in

this action.  *See* Docket Entry Nos. 15 – 36.  In that motion, Plaintiffs seek an order from the

Court "enjoining *Defendants*…from holding elections for members of the District's Board of

Education (the "Board") until the District's voting system no longer violates Section 2[.]"

Notice of Motion for Preliminary Injunction (Docket Entry No. 15) (emphasis added).  As an

initial matter, the District is responsible for maintaining and administering the system for Board

elections.  *Supra*, pp. 2-5; Compl. ¶ 18.  Therefore, any injunction the Court would order

regarding the May 2018 elections would have no bearing on the Commissioner.[11]

Commissioner Elia does not take a position with respect to whether the Plaintiffs'

preliminary injunction application establishes a Voting Rights Act violation as against the

District and does not address the merits of their Voting Rights Act claim against the District in

this opposition.  If there is in fact a Voting Rights Act violation ongoing in the District, the

Commissioner believes it may be remedied by Court Order.  But she respectfully submits that,

for the reasons herein, that the preliminary injunction be denied as to her.  Naming the

Commissioner as a defendant herein, given the complete absence of allegations of any

---

[11] This assumes the District's budget vote would proceed as scheduled, which, upon information
belief, the District anticipates it would, and also that any Court Order would include provisions
addressing the expiring board seats which are up for election in May in order to ensure that a
functioning board exists if the upcoming election were to be enjoined.

22

wrongdoing or violation if a federal right by her also invokes the subject matter jurisdiction of this Court, or rather the lack thereof, and concepts of federalism and comity.

To prevail on a motion for a preliminary injunction, Plaintiffs must establish four elements: (i) a likelihood of irreparable harm; (ii) either a likelihood of success on the merits or sufficiently serious questions as to the merits plus a balance of hardships that tips decidedly in their favor; (iii) that the balance of hardships tips in their favor regardless of the likelihood of success; and (iv) that an injunction is in the public interest.  *Marblegate Asset Mgmt. v. Educ. Mgmt. Corp.*, 75 F. Supp. 3d 592, 604 (S.D.N.Y. 2014) (discussing Second Circuit's preliminary injunction standards and citing *Otoe–Missouria Tribe of Indians v. N.Y. Dep't of Fin. Servs.,* 769 F.3d 105, 110 (2d Cir.2014)).

Like Plaintiffs' Complaint, Plaintiffs' application for a preliminary injunction does not contend that Commissioner Elia engaged in wrongdoing or violated any law.  The *only* reference to the "Commissioner," outside of the caption, is to a news article referencing a prior Commissioner's Education Law §310 appeal decision annulling the sale of a public school in 2010 in the face of questions regarding the propriety of the same.  Ex. 5 to Salomon Declaration (Docket Entry No. 16-5).  Such a reference is unrelated to any claim against Commissioner Elia in this lawsuit and, if anything, only serves to further demonstrate the Commissioner's responsiveness to the public school constituency in East Ramapo.

For the reasons set forth in this brief, Plaintiffs will not be able to prove a likelihood of success on the merits as against the Commissioner.  Commissioner Elia therefore respectfully requests that the preliminary injunction be denied as to her.

## <u>CONCLUSION</u>

For the reasons herein, Defendant Elia respectfully requests that this Court grant her

motion and dismiss the Plaintiffs' claims against her, with prejudice, in their entirety, and deny

the preliminary injunction as to her, together with such other and further relief as the Court

deems just and proper.

Dated: New York, New York
       February 16, 2018

ERIC T. SCHNEIDERMAN
Attorney General of the State of New York
*Attorney for Defendant MaryEllen Elia*

By:
        /s/
_____
Elyce N. Matthews
Monica Connell
Assistant Attorneys General
120 Broadway, 24th Floor
New York, New York  10271
(212) 416-8910
