**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE, SPRING VALLEY BRANCH; JULIO CLERVEAUX; CHEVON DOS REIS; ERIC GOODWIN; JOSE VITELIO GREGORIO; DOROTHY MILLER; HILLARY MOREAU; and WASHINGTON SANCHEZ,<br><br>              Plaintiffs,<br><br>     v.<br><br>EAST RAMAPO CENTRAL SCHOOL DISTRICT and MARYELLEN ELIA, IN HER CAPACITY AS THE COMMISSIONER OF EDUCATION OF THE STATE OF NEW YORK,<br><br>              Defendants. | 17 Civ. 8943 (CS) (JCM) |

**MEMORANDUM OF LAW IN OPPOSITION TO**
**DEFENDANTS' MOTIONS TO DISMISS**

# TABLE OF CONTENTS

**Contents**                      **Page**

I. Preliminary Statement................................................................................1

II. Background ...............................................................................................2

 A. Procedural Posture ..........................................................................2
 B. Summary of Plaintiffs' Allegations Regarding Section 2 Violations.....................3
 C. Defendants Contend That They Are Powerless to Grant the Requested Relief..........................................................................................5

III. Legal Standards.........................................................................................6

 A. Motion to Dismiss Under Rule 12(b)(1)................................................6
 B. Motion to Dismiss Under Rule 12(b)(6)................................................6

IV. Legal Argument .........................................................................................7

 A. At-Large Methods of Elections Arising Out of State or Local Laws That Violate the Voting Rights Act Are Not Valid............................7
 B. The District Is a Proper Party Because It Administers Elections ...........................8
 C. The Commissioner Is a Proper Party Because She Enforces All Laws Related to Education................................................................9
  1. New York Law Gives the Commissioner Plenary Authority to Enforce All Laws Related to Education.........................................9
  2. State Law Grants The Commissioner Specific Authority To Regulate School Board Elections.......................................10
  3. Plaintiffs Have Asserted Facts Sufficient To Plead the Commissioner As a Defendant .................................................11
 D. The Education Law Does Not Require At-Large Elections for Boards of Education ..............................................................13
  1. A Plain Reading of the Education Law—in Addition to the Office of the Commissioner's Own Interpretation —Confirms that At-Large Elections Are Not Required.............................................13
  2. Defendants' Argument That Absent Express Authority, the Board Cannot Change the Election System Is Wrong.........................16
  3. Recent Actions Taken By The New York State Legislature or The Governor Do Not Alter or Negate the Fact That At-Large Voting for the District's Board Violates the VRA..................................17

V. Conclusion ...............................................................................................20

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Arbor Hill Concerned Citizens v. Cty. of Albany*,
357 F.3d 260 (2d Cir. 2004).............................................................................7, 16

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)..................................................................................................6

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)..................................................................................................6

*Appeal of Board of Educ. of Hempstead*, 55 Educ. Dep't Rep., Decision No.
16878, 2016 WL 854052 (Feb. 16, 2016)..............................................................9

*Carter v. HealthPort Techs., LLC*,
822 F.3d 47 (2d Cir. 2016).............................................................................12, 13

*Chisom v. Roemer*,
501 U.S. 380 (1991)................................................................................................13

*Coregis Ins. Co. v. Am. Health Found., Inc.*,
241 F.3d 123 (2d Cir. 2001).....................................................................................9

*Fountain v. Karim*,
838 F.3d 129 (2d Cir. 2016).....................................................................................6

*Appeal of Fraser-McBride*,
36 Educ. Dep't Rep. 488, Decision No. 13783, 1997 WL 34846773 (June 25,
1997) ......................................................................................................................10

*Gilmore v. Amityville Union Free Sch. Dist.*,
305 F. Supp. 2d 271 (E.D.N.Y. 2004) ..................................................................10

*Appeal of Bradley Gravink*, 37 Educ. Dep't Rep., Decision No. 13888, 1998 WL
35421154 (Mar. 13, 1998) .............................................................................. *passim*

*Greater Birmingham Ministries v. Alabama*,
No. 2:15-CV-02193-LSC, 2017 WL 782776 (N.D. Ala. Mar. 1, 2017)................12

*Green v. Crew*,
No. CV-96-3367 CPS, 1996 WL 524395 (E.D.N.Y. Sept. 5, 1996) ......................12

*Harvell v. Blytheville Sch. Dist. No. 5*,
71 F.3d 1382 (8th Cir. 1995) ...................................................................................9

*Immediato by Immediato v. Rye Neck Sch. Dist.*,
    873 F. Supp. 846 (S.D.N.Y. 1995), *aff'd sub nom. Immediato v. Rye Neck Sch. Dist.*, 73 F.3d 454 (2d Cir. 1996) ........................................................................11

*Kamen v. Am. Tel. & Tel. Co.*,
    791 F.2d 1006 (2d Cir. 1986) ...........................................................................6

*Katzenbach v. Morgan*,
    384 U.S. 641 (1966) ..........................................................................................7

*Loreley Financing (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*,
    797 F.3d 160 (2d Cir. 2015) .............................................................................20

*Makarova v. United States*,
    201 F.3d 110 (2d Cir. 2000) ..............................................................................6

*Midtown Hosp. v. Miller*,
    36 F. Supp. 2d 1360 (N.D. Ga. 1997) .............................................................16

*Missouri State Conference of the Nat'l Ass'n for the Advancement of Colored People v. Ferguson-Florissant Sch. Dist.*,
    201 F. Supp. 3d 1006 (E.D. Mo. 2016) ..........................................................8, 9

*Molinari v. Bloomberg*,
    564 F.3d 587 (2d Cir. 2009) .............................................................................15

*Nike, Inc. v. Already, LLC*,
    663 F.3d 89 (2d Cir. 2011) ................................................................................6

*Pacos v. Hunter*,
    218 N.Y.S.2d 354 (Sup. Ct., Erie Cty. Spec. Term 1961), *aff'd*, 14 A.D.2d 990 (4th Dep't 1961) ...............................................................................................10

*Pension Ben. Guar. Corp. v. LTV Corp.*,
    496 U.S. 633 (1990) ........................................................................................18

*Physicians Healthsource, Inc. v. Boehringer Ingelheim Pharm., Inc.*,
    847 F.3d 92 (2d Cir. 2017) ................................................................................6

*Romeu v. Cohen*,
    121 F. Supp. 2d 264 (S.D.N.Y. 2000) ............................................................12

*Schulz v. Williams*,
    44 F.3d 48 (2d Cir. 1994) ...............................................................................12

*Sharkey v. Quarantillo*,
    541 F.3d 75 (2d Cir. 2008) ................................................................................6

*Thornburg v. Gingles,*
   478 U.S. 30 (1986) ................................................................................3

*U.S. v. Uvalde Consol. Independent School District,*
   625 F.2d 547 (5th Cir. 1980) ................................................................8

*United States v. Alex. Brown & Sons, Inc.,*
   963 F. Supp. 235 (S.D.N.Y. 1997).......................................................16

*United States v. Bd. of Comm'rs of Sheffield,*
   435 U.S. 110 (1978) ..............................................................................8

*United States v. Brown,*
   561 F.3d 420 (5th Cir. 2009) ..............................................................10

*United States v. Vill. of Port Chester,*
   704 F. Supp. 2d 411 (S.D.N.Y. 2010)...................................................7

*White v. Weiser,*
   412 U.S. 783 (1973)...............................................................................7

## STATUTES

52 U.S.C. § 10301(a) ....................................................................... *passim*

N.Y. Educ. Law, Art. 41, Part I ....................................................................13

N.Y. Educ. Law § 101 ...................................................................................8

N.Y. Educ. Law § 305(1)...........................................................................1, 9

N.Y. Educ. Law § 1709 ...........................................................................8, 15

N.Y. Educ. Law § 1802 ..................................................................................8

N.Y. Educ. Law § 1804 ................................................................................17

N.Y. Educ. Law § 1805 ................................................................................15

N.Y. Educ. Law § 2012 ..........................................................................13, 14

N.Y. Educ. Law § 2012-22 ...........................................................................13

N.Y. Educ. Law § 2017 ...................................................................... *passim*

N.Y. Educ. Law § 2018 ................................................................................14

N.Y. Educ. Law § 2018(a)..............................................................................8

N.Y. Educ. Law § 2018(b)..............................................................14, 16

N.Y. Educ. Law § 2029-37.................................................................13

N.Y. Educ. Law § 2032.......................................................................14

N.Y. Educ. Law § 2032(2)(b)...............................................................8

N.Y. Educ. Law § 2032(4)....................................................................8

N.Y. Educ. Law § 2037........................................................................9

N.Y. Educ. Law § 2038......................................................................13

N.Y. Educ. Law § 2102......................................................................14

N.Y. Educ. Law § 2553(10)(c)...........................................................14

## RULES

Fed. R. Civ. P. 12(b)(1)......................................................................5, 6

Fed. R. Civ. P. 12(b)(6)......................................................................5, 6

## CONSTITUTIONAL PROVISIONS

U.S. Constitution Supremacy Clause...............................................2, 7, 16

# I. PRELIMINARY STATEMENT

This case is about the at-large method for electing Board of Education ("Board") members in the East Ramapo Central School District (the "District"). Plaintiffs—the National Association for the Advancement of Colored People, Spring Valley Branch, Julio Clerveaux, Chevon Dos Reis, Eric Goodwin, Jose Vitelio Gregorio, Dorothy Miller, Hillary Moreau, and Washington Sanchez (collectively, the "Plaintiffs")—have sufficiently alleged in their Complaint that the District's at-large system violates Section 2 of the Voting Rights Act ("VRA"), 52 U.S.C. § 10301(a) ("Section 2") and have moved to enjoin the District from holding further elections under the current at-large arrangement. Plaintiffs seek from the District and MaryEllen Elia, in her official capacity as the Commissioner of Education of the State of New York (the "Commissioner," and collectively with the District, "Defendants"), the implementation of a single member, ward-based method for electing Board members in the District that complies with Section 2.

By its terms, Section 2 provides that "[n]o voting . . . practice[] or procedure shall be imposed or *applied by any State or political subdivision* in a manner which results in a denial or abridgement of the right . . . to vote on account of race or color. . . ." 52 U.S.C. § 10301(a) (emphasis added). The District is a "political subdivision" of the State of New York, and the Commissioner is the "chief executive officer of the state system of education . . . [who] shall enforce all general and special laws relating to the educational system of the state . . . ." N.Y. EDUC. LAW § 305(1). Each is engaged in applying and administering the at-large voting arrangement challenged here.

Defendants have moved to dismiss the Complaint upon the ground that they are not "proper parties." Defendants' claim rests principally on the assertion that they are without the authority to modify the current at-large voting arrangement. But this argument ignores the fact

1

that Section 2 is directed at state and local entities that apply and administer discriminatory practices and that Defendants are responsible for applying and administering the discriminatory electoral system at issue here. Defendants' motions fail for at least the following reasons:

*First*, the Supreme Court has held time and again that by force of the Supremacy Clause of the U.S. Constitution, a state election law or practice that is inconsistent with the VRA is unenforceable. In other words, the New York Education Law ("Education Law") cannot impede a federal court from ordering a remedy that enjoins an impermissible at-large voting system and implements a ward-based system after finding a violation of the VRA.

*Second*, the District is a proper party because it is a "political subdivision" that applies the at-large system challenged here.

*Third*, the Commissioner is a proper party because New York law mandates that she "shall enforce all general and special laws" related to education and a specific responsibility to regulate school board elections. As such, for purposes of Section 2, the Commissioner is a state entity engaged in the application of a discriminatory electoral scheme.

*Fourth*, nothing in the Education Law requires the District to conduct at-large school board elections or prohibits the implementation of a ward-based system. In fact, the Commissioner has expressly interpreted Section 2017 of the Education Law to permit school districts to divide themselves into geographic areas or "wards" for the purpose of providing geographical representation.

## II.      BACKGROUND

### A.      Procedural Posture

On November 16, 2017, Plaintiffs filed a Complaint against Defendants alleging, *inter alia*, a violation of Section 2. Three weeks later, on December 7, 2017, Plaintiffs filed a motion

for preliminary injunction against Defendants seeking to enjoin the District from holding any further elections to the District's Board until the Section 2 violation had been cured.

Defendants sought leave of the Court to file motions to dismiss Plaintiffs' Complaint, and the District further sought a stay of discovery pending ruling on the motions to dismiss. *See* Dkt. Nos. 37, 40, and 45. At a conference on January 2, 2018, the Court denied the District's motion to stay, but granted Defendants leave to file motions to dismiss. *See* Tr. of Pre-Motion Conference held Jan. 2, 2018 at 32, attached as Ex. 1 to Declaration of Claudia Salomon ("Salomon Decl."). This brief responds to Defendants' motions to dismiss; Plaintiffs have filed a separate reply brief in further support of their motion for preliminary injunction.

### B.     Summary of Plaintiffs' Allegations Regarding Section 2 Violations

Plaintiffs' allegations are set forth more fully in their Complaint. *See generally* Compl., Dkt. No. 1; *see also* Mot. for Prelim. Inj., Dkt. Nos. 15-35. In sum, Plaintiffs allege that the current at-large method for electing Board members, as applied in the District, violates Section 2. Compl. ¶ 1. Section 2 prohibits any voting practice or procedure that "results in a denial or abridgement of the right . . . to vote on account of race or color . . . ." 52 U.S.C. § 10301(a). Under Section 2, any electoral procedure that "cause[s] an inequality in the opportunities enjoyed by black and white voters to elect their preferred representatives" is illegal. *Thornburg v. Gingles*, 478 U.S. 30, 47 (1986). These prohibited procedures include at-large elections that dilute minority voting strength. *Id.*; Compl. ¶¶ 2-3. Proving a Section 2 violation does not require Plaintiffs to make any showing of discriminatory *intent* in enacting or maintaining these voting practices and procedures. *See id.* ¶ 2.

In the District, the combination of an at-large method of electing Board members and a pattern of racially-polarized voting has consistently enabled a White voting bloc to defeat the candidates of choice of Black and Latino voters. Compl. ¶¶ 3, 27-29. Beginning in 2008, and

continuing to the present, the White community has voted as a bloc in order to defeat Minority-preferred candidates in every contested election. *Id.* ¶ 59. As a result, the White community has been able to elect members representing its interests to eight out of the nine Board positions. *Id.* ¶¶ 28, 64. As is clear from the totality of the circumstances, Minority voters have less opportunity than other members of the District's electorate to participate in the political process and elect representatives of their choice. *Id.* ¶¶ 60-71.

Moreover, two sets of state Monitors—including one set appointed by Commissioner Elia herself—have reported on the failure of the electoral system in the District to provide an equal opportunity for the public school community to elect their candidates of choice to the Board and the Board's concomitant failure to respond to the needs of the public school community. *Id.* ¶¶ 30-50. Data from the New York State Education Department—the Commissioner's agency—shows that the District's public school student population is 90% Black and Latino and 96% non-white overall, *id.* ¶ 17, making clear that the failure to represent the interests of the District's public school community is synonymous with the failure to represent the interests of racial minorities. Neither the Commissioner nor the District have taken steps to address concerns about the District's electoral process first identified by the monitors in November 2014 and again in December 2015. *See id.* ¶¶ 51, 53.

Plaintiffs request that the Court order the adoption of a single-member ward method of electing members of the Board that complies with Section 2, among other relief. *Id.* at Demand for Relief ¶ 3. Plaintiffs submit that both the District and the Commissioner are proper parties because they are in charge of administering or overseeing Board elections under the Education Law, respectively. *Id.* ¶¶ 18, 20.

### C.     Defendants Contend That They Are Powerless to Grant the Requested Relief

Defendants move to dismiss the Complaint under Rule 12(b)(1) and 12(b)(6) on the basis that Plaintiffs have failed to sufficiently allege that Defendants can redress the Section 2 violations.  Specifically, the District argues it is not a proper party to this action because "[b]oards of education have no authority to change how school district officers are elected." District Mot. to Dismiss ("District's Br.") at 10, Dkt. No. 76.  The Commissioner similarly argues that she lacks the power to order the District to change its method of electing Board members.  Commissioner Mot. to Dismiss ("Commissioner's Br.") at 19, Dkt. No. 73.

As explained below, the VRA trumps the Education Law and therefore cannot prevent a federal court from ordering Defendants to implement an election system that complies with Section 2.  Moreover, Defendants squarely fit into Section 2's ambit prohibiting a State or its "political subdivisions" from applying an electoral scheme which results in a denial or abridgement of the right to vote on account of race or color."  *See* 52 U.S.C. § 10301(a).  The District cannot deny that it applies and administers the at-large regime challenged here, while the Commissioner has ultimate administrative responsibility for the electoral practices of school districts.  Accordingly, both are proper parties under a plain reading of Section 2 and the Court should deny Defendants' motions on this basis alone.

The Commissioner also asserts that she is not a proper defendant to this action because: Plaintiffs have not demonstrated standing to sue the Commissioner (Commissioner's Br. at 13-15); other school board VRA cases have not included the commissioner of education as a defendant (*id.* at 15-17); and Plaintiffs fail to allege specific wrongdoing by the Commissioner (*id.* at 17-18).  These arguments are equally unavailing.  Both Defendants concede that, if ordered by this Court, they could and would change the current voting system from an at-large to a ward system.  *See* Salomon Decl. Ex. 1 at 5-6, 11-12.

Nevertheless, Defendants further point to the Education Law to support their arguments, asserting that it requires at-large elections, and as such, prevents them from changing the current at-large system. *See* Commissioner's Br. at 3-7; District's Br. at 10-11. Yet neither Defendant is able to identify a specific provision in the Education Law mandating at-large elections. Instead, they ask the Court to infer such a requirement from a general reading of various provisions in the Education Law. *See* Commissioner's Br. at 3-7; District's Br. at 10-11.

## III.   LEGAL STANDARDS

### A.   Motion to Dismiss Under Rule 12(b)(1)

A case may be dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when a district court "lacks the statutory or constitutional power to adjudicate it." *Nike, Inc. v. Already, LLC*, 663 F.3d 89, 94 (2d Cir. 2011) (quoting *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)). The party invoking the Court's jurisdiction bears the burden of establishing that jurisdiction exists by a preponderance of the evidence. *Fountain v. Karim*, 838 F.3d 129, 134 (2d Cir. 2016).

In reviewing a motion to dismiss under Rule 12(b)(1), courts "accept as true all material facts alleged in the complaint and draw all reasonable inferences in the plaintiff's favor." *Sharkey v. Quarantillo*, 541 F.3d 75, 83 (2d Cir. 2008). Courts may consider materials outside the pleadings on a Rule 12(b)(1) motion. *Fountain*, 838 F.3d at 134; *Kamen v. Am. Tel. & Tel. Co.*, 791 F.2d 1006, 1010-11 (2d Cir. 1986).

### B.   Motion to Dismiss Under Rule 12(b)(6)

In deciding a motion to dismiss under Rule 12(b)(6), courts must "accept all factual allegations as true, drawing all reasonable inferences in the plaintiff's favor." *Physicians Healthsource, Inc. v. Boehringer Ingelheim Pharm., Inc.*, 847 F.3d 92, 93 (2d Cir. 2017). The allegations in the complaint need only to meet a standard of "plausibility" to defeat a

Rule 12(b)(6) motion. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 564 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement.'" *Id.* Rather, a plaintiff need only allege sufficient facts to "nudge[] [its] claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

## IV. LEGAL ARGUMENT

### A. At-Large Methods of Elections Arising Out of State or Local Laws That Violate the Voting Rights Act Are Not Valid

Even if the Education Law required at-large voting for school board elections—which it does not, *see infra*, Sec. IV.D—such a requirement could not stand in the face of a violation of the VRA. Section 2 states that, "No voting qualification or prerequisite to voting or standard, practice, or procedure shall be imposed or applied by any State or political subdivision in a manner which results in a denial or abridgement of the right of any citizen of the United States to vote on account of race or color[.]" *See* 52 U.S.C. § 10301(a). It is clear that a state law that is in violation of the VRA is unenforceable. *See Katzenbach v. Morgan*, 384 U.S. 641, 646-47 (1966) (holding that "by force of the Supremacy Clause," a New York State election law could not be enforced to the extent it was inconsistent with the VRA); *White v. Weiser*, 412 U.S. 783, 797 (1973) (district courts "should defer to state policy in fashioning relief only where that policy is consistent with constitutional norms and is not itself vulnerable to legal challenge"); *Arbor Hill Concerned Citizens v. Cty. of Albany*, 357 F.3d 260, 262 (2d Cir. 2004) ("When the court has determined that there has been a VRA violation, it has the power to, and normally should, order that remedial steps be taken."); *United States v. Vill. of Port Chester*, 704 F. Supp. 2d 411, 447-48 (S.D.N.Y. 2010) (courts must defer to the choice of a state's governing

legislative body only "so long as the choice is consistent with federal statutes and the Constitution").

As explained below, Section 2 is directed at the State and its "political subdivisions" that are responsible for the imposition or application of a discriminatory electoral practice. In this case, Defendants are responsible for the application and administration of the challenged practices and are therefore proper parties to this action.

**B.    The District Is a Proper Party Because It Administers Elections**

New York State law generally confers school districts with control over their communities' schools, programs, and services, and provides for state oversight of those districts. *See, e.g.*, N.Y. EDUC. LAW §§ 101, 1709, 1802. Moreover, the Education Law charges school districts with the responsibility of administering elections for their boards of education. *See, e.g.*, *id.* §§ 2018(a), 2032(2)(b), 2032(4). Regardless of its authority to *implement* a ward system, the District's *administration* of the current at-large method of election makes it a proper defendant. *U.S. v. Uvalde Consol. Indep. Sch. Dist.*, 625 F.2d 547, 554-56 (5th Cir. 1980) (finding school district to be proper party in Section 2 challenge to at-large voting in school board elections); *Missouri State Conference of the Nat'l Ass'n for the Advancement of Colored People v. Ferguson-Florissant Sch. Dist.*, 201 F. Supp. 3d 1006, 1016 (E.D. Mo. 2016) (upon stipulation by the parties, court determined school district to be a "political subdivision" of the state and ultimately concluded that its at-large voting system violated Section 2); *United States v. Bd. of Comm'rs of Sheffield*, 435 U.S. 110, 118 (1978) ("The language, structure, history, and purposes of the Act persuade us that § 5, like the constitutional provisions it is designed to implement, applies to all entities having power over any aspect of the electoral process within designated jurisdictions, not only to counties or to whatever units of state government perform the function of registering voters."). Indeed, the Office of the Commissioner has already expressly

interpreted Section 2017 of the Education Law to permit school districts to form ward systems. *Infra*, Sec. IV.D.1 (citing *Appeal of Bradley Gravink*, 37 Educ. Dep't Rep., Decision No. 13888, 1998 WL 35421154, at *4 (Mar. 13, 1998)). Accordingly, the District's motion to dismiss should be denied.

### C. The Commissioner Is a Proper Party Because She Enforces All Laws Related to Education

#### 1. New York Law Gives the Commissioner Plenary Authority to Enforce All Laws Related to Education

The Education Law gives the Commissioner a mandatory duty and broad authority to "enforce all general and special laws *relating to* the educational system of the state." N.Y. EDUC. LAW § 305(1) (emphasis added).[1] Section 2037 of the Education Law recognizes that elections for school board members are a core component of the state educational system and gives the Commissioner plenary authority over "[a]ll disputes concerning the validity of any . . . election." N.Y. EDUC. LAW § 2037. The Commissioner has recognized her authority to ensure "the fundamental fairness" of those elections and that those elections comply with "all applicable provisions of law and regulation." *Appeal of Board of Educ. of Hempstead*, 55 Educ. Dep't Rep., Decision No. 16878, 2016 WL 854052, at *7-8 (Feb. 16, 2016). As a result, because the Commissioner's enforcement of all "applicable provisions of law" renders her office an entity responsible for the application of the at-large voting arrangement challenged here, and because Section 2 applies to school board elections generally, and specifically to ensure that at-large

---

[1] The phrase "relating to" is broad and "equivalent to the phrases 'in connection with' and 'associated with.'" *Coregis Ins. Co. v. Am. Health Found., Inc.*, 241 F.3d 123, 129 (2d Cir. 2001).

elections do not dilute minority voting strength in school board elections,[2] the Commissioner is a proper party.

### 2. State Law Grants The Commissioner Specific Authority To Regulate School Board Elections

Courts have recognized that "the Commissioner of Education is, and has always been, the 'final policy-maker'" with regard to school board elections. *Gilmore v. Amityville Union Free Sch. Dist.*, 305 F. Supp. 2d 271, 277 (E.D.N.Y. 2004). Courts therefore have construed the Commissioner's power to regulate school board elections broadly to permit her to address a range of potential illegalities. *Pacos v. Hunter*, 218 N.Y.S.2d 354, 356-57 (Sup. Ct., Erie Cty. Spec. Term 1961), *aff'd*, 14 A.D.2d 990 (4th Dep't 1961) ("We should not give the provisions of the Education Law [granting the Commissioner authority over school board elections] . . . a strained and absurd construction"). The Commissioner has even adjudicated claims that, although not explicitly labeled as such, are in sum and substance violations of the VRA. In fact, *Appeal of Fraser-McBride*, on which the Commissioner relies to argue that she cannot adjudicate VRA claims, is actually an example of such adjudication. *See Appeal of Fraser-McBride*, 36 Educ. Dep't Rep. 488, Decision No. 13783, 1997 WL 34846773, at *7 (June 25, 1997). Although the Commissioner in *Fraser-McBride* directed the parties to a federal court for adjudication of the explicitly pled VRA claims, the Commissioner ruled on a series of allegations about "racial bias" in a school board election that petitioners contended resulted in the denial of votes from African-American voters. These allegations included, among other things, refusal to count absentee ballots and the disparate staffing of polling places with African-American voters. *See id.* at *2-3, *6-7. Clearly, allegations such as mishandling of absentee ballots could easily

---

[2] *See, e.g.*, *Harvell v. Blytheville Sch. Dist. No. 5*, 71 F.3d 1382, 1385-91 (8th Cir. 1995); *Ferguson-Florissant Sch. Dist.*, 201 F. Supp. 3d at 1015-19.

give rise to an independent VRA claim.  *Cf. United States v. Brown*, 561 F.3d 420, 433-35 (5th Cir. 2009) (affirming district court's finding of Section 2 violation where record showed that defendants improperly handled absentee ballots).

Adjudication and compliance are two separate and distinct legal concepts, and the Commissioner's unilateral refusal to adjudicate does not preclude her from ensuring compliance. The Commissioner points to cases like *Fraser Mc-Bride* as examples of the Commissioner's inability to order compliance with federal law, *see* Commissioner's Br. at 20, but those cases are inapplicable.  Although the Commissioner,  more akin to an administrative agency than a federal court, may rightly refuse to adjudicate federal law and instead direct the parties to a federal court, she can still order the parties to comply with federal law as part of her oversight duties.  *See Immediato by Immediato v. Rye Neck Sch. Dist.*, 873 F. Supp. 846, 849-50 (S.D.N.Y. 1995), *aff'd sub nom. Immediato v. Rye Neck Sch. Dist.*, 73 F.3d 454 (2d Cir. 1996) ("The New York State Commissioner of Education, as the chief executive officer of the state system of education," is "free" to "address Constitutional issues").

### 3. Plaintiffs Have Asserted Facts Sufficient To Plead the Commissioner As a Defendant

The Commissioner argues that Plaintiffs cannot establish Article III standing against her because they have not "allege[d] any wrongdoing on the part of the Commissioner." Commissioner's Br. at 14.  The wrongdoing here involves the imposition and application of a discriminatory at-large system, as set forth at length in the Complaint.  *See, e.g.*, Compl. ¶¶ 1-7. The Commissioner, as the chief administrative officer regarding education in this State, is responsible for the application of the at-large system in the District and for the injuries resulting from such implementation.  *See id.* ¶ 20 (noting, in part, that the Commissioner is the "chief executive officer of the state system of education").  In addition, despite repeatedly finding

through her monitors that the electoral system in the District fails to grant minorities the opportunity to elect candidates of their choice, the Commissioner has not acted to correct the situation. *See id.* ¶¶ 30-50.

As the *enforcer* of all general and special laws relating to the educational system of the state, the Commissioner clearly has a role in the enforcement of the current election system in the District and is undoubtedly a proper defendant. *See Romeu v. Cohen*, 121 F. Supp. 2d 264, 272 (S.D.N.Y. 2000) (noting that "[i]t is well-settled that a state official may properly be made a party to a suit seeking to enjoin the enforcement of an allegedly unconstitutional act if that official plays some role in the enforcement of the act"); *Schulz v. Williams*, 44 F.3d 48, 61 n.13 (2d Cir. 1994) (indicating that the question for the Court to decide is whether the Commissioner has a role in the "enforcement of an allegedly [impermissible] act"); *Green v. Crew*, No. CV-96-3367 CPS, 1996 WL 524395, at *15 (E.D.N.Y. Sept. 5, 1996) (finding party that was "charged with administering school board elections" and who would be "a vital part of any remedial relief in fashioning and implementing a new system" a "political subdivision" and proper party); *Greater Birmingham Ministries v. Alabama*, No. 2:15-CV-02193-LSC, 2017 WL 782776, at *14 (N.D. Ala. Mar. 1, 2017) (holding that plaintiffs had valid cause of action against Secretary of State in action alleging that Photo ID requirement violated Section 2 because he "is especially designated to implement all aspects of the Photo ID Law"); *see also Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 59 (2d Cir. 2016) ("[A] plaintiff's injury need not be 'directly' attributable to a defendant in order to show the causation element of standing to sue that defendant, so long as the injury is 'fairly traceable' to that defendant."). Tellingly, the Commissioner has been unable to identify a single case where she (or her equivalent in another jurisdiction) was dismissed from

a VRA case against a school district.  *See* Commissioner's Br. at 15-17.  Thus, the

Commissioner's motion should be denied.[3]

### D.     The Education Law Does Not Require At-Large Elections for Boards of Education

Plaintiffs agree with Defendants that the Education Law governs the procedures for

school board elections.  *See* N.Y. EDUC. LAW §§ 2012-22, 2029-37.  However, Defendants are

incorrect in asserting that the Education Law requires the District to conduct its elections at-

large, and does not permit the District to implement a ward-based election system.

### 1.     A Plain Reading of the Education Law—in Addition to the Office of the Commissioner's Own Interpretation—Confirms that At-Large Elections Are Not Required

There is no requirement in the Education Law that central school districts—of which the

District is one—use at-large voting systems to elect its board members.  *See generally* N.Y.

EDUC. LAW, Art. 41, Part I.[4]  None of the sections in the Education Law cited by Defendants

requires at-large voting.  In fact, the Office of the Commissioner has already expressly

interpreted one section to permit school districts to form ward systems.  Plaintiffs address each

section in turn.

---

[3] The Commissioner also asserts that Plaintiffs fail to state a claim against her for which relief can be granted because Plaintiffs fail to allege any wrongdoing on the part of the Commissioner. Commissioner's Br. at 18.  For the same reasons as identified above—including the Commissioner's inaction and continued enabling of the current at-large system—the Commissioner's Rule 12(b)(6) motion should be denied.  *See Chisom v. Roemer*, 501 U.S. 380, 394 (1991) ("[P]roof of intent is no[t] . . . required to prove a § 2 violation . . . . [P]laintiffs can prevail under § 2 by demonstrating that a challenged election practice has resulted in the denial or abridgment of the right to vote based on color or race."); *Carter*, 822 F.3d at 59 (injury that is "fairly traceable" to defendant's conduct sufficient for standing).

[4] Although many of the Education Law sections cited in this memorandum of law state that they apply to "union free" school districts, Section 2038 provides that all provisions in Article 41, Part I of the Education Law apply to central school districts.  N.Y. EDUC. LAW § 2038.

First, Defendants cite to Section 2012, which provides in part that "[a] person shall be entitled to vote at any school meeting or election for the election of school district officers." N.Y. EDUC. LAW § 2012. But nothing in Section 2012 expressly prohibits the creation of a ward system. Moreover, even if the law required every voter to vote for at least one school board member in every election, the District could adopt a system that contains six seats elected by single-member ward and three at-large seats in order to ensure compliance with Section 2012, as is the case in the Buffalo City School District. *See* N.Y. EDUC. LAW § 2553(10)(c).

Next, the Commissioner cites to Section 2102, which sets forth the qualifications of school district officers, stating that every officer "must be a qualified voter of the district" and must be "a resident of the school district." N.Y. EDUC. LAW § 2102. The Commissioner asserts that additional qualifications cannot be imposed on membership of a board of education beyond the statutory requirements of Section 2102. *See* Commissioner's Br. at 4. But as made clear in Plaintiffs' letter to the Court dated December 26, 2017, Plaintiffs' requested relief is not dependent on such a requirement. *See* Dkt. No. 47 at 2. Accordingly, Section 2102 and its provisions regarding the qualification of school district officers is irrelevant to Plaintiffs' claims.

Third, Defendants cite to Sections 2018 and 2032, which establish nominating and balloting procedures for school board elections. Section 2018 provides that board candidates run for "a separate specific office" (as opposed to running for all open positions), but permits the adoption of at-large voting by referendum. *See* N.Y. EDUC. LAW § 2018(b). Section 2032 also states the default rule that candidates run for a "specific office," and directs that ballots contain an instruction that voters cast only one vote per office. *See* N.Y. EDUC. LAW § 2032. Neither section, however, prohibits districts from defining "specific offices" in terms of geographic areas, or wards.

Fourth, the Commissioner cites to Section 2017, which permits districts to divide their communities into election districts. Again, nothing in this provision restricts districts from dividing election districts by geographic area, or from permitting voters of a sub-district to cast votes only for board candidates for that sub-district. Crucially, the Office of the Commissioner has even interpreted this provision to permit school districts to divide themselves into geographic areas or "wards." In *Appeal of Bradley Gravink*, the Office of the Commissioner stated that, pursuant to Section 2017, a school district could create wards to achieve "the goal of proportionate representation of the various rural communities" in the school district on the school board. 37 Educ. Dep't Rep., Decision No. 13888, 1998 WL 35421154, at *4 (Mar. 13, 1998). Because the Commissioner's opinion in *Gravink* is consistent with the Education Law, it should "be given considerable weight."[5] Because school districts are empowered to implement a ward system to achieve geographical representation, *cf. Gravink*, 1998 WL 35421154, it follows that school districts likewise are empowered to implement a ward system to ensure that its board elections comply with federal law, including Section 2 of the VRA. Geographic representation is essentially what Plaintiffs seek in this case, although the geographic boundaries are driven by the racial make-up of the proposed wards, rather than a desire to ensure representation of rural neighborhoods, as in *Gravink*.

Finally, the District cites to Sections 1709 and 1805, which enumerate the powers and duties of boards of education generally, and those of central school districts like the District specifically. *See* N.Y. EDUC. LAW §§ 1709, 1805. The District contends these provisions do not

_____

[5] Courts have long held that opinions by administrative agencies "should be given considerable weight by the courts. . . . [A]bsent a clear showing to the contrary, advisory opinions of such agencies should be given great deference and validity." *Molinari v. Bloomberg*, 564 F.3d 587, 617 (2d Cir. 2009).

give boards of education the authority "to change how school district officers are elected." District's Br. at 10. This purported lack of authority, however, is beside the point because Plaintiffs are not seeking to compel the District to make any changes to school district elections that are contrary to the Education Law.

In sum, a plain language reading of the Education Law shows that it merely permits—but does not mandate—the formation of at-large election systems by resolution of the District. *See* N.Y. EDUC. LAW § 2018(b).[6] Moreover, the Commissioner's own interpretation of Section 2017 clearly shows that the Education Law does not prohibit the adoption of ward systems. *Gravink*, 1998 WL 35421154, at *4.

## 2. Defendants' Argument That Absent Express Authority, the Board Cannot Change the Election System Is Wrong

Defendants contend that they do not have the power to disregard a state law, which, in their view, prevents them from establishing a ward-based system. District's Br. at 11 n.21 (citing *United States v. Alex. Brown & Sons, Inc.*, 963 F. Supp. 235, 240 (S.D.N.Y. 1997) ("Generally speaking, parties to a consent decree cannot 'consent' to disregard otherwise valid law, or 'consent' to enlarge their own legal rights.")); Commissioner's Br. at 19 n.9 (same). This is a red herring because there is no "valid state law" which prohibits the District and the Commissioner from implementing a ward system, and even if there were such a state law, it could not stand in light of a VRA violation. As discussed above, once a court determines the VRA has been violated, "it has the power to, and normally should, order that remedial steps be taken." *Arbor Hill Concerned Citizens*, 357 F.3d at 262; *supra*, Sec. IV.A; *see also Midtown*

---

[6] At the pre-motion conference held on January 2, 2018, the Court noted the provisions of the Education Law cited by Defendants "don't really say anything one way or the other on whether there can be wards or whether it has to be at-large." Ex. 1 at 5:15-18.

*Hosp. v. Miller*, 36 F. Supp. 2d 1360, 1369 (N.D. Ga. 1997) (citation omitted) ("the [Georgia] Attorney General could settle a suit which conflicted with state law if the state law in question violated federal law . . . because the Supremacy Clause invalidates state laws which conflict with an Act of Congress, and in such a case it is the duty of the Attorney General to uphold the federal law").

**3. Recent Actions Taken By The New York State Legislature or The Governor Do Not Alter or Negate the Fact That At-Large Voting for the District's Board Violates the VRA**

Defendants suggest that recent actions by the New York State legislature and the Governor demonstrate that they both "similarly view the Commissioner's authority in this context as limited." *See* Commissioner's Br. at 20-21; District's Br. at 10-11 (stating that "for essentially the same reasons stated by the Commissioner, Plaintiffs' case should be dismissed"). Defendants are forced to resort to mere speculation because the proposed legislation on which they rely is in fact entirely consistent with Plaintiffs' reading of the Education Law that, as currently drafted, permits implementation of a ward system.

The Commissioner makes much of the fact that in 2017, the New York State legislature passed a bill that proposed to add a subdivision to Section 1804 of the Education Law pertaining to ward voting in central school districts. *See* New York State Assembly, "*An act to amend the education law, in relation to the establishment of school election wards in union free school districts and central school districts,*" A881-A (S 6599), 2017-2018 Reg. Sess. (hereinafter, "A881-A"). The Commissioner contends that the passage of A881-A indicates that the legislature "obviously believed that a change in the law was necessary." Commissioner's Br. at 20-21.

However, it is equally (if not more) plausible that the legislature passed A881-A in order to simply clarify or modify the procedures or parameters for establishing a ward-based voting

system under the Education Law.[7]  The memorandum accompanying A881-A explains that the bill's intended purpose would have been "to allow . . . voters the option to approve a referendum that will restrict the election of candidates to the board of education to the particular election district where those candidates and the voters of that particular election district reside."  *See* A881-A Memo, Salomon Decl. Ex. 2.  This purpose is aligned with the Commissioner's interpretation of the Education Law in *Gravink*, which ruled that Districts were already empowered to create ward-based voting systems for geographic diversity, 1998 WL 35421154, at *4 (discussing District's ability to "be formally divided" into wards "if the District believes that geographic representation is necessary"), and which makes no mention of residency requirements, or a plain language reading of the relevant statutes.  *See supra*, Sec. IV.D.1.

The Education Law as currently written permits school boards to utilize at-large *and* ward voting systems.  If enacted, A881-A would allow voters to decide by referendum whether to prohibit at-large voting altogether and vote exclusively by district—*i.e.*, implement a ward-based system.  Notably, there is no dispute that prohibiting at-large voting is permitted currently under the Education Law.  That A881-A might have set certain procedures to allow voters to implement a ward-based voting system *by referendum* does not mean that the District and the Commissioner are not already empowered to implement a ward system under the Education Law as currently written.  But under any circumstances, the bill certainly does not mean that a federal court could not order a remedy that included the implementation of a ward-based voting system if required to address a violation of the VRA.  *See supra*, Sec. IV.A.

---

[7] Additionally, courts should be wary of divining a legislature's view from anything other than duly enacted legislation.  The Supreme Court has stated it is "particularly dangerous" to "rest an interpretation of a prior statute when it concerns . . . a proposal that does not become law."  *Pension Ben. Guar. Corp. v. LTV Corp.*, 496 U.S. 633, 650 (1990).

Furthermore, A881-A would have required that "[o]ne trustee shall be chosen from each ward by the qualified voters therein." As noted above and as explained in Plaintiffs' letter to the Court dated December 26, 2017, Dkt. No. 47, Plaintiffs do not seek to impose such a requirement as part of the relief sought in this action, further underscoring that legislative action is not a prerequisite.

Again, the Commissioner's characterization of Governor Cuomo's veto message, Commissioner's Br. at 21, is at odds with the Commissioner's prior interpretation of the law in *Gravink* and without merit. 1998 WL 35421154, at *4 (discussing District's ability to "be formally divided" into wards "if the District believes that geographic representation is necessary" with no mention of voter ratification). Governor Cuomo's veto message in no way suggests that the Commissioner or the District are currently unable to implement a ward system under the Education Law as written. It merely states that A881-A "would allow union free and central school districts to establish geographic election wards for the election of school board members, *upon a resolution of the board and approval of local voters by referendum*." Governor Andrew Cuomo, Veto Message No. 248, December 20, 2017 (emphasis added), attached to Matthews Declaration as Exhibit B, Dkt. No. 72-2. As discussed above, this reading of A881-A explains that the proposed legislation would have added a provision allowing for the implementation of a ward-based voting system *by referendum of local voters*. Adding such a provision to the Education Law does not necessarily mean that school districts do not already have the ability to implement ward-based voting systems without having to seek voter approval. Instead, it merely modifies the process for adoption of such systems.[8]

---

[8] Furthermore, nothing in Governor Cuomo's language that A881-A should not be enacted without "adequate protections to guard against disenfranchisement or discrimination against citizens," or his concern that A881-A "does not require prior analysis of potential

But, as noted above, whether or not Defendants are authorized under New York Law to adopt a ward system on their own is of little consequence here. As the administrators of the electoral system of the school district, Defendants are proper parties, and this Court can appropriately exercise its equitable authority to enforce Section 2 of the VRA, and, in so doing, enjoin the current at-large system and direct Defendants to implement a ward system.

## V.    CONCLUSION

For the above reasons, the Court should deny Defendants' motions to dismiss, or in the alternative, grant Plaintiffs leave to amend their Complaint. *See Loreley Financing (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 190-91 (2d Cir. 2015) (explaining the Federal Rule's "strong preference for resolving disputes on the merits.").

---

disenfranchisement or discrimination," suggests that the implementation of a ward-based voting system cannot be part of an appropriate remedy fashioned upon a finding of VRA violation based on the presentation of evidence.

Dated: March 14, 2018
     New York, New York

Respectfully submitted,

/s/ Claudia T. Salomon
Claudia T. Salomon
Corey A. Calabrese
Elizabeth A. Parvis
Claudia.Salomon@lw.com
Corey.Calabrese@lw.com
Elizabeth.Parvis@lw.com
Latham & Watkins LLP
885 Third Avenue
New York, NY 10022
Phone: (212) 906-1200

Arthur Eisenberg
Perry Grossman
Kevin Jason
aeisenberg@nyclu.org
pgrossman@nyclu.org
kjason@nyclu.org
New York Civil Liberties Union Foundation
125 Broad Street
New York, NY 10004
Phone: (212) 607-3329

*Attorneys for Plaintiffs*