# LATHAM&WATKINS LLP

53rd at Third
885 Third Avenue
New York, New York  10022-4834
Tel: +1.212.906.1200  Fax: +1.212.751.4864

FIRM / AFFILIATE OFFICES

| | |
|---|---|
| Barcelona | Moscow |
| Beijing | Munich |
| Boston | New York |
| Brussels | Orange County |
| Century City | Paris |
| Chicago | Riyadh |
| Dubai | Rome |
| Düsseldorf | San Diego |
| Frankfurt | San Francisco |
| Hamburg | Seoul |
| Hong Kong | Shanghai |
| Houston | Silicon Valley |
| London | Singapore |
| Los Angeles | Tokyo |
| Madrid | Washington, D.C. |
| Milan | |

March 19, 2018

<u>**VIA ECF AND EMAIL**</u>

Hon. Judith C. McCarthy
United States District Judge
Southern District of New York
300 Quarropas Street
White Plains, New York 10601-4150

Re:   *National Association for the Advancement of Colored People,*
<u>*Spring Valley Branch v. East Ramapo Central School District*</u>, No. 17 Civ. 8943

Dear Judge McCarthy:

We submit this letter brief on behalf of Plaintiffs in the above-captioned action pursuant to the Court's March 14, 2018 order relating to Plaintiffs' motion to compel non-party discovery of the East Ramapo Central School District Board members (the "Board members") (ECF 86).[1]

## I. BACKGROUND

Defendant East Ramapo Central School District ("District"), which indemnifies the Board members, and the Board members, have known since at least October 2017 that Plaintiffs planned to seek documents and deposition testimony from the Board members.[2] Counsel for the District also represents all of the current Board members. On February 13, 2018, Plaintiffs served the current Board members with subpoenas *duces tecum* and *ad testificandum* (the "Subpoenas").

On February 27, 2018, the evening before the deadline for responding to the Subpoenas, the Board members submitted nearly identical objections ("Objections"). Each Board member refused to produce any documents in response to the Subpoenas, and, with the exception of Charles and Germain, who served as declarants for the District, also refused to make themselves

---

[1] The current Board members are H. Grossman, J. Lefkowitz, Y. Rothman, Y. Weissmandl, M. Berkowitz, B. Charles, Jr., J. Freilich, and P. Germain. On February 20, 2018, Plaintiffs also served a Subpoena on former Board member A. Wieder, who evaded service on four separate occasions. On March 13, 2018, counsel for the District finally informed Plaintiffs that they also represent Wieder and accepted service; we understand Wieder will not object to the Subpoena on the basis of legislative immunity or privilege given that he no longer serves on the Board.

[2] On October 2, 2017, Plaintiffs sent a letter to Board member Weissmandl advising the Board members of their document preservation obligations.

available for depositions.  (ECF 86-2).  Charles and Germain agreed to be deposed only on the topics contained in their declarations in support of the District's opposition to Plaintiffs' motion for a preliminary injunction.  (ECF 86-3; 86-4).

In their Objections, the Board members asserted that all documents and deposition testimony sought, except for document requests that called for public records and personal financial records, were covered by legislative immunity and the legislative privilege.  (ECF 86-2).  The Board members made this blanket objection, even though the requests sought documents relating to the Board members' campaigns and certain communications with third parties – documents that clearly are not covered by legislative immunity or privilege.

On March 2, 2018, counsel met and conferred, and Plaintiffs made a good faith effort to narrow the requests.  Counsel for District and the Board members, however, informed Plaintiffs that they were effectively treating legislative immunity and privilege as threshold issues, and any attempt to narrow the requests would be futile given their asserted privilege.

Having reached an impasse, on March 6, 2018, Plaintiffs filed their motion to compel. (ECF 86).  Contrary to the position taken during the meet and confer, in their opposition letter dated March 8, 2018, the Board members focused on supposed relevance and burden issues, and treated its asserted privilege objections as a secondary issue.  (ECF 91).  More importantly, in that same letter, the Board members requested that the Court put off deciding Plaintiffs' motion to compel until the District's then-pending pre-motion *in limine* to exclude evidence concerning "the District's policies, administration, operations, budget, and provision of education services" – which the District asserted were "exactly the issues targeted by Plaintiffs' subpoenas to the [B]oard members" – was resolved.  (*Id.* at 2).

On March 9, 2018, Judge Seibel denied the District's motion *in limine*, holding that evidence relating to whether or not "the school board [members] . . . care about the votes of the minority families" is relevant (March 9, 2018 Hr'g Tr. at 7:3-11), as are documents tending to show that "the school board is saying . . . we just have no money, and it turns out there is money, but it's being syphoned into places where it doesn't belong[.]"  (*Id.* at 10:13-20).  Judge Seibel also held that a parent "complaining to the Board" about insufficient academic offerings and teacher staffing, and "whether the Board responds" to that complaint is relevant to responsiveness.  (*Id.* at 17:19-18:2).  Ultimately, Judge Seibel found that Plaintiffs' requests, which the requests the District itself characterized as "exactly the issues" (ECF 91 at 2) in the Subpoenas, were "proper subject[s] for discovery[.]"  (March 9, 2018 Hr'g Tr. at 16:17-18).

On March 15, 2018, counsel again met and conferred.  In advance of that meeting, Plaintiffs provided the Board members with proposed amended requests that seek the following categories of documents: (1) campaign materials; (2) communications with third parties reflecting public inquiries and complaints and Board members' responsiveness to those communications; (3) personal income; and (4) administrative policies, procedures, positions, and statements ("Amended Requests").  Ex. 1.

Plaintiffs' understanding of the Board members' positions on the Amended Requests is as follows: (i) for Amended Requests 2 and 4, the Board members refused to produce documents, asserting legislative immunity and privilege, undue burden, and that the requests are not relevant

to Plaintiffs' claims or proportional to the needs of the case; (ii) for Amended Requests 1, 3(a) and the first clause of 3(d), the Board members agreed to conduct a reasonable search for responsive documents and will inform Plaintiffs of any burden issues associated with such searches; and (iii) for Amended Requests 3(b), 3(c), and the second clause of 3(d), the Board members asserted that such requests are unduly burdensome and are not relevant to Plaintiffs' claims or proportional to the needs of the case.[3] The Board members have now agreed to produce documents responsive to Amended Request 1, which seeks campaign materials, apparently recognizing that legislative immunity and privilege cannot serve as a basis for non-disclosure of those documents.

To date, Plaintiffs have produced 7,748 documents, and the District has deposed nine of Plaintiffs' witnesses, four of whom are non-parties. At present, Plaintiffs have received 574 documents from the District—the evening before Plaintiffs' preliminary injunction reply brief was due—and have not deposed any of the District's witnesses or the other Board members.

As discussed below, the Board members' asserted legislative immunity is inapposite here. Further, the documents sought in the Amended Requests are not protected by the legislative privilege, and Board members Germain and Charles have waived their claim of privilege. Finally, the Amended Requests seek documents that are relevant to Plaintiffs' claims and proportional to the needs of this case, and are not unduly burdensome to produce.

## II. LEGISLATIVE IMMUNITY DOES NOT PROVIDE A BASIS FOR NON-DISCLOSURE

"Legislative immunity entitles a . . . legislator, in an appropriate case, to the dismissal of all of the claims against him or her in the complaint . . . . [but] notwithstanding their immunity from suit, legislators may, at times, be called upon to produce documents or testify at depositions[.]" *Rodriguez v. Pataki*, 280 F. Supp. 2d 89, 95 (S.D.N.Y. 2003). The Supreme Court has made clear that legislators' common law immunity from liability does *not* give rise to a privilege against disclosure. *United States v. Gillock*, 445 U.S. 360, 373 (1980) (finding disclosure would have only a "minimal impact on the exercise of [the legislator's] legislative function" in the criminal context).

Numerous courts have followed the Supreme Court's decision in *United States v. Gillock*, holding that legislative immunity does not protect a legislator from disclosure. The fact that the Board members may be entitled to dismissal from a suit based on legislative immunity does not entitle them to assert privilege over their documents and testimony in this matter. *See Manzi v. DiCarlo*, 982 F. Supp. 125, 129 (E.D.N.Y. 1997) (rejecting claim of absolute privilege and holding that "the discovery and trial needs of plaintiff in enforcing her rights under federal law

---

[3] During the meet and confer, counsel for the District and the Board members also stated they would submit objections for Wieder along with documents, and related non-privileged documents for Germain and Charles by the next day. Although Plaintiffs never received any documents for Wieder, Charles, or Germain, the Parties have entered into an agreement in principle to limit the upcoming preliminary injunction hearing to each parties' expert testimony, and agreed to stay all discovery except for currently pending discovery issues until two weeks after Judge Seibel issues an order on Plaintiffs' request for a preliminary injunction.

clearly outweigh the State Defendants' need for confidentiality"); *Small v. Hunt*, 152 F.R.D. 509, 512-13 (E.D.N.C. 1994) ("The primary purpose of legislative immunity is not to protect the confidentiality of legislative communications, nor is it to relieve legislators of the burdens associated with document production.").

Importantly, the Second Circuit has noted that school board members may not be protected by legislative immunity. *Stepien v. Schaubert*, 424 F. App'x 46, 48 (2d Cir. 2011) (summary order). But even if school board members are protected by legislative immunity, no claims have been brought against the Board members here; they are non-parties, whose actions are at issue. Thus, the Board members' invocation of immunity as a basis for refusing to respond to the Subpoenas was improper.

### III. DOCUMENTS SOUGHT IN AMENDED REQUESTS 2 AND 4 ARE NOT PROTECTED BY LEGISLATIVE PRIVILEGE

#### 1. Legal Standard

The party asserting legislative privilege – in this case, the Board members – bears the burden of justifying the application of legislative privilege. *Winfield v. City of New York*, 2018 WL 716013, at *4 (S.D.N.Y. Feb. 1, 2018). The legislative privilege "does not operate indiscriminately to shield all decision-making by public officials[.]" *Children First Found., Inc. v. Martinez*, 2007 WL 4344915, at *6 (N.D.N.Y. Dec. 10, 2007).[4] Instead, the legislative privilege merely "protects legislators from 'discovery aimed at delving into their thought processes, motivations, and deliberations regarding the legislation they enacted[.]'" *East End*, 2011 WL 6337708, at *3. Importantly, "[t]he legislative privilege is a qualified privilege and will only be sustained where the relief sought by the suit would threaten the independence of the legislature." *Id.* (quotation marks omitted). In general, "[t]estimonial privileges are . . . disfavored as they 'contravene the fundamental principal that the public has the right to every man's evidence.'" *Id.*; *see also United States v. Nixon*, 418 U.S. 683, 712-13 (1974) (denying absolute testimonial privilege to the President of the United States); *Couch v. United States*, 409 U.S. 322, 335 (1973) (rejecting accountant-client privilege); *Branzburg v. Hayes*, 408 U.S. 665, 689 (1972) (denying a testimonial privilege to reporters); *In re Sealed Case*, 148 F.3d 1073, 1075 (D.C. Cir. 1998) (Courts "assum[e] that there is a general duty to give what testimony one is capable of giving.");

Legislative privilege is applied narrowly to protect only pre-decisional deliberative documents, meaning documents "prepared in order to assist the government decision maker in arriving at his or her decision" and "actually related to the process by which the policies are formulated." *East End*, 2011 WL 6337708, at *3. In assessing whether a document is pre-

---

[4] Legislative privilege is sometimes referred to as deliberative process privilege. *See East End Ventures LLC, v. Inc. Vill. of Sag Harbor*, 2011 WL 6337708, at *3-4 (E.D.N.Y. Dec. 9, 2011) (declining to distinguish between the legislative privilege and the deliberative process privilege); *Rodriguez v. Pataki*, 280 F. Supp. 2d at 100 ("Whether the privilege that the legislator-defendants seek to assert is characterized as a legislative or a deliberative process privilege, it is, at best, one which is qualified.").

decisional, courts may consider whether the legislators can "pinpoint the specific . . . decision to which the document correlates[,] . . . establish that its author prepared the document for the purpose of assisting the . . . decision[,] . . . and . . . verify that the document precedes, in temporal sequence, the decision to which it relates." *Winfield*, 2018 WL 716013 at *5.

In contrast, the privilege "does not cover purely factual matters[,]" "documents which are peripheral to . . . policy formulation[,]" (*Children First*, 2007 WL 4344915, at *7-8) or "documents . . . that are merely part of a routine and ongoing process of [the legislative body's] self-evaluation." *Winfield*, 2018 WL 716013 at *5 (quotation marks omitted). Nor does the privilege cover "routine activities of legislators" such as "[a]ctivities concerning the administration of a law, speeches delivered outside of the legislative body and preparation for the same, the making of appointments with government agencies, newsletters and press releases to constituents and drafts thereof" or documents that are "administrative or personal in nature" *Id.* at *7.

"[I]n deciding whether and to what extent the [legislative] privilege should be honored, the Court must balance the extent to which production of the information sought would chill the [Board's] deliberations . . . against any other factors favoring disclosure." *Rodriguez*, 280 F. Supp. 2d at 100. In making this determination, the Court may consider: "(i) the relevance of the evidence sought to be protected; (ii) the availability of other evidence; (iii) the 'seriousness' of the litigation and the issues involved; (iv) the role of the government in the litigation; and (v) the possibility of future timidity by government employees . . . ." *Id.* at 100-01.

### 2. Third Party Communications Are Not Privileged (Amended Request No. 2)

The Board members' objection to Amended Request No. 2, which seeks third party communications, including communications between Board members and non-Board members, such as parents and students, relating to complaints about the Board's lack of responsiveness to public school needs, is improper. The case law is clear—legislative privilege does not apply to communications with third parties, and to the extent any privilege applied to the Board members' documents related to these communications, such privilege was waived when the Board members discussed these issues with third parties.

Not even communications with "political operatives" or "knowledgeable outsiders" are covered by the privilege. *See Almonte v. City of Long Beach*, 2005 WL 1796118, at *3 (E.D.N.Y. July 27, 2005) ("Legislative and executive officials are certainly free to consult with political operatives or any others as they please . . . but that does not render such consultation part of the legislative process or the basis on which to invoke privilege"); *Rodriguez*, 280 F. Supp. 2d at 101 (describing a "conversation between legislators and knowledgeable outsiders, such as lobbyists, to mark up legislation" as "a session for which no one could seriously claim privilege"); *Favors v. Cuomo*, 285 F.R.D. 187, 212 (E.D.N.Y. 2012) ("The law is clear that a legislator waives his or her legislative privilege when the legislator publicly reveals documents related to internal deliberations."). The Supreme Court has even made clear that "the transmittal of . . . information [about legislators' activities] by individual [legislators] in order to inform the public and other [legislators] is not a part of the legislative function or the deliberations that

make up the legislative process[.]" *Hutchison v. Proxmire*, 443 U.S. 111, 133 (1979) (discussing newsletters and press releases).

Thus the Board members' objection to producing documents responsive to Amended Request No. 2 should be overruled.

> 3. **Administrative Decisions and Documents Are Not Privileged, and Even If They Were, Plaintiffs' Need for Such Documents Outweighs the Board's Interest in Non-Disclosure (Amended Request No. 4)**

>> a. **Amended Request No. 4 Does Not Call for the Production of Pre-Decisional Deliberative Documents**

Amended Request No. 4 seeks documents and communications concerning appointments to fill Board vacancies; the division of financial resources between public and non-public schools; and whether information was distributed equally to all Board members.

First, with respect to appointments to fill vacancies, such activities are administrative and personnel related, and the Second Circuit has found that such actions are "not legislative[.]" *Harhay v. Town of Ellington Bd. of Educ.*, 323 F.3d 206, 211 (2d Cir. 2003) (finding the "Board members' actions with respect to [the plaintiff's] employment were administrative, not legislative, in nature.").

Second, regarding budgeting and the equitable, or inequitable, distribution of financial resources among public and non-public schools in the District, such documents necessarily involve Board decisions that are required to be disclosed and discussed in a public setting under New York's Open Meeting Laws. N.Y. PUB. OFF. LAW §§ 100-03. In fact, the Open Meeting Laws specifically exclude actions "taken to appropriate public moneys" from permissible activities taken during the Board's closed, executive sessions. *Id.* § 105.

Third, Plaintiffs are interested in obtaining, for example, communications among Board members circulating information that was not circulated to all Board members in advance of Board meetings. Whether certain Board members were excluded from the distribution of information implicates only the "administrative" matter of information distribution and not the substance of any deliberation. Purely factual matters contained in any such communications are obviously excluded from any deliberative process privilege. To the extent any potentially privileged information is implicated by this request, the District is free to withhold or redact that information and describe its reasons for doing so in a privilege log.

>> b. **The Balancing of Factors Weighs in Favor of Disclosure**

Even if Amended Request No. 4 called for pre-decisional deliberative documents, the five factors articulated in *Rodriguez*, discussed *supra*, make clear that here, Plaintiffs' need for these documents from the Board members outweighs any interest the Board members may have in withholding these documents. 280 F. Supp. 2d at 101-02.

The documents sought in Amended Request No. 4 are relevant to this case. Specifically, Request No. 4 calls for documents that could potentially speak to the recruitment or appointment of White Board members to fill vacant seats, despite the availability of qualified minorities; the inequitable division of resources between predominantly-minority public schools and predominantly White private schools; and the exclusion of Sabrina Charles-Pierre, the only Board member alleged to have run for office as a minority-preferred candidate from the distribution of information to other Board members. Each of these requests are relevant and highly probative of whether the Board has exhibited a "significant lack of responsiveness . . . to the particularized needs of" minorities in East Ramapo. *See Goosby v. Town Bd. of Hempstead*, 956 F. Supp. 326, 330, 344-46 (E.D.N.Y. 1997) (citations omitted) (discussing the broad scope of evidence relevant to assessing this fact). At the March 9, 2018 hearing, Judge Seibel found that similar requests promulgated to the District were relevant to this factor in the vote dilution analysis. (March 9, 2018 Hr'g Tr. at 6:25-7:11; 10:13-20).

As to the second factor, the availability of other evidence, counsel for the District and the Board members represented that the Board members use their personal email addresses for Board matters, so documents Plaintiffs receive from the District would not reflect all Board documents responsive to Amended Request No. 4. In addition, Request No. 4 seeks documents unique to the Board members – including appointments, budgets, and the distribution of information among Board members, and as such is best obtained from the Board members.

The third factor – the "seriousness" of the litigation and issues involved – also weighs in favor of production. "At least one court has found that . . . the assertion of the deliberative process privilege [is precluded] in a case involving the Voting Rights Act." *Rodriguez*, 280 F. Supp. 2d at 98 (citing *United States v. Irvin*, 127 F.R.D. 169, 173-74 (C.D. Cal. 1989)). Accordingly, this is a case "where 'reason and experience'" require that the claim of privilege be disregarded. *Id.* at 99-100 (citing FED. R. EVID. 501).

With respect to factor four – the role of the government in the action – this case is similar to *Rodriguez*. 280 F. Supp. 2d at 102. There, in analyzing the fourth factor, the court found that "although this suit is not brought on behalf of the United States, there can be no question that it raises serious charges about the fairness and impartiality of some of the central institutions of our . . . government." As such, the court found that the fourth factor favored disclosure and that the legislative privilege should only be accorded limited deference. *Id.* at 102. Similarly, this is a case that implicates the "fairness and impartiality" of a flawed voting scheme that results in the election of Board members who are wholly unresponsive to the needs of the predominantly minority public school community. Accordingly, because this case benefits the public interest in fair elections, the fourth factor weighs in favor of disclosure.

Lastly, the fifth factor – the possibility of "future timidity by [the Board members] who will be forced to recognize that their secrets are violable"– does not weigh against disclosure. Plaintiffs are not asking the Board members to disclose secrets. As discussed above, Plaintiffs are interested in documents concerning the Board's public decisions such as appointments to fill Board vacancies, and the division of District resources. Under New York's Open Meeting Laws, none of the categories of documents in Amended Request No. 4 should even involved private discussions, which would chill discussion among Board members or impair their ability to carry out their legislative duties (to the extent the Board members even act in such a capacity).

In sum, all five *Rodriguez* factors weigh in favor of the disclosure of documents responsive to Amended Request No. 4.

### 4. Germain and Charles Waived Any Claim of Legislative Privilege By Inserting Themselves into the Litigation

At minimum, the legislative privilege does not apply to Germain and Charles, who both submitted declarations in support of the District's opposition to Plaintiffs' motion for a preliminary injunction. (ECF 79-1; 79-2).

"[T]he waiver of the [legislative] privilege need not be explicit and unequivocal . . . and may occur either in the course of the litigation when a party testifies as to otherwise privileged matters, or when purportedly privileged communications are shared with outsiders." *Favors*, 285 F.R.D. at 211-12 (quotation marks omitted). Individuals may "waive[] their claim of [legislative] privilege through their participation in [an] action." *Rodriguez*, 280 F. Supp. 2d at 103; *see also United States v. Weissman*, 1996 WL 737042, at *25 (S.D.N.Y. Dec. 26, 1996) (noting that "courts will grant no greater protection to those who assert the privilege than their own precautions warrant[.]"). Those asserting non-waiver bear "the burden of establishing non-waiver of the privilege." *Weissman*, 1996 WL 737042, at *25.

Here, Charles and Germain submitted declarations that discuss the process of slating candidates, racial polarization in the district, and their own campaigns. The District uses that testimony to support its arguments that the election of minority candidates shows there is no racially polarized voting, that Charles and Germain were minority-preferred candidates, and that there is no exclusionary process for endorsing Board candidates (ECF 76 at 28-30, 36-37). That Charles and Germain have asserted legislative privilege shows that the District is using Board members to cherry pick documents and testimony favorable to its defenses in this case, while depriving Plaintiffs of discovery to develop their case.

These tactics have been rejected resoundingly in analogous cases discussing the attorney-client privilege, which have held, for example, that "a party may not assert that it believed its conduct was lawful, and simultaneously claim privilege to block inquiry into the basis for the party's state of mind or belief." *Arista Records LLC v. Lime Grp. LLC*, No. 06 CV 5936, 2011 WL 1642434, at *2. Charles and Germain are trying to do the same thing here – by submitting arguments to support the District's defenses, but asserting legislative privilege to refuse to respond to Plaintiffs' Subpoenas, they are using the legislative privilege as both a sword and a shield. Courts are "loath to allow a legislator to invoke the privilege at the discovery stage, only to selectively waive it thereafter in order to offer evidence to support the legislator's claims or defenses." *Favors*, 285 F.R.D. at 212; *see also Comm. for a Fair & Balanced Map v. Ill. State Bd. of Elections*, 2011 WL 4837508, at *11 (N.D. Ill. Oct. 12, 2011) (subpoenaed non-party state legislators "cannot invoke the privilege as to themselves yet allow others to use the same information against plaintiffs at trial"). "Accordingly, once the privilege is invoked, the Court should not later allow the proponent of the privilege to strategically waive it to the prejudice of other parties." *Favors*, 285 F.R.D. at 212.

Germain and Charles have invoked the privilege at the discovery stage, but they selectively waived it to support the District's defenses. The Court should not allow Germain and

Charles to assert the legislative privilege as a basis to refuse to respond to Plaintiffs' Subpoenas. Nor should the Court allow other Board members to selectively assert the privilege while allowing Germain and Charles to waive it to support the District's defense.

IV. **PLAINTIFFS' AMENDED REQUESTS ARE RELEVANT TO THEIR CLAIMS, PROPORTIONAL TO THE NEEDS OF THE CASE, AND DO NOT IMPOSE AN UNDUE BURDEN ON THE BOARD MEMBERS**

The Board members assert that the entirety of Plaintiffs' Amended requests, including those for which they agree to conduct a reasonable search (Amended Requests 1, 3(a) and the first clause of 3(d)) are unduly burdensome because, as non-parties, they are subject to special protection from discovery. But here, while the Board members are not parties, the District they serve and make decisions for is a defendant. And, importantly, the District indemnifies and provides counsel for the Board members, thus removing any supposed burden. These are not, as counsel tries to paint them, unrelated third parties with a tenuous connection to the case. The Board members' actions bear directly on Plaintiffs' claims.

"As an initial matter, it is well-established that [a] subpoena need not specify all the particular items sought where they are not all known, but may simply require production of all documents pertaining to a specified matter or issue." *Fireman's Fund Ins. Co. v. Great Am. Ins. Co. of New York*, 284 F.R.D. 132, 138 (S.D.N.Y. 2012) (quotation marks omitted). "[T]he relevance standard that applies when seeking discovery from a party also applies to non-parties." *Citizens Union of City of New York v. Attorney Gen. of New York*, 269 F. Supp. 3d 124, 139 (S.D.N.Y. 2017) (citing *Malibu Media, LLC v. Doe*, 2016 WL 5478433, at *2 (S.D.N.Y. Sept. 29, 2016)). That is, under Rule 26(b), "[p]arties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]" *Citizens Union*, 269 F. Supp. 3d at 139.

While Plaintiffs bear the burden of proving the requested discovery is relevant, the Board bears the burden of proving that the discovery sought is privileged, unduly burdensome and/or expensive. *Id.* Under Rule 45, in "assessing whether [a] subpoena imposes an undue burden, courts weigh the burden [, *i.e.* the cost,] to the subpoenaed party against the value of the information to the serving party by considering factors such as relevance, the need of the party for the documents, the breadth of the document request, the time period covered by it, the particularity with which the documents are described and the burden imposed." *Id.* at 138 (quotation marks omitted).

First, as the Court stated during the March 14, 2018 conference, the issue of relevance has been resolved. (March 14, 2018 Hr'g Tr. at 4:7-9). Plaintiffs' Amended Requests get at a key issue – whether or not "the school board [members] . . . care about the votes of the minority families" (March 9, 2018 Hr'g Tr. at 7:3-11) and are responsive to the concerns of public school families. Counsel for the Board members even asserted in its opposition to Plaintiffs' motion to compel that the issues decided by Judge Seibel are "exactly the issues targeted by Plaintiffs' subpoenas to the [B]oard members." (ECF 91 at 2). Accordingly, Plaintiffs have demonstrated that the documents and testimony sought from the Board members are relevant.

Second, the requested discovery – which comprises four narrowly tailored categories of documents, and deposition testimony – from the Board members, is proportional to the needs of this case. This case relates to, in part: whether the Board has been responsive to the concerns of the minority public school community; whether there are racial appeals in campaign materials; whether there is a slating process that excludes minority voters and all but a select few minority candidates; whether the election of Board members is due to racially polarized voting; and whether the minority elected Board members were in fact minority-preferred candidates. Plaintiffs' requests seek documents that speak to each of these issues and therefore are proportional to the needs of this case.

Third, the Board members have offered no convincing argument or evidence to satisfy their burden of showing that Plaintiffs' requests are unduly burdensome. Nor can they. The Board members are represented by the same counsel that represents the District, and are indemnified by the District. The individual Board members are not personally responsible for the cost of responding to Plaintiffs' requests. Nonetheless, Plaintiffs have made significant efforts to reduce the burden of complying with these requests, including, for example, offering to provide a list of proposed search terms to aid discovery of responsive documents.

Relatedly, Plaintiffs objected to but have been required to produce much broader and more burdensome discovery in this case. The District requested from all Plaintiffs and fact witnesses, which include non-parties, all documents relating to this litigation. (Jan. 24, 2018 Hr'g Tr. 21:5-9). According to counsel for the District, this request sought "statements that the Plaintiffs have made or that the [fact] witnesses have made about this litigation . . . or about the underlying allegations of it; statements that they've made about elections, about voting, [and] about the District politics, because those are the kinds of things that in a deposition you would want to ask a witness about, [and it is] potentially . . . valuable on cross examination." (*Id.* at 22:11-18). Now, Plaintiffs are seeking significantly narrower requests from the Board members who are the key players in the Board elections and whose conduct goes to the heart of whether, among other factors the Court must consider in assessing Plaintiffs' claims, these elected officials exhibit "a significant lack of responsiveness" to minority needs. To date, Plaintiffs have produced much more than they have received in discovery, and they are entitled to develop their claims fully, with the benefit of non-privileged proportional requests for documents and testimony, which the Board has not shown is unduly burdensome.

## V. CONCLUSION

In sum, neither legislative immunity nor privilege shields the Board members from producing documents and testimony responsive to Plaintiffs' Amended Requests. Further, Plaintiffs have shown their discovery requests are relevant and proportional, and the Board members have not shown that the requests are unduly burdensome. For the foregoing reasons, the Board members should be ordered to produce non-privileged documents responsive to Plaintiffs' Amended Requests, and to appear for depositions. To the extent any individual Board member believes that certain documents responsive to any Amended Request are protected by the legislative privilege, that Board member should submit a privilege log which Plaintiffs will review and challenge if warranted. And the Board members may object to specific questions on the basis of legislative privilege at depositions as needed.

        Respectfully submitted,
        <u>s/ Claudia T. Salomon</u>
        Claudia T. Salomon

cc: All Counsel of Record via ECF