UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
NATIONAL ASSOCIATION FOR THE
ADVANCEMENT OF COLORED PEOPLE,
SPRING VALLEY BRANCH; JULIO
CLERVEAUX; CHEVON DOS REIS; ERIC
GOODWIN; JOSE VITELIO GREGORIO;
DOROTHY MILLER; HILLARY MOREAU; and
WASHINGTON SANCHEZ,

                    17 Civ. 8943 (CS) (JCM)

                            Plaintiffs,

          - against -

                    Original to be filed by ECF

EAST RAMAPO CENTRAL SCHOOL
DISTRICT and MARYELLEN ELIA, IN
HER CAPACITY AS THE
COMMISSIONER OF EDUCATION OF
THE STATE OF NEW YORK,

                            Defendants.
-------------------------------------------------------------------x

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANT MARYELLEN ELIA'S MOTION TO DISMISS AND IN PARTIAL OPPOSITION TO PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION**

                                  ERIC T. SCHNEIDERMAN
                                  Attorney General of the State of New York
                                  *Attorney for Defendant MaryEllen Elia*
                                  120 Broadway, 24th Floor
                                  New York, New York  10271
                                  (212) 416-8910

ELYCE N. MATTHEWS
MONICA CONNELL
Assistant Attorneys General
*Of Counsel*

March 21, 2018

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ..................................................................................................... ii

PRELIMINARY STATEMENT ............................................................................................... 1

ARGUMENT ............................................................................................................................. 2

I. THE COMMISSIONER'S PLENARY AUTHORITY IS NOT SUFFICIENT SUFFICIENT TO MAKE HER A PROPER PARTY IN THIS ACTION ....................... 2

   A. The Commissioner's General Plenary Athority is Broad; Plaintiffs Make No Legal Showing that it Renders Her a Propert Party Here and Their Cited Authorities are Inapposite or Undermine Their Assertion............................................................................ 2

   B. Plaintiffs Cite to Administrative Decisions but those Decisions Do Not Establish that the Commissioner Can Hear and Resolve a VRA Claim and Plaintiffs' Arguments Otherwise Defy Law and Logic ............................................................................................................ 3

   C. Plaintiffs Have Not Alleged Sufficient Facts to Establish Standing or to State a VRA Claim Against the Commissioner ................................................................................... 5

II. STATE LAW REQUIRES AT-LARGE VOTING ........................................................... 8

III. THE COURT SHOULD DENY THE PLAINTIFFS' REQUEST TO AMEND THEIR COMPLAINT IF THE COURT IS INCLINED TO GRANT THIS MOTION........................................................................................ 10

CONCLUSION.......................................................................................................................... 10

i

# TABLE OF AUTHORITIES

**CASES**                                                                                                          **Page(s)**

*Greater Birmingham Ministries v. Alabama*,
  2017 WL 782776 (N.D. Ala. Mar. 1, 2017) ................................................................................3

*Green v. Crew*,
  1996 WL 524395 (E.D.N.Y. Sept. 5, 1996) ...............................................................................3

*Lowery v. Gov. of Georgia*,
  506 Fed. App'x 885 (11th Cir. 2013) .........................................................................................8

*Pacos v. Hunter*,
  218 N.Y.S.2d 354 (Sup. Ct. Erie Cty. 1961)
  *aff'd*, 14 A.D.2d 990 (N.Y. App. Div. 1961) .............................................................................4

*Romero v. Hunter*,
  2013 WL 1479308 (S.D.N.Y. Apr. 1, 2013) .............................................................................10

*Schultz v. Williams*,
  44 F.3d 48 (2d Cir. 1994) ........................................................................................................2, 3

*Thornburg v. Gingles*,
  478 U.S. 30 (1986) .....................................................................................................................6


**UNITED STATES CONSTITUTION**

Article III ............................................................................................................................2, 6


**FEDERAL STATUTES**

42 U.S.C. § 1983 ........................................................................................................................2

Voting Rights Act of 1965, 54 U.S.C. § 10301 ................................................................. passim


**FEDERAL RULES OF CIVIL PROCEDURE**

Rule 12 .......................................................................................................................................1

**STATE STATUTES**

N.Y. EDUC. LAW
    § 2012 ............................................................................................................................. 8
    § 2017 ....................................................................................................................... 9, 10
    § 2037 ...................................................................................................................... 3, 4, 5
    § 2553 .......................................................................................................................... 8, 9


**ADMINISTRATIVE DECISIONS**

*Appeal of Bd. of Educ. of Hempstead*,
    55 Ed. Dep't Rep., Decision No. 16878,
    2016 WL 854052 (Feb. 16, 2016) ................................................................................ 3, 4

*Appeal of Fraser-McBride*,
    36 Ed. Dep't Rep., Decision No. 13783,
    1997 WL 34846773 (June 25, 1997) ................................................................................ 4

*Appeal of Gravink*,
    37 Ed. Dep't Rep., Decision No. 13888,
    1998 WL 35421154 (Mar. 13, 1998) .......................................................................... 9, 10

Defendant MaryEllen Elia, Commissioner of Education of the State of New York ("Commissioner"), respectfully submits this reply memorandum of law in further support of her motion to dismiss the Complaint in this action ("Compl.") as against her in its entirety, pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, and in partial opposition to Plaintiffs' preliminary injunction application.

## PRELIMINARY STATEMENT

In response to the Commissioner's moving papers arguing that she is not a proper or necessary party to this action, Plaintiffs offer three main arguments, all of which fail. *First*, Plaintiffs argue that the State's Education Law "cannot impede" a Federal court from finding a violation of Section 2 of the Voting Rights Act ("VRA") and ordering a ward-based voting system as a remedy. *Second*, they assert that the Commissioner is a proper party because she has plenary authority over *all* general and special laws relating to education. *Third*, Plaintiffs claim that the Education Law does not mandate at-large voting or prohibit implementation of a ward-based voting system in the East Ramapo Central School District ("ERCSD" or "the District").

As to the first point, this argument is a straw man inexplicably created by Plaintiffs. The issue is not in dispute. Yet Plaintiffs argue throughout their opposition that were the Court to find a Section 2 violation, it could impose a remedy. *See*, *e.g.*, Plaintiff's Memorandum of Law in Opposition to the Commissioner's Motion ("Pl. Br.") at 2, 16, 18. The Commissioner agreed with that proposition explicitly in her moving brief. Memorandum of Law in Support of Commissioner Elia's Motion to Dismiss ("Moving Br.") at 2.

As to the second and third points, Plaintiffs' arguments fail for the reasons more thoroughly set forth below. For the reasons herein and presented in the Commissioner's moving papers, the Plaintiffs' claims against the Commissioner should be dismissed.

1

**ARGUMENT**

I.  **THE COMMISSIONER'S PLENARY AUTHORITY IS NOT SUFFICIENT TO MAKE HER A PROPER PARTY IN THIS ACTION.**

Neither the Commissioner's "mandatory duty and broad authority to 'enforce all general and special laws *relating to* the educational system of the state,'" (emphasis in original) nor the alleged "imposition and application of a discriminatory at-large system" – an assertion not made in the Complaint and not supported by any facts – is sufficient to make her a proper party to this action.  Pl. Br. at 9, 11.  Beyond general, conclusory allegations, Plaintiffs offer no material support for their proposition that they have properly named Commissioner Elia in this action.  Plaintiffs thus cannot establish that they have Article III standing as against the Commissioner.

A.  **The Commissioner's General Plenary Authority is Broad; Plaintiffs Make No Legal Showing that it Renders Her a Proper Party Here and Their Cited Authorities are Inapposite or Undermine Their Assertion.**

Plaintiffs' arguments fail as a matter of law and as a matter of pragmatism.  The caselaw is entirely consistent; in Section 2 challenges to at-large voting systems in local school board elections, the proper defendants are *local* parties and individuals, not state actors.  Moving Br. at 15-17.[1]  The cases compiled by the Commissioner in her moving papers demonstrate this consistent pattern.  *Id*.  However, even the cases relied upon by Plaintiffs to argue that the Commissioner *is* a proper party actually support the Commissioner's opposing position that she is *not*.  Pl. Br. at 12.

For example, unlike the present action, *Schultz* was a § 1983 suit challenging *the*

---

[1] Plaintiffs assert that "[t]ellingly, the Commissioner has been unable to identify a single case where she (or her equivalent in another jurisdiction) was dismissed from a VRA case against a school district."  Pl. Br. at 12-13.  This supposition is misguided for two reasons.  First, it is likely obvious to the Court that the reason the Commissioner does not cite to any such cases is because, in Section 2 challenges to at-large school board voting systems, *the Commissioner, or her equivalent in another jurisdiction, was not named as a defendant in the first place* and therefore did not have the opportunity to be dismissed from the case.  Moving Br. at 15-17.  Second, even more telling, is the fact that *Plaintiffs* do not cite to any case holding that the Commissioner is a proper party.  Ostensibly, because Plaintiffs cannot find any.

2

*constitutionality of two state statutes*; therefore, the Court found that certain State defendants had "the requisite 'special relation' to the statute" to be named therein. *Schultz v. Williams*, 44 F.3d 48, 61 n. 13 (2d Cir. 1994). *Green* had nothing to do with an at-large voting system; rather, it involved the N.Y.C. Chancellor's suspension of community board members. *Green v. Crew*, 1996 WL 524395 (E.D.N.Y. Sept. 5, 1996). In fact, the only state defendant named – the Attorney General – was dismissed with prejudice from the action, *id.* at *1, FN 2, and even the quote Plaintiffs cite – that the court found the "party that was 'charged with administering school board elections'" to be a proper party, Pl. Br. at 12 – specifically refers to the *district*. Though *Greater Birmingham Ministries* involved, in part, a Section 2 claim, it did not involve an at-large voting system and instead *sought to invalidate a state statute* involving photo identification. *Greater Birmingham Ministries v. Alabama*, 2017 WL 782776, at *2 (N.D. Ala. Mar. 1, 2017). Notably, the Secretary of State in *Greater Birmingham Ministries* did not contest that he was a proper party and the court dismissed the three other state actors: the Governor, the Attorney General, and the Secretary of the Alabama Law Enforcement Agency. These cases do not support the proposition that the Commissioner is a proper party to Plaintiffs' VRA claim here.

**B.  Plaintiffs Cite to Administrative Decisions but those Decisions Do Not Establish that the Commissioner Can Hear and Resolve a VRA Claim and Plaintiffs' Arguments Otherwise Defy Law and Logic.**

The cases and administrative appeal decisions regarding N.Y. EDUC. LAW § 2037 ("§ 2037") Plaintiffs cite likewise support the Commissioner's motion. Indeed, all of the authorities cited by both sides uniformly reflect that the Commissioner's appellate jurisdiction under § 2037 extends only to reviewing results of a *particular election* for irregularities affecting its outcome.

In *Hempstead*, an appeal brought pursuant to § 2037, the Commissioner addressed alleged election irregularities, including issues relating to absentee ballots, in a specific election.

3

*Appeal of Bd. of Educ. of Hempstead*, 55 Ed. Dep't Rep., Decision No. 16878, 2016 WL 854052 (Feb. 16, 2016).  In *Fraser-McBride*, another § 2037 appeal, the Commissioner addressed each of the alleged irregularities presented by the petitioner; again, allegations concerning a specific election (e.g. unmailed absentee ballots, voting by unqualified voters, improperly invalidated affidavit ballots), found petitioner's contentions without merit, and denied the appeal.  *Appeal of Fraser-McBride*, 36 Ed. Dep't Rep., Decision No. 13783, 1997 WL 34846773 (June 25, 1997).  As both Plaintiffs and the Commissioner note, to the extent the petitioners in those appeals simultaneously raised Federal or Constitutional claims, those claims properly belong in Federal court and not with the Commissioner.  Moving Br. at 19-20; Pl. Br. at 11.

Even in *Pacos v. Hunter* – tenuously relevant since it is an almost 60-year-old decision in an Article 78 proceeding, brought under the "Civil Practice Act," in Erie County Supreme Court – the court simply held that an appeal to the Commissioner pursuant to § 2037 was the proper vehicle for concerns of election irregularities; the court then tasked the Commissioner to determine whether "to decline to entertain or to dismiss appeals." *Pacos v. Hunter*, 218 N.Y.S.2d 354, 356 (Sup. Ct. Erie Cty. 1961) *aff'd,* 14 A.D.2d 990 (N.Y. App. Div. 1961).[2] Significantly, the court in *Pacos* noted that, in enacting § 2037, the legislature "intended that the Commissioner or [sic] Education review expeditiously all disputes involving the validity of any district meeting or election[,]" thus providing finality, uniformity of review, and proper conduct of the educational system.  *Pacos*, 218 N.Y.S.2d at 356.  The goals of expeditiousness and finality are certainly not served by, as Plaintiffs' would have it, the Commissioner's broad authority to hear "a range of potential illegalities," Pl. Br. at 10, that are alleged to be system-wide and apparently include, but are not limited to, VRA claims.  Indeed, it is a patently absurd

---

[2] Notably, Plaintiffs have not filed an appeal under § 2037 with respect to their VRA claims herein.

4

position to believe that the Commissioner is or could be tasked with hearing and resolving VRA claims. *See* Moving Br. 19-20.

Plaintiffs' related argument that the Commissioner has adjudicated claims that are essentially VRA violations "although not explicitly labeled as such" is similarly unavailing. Pl. Br. at 10. As the Plaintiffs' correctly point out, such claims were not "explicitly labeled as such" because they were not VRA claims at all; they were claims of election irregularities and therefore properly before the Commissioner pursuant to § 2037.

In terms of practical consequences, if a court were to accept Plaintiffs' argument, the Commissioner could be named, and potentially subject to liability, in an almost-limitless number of lawsuits. As the President of the University of the State of New York and the Commissioner of the New York State Education Department ("SED"), Commissioner Elia oversees more than 700 school districts and three million students in more than 7,000 elementary and secondary schools, and approximately 250 public and private colleges and universities, in addition to matters including, but not limited to, special education, vocational rehabilitation, professional licensing, libraries, and museums that are covered by the Education Law. The volume and breadth of the Commissioner and SED's work is incredible. To claim the Commissioner could be subject to litigation "relating to" her plenary authority over all of these individuals, agencies, universities, and procedures, to name only a few, is impractical and not legally supportable.

**C.      Plaintiffs Have Not Alleged Sufficient Facts to Establish Standing or to State a VRA Claim Against the Commissioner.**

Plaintiffs named the Commissioner in case she was necessary at the remedial phase. Compl. ¶ 20. They cannot run from this fact. Nor do they even really try to allege that this is a sufficient basis to haul a state officer into Federal court. Instead, in their opposition, they now

5

try to make out some sort of basis for a claim; however, Plaintiffs have not alleged sufficient facts as against the Commissioner to satisfy their burden pursuant to Article III.

Plaintiffs' conclusory claim (raised improperly for the first time in their opposition papers) that the Commissioner's alleged wrongdoing in this action "involves the imposition and application of a discriminatory at-large system" must fail. Pl. Br. at 11. First, Plaintiffs here seem to misinterpret their own claim in this lawsuit. Plaintiffs are not challenging any State law or regulation, either facially or as-applied. Plaintiffs single claim under the VRA is that the "totality of the circumstances" in East Ramapo – including the District's demographics, racial polarization in schooling and politics, the unified 'bloc' of White voters to elect candidates of its choice, and the statutory at-large voting system, among other factors – result in the dilution of the Black and Latino vote and thus violates Section 2 of the VRA.[3] *See*, *e.g.*, Compl. ¶¶ 2, 3, 17, 27, 60-70. Therefore, some specific allegation with respect to the Commissioner's alleged role in or authority over such circumstances is necessary.

Second, Plaintiffs attempt to use the State monitors' reports as a basis for a claim against the Commissioner, asserting that the monitors identified problems about school board elections and the Commissioner has not addressed those problems. Pl. Br. at 11-12. But this attempt fails for a number of reasons. First, in response to the problems in the District, the State and the Commissioner appointed monitors to address a host of issues and *even in their own Complaint, Plaintiffs concede the salutary effect of the monitors* and that "the Board's behavior towards the public has improved since the State's intervention in the District." Compl. ¶ 70; *see also* ¶¶ 6,

---

[3] Indeed, the mere existence of existence of "electoral devices, such as at-large elections, may not be considered *per se* violative of § 2" of the VRA. *Thornburg v. Gingles*, 478 U.S. 30, 46 (1986). Instead, "[t]he essence of a § 2 claim is that a certain electoral law, practice, or structure interacts with social and historical conditions to cause an inequality in the opportunities enjoyed by black and white voters to elect their preferred representatives." *Id.* at 47. Accordingly, Plaintiffs' conclusory argument in a memorandum of law that the Commissioner can be liable here merely because she oversees an educational system that includes the use of at-large voting for school board elections is plainly insufficient under the VRA.

6

45, 46, 49, 67, and 68.  Second, no monitor, or any other entity, has ever made any finding of voter dilution under the VRA in East Ramapo and the Commissioner has certainly never disregarded any such alleged finding.  To support that proposition, Plaintiffs cite to paragraphs 30 through 50 of their Complaint.  But the only paragraphs that, even liberally read, allege any fact whatsoever relating to the Minority community electing candidates of its choice are paragraphs 48 and 49.  Paragraph 48 refers to the monitors' recommendation that candidates for "at least one of the seats must be parents of children attending public schools selected in a local process by other public school parents."  Compl. ¶ 48.[4]  To do so, the Walcott Report encouraged *the Governor and the Legislature enact legislation* aimed at the unique circumstances in East Ramapo.  Walcott Report at 14.  Paragraph 49 references District residents' reporting "suspicion" and "lack [of] confidence" with elections; again, there is no mention of any finding of wrongdoing with respect to elections.  Any claim to the contrary is misleading.

Further, as described at length in both the Complaint and the Commissioner's moving brief, SED has taken significant action as it can with respect to the District.  Indeed, in response to the reports of "suspicion" and "lack of confidence," and the monitors' recommendation that the District engage an independent election monitor to facilitate improvements for individual elections to improve voter confidence, the Commissioner directed two BOCES District Superintendents and the monitors to monitor East Ramapo's elections in 2016 and 2017.  *See* Walcott Report at 12-13.

Overall, Plaintiffs go through much semantic gymnastics in an attempt to explain why the Commissioner is properly named as a defendant in the present action.  Plaintiffs, however, expressly claim that the Commissioner is named only to the extent she is necessary for a remedy.

---

[4] The report by Dennis M. Walcott, Monica George-Fields, and John W. Sipple ("Walcott Report") is publicly available at: https://www.regents.nysed.gov/common/regents/files/East%20Ramapo%20Report%20Pub.pdf.

7

Compl. ¶ 20.  Yet, complete relief can be afforded here against only the District, without the Commissioner as a party to this action and the Commissioner has no power to grant the relief sought.  *Lowery v. Gov. of Georgia*, 506 Fed. App'x 885 (11th Cir 2013).  As the Plaintiffs correctly observe, it is the District which is responsible for *administration* of the elections making it the proper party defendant.  Pl. Br. at 8.  In light of the foregoing, it is respectfully submitted that the claim against the Commissioner be dismissed.

## II.    STATE LAW REQUIRES AT-LARGE VOTING.

The State Education Law provides that central school districts elect their boards of education using an at-large system, Moving Br. at 2-6, and the Commissioner is without the authority to act unilaterally in ordering a district to do otherwise.  Moving Br. Point IV.  Plaintiffs' arguments to the contrary are unavailing and do not establish either that the Commissioner may impose or that districts can independently adopt ward-voting.

Plaintiffs correctly state that it is a collection of provisions that dictate at-large elections, rather than a specific provision.  Pl. Br. at 6.  However, the conclusion of their argument – at-large voting is not actually mandatory because there is no "specific provision" that refers to at-large voting – is erroneous.  As described at length in the Commissioner's moving brief, *see* Moving Br. at 2-6, the statutory provisions relating to school board elections, when read in conjunction, require at-large elections.  It is irrelevant that the requirements are found in multiple sections, as opposed to a single section, as Plaintiffs seem to want.

With respect to these requirements, Plaintiffs ignore arguments that the Commissioner previously addressed in her moving papers.  Plaintiffs, in citing to Section 2012, assert that the District could simply adopt a system "as is the case in the Buffalo City School District."  Pl. Br. at 14; N.Y. EDUC. LAW § 2553(10)(c).  As the Commissioner noted in her moving brief, however, the *State legislature passed and the Governor signed legislation authorizing the*

8

*election system in Buffalo*. *Id*. Similarly, school board elections in the State's largest cities are simply conducted differently, as the needs and logistical concerns for such large districts are unique. *See*, *e.g.*, N.Y. EDUC. LAW § 2553; N.Y. EDUC. LAW ART. 52, 52-A. Indeed, some board members in such Districts are appointed rather than elected. *See, e.g.,* § 2553(3). The comparison of these districts to East Ramapo is, therefore, inapposite.

The Plaintiffs' discussion of *Gravink* is particularly unavailing. Pl. Br. at 15. As the Commissioner's moving brief explicitly laid out, *Gravink* does *not* stand for the proposition offered by Plaintiffs. Moving Br. at 6. The Commissioner's position on this should be determinative. But even if it were not, the holding of *Gravink* is that a "gentleman's agreement" – which, according to the Plaintiffs, is akin to the ward system they seek herein – that "essentially apportion[ed] the five Board positions among the five major communities that comprise [the] school community" had "no legal force and effect, and in fact, candidates residing in any part of the district may be elected to any open seat." *Appeal of Gravink*, 37 Ed. Dep't Rep., Decision No. 13888, 1998 WL 35421154 (Mar. 13, 1998). The balance of *Gravink* demonstrates only that districts are free to formally divide themselves into "election districts" – which, again, are *not* wards – pursuant to § 2017, provided that the statutory requirements of that provision are met. Moving Br. at 6. Moreover, Plaintiffs completely ignore the fact that *East Ramapo has already divided itself into election districts pursuant to § 2017*. A school district's division into "election districts" is not a division into "wards," as the candidates are still district-wide candidates, rather than candidates elected by and from within a particular election district. Therefore, to the extent the Plaintiffs are arguing that the District can and should divide into "election districts" as contemplated by *Gravink*, it has already done so.[5]

---

[5] Regardless, subdivision into election districts under § 2017 must be accomplished by the Board of Education or upon petition of the voters and cannot be unilaterally imposed by the Commissioner. Plaintiffs' reliance upon

9

In sum, State law requires at-large voting for local school board elections in central school districts and neither the Commissioner nor individual districts have the authority to impose another type of voting system, absent legislation, a court order, or other special authority.

### III. THE COURT SHOULD DENY PLAINTIFFS' REQUEST TO AMEND THEIR COMPLAINT IF THE COURT IS INCLINED TO GRANT THIS MOTION.

In the "Conclusion" portion of their brief, Plaintiffs ask that if the Court is inclined to grant a motion to dismiss, it instead allow Plaintiffs to amend. Pl. Br. at 20. The Court should reject Plaintiffs' request. After the parties submitted pre-motion letters and had argument at the January 2nd conference herein, Plaintiffs declined the opportunity to amend their Complaint. Jan. 2, 2018 Tr. at 31. To allow amendment now would be both futile and prejudicial. Plaintiffs have called for the accelerated timeline in this action and want their request for preliminary relief resolved prior to May 2018. At their request, the parties have been simultaneously engaged in expedited briefing of motions to dismiss, opposition to voluminous preliminary injunction papers and extensive discovery. Their throwaway request for leave to amend should be denied as it would prejudice the defendants in this setting and, in any event, is procedurally infirm and likely futile. *See Romero v. Napoli*, 2013 WL 1479308, at *1 (S.D.N.Y. Apr. 1, 2013) (holding that where a movant fails to file a proposed amended pleading or even a detailed description of the proposed amendments, leave to amend should ordinarily be denied).

### CONCLUSION

For the foregoing reasons, and those set forth in her moving brief, Defendant Elia respectfully requests that this Court grant her motion and dismiss the Plaintiffs' claims against her, with prejudice, in their entirety, and deny the preliminary injunction as to her, together with such other and further relief as the Court deems just and proper.

---

*Gravink* is therefore futile on this ground as well. N.Y. EDUC. LAW § 2017.

Dated: New York, New York
March 21, 2018

        ERIC T. SCHNEIDERMAN
        Attorney General of the State of New York
        *Attorney for Defendant MaryEllen Elia*

        By:
            /s/
        Elyce N. Matthews
        Monica Connell
        Assistant Attorneys General
        120 Broadway, 24th Floor
        New York, New York  10271
        (212) 416-8910