UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
NATIONAL ASSOCIATION FOR THE
ADVANCEMENT OF COLORED PEOPLE,
SPRING VALLEY BRANCH, *et al.*,

                              Plaintiffs,

               -against-

EAST RAMAPO CENTRAL SCHOOL
DISTRICT, *et al.*,

                          Defendants.
-------------------------------------------------------------X

**ORDER**

17 Civ. 8943 (CS) (JCM)

      Plaintiffs Spring Valley Branch of the National Association for the Advancement of

Colored People, Julio Clerveaux, Chevon Dos Reis, Eric Goodwin, Jose Vitelio Gregorio,

Dorothy Miller, Hillary Moreau, and Washington Sanchez (collectively, the "Plaintiffs")

commenced this action against Defendants East Ramapo Central School District (the "District")

and MaryEllen Elia, in her capacity as the Commissioner of Education of the State of New York

(collectively, the "Defendants"), alleging that the District's at-large election system

impermissibly denies minority citizens an equal opportunity to elect candidates of their choice to

the District's Board of Education (the "Board") in violation of Section 2 of the Voting Rights

Act of 1965. (Docket No. 1). Presently before the Court is Plaintiffs' motion to compel nonparty

discovery from the District's Board members. (Docket No. 86). For the reasons that follow,

Plaintiffs' motion to compel is granted in part and denied in part.

## I. BACKGROUND

      On February 13, 2018, Plaintiffs served the current Board members with subpoenas *duces*

*tecum* and *ad testificandum*. (Pls. Br.[1] at 1). The Board members objected to the subpoenas on

---

[1] Refers to Plaintiffs' letter brief in support of their motion to compel. (Docket No. 106).

grounds of legislative immunity and legislative privilege, over breadth, relevance, and burden on February 27, 2018.[2] (Board Opp.[3] at 3). On March 14, 2018, this Court directed Plaintiffs to narrow their requests. Accordingly, Plaintiffs provided the Board members with amended requests (the "Amended Requests") seeking the following categories of documents: "(1) campaign materials; (2) communications with third parties reflecting public inquiries and complaints and Board members' responsiveness to those communications; (3) personal income; and (4) administrative policies, procedures, positions, and statements." (Pls. Br. at 2). After meeting and conferring, counsel for the Board agreed to produce non-privileged campaign materials responsive to Amended Requests 1 and documents responsive to Amended Request 3(a), which seeks documents demonstrating whether any Board member is employed by or does contract work for the District or any schools within. (Board Opp. at 3–4). Plaintiffs' counsel later agreed to withdraw Amended Request 3(b) during oral argument before this Court on March 28, 2018. Amended Requests 2, 3(c), 3(d), and 4 are outstanding.

## II. DISCUSSION

Under Federal Rule of Civil Procedure 26(b), which also applies to subpoenas served upon nonparties, *see Citizens Union of City of N.Y. v. Att'y Gen. of N.Y.*, 269 F. Supp. 3d 124, 139 (S.D.N.Y. 2017), "[p]arties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]" Fed. R. Civ. P. 26(b). Moreover, this Court may compel a nonparty "to produce documents and tangible things or to permit an inspection." Fed. R. Civ. P. 34(c); Fed. R. Civ. P. 45; *see also Mason*

---

[2] Two Board members, Charles and Germain, agreed to be deposed, but only on the topics contained in their declarations in support of the District's opposition to Plaintiff's motion for a preliminary injunction. (Pls. Br. at 2).

[3] Refers to the Board's letter brief in opposition to Plaintiff's motion to compel. (Docket No. 107-1).

*Tenders Dist. Council of Greater N.Y. v. Phase Constr. Servs., Inc.*, 318 F.R.D. 28, 36 (S.D.N.Y. 2016) ("Federal district courts have broad discretion in deciding motions to compel.").

The Board members argue that requiring production would be unduly burdensome. (Board Opp. at 8–9). In addition, they contend that they are shielded from compulsory third party discovery by the related doctrines of legislative immunity and legislative privilege. (*Id.* at 4–8). Having reviewed the outstanding Amended Requests, the Court finds that Plaintiffs' outstanding Amended Requests are not unduly burdensome. Moreover, the Court finds that neither legislative immunity nor legislative privilege apply to the majority of Plaintiffs' Amended Requests. Therefore, the Court grants Plaintiffs' motion with respect to Amended Requests 2, 3(c), 3(d), and 4(a)–(d). However, Plaintiffs' motion is denied without prejudice with respect to Amended Requests 4(e) and 4(f).

## A. Undue Burden

Rule 45 of the Federal Rules of Civil Procedure permits courts to quash or modify subpoenas that subject a person to undue burden. Fed. R. Civ. P. 45(d)(3)(A)(iv). To determine whether a subpoena imposes undue burden, "the Court must balance the interests served by demanding compliance with the subpoena against the interests furthered by quashing it." *Anwar v. Fairfield Greenwich Ltd.*, 297 F.R.D. 223, 226 (S.D.N.Y. 2013) (internal quotation marks omitted). The issuing party "must demonstrate that the information sought is relevant and material to the allegations and claims at issue in the proceedings." *Night Hawk Ltd. v. Briarpatch Ltd.*, No. 03 Civ. 1382 (RWS), 2003 WL 23018833, at *8 (S.D.N.Y. Dec. 23, 2003); *Citizens Union*, 269 F. Supp. 3d at 139 ("[T]he relevance standard that applies when seeking discovery from a party also applies to non-parties."). "Once relevance has been established, the movant bears the burden of demonstrating an undue burden." *Shaw v. Arena*, No. 17 Misc. 0448 (AJN), 2018 WL 324896, at *2 (S.D.N.Y. Jan. 3, 2018) (internal quotation marks omitted). However,

inconvenience, by itself, will not justify an order to quash a subpoena. *See, e.g., Usov v. Lazar,*

No. 13 Civ. 818(RWS), 2014 WL 4354691, at *16 (S.D.N.Y. Sept. 2, 2014).

Here, the Board members argue that requiring them to respond to Plaintiffs' requests

would "force the non-parties to review a large number of documents, of questionable relevance

to the Plaintiffs' Voting Rights Act claim, most of which would likely be protected by legislative

immunity and privilege."[4] (Board Opp. at 9).  However, Plaintiffs' requests are plainly relevant

to their claim.  In order to successfully challenge an electoral practice under the Voting Rights

Act, Plaintiffs must establish that: (1) the minority group constitutes a majority in a single-

member district; (2) the minority is politically cohesive; and (3) the white majority votes as a

bloc to enable it to generally defeat the minority's preferred candidate. *Thornburg v. Gingles,*

478 U.S. 30, 50–51 (1986).  Once these preconditions are met, the court "must then consider

whether, under the totality of the circumstances, the challenged practice impairs the ability of the

minority voters to participate equally in the political process." *Goosby v. Town Bd. of the Town*

*of Hempstead,* 956 F. Supp. 326, 329 (E.D.N.Y. 1997).  The totality of circumstances analysis

involves the consideration of various factors set forth in the Senate Judiciary Committee Report

accompanying the 1982 amendments to Section 2 of the Voting Rights Act (the "Senate

factors"), including, "the extent to which voting in the elections . . . is racially polarized," the

extent to which  members of the minority group have been denied access to the candidate slating

process, and "whether there is a significant lack of responsiveness on the part of the elected

officials to the particularized needs of the members of the minority group[.]" *United States v.*

*Vill. of Port Chester,* 704 F. Supp. 2d 411, 419 (S.D.N.Y. 2010) (quoting S. Rep. No. 97–417,

---

[4] As discussed *supra* in Section II.B, the Board is wrong to suggest that most of the documents sought are likely protected by legislative immunity and privilege.  Therefore, this consideration does not factor into the Court's analysis.

4

97th Cong. 2nd Sess. 28 (1982), U.S. Code Cong. & Admin. News 1982, p. 177). The outstanding requests seek documents related to the Board members' potential bias, the candidate slating process, and the Board's responsiveness to the concerns of the minority public school community. These requests are thus highly relevant to the totality of circumstances analysis.

Moreover, the Senate factors are "neither comprehensive nor exclusive." *Gingles*, 478 U.S. at 45. Accordingly, the Court finds that each of the outstanding requests seeks information relevant to the court's "evaluation of the past and present reality" in the District. *Id.* (internal quotation marks omitted); *Johnson v. De Grandy*, 512 U.S. 997, 1011 (1994) ("[U]ltimate conclusions about equality or inequality of opportunity were intended by Congress to be judgments resting on comprehensive, not limited, canvassing of relevant facts."); *see also Condit v. Dunne*, 225 F.R.D. 100, 105 (S.D.N.Y. 2004) ("Although not unlimited, relevance, for the purpose of discovery, is an extremely broad concept.").

In addition, the Board members fail to demonstrate that Plaintiffs' requests are unduly burdensome. While courts "give special weight to the burden on non-parties of producing documents to parties involved in litigation," *MacNamara v. City of New York*, No. 04 Civ. 9612 (KMK)(JCF), 2006 WL 3298911, at *15 (S.D.N.Y. Nov. 13, 2006), "it is still the responsibility of the target of the subpoena to establish, with evidence and argument, that the discovery sought is unduly burdensome," *In re Namenda Direct Purchaser Antitrust Litig.*, No. 15 Civ. 7488 (CM) (JCF), 2017 WL 4700367, at *2 (S.D.N.Y. Oct. 19, 2017). Here, the Board members have merely asserted "that compliance with the subpoena would be burdensome without setting forth the manner and extent of the burden and the probable negative consequences of insisting on compliance," which is insufficient to establish undue burden. *Kirschner v. Klemons*, No. 99 Civ. 4828(RCC), 2005 WL 1214330, at *2 (S.D.N.Y. May 19, 2005); *In re Namenda Direct*

*Purchaser Antitrust Litig.*, 15 Civ. 7488, 2017 WL 3822883, at *9 (S.D.N.Y. Aug. 30, 2017) (finding "general complaints about 'lengthy internal reviews and investigations of documents'" to be insufficient to establish undue burden). The Board members cite to *Citizens Union of City of N.Y. v. Att'y Gen. of N.Y.* in support of their argument, a case in which the court found that it would be unduly burdensome to require the governor and "each of the 150 Members of the Assembly and 63 members of the Senate" to probe its files. 269 F. Supp. 3d 124, 148–49 (S.D.N.Y. 2017). However, the potential burden in *Citizens Union* is not comparable to the potential burden on the non-party Board members in the instant case. Accordingly, the Court declines to find that Plaintiffs' outstanding requests are unduly burdensome.

## B. The Doctrines of Legislative Immunity and Legislative Privilege

"[T]he Supreme Court has held that state and local legislators . . . are entitled to absolute 'immunity for their legislative acts' as a matter of federal common law." *Winfield v. City of New York*, 15 Civ. 05236 (LTS) (KHP), 2018 WL 716013, at *6 (S.D.N.Y. Feb. 1, 2018) (quoting *Supreme Ct. of Virginia v. Consumers Union of U.S., Inc.*, 445 U.S. 719, 732–33 (1980)); *Rodriguez v. Pataki*, 280 F. Supp. 2d 89, 100 (S.D.N.Y. 2003), *aff'd*, 293 F. Supp. 2d 313 (S.D.N.Y. 2003) ("Legislative immunity entitles a state legislator, in an appropriate case, to the dismissal of all of the claims against him or her in the complaint, much as judicial immunity entitles judges to the dismissal of suits against them arising out of the performance of their judicial functions."). To determine whether legislative immunity applies, courts must look at "the nature of the act in question." *Almonte v. City of Long Beach*, 478 F.3d 100, 106 (2d Cir. 2007); *Harhay v. Town of Ellington Bd. of Educ.*, 323 F.3d 206, 210 (2d Cir. 2003) ("[T]he act in question must be taken 'in the sphere of legitimate legislative activity.'" (quoting *Bogan v. Scott-Harris*, 523 U.S. 44, 54 (1998))). Therefore, "[l]egislative immunity does not apply to administrative acts or the enforcement of existing laws, ordinances, or regulations."

*Bloomingburg Jewish Educ. Ctr. v. Vill. of Bloomingburg*, 111 F. Supp. 3d 459, 491 (S.D.N.Y. 2015); *see also New York Youth Club v. Town of Harrison*, 150 F. Supp. 3d 264, 275 (S.D.N.Y. 2015) ("Immunity does not extend to purely ministerial duties . . . or to discretionary personnel decisions like hiring and firing of individual employees[.]" (internal citation omitted)).

The related, yet distinct, doctrine of legislative privilege[5] "protects state legislators and their staffs from compelled disclosure of documentary and testimonial evidence with respect to actions within the scope of legitimate legislative activity." *Favors v. Cuomo*, 285 F.R.D. 187, 209 (E.D.N.Y. 2012) ("*Favors I*"). As with legislative immunity, legislative privilege only attaches to "communications and information that can properly be characterized as 'legislative' in nature." *Favors v Cuomo*, No. 11 Civ. 5632 (DLI)(RR)(GEL), 2013 WL 11319831, at *6 (E.D.N.Y. Feb. 8, 2013) ("*Favors II*") ("[C]laims of legislative privilege implicate the question of whether an act is 'quintessentially legislative,' an 'integral step' in the legislative process, or bears 'the hallmarks of traditional legislation.'" (quoting *Bogan*, 523 U.S. at 55)). Significantly, even if the privilege attaches, it can be waived if the parties holding the privilege share their communications with third parties who are "outsiders to the legislative process." *Id.* at *10; *see also Almonte v. City of Long Beach*, No. Civ. 04-4192 (JS)(JO), 2005 WL 1796118, at *4

---

[5] The legislative privilege is sometimes referred to as the "deliberative process privilege." *Rodriguez*, 280 F. Supp. 2d at 100 ("Whether the privilege that the legislator-defendants seek to assert is characterized as a legislative or a deliberative process privilege, it is, at best, one which is qualified."). More recent case law within the Second Circuit, however, treats the privileges as separate and distinct. *See, e.g., Winfield*, 2018 WL 716013, at *4–7; *Citizens Union*, 269 F. Supp. 3d at 149–160. The deliberative process privilege applies specifically to the "decisionmaking processes of the executive branch in order to safeguard the quality and integrity of governmental decisions." *Winfield*, 2018 WL 716013, at *5 (internal quotation marks omitted) ("The privilege protects the documents and communications used in the decisionmaking process when such documents are both (1) predecisional and (2) deliberative."). Because the Board members only invoke the legislative privilege, this Court does not rely on caselaw discussing the deliberative process privilege. It should be noted, however, that although the analyses are otherwise different, courts in this Circuit "use the same balancing factors to weigh whether the legislative privilege should yield to the need for discovery as they do when weighing whether the deliberative process privilege should yield to the need for discovery." *Id.* at *7.

(E.D.N.Y. July 27, 2005) (finding that waiver need not be explicit and unequivocal to be effective).

Unlike legislative immunity, however, the legislative privilege is not absolute. *See, e.g.*, *Citizens Union*, 269 F. Supp. 3d at 155 (rejecting the argument that legislative immunity and legislative privilege are "parallel concepts that should protect state officials from the compelled discovery to the same extent Members of Congress are protected from discovery"); *Rodriguez v. Pataki*, 293 F. Supp. 2d 302, 304 (S.D.N.Y. 2003) (affirming Magistrate Judge Maas's conclusion that legislative privilege is not absolute). "Thus, courts have indicated that, notwithstanding their immunity from suit, legislators may, at times, be called upon to produce documents or testify at depositions." *Rodriguez*, 280 F. Supp. 2d at 95. To determine whether disclosure is warranted, courts consider:

> (i) the relevance of the evidence sought to be protected; (ii) the availability of other evidence; (iii) the 'seriousness' of the litigation and the issues involved; (iv) the role of the government in the litigation; and (v) the possibility of future timidity by government employees who will be forced to recognize that their secrets are violable.

*Rodriguez*, 280 F. Supp. 2d at 100–01 (internal quotation marks omitted); *see also Citizens Union*, 269 F. Supp. 3d at 156 ("The *Rodriguez* balancing factors provide appropriate guideposts for managing discovery in civil cases and will not lead to broad discovery into legislators' files[.]"); *Carver v. Nassau Cty. Interim Fin. Auth.*, No. Civ. 11-1614 (LDW)(GRB), 2012 WL 12266891, at *3 (E.D.N.Y. Aug. 9, 2012) (noting that the factors are "widely accepted as authoritative").

As an initial matter, legislative immunity does not shield the Board members from responding to any of Plaintiffs' discovery requests. Legislative immunity entitles legislators to the dismissal of all claims based upon their legislative acts. *See Rodriguez*, 280 F. Supp. 2d. at

100.  Because the Board members are nonparties to the instant action, however, there are no claims over which legislative immunity can be asserted.  Therefore, the Court only considers the defense of legislative privilege as applied to Amended Requests 2 and 4.[6]

**1.  Amended Request 2: Communications with Third Parties**

Plaintiffs seek all communications and documents sent between any Board member and non-Board member third parties, including: (a) inquiries for services or benefits for the District's private schools; (b) complaints regarding the quality of education, teachers, services and accommodations in the District's public schools; (c) statements critical of Board members, the Board, or the District; and (d) statements concerning any complaints relating to the conduct of Board meetings or individual Board members at Board meetings. (Docket No. 106-1 at 8–9). Despite the Board members' arguments to the contrary, the Court finds that the legislative privilege does not apply to this category of documents.

First, Plaintiffs seek documents relating to activities that are non-legislative in nature, and therefore, the legislative privilege is inapplicable.  As previously noted, the legislative privilege only attaches to actions that are "an integral step in the legislative process, or bear[] the hallmarks of traditional legislation." *Favors II*, 2013 WL 11319831, at *6 (internal quotation marks omitted).  The Board members maintain that Amended Request 2 "goes directly to the board members' legislative activity" because the Board passes legislation, "in part, based on public input, whether through inquiries, complaints, criticism, or otherwise." (Board Opp. at 6). While the legislative privilege protects "fact-and information-gathering activities about the subject of the potential legislation, as well as documents regarding or reflecting the fruits of this

---

[6] Since Amended Requests 3(c) and 3(d) seek documents relating to personal income, (Docket No. 106-1 at 9), the Board members do not assert the legislative privilege as to these requests. (*See* Docket No. 107-1).

research," *Citizens Union*, 269 F. Supp. 3d at 151, the communications sought under Request 2 cannot fairly be characterized as privileged legislative research. "To the extent there is a question as to whether research activities are privileged, the court must determine whether the information is acquired in connection with or in aid of activity that qualifies as legislative in nature[.]" *Id.* (internal quotation marks omitted) (explaining that factual information can fall under the legislative privilege, "so long as it was collected and summarized in connection with a legislative activity"). Here, the information Plaintiffs' seek was not collected in connection with a legislative activity; rather, the majority of communications sought are likely unsolicited public complaints and responses from Board members. The Court declines to broaden the legislative privilege such that it would cover *any* piece of factual information or communication that ultimately influences legislation. *See Citizens Union*, 269 F. Supp. 3d at 150–51 ("Critically, not every activity of a lawmaker is protected . . . ."). Moreover, at least one court within this Circuit has expressly declined to apply the legislative privilege to similar requests. *See Favors II*, 2013 WL 11319831, at *8 (finding the following activities to be non-legislative: inquiries from members of the public and responses thereto and efforts made in connection with securing government contracts).

Regardless, even if the communications sought were legislative in nature, the legislative privilege would be waived because the communications sought are those between Board members and non-Board members, such as parents and students, "who are outsiders to the legislative process." *Id.* at *10; *ACORN v. Cty. of Nassau*, No. Civ. 05 Civ. 2301 (JFB) (WDW), 2007 WL 2815810, at *4 (E.D.N.Y. Sept. 25, 2007) ("[T]he legislative privilege may be waived as to communications made in the presence of third parties."). While courts in this Circuit have found that the privilege extends to legislative staff and experts, communication with outsiders –

10

even knowledgeable outsiders like lobbyists – are not covered by the legislative privilege. *Favors II*, 2013 WL 11319831, at *5; *see Almonte*, 2005 WL 1796118, at *3 ("Legislative . . . officials are certainly free to consult with political operatives or any others as they please . . . but that does not render such consultation part of the legislative process or the basis on which to invoke privilege[.]").  Because Amended Request 2 seeks communications reflective of the Board's responsiveness to the concerns of parents, teachers, and other non-legislators in the minority public school community, the legislative privilege does not shield the communications sought under this request.

### 2.  Amended Request 4: Communications Concerning Administrative Decisions

Under Amended Request 4, Plaintiffs seek communications and documents concerning the Board's administrative decisions, including: (a) policies and procedures concerning the appointment of Board members upon a vacancy; (b) applications for appointments to fill Board vacancies; (c) endorsements or expressions of support by current Board members for an applicant seeking to fill a vacancy; (d) complaints from the public regarding an appointment to a vacant seat or the decision not to appoint an individual and the Board's responses; (e) positions and statements concerning the Board's relative distribution of financial resources to public and non-public schools; and (f) information relevant to Board positions and statements that were not distributed equally to all Board members. (Docket No. 106-1 at 10).  Plaintiff categorizes these documents as "administrative," (Pls. Br. at 6), but the Board members argue that these requests seek information that is legislative in nature. (Board Opp. at 7).

With the exception of subsections (e) and (f), the Court finds that Amended Request 4 seeks information that is administrative in nature, and as a result, the legislative privilege does not apply.  Legislators are not entitled to legislative privilege when their actions do not implicate "the kind of broad, prospective policymaking that is characteristic of legislative action." *Harhay*,

323 F.3d at 211; *State Employees Bargaining Agent Coalition v. Rowland*, 494 F.3d 71, 89–90 (2d Cir. 2007) (finding an act legislative if it is "both: (1) substantively legislative, *i.e.*, acts that involve policymaking; and (2) procedurally legislative, *i.e.*, passed by a means of established legislative procedures" (internal quotation marks omitted)).  Although the Board members "implement funding and budget polices through legislative action," (Board Opp. at 7), "it does not follow that any and all tasks touching upon [that] process are 'integral' to it," *Favors II,* 2013 WL 11319831, at *7.  Filling Board vacancies is neither substantively nor procedurally legislative. *Compare Bogan*, 523 U.S. at 55 (finding the acts of introducing, voting, and signing the budget into law to be "formally legislative"), *and Lexjac, LLC v. Beckerman*, 07 Civ. 4614 (JS)(ARL), 2008 WL 11313761, at *10 (E.D.N.Y. Sept. 30, 2008) ("A local board's decision to rescind its former action and accept an offer of dedication for park land is clearly a legislative act[.]"), *with Harhay*, 323 F.3d at 211 (declining to find the school board's discretionary personnel decision to be legislative in nature, even though the action was taken by a board vote, because it did not involve "broad, prospective policymaking").  The process of reviewing applications and subsequently selecting an individual to fill a Board position does not implicate prospective policymaking.  The Board members have not cited any caselaw that suggests otherwise.  Therefore, Plaintiffs' motion is granted with respect to Amended Requests 4(a)–(d).

Nevertheless, the Court finds it possible that the legislative privilege could apply to Amended Requests (4)(e) and 4(f), which seek the Board members' positions on the division of resources between public and private schools in the District.  Plaintiffs note that Board decisions regarding distribution of resources are required to be disclosed and discussed in a public setting under New York's Open Meeting Laws. (*See* Pls. Br. at 6 (citing N.Y. PUB. OFF. LAW §100–03)).  Yet, there may be documents or other internal communications between Board members

regarding the budget that occurred prior to discussion in a public setting.  To the extent such communications exist, they are likely to fall within the legislative privilege.  In the absence of a detailed privilege log, however, the Court cannot adequately weigh the *Rodriguez* factors to determine if disclosure is necessary.

Thus, Plaintiffs' motion is denied without prejudice with respect to Amended Requests 4(e) and 4(f).[7]  The Board members are directed to provide detailed privilege logs to Plaintiffs, which include but are not limited to, the type of documents, the names of the recipients and authors of the documents, the date, the time, a brief description of the subject matter of the privileged material, and which privilege is being asserted.  Should Plaintiffs take issue with the assertion of the legislative privilege with respect to specific documents, they may renew their motion after conferring in good faith in an attempt to resolve the dispute.

---

[7] Plaintiffs argue that Charles and Germain have waived the legislative privilege by submitting declarations in support of the District's opposition to Plaintiffs' motion for a preliminary injunction. (Pl. Br. at 8).  Though the legislative privilege is waived "in the course of litigation when a party testifies as to otherwise privileged matters, or when purportedly privileged communications are shared with outsiders," *Favors I*, 285 F.R.D. at 211–12, the Court finds that the declarations cannot be said to share privileged information; rather, the declarations only briefly reference the topics sought under Amended Requests 4(e) and 4(f). (Docket No. 79-1 at ¶ 26 ("It is my strong view that the issues that divide the 'public school community' from the 'private school community' . . . have nothing to do with race, and have everything to do with differing political and policy views about how best to allocate precious public dollars to support all students in the District.")); (Docket No. 79-2 at 19 ("Our differences relate to the choices that need to be made in the allocation of limited funds for our School District.")).  Therefore, the Court declines to find that Charles and Germain have waived the legislative privilege as to all of their communications relating to the allocation of financial resources at this point in time.  However, should Defendants rely upon the positions of Charles and Germain regarding the allocation of resources to support their claims or defenses at any point in the future, the legislative privilege is likely to be waived. *See Favors I*, 285 F.R.D. at 212 ("[C]ourts have been loath to allow a legislator to invoke the privilege at the discovery stage, only to selectively waive it thereafter in order to offer evidence to support the legislator's claims or defenses.").  The Board members will not be permitted to invoke the privilege and later "strategically waive it[.]" *Id.*

13

## III.  CONCLUSION

For the foregoing reasons, Plaintiffs' motion to compel is granted in part and denied in part.  The Clerk is respectfully requested to terminate the pending motion (Docket No. 86).

Dated:   April 27, 2018
         White Plains, New York

**SO ORDERED:**

JUDITH C. McCARTHY
United States Magistrate Judge