UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
NATIONAL ASSOCIATION FOR THE
ADVANCEMENT OF COLORED PEOPLE,
SPRING VALLEY BRANCH, JULIO
CLERVEAUX; CHEVON DOS REIS; ERIC
GOODWIN; JOSE VITELIO GREGORIO;
DOROTHY MILLER; HILLARY MOREAU;
and WASHINGTON SANCHEZ,

      Plaintiffs,

  -against-

EAST RAMAPO CENTRAL SCHOOL
DISTRICT and MARYELLEN ELIA, IN
HER CAPACITY AS THE COMMISSIONER
OF EDUCATION OF THE STATE OF NEW
YORK,

      Defendants.
---------------------------------------------------------------X

**ORDER**

17 Civ. 8943 (CS)(JCM)

  Plaintiffs commenced this action against Defendants East Ramapo Central School District (the "District") and MaryEllen Elia, in her capacity as the Commissioner of Education of the State of New York, alleging that the District's at-large election system unlawfully denies minority citizens an equal opportunity to elect candidates of their choice to the District's Board of Education (the "Board") in violation of Section 2 of the Voting Rights Act of 1965, 52 U.S.C. § 10301. (Docket No. 1). Before the Court are the parties' letters setting forth a dispute regarding whether legislative immunity and/or legislative privilege protect the District's Board members, nonparties to this action, from sitting for their depositions. (Docket Nos. 153, 154, 169). For the following reasons, Board members Harry Grossman, Yehuda Weissmandl and Joel Freilich are directed to appear for their depositions prior to November 20, 2018. The Board

1

members are, however, still entitled to assert their privilege objections on a question-by-question basis.

## I. BACKGROUND

On February 13, 2018, Plaintiffs served the current Board members with subpoenas *duces tecum* and *ad testificandum*. (Pl. Ltr.[1] at 1). The Board members objected to the subpoenas on the basis of legislative immunity, legislative privilege, overbreadth, relevance and undue burden. (Docket Nos. 91, 107-1). At the Court's direction, Plaintiffs served the Board members with narrowed requests (the "Amended Requests"). The parties and Board members were unable to reach agreement concerning the Amended Requests, and on April 27, 2018, this Court addressed the applicability of legislative immunity and legislative privilege to Plaintiffs' non-party discovery requests (the "April 27 Order"). (Docket No. 124). The Court granted Plaintiffs' motion to compel in part and directed the Board members to respond to the subpoenas. Namely, the Court ordered the Board members to search for and produce documents responsive to Amended Requests 2, 3(c), 3(d), and 4(a)-(d) and to serve Plaintiffs with a privilege log cataloguing withheld documents. (*Id.*).

Board members Harry Grossman, Yehuda Weissmandl and Joel Freilich continue to object to their deposition subpoenas on the grounds of legislative immunity and/or privilege. (Pl. Ltr. at 1; Docket No. 169). Plaintiffs argue the Board members' refusal to sit for their depositions violates the April 27 Order and maintain that they are entitled to depose Messrs. Grossman, Weissmandl and Freilich about non-privileged documents produced in response to the Amended Requests. (*Id.*). The Board members take the position that the April 27 Order

---

[1] Refers to Plaintiffs' letter request, dated September 19, 2018, to compel certain Board members' compliance with the outstanding subpoenas. (Docket No. 153).

2

addressed only the *duces tecum* portion of the subpoenas, and it did not compel the Board members to sit for their depositions. (District Opp.[2] at 1-2). Having reviewed its prior order, the Court agrees with the District that the April 27 Order did not explicitly address whether the legislative immunity or legislative privilege doctrines preclude Plaintiffs from taking the Board members' depositions. The Court will now address the *ad testificandum* portion of Plaintiffs' subpoenas and determine what, if any, effect legislative immunity and legislative privilege have on the Board members' ability to sit for their depositions.

## II. DISCUSSION

### A. Legislative Immunity

"Legislative immunity entitles a state legislator, in an appropriate case, to the dismissal of all of the claims against him or her in the complaint, much as judicial immunity entitles judges to the dismissal of suits against them arising out of their performance of their judicial functions." *Rodriguez v. Pataki*, 280 F. Supp. 2d 89, 95 (S.D.N.Y. 2003), *aff'd*, 293 F. Supp. 2d 302 (S.D.N.Y. 2003); *see also Harhay v. Town of Ellington Bd. of Educ.*, 323 F.3d 206, 210 (2d Cir. 2003) ("Legislators are entitled to absolute immunity from civil liability for their legislative activities."). The Supreme Court has held that legislative immunity is "absolute" and protects state legislators from civil liability for legislative acts that fall within "the sphere of legitimate legislative activity." *Bogan v. Scott-Harris*, 523 U.S. 44, 54 (1998) (citation and internal quotation marks omitted). As the Court found in the April 27 Order, legislative immunity is not applicable to the instant case, in which the subpoenaed Board members are nonparties and are not themselves facing civil liability. Thus, legislative immunity does not bar Plaintiffs from deposing the Board members in this case.

---

[2] Refers to the District's letter, dated September 20, 2018, opposing Plaintiffs' request to compel the depositions of the Board members. (Docket No. 154).

**B. Legislative Privilege**

The Court next turns to the Board members' claim that legislative privilege shields the Board members from being deposed in this action. "Testimonial privileges are generally disfavored as they 'contravene the fundamental principle that the public has the right to every man's evidence.'" *East End Ventures, LLC v. Incorporated Vill. of Sag Harbor*, No. CV 09-3967 (LDW) (AKT), 2011 WL 6337708, at *3 (E.D.N.Y. Dec. 19, 2011) (quoting *ACORN v. Cnty. of Nassau*, No. 05 Civ. 2301 (JFB) (WDW), 2007 WL 2815810, at *2 (E.D.N.Y. Sept. 25, 2007) ("*ACORN I*")). The party invoking the privilege bears the burden of justifying its application. *Id.*

The legislative privilege "protects state legislators and their staffs from compelled disclosure of documentary and testimonial evidence with respect to actions within the scope of legitimate legislative activity." *Favors v. Cuomo*, 285 F.R.D. 187, 209 (E.D.N.Y. 2012) ("*Favors I*"). Unlike legislative immunity, legislative privilege is not absolute. *See Rodriguez*, 280 F. Supp. 2d at 95. Thus, "notwithstanding their immunity from suit, legislators may, at times, be called upon to produce documents or testify at depositions." *Id.* (collecting cases). Legislative privilege "attaches only to communications and information that can properly be characterized as 'legislative' in nature." *Favors v. Cuomo*, No. 11 Civ. 5632 (DLI)(RR)(GEL), 2013 WL 11319831, at *6 (E.D.N.Y. Feb. 8, 2013) ("*Favors II*") ("[C]laims of legislative privilege implicate the question of whether an act is 'quintessentially legislative,' an 'integral step' in the legislative process, or bears 'the hallmarks of traditional legislation.'") (quoting *Bogan*, 523 U.S. at 55). The privilege may be waived where the individual holding the privilege shares its communications with third parties who are "outsiders to the legislative process," and it does not apply to actions that are "administrative" in nature. *Id.* at *6, *10; *see also ACORN I*, 2007 WL 2815810, at *4 ("[T]he legislative privilege may be waived as to communications made in the presence of third parties.").

To determine whether the legislative privilege bars disclosure, the Court considers the following factors:

> (i) the relevance of the evidence sought to be protected; (ii) the availability of other evidence; (iii) the "seriousness" of the litigation and the issues involved; (iv) the role of the government in the litigation; and (v) the possibility of future timidity by government employees who will be forced to recognize that their secrets are violable.

*Rodriguez*, 280 F. Supp. 2d at 101 (internal quotation marks omitted).[3] Balancing all the factors, the Court concludes that while the legislative privilege may be asserted against questions that delve into protected legislative activity, it does not categorically preclude the Board members' deposition testimony.

**1. Relevance**

First, the testimony of the Board members could yield information relevant to Plaintiffs' Voting Rights Act claim. In order for a claim under Section 2 of the Voting Rights Act to succeed, the Supreme Court held that a plaintiff must prove the following "preconditions": (1) the minority group must be sufficiently large and geographically compact to constitute a majority in a single-member district; (2) the minority group must be politically cohesive and vote as a bloc; and (3) the white majority must vote sufficiently as a bloc to enable it, in the absence of special circumstances, to defeat the minority's preferred candidate. *See Thornburg v. Gingles*, 478 U.S. 30, 49-51 (1986). If a plaintiff establishes the three *Gingles* preconditions, the Court

---

[3] The Court recognizes a disagreement in the cases over whether there is an exception to the legislative privilege where the legislative deliberations are the central issue in the case. *Compare East End Ventures*, 2011 WL 6337708, at *3 (legislative privilege inapplicable where "the decision making process is itself at issue") *with Favors I*, 285 F.R.D. at 210 n. 22 (declining to recognize the "central issue" exception on the grounds that it applies only to the deliberative process privilege, which protects the decision-making processes of the executive branch); *Rodriguez*, 280 F. Supp. at 99 ("Were th[e] [central-issue exception] a basis for denying a defendant's legislative privilege claim, there would be few, if any, cases in which state legislators could shield their personal thought processes from view."). In this case, the Board members have only claimed legislative privilege as a basis for protection from discovery. (District Opp. at 1-2; Docket No. 91 at 1). The Court, therefore, does not consider the broad "central-issue" exception to the deliberative process privilege and finds that the balancing test outlined in *Rodriguez* governs the analysis for applying the legislative privilege to the Board members' deposition testimony.

5

must then "consider whether, under the totality of the circumstances, the challenged practice impairs the ability of the minority voters to participate equally in the political process." *United States v. Vill. of Port Chester*, 704 F. Supp. 2d 411, 418 (S.D.N.Y. 2010) (citations and internal quotation marks omitted). The following non-dispositive and non-exclusive factors aid judicial assessment of the "totality of circumstances":

> 1. the extent of any history of official discrimination in the state or political subdivision that touched the right of members of the minority group to register, vote, or otherwise to participate in the democratic process;
>
> 2. the extent to which voting in the elections of the state or political subdivision is racially polarized;
>
> 3. the extent to which the state or political subdivision has used unusually large election districts, majority vote requirements, anti-single shot provisions, or other voting practices or procedures that may enhance the opportunity for discrimination against the minority group;
>
> 4. if there is a candidate slating process, whether the members of the minority group have been denied access to that process;
>
> 5. the extent to which members of the minority group in the state or political subdivision bear the effects of discrimination in such areas as education, employment and health, which hinder the ability to participate effectively in the political process;
>
> 6. whether political campaigns have been characterized by overt or subtle racial appeals; [and]
>
> 7. the extent to which members of the minority group have been elected to public office in the jurisdiction.

*Id.* at 419 (citing S. Rep. No. 97-417, 97th Cong. 2nd Sess. 28 (1982), U.S. Code Cong. & Admin. News 1982, p. 177). Additional factors that may have probative value include:

> (1) whether there is a significant lack of responsiveness on the part of the elected officials to the particularized needs of the members of the minority group; and
>
> (2) whether the policy underlying the state or political subdivision's use of such voting qualification, prerequisite to voting, or standard, practice or procedure is tenuous.

*Id.* Depositions of the Board members may very well lead to relevant non-privileged information concerning these factors, in particular the Board's responsiveness to the concerns of the minority public school community and the candidate slating process. Indeed, the Court already found that document requests tailored to these topics were relevant and not protected by the legislative privilege. *See* April 27 Order at 9 (compelling disclosure of complaints received from members of the minority public school community and responses provided by the Board members); *id.* at 11 (compelling disclosure of documents related to the appointment of Board members upon a vacancy). Thus, the first factor weighs in favor of disclosure.

## 2. Availability of Other Evidence

The second balancing factor, the availability of other evidence, also supports disclosure. The "totality of circumstances" analysis announced by the Supreme Court expressly considers whether there is "a significant lack of responsiveness on the part of elected officials to the particularized needs of the members of the minority group." *Gingles*, 478 U.S. at 37; *see also Goosby v. Town Bd. of Town of Hempstead, N.Y.*, 180 F.3d 476, 483 (2d Cir. 1999) (considering, *inter alia*, "the Board's lack of responsiveness to the concerns of the [minority] communities"). "[T]he inquiry into governmental responsiveness is designed to test whether an at-large system has made elected officials so secure in their positions and has made the [minority] vote so unnecessary to success at the polls that the day-to-day governmental services provided to, and input secured from, all segments of the electorate as a matter of course are being withheld from the [minority] community." *Hendrix v. Joseph*, 559 F.2d 1265, 1269 (5th Cir. 1977). In this case, questioning the elected Board members about input received from the predominantly-

minority public school population and their response to such input is the most direct method of obtaining the relevant information.[4] Accordingly, the second factor supports disclosure.

### 3. Seriousness of the Claims

The third balancing factor also militates in favor of disclosure in this case. The third *Rodriguez* factor is not concerned with the likelihood that the claim will ultimately prevail, rather the "seriousness" of the claim is determined based on the nature of the claim itself and "'the civil rights implicated.'" *Favors I*, 285 F.R.D. at 219 (quoting *ACORN v. Cnty. of Nassau*, No. 05-CV-2301 (JFB) (WDW), 2009 WL 2923435, at *4 (E.D.N.Y. Sept. 10, 2009) ("*ACORN II*")). Courts regularly acknowledge the seriousness of claims challenging electoral inequality on the basis of race. *See Rodriguez*, 280 F. Supp. 2d at 102 ("[T]here can be no question [a claim arising under Section 2 of the Voting Rights Act] raises serious charges about the fairness and impartiality of some of the central institutions of our state government."); *Favors I*, 285 F.R.D at 219 ("The seriousness of the [Section 2] claims in this case further tips the balance toward disclosure."). Here, Plaintiffs allege that the District's at-large electoral system denies minority citizens in the District an equal opportunity to elect their preferred candidates. The allegation that predominantly-minority public schools are governed by an improperly elected Board goes to the very fairness of the electoral process. The Court, therefore, finds that the third factor supports disclosure.

### 4. The Role of the Government

The fourth factor, the role of the government, is neutral. The fourth factor "considers the role played by th[e] [governmental] body and its members in the allegedly unlawful conduct."

---

[4] *Citizens Union of the City of N.Y. v. Attorney General of N.Y.*, 269 F. Supp. 3d 124 (S.D.N.Y. 2017), a case previously cited by the Board members, (Docket No. 91 at 2), recognized that in voting rights act cases, the evidence required "may not be available from sources other than individual legislators" and "the second factor may weigh in favor of disclosure." *Id.* at 167.

*Favors II*, 2013 WL 11319831, at *12. If a legislator's role in the unlawful conduct is "direct," the fourth factor is more likely to tip the balance in favor of disclosure. *Id.* This case differs from redistricting cases where the subpoenaed legislators were "directly" involved in the allegedly unlawful conduct because they were responsible for adopting the challenged redistricting plan. *Id.* Here, the Board members may not have been directly involved in devising and implementing the at-large election system. The Board members are, nevertheless, the alleged beneficiaries of the at-large election system, and their treatment of the minority citizen's concerns bears on whether the at-large election effectively insulates Board members from being voted out by minority constituents. Given that the Board members possess relevant information but may not be directly involved in devising or implementing the challenged election practices, the Court finds that the fourth factor does not weigh in favor of either side.

### 5. Future Timidity

The need to facilitate full and honest discussion among lawmakers generally weighs against disclosure. The legislative privilege is intended to avoid a "chilling effect" on governmental deliberations, and compelling Board members to sit for their depositions poses a potential deterrent effect on frank discussion between Board members in the future. *See Favors I*, 285 F.R.D. at 220 ("[A]llowing discovery to draw back the legislative curtain has the potential, outside the redistricting context, to deter legislators from open and honest deliberations with one another, with their staffs, and with retained experts, for fear that any such communications will be discoverable in future litigation."). However, by appearing for their depositions, the Board members are not left without recourse in the event the questioning invades the privilege, and the Board members are still entitled to make and preserve their privilege objections at the deposition. Thus, although the fifth factor militates against disclosure, the Court nonetheless finds that the other four factors outweigh

9

the potential for inhibiting future deliberations, and holds that the Board members' depositions in this case are warranted.

Accordingly, while the litigation privilege is not an absolute bar to the Board members' deposition testimony, the Board members are still entitled to assert their privilege objections on a question-by-question basis. The Court cautions the parties and the Board members that it has already found that legislative privilege does not protect the Board members' communications with members of the public and their responses to public inquiries. *See* April 27 Order at 9. The Court has also already ruled that personnel decisions relating to appointments for Board vacancies are administrative as opposed to legislative. *Id.* at 11. The Court declines to cabin the scope of Plaintiffs' questioning of the Board members at this juncture as there may be additional relevant non-privileged topics. However, any questions asked must be tailored to non-legislative matters that do not implicate the privilege.

### III.  CONCLUSION

For the foregoing reasons, Messrs. Grossman, Weissmandl and Freilich are directed to appear for their depositions prior to November 20, 2018.

Dated:   October 19, 2018
         White Plains, New York

**SO ORDERED:**

_____
JUDITH C. McCARTHY
United States Magistrate Judge