# LATHAM&WATKINS LLP

53rd at Third
885 Third Avenue
New York, New York  10022-4834
Tel: +1.212.906.1200  Fax: +1.212.751.4864
www.lw.com

FIRM / AFFILIATE OFFICES

| | |
|---|---|
| Beijing | Moscow |
| Boston | Munich |
| Brussels | New York |
| Century City | Orange County |
| Chicago | Paris |
| Dubai | Riyadh |
| Düsseldorf | Rome |
| Frankfurt | San Diego |
| Hamburg | San Francisco |
| Hong Kong | Seoul |
| Houston | Shanghai |
| London | Silicon Valley |
| Los Angeles | Singapore |
| Madrid | Tokyo |
| Milan | Washington, D.C. |

October 30, 2018

**VIA ECF**

Hon. Judith C. McCarthy
United States Magistrate Judge
Southern District of New York
300 Quarropas Street
White Plains, New York 10601-4150

Re: *National Association for the Advancement of Colored People,
Spring Valley Branch v. East Ramapo Central School District*, No. 17 Civ. 8943

Dear Judge McCarthy:

We write on behalf of Plaintiffs in the above referenced action to respectfully request the Court to compel non-party Mr. Hersh Horowitz to produce the highly relevant documents in his possession by November 5, 2018 and to provide testimony on November 14, 2018 at 9:00 am at the offices of Latham & Watkins LLP, 885 Third Avenue, NY, NY, pursuant to subpoenas *duces tecum* and *ad testificandum*.  *See* Exhibit A (Sept. 6, 2018 subpoenas to Mr. Horowitz).  To date, Mr. Horowitz has failed to comply with the subpoenas personally served upon him despite Plaintiffs readily agreeing to extensions and other terms.  Through the meet and confer process, it is clear that Mr. Horowitz does not intend to comply with the subpoenas.

  A. **Meet and Confer Process**

As set forth more fully below, Plaintiffs' counsel met and conferred with counsel for Mr. Horowitz regarding Mr. Horowitz's objections to Plaintiffs' subpoenas on October 21.  During that process, Plaintiffs' counsel made several concessions as to the scope of the subpoenas in response to timely objections by Mr. Horowitz.  However, counsel for Mr. Horowitz has responded by raising completely new objections, and continues to refuse to either offer Mr. Horowitz for deposition or to produce a single document in response to the subpoena.  At this juncture, it is clear that Mr. Horowitz does not intend to comply with the subpoenas or meet and confer in good faith.  As such, Plaintiffs' counsel requires the Court's intervention, particularly in light of the rapidly-approaching November 20th deadline for fact depositions.

  A. **Mr. Horowitz Possesses Material, Relevant Information**

Discovery in this matter has revealed that Mr. Horowitz possesses material, relevant information essential to Plaintiffs' claims.  While a "party issuing [a] subpoena must demonstrate

that the information sought is relevant and material to the allegations and claims at issue in the proceedings," Federal Rule 26(b)(1) governs the scope of discovery from parties and non-parties, and is to be "construed broadly." *Crosby v. City of N.Y.*, 269 F.R.D. 267, 282 (S.D.N.Y. 2010).

Mr. Horowitz is involved in slating candidates from the white community to run for the Board of the East Ramapo Central School District (the "Board"). His father, the late Rabbi Horowitz, was an influential member of the white, Orthodox community responsible for determining that community's slate of Board candidates. *See, e.g.*, Exhibit B, ERCSD_WIEDER_00000083 (May 9, 2007 email from J. Wolfset to A. Wieder) ("I understand that you were selected, but corrected [*sic*] if I had wrong, by Rabbi Horowitz of YARC to run for the seat of Gabriel Tenembaum. I have heard of Rabbi Horowitz's 'connection' to the ERCSD."). Hersh Horowitz inherited that role from his father, and now works with other rabbis and community leaders to select the Orthodox community slate for Board elections. *See* Exhibit C, Excerpts of ERCSD_Grossman_00000490 at 493 (offering to connect potential candidates with a Rabbi Oshry and stating that Oshry is deciding between four candidates for two remaining Board seats); *see also id.* at 502 (Mr. Horowitz stating that he was "having meeting with schools about next week's election"). In that role, Mr. Horowitz had a text message exchange with current Board member, Harry Grossman, in April of this year, about how to racially engineer the composition of the Board to improve the optics of this case. *See id.* at 499 (Grossman conveys a message that "it would be good for the case to have a minority to run" and Horowitz responds "[i]f we are to run a minority person, then why not keep Sabrina?").

Information about how candidates for the Board are chosen and elected is relevant to whether there is a candidate slating process and whether members of the minority groups have been denied access to that process. *United States v. City of Euclid*, 580 F. Supp. 2d 584, 608 (N.D. Ohio 2008). An unofficial slating group is an organization "whose purpose is to recruit candidates, nominate them, and campaign for their election to office in a nonpartisan election system." *Id.* (discussing slating as a factor relevant to a vote dilution inquiry under *Thornburg v. Gingles*, 478 U.S. 30, 37 (1986)). Discovery related to Mr. Horowitz demonstrates that he participated in an unofficial slating group to recruit, nominate, and campaign for Board members, which was not open to the minority, public school community. Mr. Horowitz therefore possesses relevant and material information relating to slating, an issue essential to Plaintiffs' claims.

Mr. Horowitz also possesses knowledge regarding the work of the Board and its responsiveness to minority concerns. His text exchanges with Mr. Grossman demonstrates that they frequently discussed issues in front of the Board. *See* Exhibit C, Excerpts of ERCSD_Grossman_00000490 at 490 (Mr. Horowitz texting Mr. Grossman regarding meetings Mr. Horowitz had with yeshivas regarding Board issues). Those communications also demonstrate Mr. Horowitz's view that the Board need not be responsive to the minority, public school community, as that community grows weaker politically. *Id.* at 491 (Mr. Grossman stating that the minority community "feel[s] disempowered because they are" and Mr. Horowitz responding "Great defense indeed" and "But at least they are getting weaker"). Information regarding the position of the minority community in the District and the responsiveness of the Board to the needs of the minority community is relevant to a finding of violations of the Voting Rights Act and is

therefore essential to Plaintiffs' claims. *Goosby v. Town Bd. of Hempstead, N.Y.*, 180 F.3d 476, 495 (2d Cir. 1999).

### B. Mr. Horowitz Does Not Intend to Comply with the Subpoenas

Plaintiffs' counsel personally served Mr. Horowitz on September 6, 2018 with a subpoena for documents and a subpoena for testimony. *See* Exhibit A (Sept. 6, 2018 subpoenas to Mr. Horowitz); *see also* Exhibit D (affidavit of service for subpoenas to Mr. Horowitz). The document subpoena required a response and a production of documents by September 21, 2018. *See* Exhibit A. Mr. Horowitz failed to respond to the subpoena. On October 5, 2018, counsel for Mr. Horowitz notified Plaintiffs' counsel that it was representing him. On October 8, 2018, counsel for the parties spoke on the phone and counsel for Mr. Horowitz requested an extension to October 22, 2018 to respond to the subpoenas. Plaintiffs' counsel agreed to the request, but requested that Mr. Horowitz "expeditiously produce non-objectionable materials." *See* Exhibit E (Oct. 8, 2018 email from R. Mangas to J. Doberman).[1]

On October 21, 2018, Mr. Horowitz's counsel sent Plaintiffs' counsel sent an email stating Mr. Horowitz's objections to the subpoenas, which were: (a) a seven-hour deposition was too burdensome because Mr. Horowitz was an "exceptionally busy husband and father of 5 who is also the executive director of [the Community Outreach Center]"; (b) the document request was too burdensome because the "vast majority of his communications" with the District concerned contracts between the District and the Community Outreach Center that were not relevant to this case; and (c) the document request was too broad because it went back to 2005 when Mr. Horowitz was a teenager. Mr. Horowitz also asserted that a subpoena related to political activities has "serious potential of trampling upon protected first Amendment rights," but did not explain which request he was objecting to, or cite any law indicating that any of the requests (from a private citizen) violated his First Amendment rights. *See* Exhibit I (Oct. 21, 2018 email from J. Doberman to R. Mangas). Plaintiffs' counsel and Mr. Horowitz's counsel then had a teleconference on October 22, 2018 to meet and confer on Mr. Horowitz's objections. On that call, Plaintiffs' counsel offered several concessions to alleviate Mr. Horowitz's objections. *See* Exhibit J (Oct. 22 email from R. Mangas to J. Doberman). Specifically, Plaintiffs' counsel offered to travel to Rockland County to depose Mr. Horowitz, and to limit the deposition to four hours. Plaintiffs' counsel also agreed that Mr. Horowitz would not have to produce communications with District officials (as opposed to Board members) regarding his Community Outreach Center's contracts with the District, which Mr. Horowitz had represented were "the vast majority of his communications" related to the District. Mr. Horowitz's counsel represented that these concessions were a positive

---

[1] Plaintiffs also informed counsel for Mr. Horowitz of the November 20 discovery deadline, and requested that the parties tentatively block out a date for Mr. Horowitz's deposition. *See* Exhibit E (Oct. 8, 2018 email from R. Mangas to J. Doberman); *see also,* Exhibit F (Oct. 12, 2018 email from R. Mangas to J. Doberman). Mr. Horowitz responded that the "demands on his time are substantial and often relatively unpredictable," and refused to meet and confer in good faith on proposing a date. *See* Exhibit G (Oct. 16, 2018 email from J. Doberman to R. Mangas). On October 18, 2018, Plaintiffs' counsel repeated the request to block out a date for the deposition. *See* Exhibit H (Oct. 18, 2018 email from R. Mangas to J. Doberman).

development and that he would take the compromise to his client and would respond to Plaintiffs' proposed compromise by October 24, 2018. *Id.* In a follow up email summarizing the meet and confer, Plaintiffs' counsel requested that Mr. Horowitz either agree to the proposed compromise, or specify which of the remaining objections raised in his October 21, 2018 email Mr. Horowitz intended to stand on. *Id.* Plaintiffs' counsel explained that due to the November 20, 2018 discovery deadline, Plaintiffs would seek relief from the Court if Plaintiffs and Mr. Horowitz could not reach an agreement. *Id.*

On October 24, 2018, Mr. Horowitz's counsel responded. *See* Exhibit K (Oct. 24 email from J. Doberman to R. Mangas). Mr. Horowitz did not agree to sit for deposition or produce even a single document. *Id.* Nor did Mr. Horowitz focus on the remaining objections from his October 21 email that had been narrowed through meet and confer. Rather, the correspondence listed 13 general objections and 23 specific objections, the majority of which he did not raise in his initial October 21 objections or during the October 22, 2018 conferral. *Id.*; *see also Application of Sumar*, 123 F.R.D. 467, 472 (S.D.N.Y. 1988) (finding that non-party's failure to issue written objections until thirty-eight days after service of the subpoena constituted a waiver of those objections).

Because the October 24, 2018 correspondence made clear that Mr. Horowitz did not intend to comply with the subpoenas, nor engage in a good faith attempt to narrow the disputes thereunder, Plaintiffs' counsel informed Mr. Horowitz's counsel on October 25, 2018 that if Mr. Horowitz did not agree to comply with the subpoenas by October 26, 2018, Plaintiffs would seek relief from the Court. *See* Exhibit L (Oct. 25, 2018 email from R. Mangas to J. Doberman). On October 26, Mr. Horowitz's counsel responded with a long email, in which he again refrained from committing Mr. Horowitz to sit for deposition or produce a single document. *See* Exhibit M (Oct. 26 email from J. Doberman to R. Mangas). Thereafter, Plaintiffs' counsel informed Mr. Horowitz that it would file this motion. *See* Exhibit N (Oct. 29 email from R. Mangas to J. Doberman).

On October 21, Mr. Horowitz made three specific objections. *See* Exhibit I. Plaintiffs made concessions to alleviate two of them. *See* Exhibit J. The third objection—that the time period specified in the subpoena is too broad because it goes back to Mr. Horowitz's teenage years—is unavailing. The time period in the subpoena matches the allegations in Plaintiffs' complaint—from 2005 through the present. To the extent Mr. Horowitz was engaging in slating activities and communicating with Board members from that time, he has relevant information that he must produce. If he was not engaging in such activities at the time, there is no burden. Mr. Horowitz's continued refusal to sit for deposition or produce a single document has no basis in the law. Due to his non-compliance and clear intent to continue to refuse to comply, this Court should compel Mr. Horowitz to comply with the subpoenas. *See New Falls Corp. v. Soni*, 2017 WL 9732100, at *2 (E.D.N.Y. Oct. 30, 2017) (finding that prior to filing a motion for sanctions for failure to comply with a subpoena pursuant to Fed. R. Civ. P. 45(e), a party must first seek a motion to compel compliance with the subpoena).

* * *

For the above stated reasons, Plaintiffs respectfully request that the Court schedule a pre-motion conference pursuant to Local Civil Rule 37.2 or, in the alternative, accept this letter as a Motion to Compel and issue an order compelling Mr. Horowitz to produce documents by November 5, 2018 and provide testimony on November 14, 2018 at 9:00 a.m. at the offices of

Latham & Watkins LLP, 885 Third Avenue, NY, NY, pursuant to subpoenas *duces tecum* and *ad testificandum*.

Respectfully submitted,

    /s/ Claudia T. Salomon
    Claudia T. Salomon

cc: All Counsel of Record via ECF