

# EXHIBIT N

|  |  |
|---|---|
| **From:** | Mangas, Russell (CH) |
| **Sent:** | Monday, October 29, 2018 4:44 PM |
| **To:** | Jeremy Doberman |
| **Cc:** | Zubick, Marc (CH/NY) |
| **Subject:** | RE: [NAACP v. ERCSD] Responses/Objections to Subpoenas Issued to Hersh Horowitz |
| **Attachments:** | RE: [NAACP v. ERCSD] Call re Horowitz Subpoena |

Jeremy-

At this point, a "tentative" agreement is not sufficient. As I explained in my email below, Mr. Horowitz needs to commit to a time he will sit for the deposition. I am not available on the 15th, but could do the 14th.

With respect to Senate Factor 7, you are reading Niagara Falls wrong. The "bright line" rule you refer to is "[f]or the purposes of analyzing the third prong of *Gingles*," not for analyzing Senate Factor 7. 65 F.3d 1002, 1018-19. Moreover, in the attached email, I've already described several cases which courts dig past voting data to determine the extent to which minority-preferred candidates have been elected to public office in the jurisdiction. I note further, that, in addition to Senate factors 4 and 7, Mr. Horowitz's communications with members of the District Board and other community leaders are also relevant to Senate Factor 8 "whether there is a significant lack of responsiveness on the part of elected officials to the particularized needs of the members of the minority group."

Despite my repeated explanations for how the documents requested by the subpoena are relevant to this case, *you have not committed to produce even a single document*. There is nothing to be gained by continuing to debate the law. Unless you confirm that Mr. Horowitz will sit for deposition and produce the documents we've subpoenaed (other than the ones we agreed he did not have to produce), we will move to compel, likely tomorrow.

Best,

**Russell Mangas**

**LATHAM & WATKINS LLP**
330 North Wabash Avenue, Suite 2800 | Chicago, IL 60611
D: +1.312.876.7697 | M:

---

**From:** Jeremy Doberman <jeremyd@marcwlaw.com>
**Sent:** Monday, October 29, 2018 1:52 PM
**To:** Mangas, Russell (CH) <Russell.Mangas@lw.com>
**Cc:** Zubick, Marc (CH/NY) <Marc.Zubick@lw.com>
**Subject:** RE: [NAACP v. ERCSD] Responses/Objections to Subpoenas Issued to Hersh Horowitz

Russell,

I finished my depositions for today. I don't understand how you can expect me to commit further this very minute. I've given you a tentative date for deposition, like you asked for, given all the schedules that have to be worked out. But I understood you to want documents produced before the deposition takes place, and you don't seem to be taking the concerns I'm raising head on.

Regarding the requests relating to Senate Factor 7, I explicitly raised with you on the phone the thought that we get that information from objective sources like voting data. You seem to want to get that information from anecdotal sources like Mr. Horowitz's campaign activity and policy-related communications, which, it seems, the Second Circuit directly

rejects. I gave you that cite in the below email (NAACP v. City of Niagara Falls). Do you disagree with my reading of the case? The language and analysis of the Second Circuit was pretty clear that that kind of inquiry is foreclosed to the District Court.

Speaking quite frankly, I think the material relating to Senate Factor 7 is the most objectionable of the materials your document requests seek (just my opinion). And as I said below, if we can narrow this document/deposition request to just what's relevant to your claim, I think there's a good shot I can get my client there (obviously, I don't have the last word on agreements here). Meet and confer is a process the judges in the Southern District take seriously; you can't just short-circuit the process by issuing an ultimatum on Thursday evening for Friday afternoon (especially a short Friday, when the Sabbath comes early). I'm sorry if my responses are not the quick deal making ones you'd prefer, but it's my job to make sure there is no undue burden on my client from participating in third-party discovery.

Thanks,

Jeremy Doberman
Marc Wohlgemuth & Associates P.C.
21 Remsen Avenue
Suite 301
Monsey, New York 10952
845-746-2700 x 8005
845-746-2701

**PLEASE NOTE OUR NEW ADDRESS EFFECTIVE OCTOBER 16, 2017 – 21 REMSEN AVENUE, SUITE 301, MONSEY, NEW YORK 10952**

**ALERT: All wire instructions sent or received by this office MUST be verbally confirmed prior to initiating any wire transfer. Marc Wohlgemuth & Associates, P.C. will NOT issue a wire until wiring instructions are verbally confirmed and will not assume responsibility for wires issued to the firm without prior verbal confirmation.**

CIRCULAR 230 NOTICE: To ensure compliance with requirements imposed by U.S. Treasury Regulations, Marc Wohlgemuth & Associates P.C. informs you that any U.S. tax advice contained in this communication (including any attachments) was not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.
CONFIDENTIALITY NOTICE: This electronic mail transmission is confidential, may be privileged and should be read or retained only by the intended recipient. If you have received this transmission in error, please immediately notify the sender and delete it from your system.

---

**From:** Russell.Mangas@lw.com [mailto:Russell.Mangas@lw.com]
**Sent:** Friday, October 26, 2018 3:47 PM
**To:** jeremyd@marcwlaw.com
**Cc:** Marc.Zubick@lw.com
**Subject:** RE: [NAACP v. ERCSD] Responses/Objections to Subpoenas Issued to Hersh Horowitz

Jeremy-

Nowhere in your email do you commit to produce Mr. Horowitz for deposition. Nor do you commit to having him produce a single document. Unless you agree, without equivocation, that Mr. Horowitz will sit for deposition the week of November 12, and state with specificity the documents he is willing to produce and his specific objections to any documents he is not willing to produce, we will file a motion to compel.

For your reference, I am reattaching my email to you of October 25, which contains the compromise I proposed in our meet and confer. We stand ready to honor that compromise.

Best,

**Russell Mangas**

**LATHAM & WATKINS LLP**
330 North Wabash Avenue, Suite 2800 | Chicago, IL 60611
D: +1.312.876.7697 | M:

---

**From:** Jeremy Doberman <jeremyd@marcwlaw.com>
**Sent:** Friday, October 26, 2018 2:10 PM
**To:** Mangas, Russell (CH) <Russell.Mangas@lw.com>
**Cc:** Zubick, Marc (CH/NY) <Marc.Zubick@lw.com>
**Subject:** RE: [NAACP v. ERCSD] Responses/Objections to Subpoenas Issued to Hersh Horowitz

Russell,

I have to say I am flabbergasted by your below email. I have at all times endeavored to work with you to get these issues resolved. Let me recount the history because, respectfully, I think you have gotten some of it wrong and painted an incomplete picture here.

You say that Mr. Horowitz was served with the subpoenas on September 6, 2018. I think that is probably accurate. However, if he did not respond immediately, I think a court or any reasonable observer would understand why. Mr. Horowitz has never been a party to a lawsuit, I believe; Mr. Horowitz has never received a subpoena like this; and Mr. Horowitz has never had to deal with a federal court case or anything like this. He does not have lawyers on retainer, like the NAACP or the ERCSD or the board members of the ERCSD. He is a private citizen whose privacy you appear to want to invade, and there is no argument you could make that his failure to respond initially was willful. You sent him your first follow-up correspondence by overnight courier on October 4, but already by the time it was received, I was in the process of reaching out to you; there simply was no real delay. And as I have explained to you repeatedly, there is no way Mr. Horowitz could have reasonably expected to be "haled into court" this way; it's not as if he had any notice that this lawsuit would involve him in any way. And it's not as if any delay in responding was protracted; you are talking about a couple of weeks, not months or years. The truth is that you knew (or, at the very least, your clients knew; I understand you are from out of town and may not know the individuals here) when you served the subpoenas that Mr. Horowitz is an Orthodox Jew who does not do work on the holidays, and yet you served the subpoenas right before Rosh Hashanah and commanded performance right after Yom Kippur and right before Sukkot. I have no understanding of why you picked that specific time to serve the subpoenas and command performance when this lawsuit was filed all the way back in 2017.

All that aside, as soon as we were made aware of these subpoenas and the decision was made to retain our firm, I reached out virtually immediately. I even called Claudia Salomon to schedule a call regarding the subpoenas before we were officially retained, just so that we could deal with the issues head on and get a handle on what you were actually looking for (because the subpoenas are extremely broad on their face). On the initial phone call, which was the first time we had ever interacted (and certainly regarding this case), we discussed the case broadly and how you think Mr. Horowitz may have information relating to your claims. At that time, I had barely had time to read the Complaint. You agreed as a courtesy to permit us a 2-week extension to evaluate the subpoenas, and I appreciated that. I agreed to look at the underlying VRA law and discuss the matter with Mr. Horowitz, which I did. Then, not even using the full 2 weeks, I sent you a response seeking further information about your claim. At that time and in the follow-up phone call we had the next day (which I immediately took), I raised all the concerns that subsequently appeared in a more formal form in the October 24 email. I did that because, as a matter of fact, during the October 22 phone call, even though I understood us to be in a process of negotiations regarding the subpoenas and you to be in receipt of my objections to the subpoenas, **you requested that I give you formal responses and objections**. **You also agreed that I could have an**

**additional two days to give you those formal objections and responses** so that we could move this thing forward (by giving formal responses on which you could evaluate your position rather than the informal ones I had laid out for you and that you said you understood). **The October 24 email was done at your suggestion and behest**. The fact that you did not memorialize in your subsequent email the two-day extension you granted me on our 38-minute phone call (you'll recall I asked initially for one day's extension and then two days' because it was getting late and I was going to watch the Giants lose in horrendous fashion, which they subsequently did) does not mean that it did not occur. None of these objections was waived by not having sent them to you by 10/22.

On the substance, there is nothing in the responses/objections below that you were not already aware of. Points A, J, M, N, O, P, S, T, and W were mentioned on both phone calls. The remaining points were discussed either specifically or generally in my prior email and/or the second phone call. Point I was a separate paragraph in my prior email. Point K, you have already agreed, contains a valid objection and is not the subject of the subpoenas, although it would yield a ton of documents/communications. Point L is based on both common sense and Second Circuit case law (most prominently NAACP v. City of Niagara Falls, which you can find at 65 F.3d 1002 (2nd Cir. 1995), which clearly says that when analyzing Factor 7, we look to objective voting data only, which the Second Circuit calls a "bright-line rule;" I read the entire case; did you not know about this?). Most of the points raised below, in any event, refer to the overbroad nature of the subpoenas; I can't fathom how you would claim that I did not give you timely notice that we objected to how overbroad these compound document requests are. There was no waiver of these objections whatsoever.

Also on the substance, I indicated to you that I was hopeful that if you narrowed these requests, I believed there was a reasonable chance I could convince Mr. Horowitz that you were acting in good faith in seeking documents and see if there's a reasonable compromise to which we could come. We have already agreed to permit the video deposition of Mr. Horowitz even though you conceded you never properly noticed it, and I was going to let you know that of the days you mentioned, tentatively speaking, November 15 would probably be the best day, so it is not the case that I have never tried to work with you. In fact, the opposite is true, and it seems the only thing we disagree about are the scope/irrelevance of the subpoenas. A Court fight would be costly and time-consuming, and I would prefer to reach agreement and avoid it. Do you now disagree that Point K is a valid objection and that the Second Circuit is clear that the evidence you are seeking regarding Factor 7 (which appears to be the entire second document request and a portion of the first document request) is unresponsive and irrelevant? Do you not think you can narrow the first document demand at all, which appears to be the position below?

I'm happy to take these issues back up on Monday, once I finish the depositions in another case I have scheduled for Monday morning. Speaking frankly, I have no desire to respond to a motion or file a cross-motion, and if you want to file a motion, I think it would be premature, considering that you have never actually addressed the objections in any serious way (especially as they regard the indisputably overbroad time period covered or Factor 7 and determining whether minority candidates are elected), let alone done a formal meet and confer. I hope the tone changes back to one of collaboration versus threatening and false/baseless accusations regarding motives.

Have a good weekend,

Jeremy Doberman
Marc Wohlgemuth & Associates P.C.
21 Remsen Avenue
Suite 301
Monsey, New York 10952
845-746-2700 x 8005
845-746-2701

**PLEASE NOTE OUR NEW ADDRESS EFFECTIVE OCTOBER 16, 2017 – 21 REMSEN AVENUE, SUITE 301, MONSEY, NEW YORK 10952**

**ALERT: All wire instructions sent or received by this office MUST be verbally confirmed prior to initiating any wire transfer. Marc Wohlgemuth & Associates, P.C. will NOT issue a wire until wiring instructions are verbally confirmed and will not assume responsibility for wires issued to the firm without prior verbal confirmation.**

CIRCULAR 230 NOTICE: To ensure compliance with requirements imposed by U.S. Treasury Regulations, Marc Wohlgemuth & Associates P.C. informs you that any U.S. tax advice contained in this communication (including any attachments) was not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.
CONFIDENTIALITY NOTICE: This electronic mail transmission is confidential, may be privileged and should be read or retained only by the intended recipient. If you have received this transmission in error, please immediately notify the sender and delete it from your system.

---

**From:** Russell.Mangas@lw.com [mailto:Russell.Mangas@lw.com]
**Sent:** Thursday, October 25, 2018 9:00 PM
**To:** jeremyd@marcwlaw.com
**Cc:** Marc.Zubick@lw.com
**Subject:** RE: [NAACP v. ERCSD] Responses/Objections to Subpoenas Issued to Hersh Horowitz

Jeremy-

I'm disappointed by the attached response. Mr. Horowitz was served with subpoenas for documents and testimony on September 6, 2018. Those subpoenas required a response and production of documents by September 21. Mr. Horowitz failed to respond by the deadline. On October 5, you contacted us, informed us that you represented Mr. Horowitz, and asked to discuss the subpoenas. On October 8, you requested that as a courtesy to your firm we grant Mr. Horowitz and extension to October 22 to respond. We agreed to do that. On October 21, you sent me the below email stating Mr. Horowitiz's objections to the subpoena. I called you on October 22 to meet and confer on Mr. Horowitz's objections. Based on Mr. Horowitz's objections, I offered a compromise on our discovery demands, which I summarized in the follow-up email below. You represented to me that you would discuss the compromise with Mr. Horowitz and get back to me by October 24. I told you that was acceptable, and in my email to you on October 22, I requested that you either indicate Mr. Horowitz's agreement to our compromise, or indicate with specificity any of the objections made in your October 22 email that Mr. Horowitz intended to stand on. I told you that was necessary because of November 20 discovery deadline, and that if we can't reach agreement, we will need to quickly seek relief from the court.

On October 24, you sent the attached. Rather than expressing agreement or identifying the remaining, narrowed points of contention from your October 22 objections, you sent an entirely new set of 13 general objections and 23 specific objections, most of which you did not make on October 22 and which were thereby waived, and you refused to produce a single document or produce Mr. Horowitz for deposition. It has now become clear that instead of using our meet and confer on October 22 as a good faith attempt to narrow our disagreements, you used it as a delay tactic. There is no reason why Mr. Horowitz needed 7 weeks from the date he was served to issue a set of boilerplate objections and refuse to produce a single document. Nor is there any good faith reason why your firm needed 17 additional days to do the same. If Mr. Horowitz does not withdraw the objections in the attached email and agree to the terms for his deposition and document production as outlined below by tomorrow, we will file a motion with the court to compel his deposition and document discovery.

Respectfully,

**Russell Mangas**

**LATHAM & WATKINS LLP**
330 North Wabash Avenue, Suite 2800 | Chicago, IL 60611
D: +1.312.876.7697 | M:

**From:** Jeremy Doberman <jeremyd@marcwlaw.com>
**Date:** Wednesday, Oct 24, 2018, 10:40 PM
**To:** Mangas, Russell (CH) <Russell.Mangas@lw.com>
**Subject:** [NAACP v. ERCSD] Responses/Objections to Subpoenas Issued to Hersh Horowitz

Russell,

As you know, this firm represents Hersh Horowitz (hereinafter "Horowitz"), the third party you are seeking to depose and from whom you are seeking documents in connection with the above-referenced Voting Rights Act case. I elected to take you up on your suggestion regarding serving informal responses and objections to the subpoenas issued to Hersh Horowitz. As a concession to you, we are waiving any objections to service and the fact that the video dep was not noticed.

**General Objections**

1. The general objections that follow are in addition to the specific objections laid out in the responses below. These general objections form a part of the response to each item below and are set forth here to avoid the duplication and repetition of restating them for each response. The absence of a reference to a general objection in the body of a response to a specific item should not be construed as a waiver of the general objection as applied to any item below.
2. Horowitz objects to the subpoenas to the extent that they purport to impose obligations beyond those required or permitted by the Federal Rules of Civil Procedure or the rules of this Court.
3. Horowitz objects to the subpoenas to the extent that they are vague, ambiguous, overbroad, and/or unduly burdensome.
4. Horowitz objects to the subpoenas to the extent that they seek information that is neither relevant to the subject matter of this action nor reasonably calculated to lead to the discovery of admissible evidence.
5. Horowitz objects to the subpoenas to the extent that they are compound and/or capable of multiple interpretations; that they do not identify with particularity the material sought; that they lack sufficient detail to enable Horowitz to formulate an appropriate response; that they are unintelligible; and/or that they do not appear to be reasonably calculated to lead to the discovery of admissible evidence.
6. Horowitz objects to the subpoenas as overbroad and unduly burdensome to the extent that they call for the production of "each," "any," or "all" when the necessary and relevant material can be obtained from fewer than "each," "any," or "all."
7. Horowitz objects to the subpoenas to the extent that they seek, or can be construed to seek, information that is privileged under law, whether under the attorney-client privilege, the work product doctrine, or any other privilege or immunity cognizable under law, including the protections afforded materials prepared in anticipation of litigation or for trial. Such documents and information will not be produced. In the event that any such document or information is or has been produced, such disclosure or production is or was inadvertent and does not constitute a waiver of any such privilege or immunity
8. Horowitz objects to the subpoenas to the extent that they call for the production of confidential documents and information, including sensitive commercial or proprietary information or information protected from disclosure by law, court order, or any agreement with respect to confidentiality or nondisclosure. Such documents and information will not be produced without the entry of an appropriate confidentiality order.
9. Horowitz objects to the subpoenas to the extent that they are redundant, duplicative, and/or cumulative; seek documents and information already in the possession, custody, or control of Plaintiffs; call for duplicative documents and information; and/or seek documents and information already requested by Plaintiff or other parties through discovery in this action or otherwise.
10. Horowitz objects to the subpoenas to the extent that they seek information or materials not in Horowitz's possession, custody, or control, or to the extent that they require Horowitz to search for documents or information in places or from sources other than where such documents or information is kept in the ordinary course of business. Horowitz further objects to these subpoenas to the extent that they seek identification of documents or information that are no longer in existence.

11. Horowitz objects to the subpoenas to the extent that they fail to sufficiently identify third parties and to the extent that they define the parties regarding whom disclosure is sought herein to include parties that have not appeared in this action. Horowitz is under no obligation to, and will not, identify or produce documents in the possession of third parties.
12. Insofar as Horowitz has responded to a subpoena to which Horowitz has objected, Horowitz hereby reserves the right to maintain such objection, and such objection is not waived in any respect by the provision of a response.
13. To the extent Horowitz responds to any subpoenas, Horowitz does so without conceding the relevance of such documents or information or the subject matter of the applicable subpoena, and without prejudice to Horowitz's right to object to further discovery on such subject matter. By reserving such right, Horowitz does not intend to assume a duty to amend these responses other than as required by the Federal Rules of Civil Procedure, although Horowitz hereby reserves the right to amend these responses at a later time.

**Specific Responses and Objections**

A. Horowitz objects to the subpoenas to the extent they call for documents and information during what they define as the "Relevant Period," which runs from January 1, 2005. That overbroad definition, if adhered to, would place an undue burden upon Horowitz to produce approximately 14 years' worth of communications. Until the subpoenas are narrowed to cover a reasonable temporal scope, Horowitz will not respond thereto.

B. Horowitz objects to the first document request to the extent that it seeks "All communications and documents related to any election…for a position(s) on the Board." This request is overly broad and unduly burdensome and must be narrowed.

C. Horowitz objects to the first document request to the extent that it seeks "All communications and documents related to any process of selecting, nominating, and/or supporting candidates for the Board." This request is ambiguous in its use of the words "process," "selecting," "nominating," and "supporting." This request is also overly broad and unduly burdensome and must be narrowed.

D. Horowitz objects to the first document request to the extent that it seeks "All communications and documents related to "any solicitation, receipt, and/or expression of any endorsement for candidates for the Board." This request is overly broad and unduly burdensome and must be narrowed.

E. Horowitz objects to the first document request to the extent that it seeks "All communications and documents related to any vacancy on the Board." This request is overly broad and unduly burdensome and must be narrowed.

F. Horowitz objects to the first document request to the extent that it seeks "All communications and documents related to any campaign event or forum or meeting relating to any actual or potential candidacy to the Board." This request is overly broad and unduly burdensome and must be narrowed.

G. Horowitz objects to the first document request to the extent that it seeks "All communications and documents related to any advertisement and/or campaign publication…on behalf of any candidate for…the Board." This request is overly broad and unduly burdensome and must be narrowed.

H. Horowitz objects to the first document request to the extent that it seeks "All communications and documents related to 'get out the vote' or voting-related materials." This request is overly broad and unduly burdensome and must be narrowed.

I. Horowitz objects to the subpoenas to the extent that they seek documents and information resulting from an exercise by Horowitz of Horowitz's First Amendment and other constitutional rights, including his rights to free speech, petition, and assembly. The subpoenas must be narrowed.

J. Horowitz objects to the first document request to the extent that it appears targeted at seeking documents and information neither relevant to the claims at issue nor reasonably targeted at obtaining admissible evidence. The first document request is apparently targeted at obtaining documents/information in support of Senate Factor 4, which refers to "the exclusion of members of the minority group from candidate slating processes." While documents and information relating directly to a process by which candidates elect to run for office may be relevant, the rest of the first request for production, which relates to campaign events and get out the vote materials, is irrelevant to Senate Factor 4.

K. Horowitz objects to the subpoenas to the extent that they call for documents and information relating to his role as Executive Director of Community Outreach Center, a not-for-profit organization that assists members of the community in obtaining access to health, education, safety, and other services. Documents and information

relating to Community Outreach Center, which may include various contracts with Board, local, and state organization, are irrelevant and will not be produced.

L. Horowitz objects to the subpoenas to the extent that they appear to be targeted at Senate Factor 7, which looks at the "extent to which minority group members have been elected to public office in the jurisdiction." This information is obtainable by examining the race of the candidates and voters and the voting data. Seeking information related to Mr. Horowitz's endorsement, sponsorship, etc. *vel non* of certain candidates is irrelevant to this factor, and thus these documents and testimony will not be produced.

M. Horowitz objects to the second document request to the extent that it seeks communications but does not cover a delineated list of other parties. Horowitz will not go on a fishing expedition through over a decade's worth of documents seeking every mention of the words "East Ramapo," for example. Such is an unreasonable and clearly represents an undue burden upon Horowitz.

N. Horowitz objects to the second document request to the extent that it seeks "All communications and documents…relating to the conduct, agenda, and content of Board meetings or other District functions. This request is incredibly broad and unduly burdensome and utterly irrelevant. Mr. Horowitz's feelings about the conduct of the Board members or policy preferences have nothing to do with whether minorities have been unable to elect candidates to the Board due to their race or with any of the factors Courts look at in determining that.

O. Horowitz objects to the second document request to the extent that it seeks "All communications and documents…relating to District policies and practices." This request is incredibly broad and unduly burdensome and utterly irrelevant. Mr. Horowitz's policy preferences have nothing to do with whether minorities have been unable to elect candidates to the Board due to their race or with any of the factors Courts look at in determining that.

P. Horowitz objects to the second document request to the extent that it seeks "All communications and documents…relating to Board decisions." This request is incredibly broad and unduly burdensome and utterly irrelevant. Mr. Horowitz's policy preferences or feelings about Board decisions have nothing to do with whether minorities have been unable to elect candidates to the Board due to their race or with any of the factors Courts look at in determining that.

Q. Horowitz objects to the second document request to the extent that it seeks "All communications and documents…relating to filling vacancies on the Board." This request is overly broad and unduly burdensome and utterly irrelevant. Mr. Horowitz's policy preferences or opinions about Board vacancies have nothing to do with whether minorities have been unable to <u>elect</u> candidates to the Board due to their race or with any of the factors Courts look at in determining that.

R. Horowitz objects to the second document request to the extent that it seeks "All communications and documents…relating to public speaking and/or executive sessions during Board meetings." This request is overly broad and unduly burdensome and utterly irrelevant. Mr. Horowitz's policy preferences or opinions about the conduct of the Board have nothing to do with whether minorities have been unable to elect candidates to the Board due to their race or with any of the factors Courts look at in determining that.

S. Horowitz objects to the second document request to the extent that it seeks "All communications and documents…relating to the District's funding." This request is overly broad and unduly burdensome and utterly irrelevant. Mr. Horowitz's policy preferences or opinions about how the District should utilize its limited resources have nothing to do with whether minorities have been unable to elect candidates to the Board due to their race or with any of the factors Courts look at in determining that.

T. Horowitz objects to the second document request to the extent that it seeks "All communications and documents…relating to the Monitors and the Commissioner." This request is overly broad and unduly burdensome and utterly irrelevant. Mr. Horowitz's policy preferences or opinions about the Monitors and the Commissioner have nothing to do with whether minorities have been unable to elect candidates to the Board due to their race or with any of the factors Courts look at in determining that.

U. Horowitz objects to the second document request to the extent that it seeks "All communications and documents…relating to any schools in the District." This request is overly broad and unduly burdensome and utterly irrelevant. Mr. Horowitz's policy preferences or opinions about the schools in the District have nothing to do with whether minorities have been unable to elect candidates to the Board due to their race or with any of

the factors Courts look at in determining that. This request is also so vague and ambiguous as to be unintelligible.

V. Horowitz objects to the second document request to the extent that it seeks "All communications and documents…relating to any elections in the District." This request is overly broad and unduly burdensome and utterly irrelevant. Mr. Horowitz's policy preferences or opinions about the elections that take place in the District have nothing to do with whether minorities have been unable to elect candidates to the Board due to their race or with any of the factors Courts look at in determining that. This request is also so vague and ambiguous as to be unintelligible.

W. Horowitz objects to the subpoenas to the extent that they seek information related to the District or any other public officials. To the extent any third party discovery is permitted to be obtained from Horowitz, it must relate directly to the areas of focus of the Voting Rights Act, and communications with various public officials bear no relevance thereto.

If any other objections or concerns are raised, these responses will be supplemented or amended.

Sincerely,

Jeremy Doberman
Marc Wohlgemuth & Associates P.C.
21 Remsen Avenue
Suite 301
Monsey, New York 10952
845-746-2700 x 8005
845-746-2701

**PLEASE NOTE OUR NEW ADDRESS EFFECTIVE OCTOBER 16, 2017 – 21 REMSEN AVENUE, SUITE 301, MONSEY, NEW YORK 10952**

**ALERT: All wire instructions sent or received by this office MUST be verbally confirmed prior to initiating any wire transfer. Marc Wohlgemuth & Associates, P.C. will NOT issue a wire until wiring instructions are verbally confirmed and will not assume responsibility for wires issued to the firm without prior verbal confirmation.**

CIRCULAR 230 NOTICE: To ensure compliance with requirements imposed by U.S. Treasury Regulations, Marc Wohlgemuth & Associates P.C. informs you that any U.S. tax advice contained in this communication (including any attachments) was not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.
CONFIDENTIALITY NOTICE: This electronic mail transmission is confidential, may be privileged and should be read or retained only by the intended recipient. If you have received this transmission in error, please immediately notify the sender and delete it from your system.

---

This email may contain material that is confidential, privileged and/or attorney work product for the sole use of the intended recipient. Any review, disclosure, reliance or distribution by others or forwarding without express permission is strictly prohibited. If you are not the intended recipient, please contact the sender and delete all copies including any attachments.

Latham & Watkins LLP or any of its affiliates may monitor electronic communications sent or received by our networks in order to protect our business and verify compliance with our policies and relevant legal requirements. Any personal information contained or referred to within this electronic communication will be processed in accordance with the firm's privacy notices and Global Privacy Standards available at www.lw.com.