53rd at Third
885 Third Avenue
New York, New York  10022-4834
Tel: +1.212.906.1200  Fax: +1.212.751.4864
www.lw.com

FIRM / AFFILIATE OFFICES

| | |
|---|---|
| Beijing | Moscow |
| Boston | Munich |
| Brussels | New York |
| Century City | Orange County |
| Chicago | Paris |
| Dubai | Riyadh |
| Düsseldorf | Rome |
| Frankfurt | San Diego |
| Hamburg | San Francisco |
| Hong Kong | Seoul |
| Houston | Shanghai |
| London | Silicon Valley |
| Los Angeles | Singapore |
| Madrid | Tokyo |
| Milan | Washington, D.C. |

November 1, 2018

**NOT FILED VIA ECF DUE TO CONFIDENTIAL CONTENT**

Hon. Judith C. McCarthy
United States Magistrate Judge
Southern District of New York
300 Quarropas Street
White Plains, New York 10601-4150

Re: *National Association for the Advancement of Colored People, et al. Spring Valley Branch v. East Ramapo Central School District et al.*, No. 17 Civ. 8943

Dear Judge McCarthy:

We write on behalf of Plaintiffs in the above referenced action to request Court intervention regarding deficiencies in the document productions of several non-party members of the Board of Education (the "Board Members") of the East Ramapo Central School District (the "District") in response to subpoenas issued by Plaintiffs.[1]  After exchanging letters on these issues and discussing these issues with the Board Members since September 11, 2018, Plaintiffs believe the parties have reached an impasse.  Given the impending discovery cutoff in this matter, Plaintiffs now seek relief from the Court on the below issues.[2]

**The Board Members Failed to Properly Search, Collect and Produce Documents**

The Board Members' document productions are incomplete.  Among other things, (1) Mr. Wieder only searched one of his four email accounts despite having responsive emails in at least one other email account; (2) Mr. Germain has not produced a single document although he has been on the Board for five years; (3) only one Board Member (Mr. Harry Grossman) has

---

[1] The subpoenaed Board Members are non-parties Harry Grossman, Jacob Lefkowitz, Yonah Rothman, Yehuda Weissmandl, Mark Berkowitz, Bernard L. Charles, Joel Freilich, Pierre Germain, and Aron Wieder.

[2] Plaintiffs informed the District on October 31 that, having not received a response to its most recent letters regarding outstanding discovery issues, it would be seeking relief from the Court.  The District then responded by letter today.  Although the parties remain in negotiations regarding some of the discovery issues (including the discovery related to *Montesa*), the others in this letter are ripe for the Court's consideration.

produced text messages despite clear evidence that other Board Members have unique information that Mr. Grossman does not possess;[3] and (4) the metadata for some of the documents appear to be the date of the "collection" rather than the date the document was created or email sent. All of these deficiencies stem from the fact that the Board Members were responsible for collecting and producing *their own documents*. *See, e.g.* Wieder Tr. 28:17 – 39:25, Ex. A ("I logged into my e-mail account and … an e-mail that I understood that to be part of the subpoena, I forwarded to my attorney."); Def.'s Sept. 18 Ltr. at 2, Ex. B ("The documents produced by Mr. Wieder were collected from him directly and produced to you as we received them.").

Courts have consistently found that self-collections are problematic, noting that "[m]ost custodians cannot be 'trusted' to run effective searches because designing legally sufficient electronic searches in the discovery . . . context[] is not part of their daily responsibilities. Searching for an answer on Google (or Westlaw) is very different from searching for all responsive documents in the . . . e-discovery context." *Nat'l Day Laborer Org. v. U.S. Immigration and Customs Enforcement Agency*, 2012 WL 2878130, at *8 -9 (S.D.N.Y. July 13, 2012); *Claredi Corp. v. SeeBeyond Tech. Corp.,* No. 04 Civ. 01304 (RWS), 2010 WL 11579710, at *4 (E.D. Mo. Mar. 8, 2010), report and recommendation adopted in part, 04 Civ. 1304 (RWS), 2010 WL 11579799 ("Placing reliance on non-lawyer … custodians to self-collect documents without supervision by counsel is a practice which has been frequently questioned."); *see also Pension Comm. of the Univ. of Montreal Pension Plan v. Banc of Am. Sec., LLC,* 685 F. Supp. 2d 456, 473 n. 68 (S.D.N.Y. 2010) ("attorney oversight of the process, including the ability to review, sample, or spot-check the collection efforts is important.").

Plaintiffs raised these deficiencies with the Board Members by letters dated Oct. 12 and Oct. 23. *See* Pls.' Oct. 12 Ltr. at 2, Ex. C, and Pls.' Oct. 23 Ltr. at 1-2, Ex. D. However, rather than address these issues on the merits, the Board Members asserted that they "conducted a reasonable investigation" and that "[a]ny further questions about the methods by which data were collected are appropriately directed to each witness during deposition." Def.'s Nov. 1 Ltr. at 3, Ex. E. To be sure, Plaintiffs have been and will continue to ask about and uncover deficiencies at each deposition, excluding, of course, those Board Members who refuse to sit for depositions. The Board Members' position is yet another attempt to delay discovery and preclude Plaintiffs from questioning the Board Members about these communications during their depositions because Plaintiffs will only learn that documents exist during the depositions

---

[3] For example, although the Board Members claim that they were only obligated to produce documents from Mr. Grossman because the text messages from the other custodians were all "duplicates," Def's Nov. 1 Ltr. at 2, Ex. E, at least one text chain Mr. Grossman produced shows him leaving a group conversation involving several Board Members and then being re-added to the conversation at a later date. *See* Excerpt from Grossman Txt., Bates 1726-28, Ex. H. Mr. Grossman, of course, could not be in possession of the portions of the discussion he never received and, as such, those have not been produced. Likewise, at least one Board Member, Aron Wieder, possesses a public Twitter account that displays certain relevant communications. However, he (and other similarly situated Board Members) have refused to produce any relevant private messages exchanged on those social media platforms.

and will be forced to pursue additional documents piecemeal as each deposition occurs. Of the Board Members' text messages that have been produced, many contain highly relevant information. For example, Mr. Grossman states in one conversation that "[m]andated services for private schools will continue to drain funds from public schools," and other similar messages that go to the heart of the Board's responsiveness to the public school community. *See* Excerpt from Grossman Txt., Bates 0095, Ex. H. Additionally, the District insisted that Plaintiffs and Plaintiffs' third-party witnesses turn over all relevant text messages and social media, a request with which Plaintiffs and their third-party witnesses complied.

Plaintiffs therefore request that the Court order the Board Members to: (1) set forth the process, including locations, date ranges, search terms, by which their documents were collected for production; and (2) cure the deficiencies in their productions by conducting forensic document collections.

**The Board Members Failed to Produce Any Documents Related to Other Public Offices**

The non-party Board Members have not produced communications or documents relating to each Board Members' candidacy or application for public offices other than the Board. Information relating to the Board Members' other public offices is "relevant to the existence of slating organizations and/or the extent to which minority voters or candidates are able to participate in the slating process" in other political contests in East Ramapo, as well as "the existence of an influential non-governmental organization that assures those members a seat on the Board as well as other public positions." Pls.' Oct. 12 Ltr. at 3-4, Ex. C (citing *Goosby v. Town Bd. of Hepmstead, N.Y.*, 180 F.3d 476, 491 (2d Cir. 1999)). Although the Board Members represented to the Court that they would "search for and produce non-privileged, responsive documents related" to this request, Dkt. 107-1 at 3-4, on September 18, 2018, the Board Members, for the first time, stated "[w]e have never previously understood your request to be seeking documents relating to public offices *other* than the school board. . . " and refused to produce any such documents. Def.'s Sept. 18 Ltr. at 5, Ex. B.

Plaintiffs ask that the Court order the Board Members to search for and produce documents responsive to Plaintiffs' request promptly.

**The Board Members Failed To Produce Pre-2012 Documents**

Finally, the Board Members (other than Mr. Wieder) have failed to search for or produce any documents prior to 2012. *See* Def.'s Sept. 18 Ltr. at 5, Ex. B. Plaintiffs requested the Board Members produce responsive documents covering a period of "January 1, 2005, through the present," Pls.' Mar. 15, Amended RFPs at 5, Ex. F; *see also* Pls.' Sept. 11 Ltr at 4, Ex. G. To be sure, Plaintiffs are willing to narrow the relevant time period to reduce undue burden, but the Board Members have not articulated any burden and instead categorically claim that documents prior to 2012 are not relevant. *See* Def.'s Nov. 1, 2018 Ltr at 3, Ex. E. Not so. Documents and communications prior to 2012 are relevant and highly probative because, as the Court is aware, Plaintiffs allege in their complaint that the Board has not been responsive to the needs of the public school community since 2005 (Senate Factor 8). At least three Board Members served on the Board in 2012, and Mr. Weissmandl served from 2011. The documents are also relevant to

**LATHAM&WATKINS**LLP

other Senate Factors besides responsiveness. For example, pre-2012 documents would be relevant for demonstrating a history of discrimination in education (Senate Factor 5), and pre-2012 campaign materials for the Board Members are relevant to showing whether there is a history of candidate slating for Board positions or a history of racial appeals in Board campaigns (Senate Factors 4 and 7).

Plaintiffs ask that the Court order the Board Members to search for and produce documents prior to 2012 promptly.

* * *

Given the approaching November 20, 2018 discovery cutoff, Plaintiffs are concerned that the District and the Board's response to these issues may be an effort to "run out the clock" and deprive Plaintiffs of key information. With the Court's assistance, Plaintiffs hope the parties will be able to resolve these issues at the upcoming status conference on November 5, 2018, but should the Board Members insist that formal motion practice is necessary, Plaintiffs also respectfully request that the Court permit simultaneous briefing on a request for attorneys' fees pursuant to Rule 37 in connection with any motion practice on the above-referenced issues.

Respectfully submitted,

/s/ Claudia T. Salomon
Claudia T. Salomon

cc: All Counsel of Record via Email