# EXHIBIT A

Page 1

```
 1
 2              UNITED STATES DISTRICT COURT
 3              SOUTHERN DISTRICT OF NEW YORK
 4  - - - - - - - - - - - - - - - - - - - - - - - - - X
 5  NATIONAL ASSOCIATION FOR THE ADVANCEMENT
 6  OF COLORED PEOPLE, SPRING VALLEY BRANCH, et al.
 7                      Plaintiff,
 8        v.                              17 Civ. 8943
 9  EAST RAMAPO CENTRAL SCHOOL DISTRICT, et al.
10                      Defendants.
11  - - - - - - - - - - - - - - - - - - - - - - - - - X
12
13
14              DEPOSITION OF ARON WIEDER
15                   New York, New York
16              Wednesday, October 10, 2018
17
18
19
20
21
22
23  Reported by:
24  LEONORA L. WALKER
25  JOB NO. 149147
```

Page 26

A. WIEDER

THE VIDEOGRAPHER: The time is 10:49. We're back on record.                                   10:49
MR. MANGAS: And Before we get started, I'll note for the record we had someone enter the room just before the last break.           10:49
Go ahead and identify yourself.
MR. BUTLER: David Butler.
MR. MANGAS: Do you present one of the   10:50 parties, Mr. Butler?
MR. BUTLER: Yes, the defendant.
(Whereupon Exhibits 1 and 2 were marked   10:50 for identification.)
BY MR. MANGAS:
Q    Mr. Wieder, I'm going to hand you a   10:50 couple of documents marked Exhibit 1 and Exhibit 2, and I'll give you just a moment to look over those.
A    You want me to review the entire   10:50 document?
Q    You don't need to read it in detail, if you can just flip through it. I'm just going to ask if   10:50 you recognize the documents.
A    Okay.
Q    Do you recognize those two documents,   10:51 Exhibits 1 and 2, Mr. Wieder?

Page 27

A. WIEDER

A    Yes. It looks familiar.
Q    Those are subpoenas for documents that   10:51 you received in this case, correct?
A    Yes.
Q    Let's focus specifically --              10:51
A    You mean copies of documents?
Q    Correct, copies of document.
A    These are not the actual documents that   10:51 I received, right?
Q    Let me ask the question again.
These appear to be copies of the          10:51 documents requested from this case?
A    Yes.
Q    Let's focus on Exhibit 2.                10:51
Have you read this document before?
A    If I read the entire document? Word for word now? Or you mean before now, just now?   10:52
Q    You received this document marked as Exhibit 2 in the past, correct?
A    Yes.                                     10:52
Q    How did you receive this document?
A    Copies of it, yeah.
Q    I'm sorry. How did you receive it?       10:52
A    Wait a second. If I remember correctly

Page 28

A. WIEDER

-- because you got to forgive me. I have gotten many subpoenas over the years related about East Ramapo for   10:52 the most part, and I think these are the documents that my attorney got on my behalf, if I remember correctly.
MR. CRAVENS: I would just caution the   10:52 witness, you can certainly indicate if you received the document from your attorney. Do not reveal any communications -- content of any   10:53 communications you had with your attorneys.
THE WITNESS: Okay. So I think that my attorney received it on my behalf, yeah.      10:53
BY MR. MANGAS:
Q    And then you received it from your attorney?                                        10:53
A    I think so, yeah.
Q    Did you read when you received Exhibit 2 from your attorney, did you read it?         10:53
A    If I read the entire thing?
Q    Yes. Did you read the document?
A    I glanced through it, yes.               10:53
Q    And did you understand that you are required to produce documents requested in the subpoena marked as Exhibit 2?                             10:53
MR. CRAVENS: Objection to form.

Page 29

A. WIEDER

A    Yes.
Q    Did you conduct a search for such        10:53 documents?
A    Yes.
Q    What did you do? What steps did you      10:53 take?
A    I logged into my e-mail account and I physically went through the e-mails for a particular   10:54 period of time that the subpoena covered that my attorney told me. And I went through every single e-mail, and an e-mail that I understood that to be part   10:54 of the subpoena, I forwarded to my attorney.
Q    Do you recall what time period you looked for?                                      10:54
A    The exact dates?
Q    It's not a memory a test if you don't recall, but if you could tell me generally.    10:54
A    I don't -- I believe this happened like a half a year ago or more so when I got the subpoena.
MR. CRAVENS: If you don't recall, don't   10:54 speculate.
THE WITNESS: I don't recall, but it wasn't fairly recent. I think that I had     10:55 conversations with my attorney.

Page 30

A. WIEDER

```
 2        MR. CRAVENS:  Again, don't reveal the
 3    contents of any discussions that you had with     10:55
 4    your counsel.
 5        THE WITNESS:  And it's the time period
 6    that my attorney explained to me is when I        10:55
 7    physically went through the e-mails, ,for that
 8    time period, every single e-mail and any e-mail
 9    that I believed is under the subpoena, I          10:55
10    forwarded.  I think I forwarded almost all my
11    e-mails from that time period.
12 BY MR. MANGAS:                                       10:55
13    Q    Other than your e-mail account, did you
14 search anywhere else?
15    A    No.                                          10:55
16    Q    What's the e-mail address on the account
17 that you searched?
18    A    ABA845@yahoo.com, I believe.                 10:55
19    Q    Do you use any other e-mail accounts?
20    A    Currently?
21    Q    Let me re-ask that.                          10:56
22         Did you use any other e-mail accounts
23 during the time period specified in the subpoena?
24    A    I don't believe so.                          10:56
25    Q    Do you use any other e-mail accounts
```

Page 31

A. WIEDER

```
 2 currently?
 3    A    Do -- is that like a personal question?      10:56
 4         MR. CRAVENS:  Are you asking whether --
 5    if you're asking him whether there are other
 6    e-mail accounts that might have responsive        10:56
 7    documents --
 8         MR. MANGAS:  I'm asking the question, if
 9    he doesn't understand something he can ask me.    10:56
10         THE WITNESS:  Is it a personal question?
11    Does it have anything to do with the case or
12    the lawsuit?                                      10:56
13 BY MR. MANGAS:
14    Q    I'm asking you some questions about
15 discovery in this case.  And I'm asking you whether you  10:56
16 use any other e-mail accounts besides the one that you
17 just described to me?
18         MR. CRAVENS:  Objection to the form.         10:56
19    A    E-mails -- back then it was the only
20 e-mail that I used.
21    Q    Well, the subpoena --                        10:57
22    A    From what the subpoena covered and from
23 my understanding of what my attorney told me.
24    Q    And I'm asking whether you use any other     10:57
25 e-mail accounts currently?
```

Page 32

A. WIEDER

```
 2    A    Yes.
 3    Q    And what accounts are those?                 10:57
 4    A    Does it have anything to do with the
 5 case?
 6    Q    I'm asking the question.  We have you        10:57
 7 here under subpoena.  You can answer the question
 8 unless it's privileged and your lawyer instructs you
 9 not to.  I believe there's a protective order under the  10:57
10 case and you will have a chance to review the
11 transcript if there's something you feel is
12 confidential or private and you want to try to       10:57
13 designate that under the protective order you'll have
14 that opportunity after the deposition.
15    A    It's more like it's a personal question.    10:57
16 Again, I'm not an attorney.  I wouldn't understand
17 specifics, but I think it's more like a personal
18 question what I currently have.                      10:58
19    Q    If you would like go off the record and
20 have a conversation with your attorney.
21         MR. CRAVENS:  He indicated that the only    10:58
22    e-mail account that had potentially responsive
23    documents is the one that he searched.  I'm
24    struggling to find the relevance --               10:58
25         THE WITNESS:  At that time --
```

Page 33

A. WIEDER

```
 2         MR. CRAVENS:  -- of any current e-mail
 3    address.                                          10:58
 4         THE WITNESS:  -- I believe at that time
 5    I believe that was the only e-mail address I
 6    had.                                              10:58
 7 BY MR. MANGAS:
 8    Q    The subpoena continues through the
 9 present.  So it's a relevant question.               10:58
10         I'm asking do you have any other e-mail
11 accounts that you currently use?
12         MR. CRAVENS:  You can answer the            10:58
13    question.
14    A    Yes.
15    Q    And what accounts are those?                 10:58
16         MR. CRAVENS:  It's up to you whether you
17    want to provide that information.
18         THE WITNESS:  Do I have to?                  10:58
19 BY MR. MANGAS:
20    Q    I don't want to make you uncomfortable
21 or put you on the spot.  I'm not asking you to identify  10:59
22 -- you don't need to give the particular address.  I'm
23 just asking about other e-mail accounts that you may
24 have.                                                10:59
25    A    I have other e-mail accounts.  I have an
```

Page 34

A. WIEDER

account for the county legislature. I have an account in my current employment. I believe they -- it might have been another account when I started and it's a different account. And I have currently now another personal account, you know, but it's all recent.    10:59

Q    So let me make sure I understood that. You have an e-mail account in your role as county legislator. And I believe you said you have another e-mail account from your employer. And is that NYSHA, Inc.?

A    Yes.    10:59

Q    And then you have another personal e-mail account?

A    Yes.    10:59

Q    Who is the provider of the personal e-mail account?

A    Gmail.    10:59

Q    Do you use -- have you used any of those three accounts to communicate about the issues of East Ramapo public school district issues that are indicated in Exhibit 2?    11:00

A    I don't think so. I provided everything my attorney told me to provide. And that was the account that my attorney told me is covered under the    11:00

Page 35

A. WIEDER

subpoena. So that's the e-mail that I provided. And I believe at that time that was my only e-mail address. I was on the county legislature. I have Gmail account. So that's what I provided what the court asked me to provide.    11:00

Q    And just so the record is clear, you searched the Yahoo.com account for responsive e-mails?

A    I didn't search it. I told you before, maybe I wasn't clear so maybe it's now the time to clarify that I physically went through every e-mail. I believe I even -- I don't remember -- I think I even started from the beginning. I was going through every e-mail. And I believe I forwarded almost every e-mail that I went through. I didn't do any searches. I don't know what you mean by searches. Do you mean by searches that I just went through the e-mails? Or did I -- keywords. You gotta explain to me what you mean by searches.    11:00 11:01 11:01 11:01

Q    I'm just asking if you went into the e-mail account and looked for the documents responsive to the subpoena?    11:01

A    Yes.

MR. CRAVEN: Objection; asked and answered.    11:01

Page 36

A. WIEDER

THE WITNESS: I already told you. I think I told you that before.    11:01

BY MR. MANGAS:

Q    To be clear you did not go into your legislator account, your personal Gmail account, or your NYSHA account to search for the documents responsive to the subpoena, correct?    11:01

MR. CRAVENS: Objection; asked and answered.    11:02

You can repeat your answer.

THE WITNESS: Well, you're going to have to explain specifically. I did go into these accounts. Then I spoke to my attorney and then he told me what I needed to provide and that's what I provided. So when you say I didn't search, what do you mean by -- you said search, you mean -- you're going to have to explain what it means that I didn't search. I think I did -- I mean, I looked into those accounts, I spoke to the attorney and he told me what I need to provide and that's where I went to physically look. So I -- you're going to have to explain to me what you mean by searching.    11:02 11:02 11:02 11:02 11:02

BY MR. MANGAS:

Page 37

A. WIEDER

Q    Did you -- let me ask you a different question.    11:02

Did you send or receive e-mails about the East Ramapo public school district in any of the three accounts, the legislative, the Gmail, or the NYSHA account?    11:03

A    Not that was covered by the subpoena as explained to me by my attorney.    11:03

Q    So let me ask you. I know you mentioned the conversation with your attorney and I'm not asking what your attorney told you or what you talked about, but what was your understanding of the documents that you were required to produce to the subpoena?    11:03

A    Anything that has to do with East Ramapo for --    11:04

Q    Did you look for materials having to do with East Ramapo in any hard copy files?    11:04

MR. CRAVENS: Objection; asked and answered.

A    If I looked -- I don't think so that I looked because I don't think I -- I had documents that I believe that is hard copy. I think all of it was the e-mails.    11:04 11:04

Q    And did you look on any computers or

Page 38

A. WIEDER

1
2  mobile devices for documents responsive to the
3  subpoena?                                    11:05
4       MR. CRAVENS:  Objection to the form.
5       Do you mean other than searching using a
6  computer to look at the e-mail?              11:05
7       MR. MANGAS:  Let me clarify.  Thank you.
8  BY MR. MANGAS:
9    Q   Other than the e-mail accounts that you  11:05
10 reviewed, did you look anywhere else on the hard drive
11 of computers or mobile devices for documents about the
12 East Ramapo School District?                 11:05
13   A   I don't have one that would cover East
14 Ramapo and the computers was the e-mails.
15   Q   So to be clear, it's your testimony     11:06
16 today you have not sent or received anything that have
17 to do with the East Ramapo School District with your
18 e-mail account?                              11:06
19   A   I'm continuing the question to answer
20 the question.  He's clarifying an answer, so you have
21 to repeat because I lost my train of thought. 11:06
22   Q   So I asked earlier for your
23 understanding of what documents you were required to
24 produce pursuant to the subpoena.  Your answer was  11:07
25 anything that has to do with East Ramapo?

Page 39

A. WIEDER

1
2    A   That is covered, and I'm continuing,
3  that is covered by the subpoena as the explanation by  11:07
4  my attorney.
5    Q   Well, putting the explanation by your
6  attorney aside, what did you understand to be covered  11:07
7  by the subpoena?
8       MR. CRAVENS:  Objection; asked and
9  answered.                                    11:07
10   A   That it has to do with the subpoena and
11 the time period and the issue.
12   Q   What issue?                            11:07
13   A   East Ramapo.
14   Q   So during --
15   A   I mean, the lawsuit that we're currently  11:07
16 here for.
17   Q   So let me ask that again.
18       During the time period covered by the  11:07
19 subpoena, you did not send or receive any e-mails
20 having to do with East Ramapo public school district
21 from your legislative account, Gmail account, or NYSHA  11:08
22 account?
23       MR. CRAVENS:  Objection; asked and
24 answered.                                    11:08
25   A   I believe not, as far as I can recall.

Page 40

A. WIEDER

1
2       (Whereupon Exhibit 3 was marked for
3       identification on this day.)            11:08
4    Q   Mr. Wieder, I'm handing you a document
5  marked Exhibit 3.  I'll you have a moment to look at
6  it.                                          11:08
7    A   You want me to read the entire --
8    Q   You don't need to read it in detail.
9  I'm going to ask if you recognize it.        11:09
10   A   Oh, yeah.
11   Q   What is it?
12   A   It's a document that I signed,         11:09
13 declarations.
14   Q   It's a declaration that you submitted in
15 this case?                                   11:09
16   A   Yes.
17   Q   You made that declaration under the
18 penalty of perjury?                          11:09
19   A   Yes.
20   Q   You drafted this document?
21   A   You have to be specific by drafted.    11:09
22   Q   Did you write all the contents in this
23 document?
24   A   No.                                    11:09
25   Q   Who did?

Page 41

A. WIEDER

1
2    A   I had a conversation with my attorney.
3       MR. CRAVENS:  Again, I would caution you  11:09
4  to describe the process by which you worked
5  with counsel.  Do not describe any of the
6  specific communications that you had with   11:10
7  counsel.
8       THE WITNESS:  So I had a long
9  conversation or many conversations with my  11:10
10 attorney.  Based on those conversations, he
11 had, I believe, typed it or someone in the
12 office, and then he sent it to me, and I    11:10
13 reviewed it and revised it.  I believe we did
14 it over the phone.  And he sent me the final
15 draft and I signed it.  I think that -- that's  11:10
16 what I think the process was for this
17 particular -- this particular declaration.
18 BY MR. MANGAS:                               11:10
19   Q   And when you signed it these were your
20 words that were in the declaration?
21   A   What do you mean by my words?          11:11
22   Q   These statements that you're making in
23 the declaration.
24   A   Isn't that what -- I'm asking the      11:11
25 question just to understand your question.  Isn't that