# EXHIBIT B

September 18, 2018

**Via Email**
Claudia T. Saloman
Latham & Watkins LLP
53rd at Third
885 Third Avenue
New York, New York 10022-4834

Re: *NAACP, et al. v. E. Ramapo Cent. Sch. Dist., et al.*, No. 7:17-cv-08943-CS

Dear Counsel:

This letter will respond to your letter of September 11, 2018 in which you responded to our deficiency letter of September 4, 2018 and also raised several issues you have identified with the District's and individual third parties' productions of documents.

### Plaintiffs' Document Productions

*Named Plaintiffs Who Have Not Produced Documents*

Thank you for locating and producing additional responsive documents from Mr. Goodwin, Ms. Miller, and Ms. Manigo. Please confirm that all document productions from these plaintiffs are complete.

In your letter, you state that, based on "thorough interviews" of plaintiffs Julio Clerveaux, Hillary Moreau, Jose Vitelio Gregorio, and Washington Sanchez, you have "determined" that these plaintiffs "do not possess any further responsive documents beyond what has already been produced." (9/11 Ltr. at 1). To be clear, when you refer to "any documents" that have "already been produced" by these plaintiffs, we understand that the only documents you are referring to are: (a) their signed engagement letters and (b) with respect to Mr. Vitelio Gregorio, Mr. Moreau, and Mr. Clerveaux, copies of driver licenses. Mr. Sanchez has not produced a copy of a driver license and is not listed as the custodian of any other document plaintiffs' thus far have produced.

Based on your letter, we understand that neither you nor any vendor has actually searched any of these plaintiffs' records, computers, cell phones, or any other potential sources of relevant documents to confirm that they do not have responsive documents in their custody or control. Rather, we understand that you believe that your interviews with plaintiffs were sufficient to fully satisfy your obligations under the federal rules to conduct a good faith investigation. Please confirm whether our understanding is accurate.

*Metadata*

Thank you for confirming that you require additional information from us to confirm that the documents we received without metadata were produced from hardcopy documents. Last week we provided you with a complete list of the more than 2000 documents produced without metadata identified by bates range. We look forward to your further response.

### The District and Third Party Productions

*Plaintiffs' March 9, 2018 Document Request*

On March 9, 2018, you served a single additional discovery request on the District for "[a]ll document productions You made to or received from any party or non-party in the matter of *Montesa et al. v. Schwartz et al.*, No. 12. Civ. 6057, (S.D.N.Y.)." As an initial matter, we do not agree that we have waived objections to this request, as it is plainly subject to the general objections that we asserted to all of your document requests on March 3, 2018.

Moreover, shortly after receiving your request we negotiated a stipulation to "stay all [] pending discovery requests, both as to parties and to non-parties, until two weeks after the Court decides Plaintiffs' Motion for a Preliminary Injunction, except as to resolution of all discovery disputes pending before the Court as of the entry of this stipulation." [Dkt. No. 114]. As Ms. Calabrese observed in the proceedings before Judge McCarthy on July 12, since you withdrew your Motion for Preliminary Injunction, whether and when that stay lifted is, at best, ambiguous. *See* Transcript, July 12, 2018 at 12:21-23 (explaining to the Court that Plaintiffs had not produced documents in response to long outstanding discovery requests from the District because Plaintiffs "had understood discovery to be stayed with respect to the parties."). It now appears that you are taking the contrary position that the stay is lifted and that we should treat pending discovery requests from prior to your withdrawal of the preliminary injunction motion as though they now are in effect. Accordingly, and for the avoidance of any doubt, we serve along with this letter a formal response and objection to your request.

In all events, we have serious practical concerns about your request for production of the entire discovery record from the *Montesa* case that go beyond procedural niceties.

*First*, we cannot conceive any reason why production of the discovery record from the *Montesa* case would be relevant or proportional here. The *Montesa* case was a putative federal class action civil rights case against the District and the individual Jewish members of the District's board of education and administrative staff and against the District's former general counsel. The more than 400 individual plaintiffs alleged, among other things, that the District and the individual defendants had violated the Establishment Clause of the United States Constitution by making policy and education decisions that were secretly motivated by their Jewish faith. The production record from *Montesa* consists of several hundred thousand documents including but not limited to:

- the full record files of the District's students with disabilities, which include highly confidential medical records and education records of minors protected from disclosure by the IDEA and HIPAA;
- records relating to federal Title I, II, and III grant applications and funding;
- records relating to contractors retained by the District to provide education services;
- records relating to the District's real estate transactions and lease terms;
- records relating to the District's purchase and loan of textbooks and educational materials for students in public and private schools;

- records possessed by the 400+ named plaintiffs related to the claims and allegations of the *Montesa* complaint against the defendants;
- the 400+ named plaintiffs' federal, state, and local tax filing documents;
- records relating to communications between or among the 400+ named plaintiffs and state, local, and federal government officials.

The foregoing list does not include any of the document discovery exchanged and received from third parties, nor is it fully inclusive of all of the discovery exchanged just among the parties to the case. Notably, however, no discovery was sought or produced in the *Montesa* case in any way relating to or concerning the District's conduct of elections for positions on the Board of Education—the only thing that matters to this Voting Rights Act case.

Discovery in the *Montesa* case lasted for several years and the entire process was ruinously expensive for the District. Discovery also required the disclosure of highly sensitive educational materials and severely impacted the protected privacy interests of innocent children. The District will not even consider going down that path again unless you can articulate, in specific detail, why you believe the *Montesa* discovery record is relevant to the substance of your case. Please note that, in our view, the usual vague hand waving in the general direction of "responsiveness" is completely inadequate to justify disclosure of the medical and education records of children with disabilities.

Even assuming you could articulate a genuine reason *why* you should be entitled to production of the *Montesa* discovery record, that would not resolve the practical problems associated with making such a production. The *Montesa* case was dismissed with prejudice on May 5, 2017. While we have retained the *Montesa* discovery record on behalf of our clients, it is not readily available for production. After the case ended, we transferred the data to an outside vendor for long-term "cold storage." We are still investigating what the process would be and how much it would cost to "thaw" out the *Montesa* record to make it usable, but we understand the expense could amount to at least several thousand dollars. Under these circumstances, courts recognize that cost-shifting may be appropriate. *See Zubulake v. UBS Warburg LLC*, 217 F.R.D. 309, 320 (S.D.N.Y. 2003). Accordingly, even if you could show that you had some specific need for production of the *Montesa* discovery record in this case, Plaintiffs should bear all costs associated with collecting and restoring the data.

To sum up the District's positions on this point: (1) we do not agree that the District has waived any objection to Plaintiffs' request for production of the *Montesa* discovery record; (2) production of the *Montesa* discovery record is neither relevant nor proportional here; and (3), even if production of the *Montesa* discovery record were required, Plaintiffs should pay all costs associated with collecting the data from cold storage and restoring it to a usable format.

*Text Message and Social Media Documents*

In your letter, you state that "it is apparent that the District either never collected, or collected but has not yet produced, any text messages or social media documents as requested both in Plaintiffs' First Set of Requests for Production to the District served on February 15, 2018, and Plaintiffs' March 15, 2018 Amended Subpoena *Duces Tecum* to the non-party Board members." (Ltr. at 2). That is not accurate. As of this time, we have produced almost *two thousand pages* of conversations among multiple users over the social media text communication

service "whatsapp." (ERCSD_GROSSMAN_00000490-503 and ERCSD_BoE00000075-1824). (Neither of these documents were produced as an attachment to an email and we're not sure what documents you are referring to in your letter). You may have missed these documents in the production because, instead of producing each individual text message in the whatsapp conversations as many thousands of individual separate documents, we instead exported the full set of whatsapp communication as a single document reflecting an entire conversation. That fact, of course, does nothing to diminish the substantial production we have made of text and social media documents.

With respect to other social media platforms besides whatsapp, we have conducted thorough interviews of all third party subpoena recipients and determined, based on such interviews, that they do not possess any further responsive documents from social media or text messaging services.[1]

*"Missing" Metadata and "Improper" Document Collection*

With respect to the 50 documents listed in Appendix A to your letter, we have attached text "overlay" files that contain metadata that inadvertently had been withheld from the referenced documents. We understand that you should be able to use the overlay files to input the missing metadata into your database, but please advise if there are any issues in this process and we can work out some other solution if needed.

The documents produced by Mr. Wieder were collected from him directly and produced to you as we received them. Mr. Wieder is neither a party to this case nor an employee or agent of the District. As a third party, the effort to collect responsive documents from Mr. Wieder in this manner was appropriate and proportional. Based on your letter, you seem to have had no trouble discerning from the text of each document when the document was collected versus when the document was created. It is therefore not "impossible" for you to "accurately assess" the sufficiency of Mr. Wieder's production as you claim. If you have any other questions about particular documents that you are unable to answer from reviewing the documents themselves, then you should ask Mr. Wieder about the documents during his deposition.

*"Missing" Documents*

You state in your letter that it appears that no documents from Mr. Germain have been produced and that only twenty-nine documents from Mr. Charles have been produced. However, you have also correctly diagnosed the reason why that appears to be so but is not, in fact, the case: we have collected and produced documents from Mr. Germain and Mr. Charles, but before production we removed from the database exact duplicate documents. For purposes of illustration, based on our present count, we have produced documents from the third party subpoena recipients as follows:

- Mr. Charles – 200 pages;
- Mr. Freilich – 8 pages;
- Mr. Grossman – 903 pages;
- Mr. Weissmandl – 404 pages;

---

[1] We further note that several additional whatsapp documents have been withheld as privileged and are reflected on our accompanying privilege log.

- Mr. Rothman – 442 pages.

If we had not run the de-duplication software on the database prior to production, we would have produced the following page volumes:

- Mr. Charles – 278 pages;
- Mr. Freilich – 18 pages;
- Mr. Germain – 17 pages;
- Mr. Grossman – 903 pages;
- Mr. Weissmandl – 1641 pages;
- Mr. Rothman – 781 pages.

The delta between the production volume and the pre-production volume represents only those documents that are identical to each other. While you seem to understand that this de-duplication process occurred and is typical for productions of electronic documents, you state that "there is no basis … to withhold a document collected from the files of its original author or sender." You have never previously articulated such a requirement in either your discovery requests or in prior meet and confer discussions, and we don't understand the concern.

The de-duplication software removes only identical duplicate documents. Are you saying that you want us to go back and produce identical copies of the same documents that you already have? Why? Your concern that "documents from Germain or Charles that are also reflected in the emails of other Board members could contain additionally responsive threads or attachments" misunderstands the de-duplication software. If there were additional responsive threads or attachments associated with the documents, then the documents would not be removed from the production as exact duplicates. The same holds true for documents produced by Mr. Freilich and Mr. Lefkowitz. With respect to all third party subpoena recipients, our document collection and productions are complete, though subject to supplementation as the circumstances may require.

*Communications Relating to Other Public Office*

With respect to documents relating to the third party subpoena recipients' candidacy or campaigns for the East Ramapo Central School District's Board of Education, responsive records have been searched for, collected, and produced insofar as they exist.

We have never previously understood your request to be seeking documents relating to public offices *other* than the school board, much less offices that are not elected positions. Please explain why you think such documents, if they exist, would be relevant here.

*Date Range*

The third party subpoena recipients' records were searched for documents going back to 2012, and we produced responsive, non-privileged documents within that date range. That date range corresponds with (and exceeds by one) the years of elections for the District's Board of Education analyzed by your experts. We have not searched for documents created before 2012 and we intend to stand on our objection.

*Privilege Log*

Accompanying this letter is the First Consolidated Privilege Log of Defendant East Ramapo Central School District and Third Parties Harry Grossman, Jacob Lefkowitz, Yehuda Weissmandl, Yonah Rothman, Joel Freilich, Pierre Germain, and Bernard Charles Jr.

Please take particular note of "Appendix A" to the Privilege Log, which also accompanies this letter. In Appendix A, we have separately broken out those documents we have produced in a redacted form, identified by bates range and a reference to their corresponding entry on the Privilege Log. Let us know if you have any questions regarding either of the foregoing documents.

We note that as of the date of this letter we have received no privilege logs from Plaintiffs or from any of the third parties you represent. We will expect to receive your privilege log(s) soon, and in all events your privilege log(s) should be served sufficiently in advance of the soon to be scheduled fact depositions.

~ ~ ~

We, of course, remain available to meet and confer regarding any or all of the foregoing issues. Please let us know if you'd like to arrange a phone call to discuss and work out any remaining areas of disagreement.

Regards,

*s/ Randall M. Levine*
Randall M. Levine

cc: All Counsel of Record