**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE, SPRING VALLEY BRANCH; JULIO CLERVEAUX; CHEVON DOS REIS; ERIC GOODWIN; JOSE VITELIO GREGORIO; DOROTHY MILLER; HILLARY MOREAU; and WASHINGTON SANCHEZ,<br><br>Plaintiffs,<br><br>v.<br><br>EAST RAMAPO CENTRAL SCHOOL DISTRICT,<br><br>Defendants. | 17 Civ. 8943 (CS) (JCM) |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR RULE 72(a) OBJECTION TO, AND MOTION TO RECONSIDER, MAGISTRATE JUDGE'S DECEMBER 3, 2018 ORDER GRANTING DEFENDANT'S MOTION TO QUASH SUBPOENAS DIRECTED TO DAVID BUTLER**

# TABLE OF CONTENTS

**Page**

INTRODUCTION ..........1

BACKGROUND ..........4

ARGUMENT ..........6

I. PLAINTIFFS' DOCUMENT SUBPOENA IS PROPER ..........6

II. PLAINTIFFS' DEPOSITION SUBPOENA IS PROPER ..........7

1. The Magistrate Judge Had No Basis to Doubt the Accuracy of the Statements ..........8

2. The Communications Between Mr. Butler and [redacted] Were Not Confidential and Therefore Are Not Privileged ..........9

3. The Information Sought By Plaintiffs Is Highly Probative of Issues Critical to Plaintiffs' Claims ..........11

4. Plaintiffs Should Be Permitted To Depose Mr. Butler Under the Second Circuit's "Flexible Approach" ..........12

CONCLUSION ..........15

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*In re Chevron Corp.*,
749 F. Supp. 2d 141 (S.D.N.Y.), *aff'd sub nom. Lago Agrio Plaintiffs v. Chevron Corp.*, 409 F. App'x 393 (2d Cir. 2010) ....................3, 9, 13, 14

*In re Cty. of Orange*,
208 B.R. 117 (Bankr. S.D.N.Y. 1997) ....................15

*Emigrant Bank v. Commonwealth Land Title Ins. Co.*,
No. 15-CV-7593 (KMK), 2017 WL 4286335 (S.D.N.Y. Sept. 26, 2017) ....................11

*Haugh v. Schroder Inv. Mgmt. N. Am. Inc.*,
2003 WL 21998674 (S.D.N.Y. Aug. 25, 2003) ....................10

*Mendillo v. Prudential Ins. Co. of Am.*,
2014 WL 655297 (D. Conn. Feb. 20, 2014) ....................6

*New Moon Shipping Co. v. MAN B & W Diesel AG*,
121 F.3d 24 (2d Cir. 1997) ....................8

*NXIVM Corp. v. O'Hara*,
241 F.R.D. 109 (N.D.N.Y. 2007) ....................9

*Oehmke v. Medtronic, Inc.*,
Civ. No. 13-2415, 2015 WL 2242041 (D. Minn. Mar. 26, 2015), *aff'd*, No. CIV. 13-2415, 2015 WL 2242064 (D. Minn. May 12, 2015) ....................15

*Rainbow Inv'rs Grp., Inc. v. Fuji Trucolor Missouri, Inc.*,
168 F.R.D. 34 (W.D. La. 1996) ....................15

*Robbins & Myers, Inc. v. J.M. Huber Corp.*,
274 F.R.D. 63 (W.D.N.Y. 2011) ....................7, 9

*Sekisui Am. Corp. v. Hart*,
945 F. Supp. 2d 494 (S.D.N.Y. 2013) ....................4, 10

*Shelton v. Am. Motors Corp.*,
805 F.2d 1323 (8th Cir. 1986) ....................12

*In re Subpoena Issued to Dennis Friedman*,
350 F.3d 65 (2d Cir. 2003) ....................7, 12, 13

*Thornburg v. Gingles*,
478 U.S. 30 (1986).....1, 11

*United States v. Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am., AFL-CIO*,
119 F.3d 210 (2d Cir. 1997).....10

*United States v. Tellier*,
255 F.2d 441 (2d Cir. 1958).....9

*Veal v. Geraci*,
23 F.3d 722 (2d Cir. 1994).....11

*Versatile Housewares & Gardening Sys. Inc. v. Thill Logistics Inc.*,
No. 09 CIV 10182 (KMK)(PED), 2010 WL 11601216 (S.D.N.Y. Dec. 6, 2010).....15

*In re von Bulow*,
828 F.2d 94 (2d Cir. 1987).....7

**STATUTES**

52 U.S.C. § 10301.....1

**RULES**

Fed. R. Civ. P. 72(a).....4, 8

N.Y.C.P.L.R. 4503(a)(1).....6

Sup. Ct. Std. 503.....9

# INTRODUCTION

Defendant East Ramapo Central School District (the "District") uses an at-large election system to elect candidates to the District's Board of Education (the "Board"), which unlawfully denies minority citizens an equal opportunity to elect candidates of their choice in violation of Section 2 of the Voting Rights Act of 1965, 52 U.S.C. § 10301 (the "VRA"). Critical to Plaintiffs' claims under the VRA are whether (1) there is a "candidate slating process" that denies access to minority groups; and/or (2) a lack of responsiveness by elected officials to the needs of minority group members. *Thornburg v. Gingles*, 478 U.S. 30, 37 (1986). The District has repeatedly denied that a "slating" process exists, relying heavily on the fact that minority candidates have been elected to the Board. *See, e.g.*, Dkt. 76, Dist. Comb. Mem. of Law in Support of Mot. to Dismiss and Opp. to Pl. Mot. for Prelim. Injunction, at *passim; see also* Dkt. 111, Dist. Reply Mem. in Support of Mot. to Dismiss, at *passim*; Dkt. 238, Dist. Ltr. Resp. to Dkt. 226 at 2.

Evidence in this case, however, establishes not only that a candidate slating process does exist,[1] but also that the District is aware of it and has encouraged its use in furtherance of this litigation. Text messages between non-parties [REDACTED] reveal that the District's counsel, David Butler, [REDACTED]

[1] [REDACTED]

This evidence is highly probative of the facts that: (1) a slating organization exists; (2) the District knows a slating organization exists; (3) the District knows the slating organization can effectively determine who will win Board elections; and (4) the District and the slating organization have worked in concert to help the District escape scrutiny for its VRA violations. However, the District is attempting to shield itself from further discovery on these issues by invoking so-called "legislative immunity" and attorney-client privilege. Plaintiffs have been prevented from taking testimony from [redacted] on these issues because he and the District refuse to sit for a deposition on the basis of legislative privilege and immunity.[2] This leaves Plaintiffs in the position of attempting to discover non-privileged information about these issues from Mr. Butler.

Plaintiffs readily acknowledge that a subpoena issued to an attorney can raise unique issues and, as such, carefully considered whether seeking discovery from Mr. Butler was appropriate in this case. This is not an attempt to disqualify Mr. Butler from representing anyone in this case—Plaintiffs have expressly disclaimed any such arguments. Nor is it an attempt to distract him from trial preparation; trial is more than five months away, and Mr. Butler has not argued that the volume of responsive documents or a short deposition would interfere with his

[2] The District filed an appeal of this Court's order ordering non-party Board members, including [redacted], to sit for depositions. *See* Dkt. 243, Amend. Notice of Appeal. However, the District did not first ask this Court to certify that decision for interlocutory review, so its appeal of a non-final order is both procedurally and substantively without merit. On December 13, 2018, Plaintiffs moved to dismiss the appeal, *See* Doc. 19, Pl. Mot. to Dismiss (2d. Cir.), and on December 14, 2018, the District amended its notice of appeal, Dkt. 243, Amend. Notice of Appeal.

representation of the District in this matter. Plaintiffs are simply trying to obtain relevant, non-privileged, information.

Document Subpoena: Plaintiffs issued a subpoena requesting that Mr. Butler produce "communications with non-clients related to: selecting, nominating, or supporting candidates for election or nomination to the Board, including vacancies; and solicitation, receipt, or expression of support or endorsement for candidates for the Board, including suggestions to consider or support candidates based on their race." Ex. 2, Subpoena *Duces Tecum* to D. Butler. It is uncontroversial that Mr. Butler's communications with non-clients on these issues are discoverable. Neither the District nor Mr. Butler have disputed this point or claimed that such documents do not exist. *See* Dkt. 223, Dist. Ltr. Reply in Support of Mot. to Quash at *passim* (arguing that Plaintiffs should not be permitted to depose Mr. Butler, but not addressing the document subpoena, which requested communications with non-clients). The Magistrate Judge did not provide a basis for quashing Plaintiffs' document subpoena. *See, e.g.,* Ex. 3, Dec. 3. 2018 Hr'g. Tr. at 6:14-14:18.

Deposition Subpoena: While Plaintiffs' request to depose Mr. Butler on these topics presents more sensitive issues, there are relevant, non-privileged topics which Mr. Butler could address in a deposition, as discussed below. In this Circuit, "[c]ourts [allow] discovery of lay lobbyists, public relations consultants, media representatives, and political organizers. There is no sound reason for reaching a different result where someone with a law degree engages in similar activities. Indeed, . . . it is well settled that the attorney-client privilege does not extend to communications involving a lawyer where the lawyer is engaged in such activities." *In re Chevron Corp.*, 749 F. Supp. 2d 141, 144 (S.D.N.Y.), *aff'd sub nom. Lago Agrio Plaintiffs v. Chevron Corp.*, 409 F. App'x 393 (2d Cir. 2010) (summary order). Here, it is precisely these

activities—and only those activities—on which Plaintiffs seek discovery. The Magistrate Judge erred in granting the District's motion to quash Plaintiffs' deposition subpoena directed to Mr. Butler, for three reasons. *First*, without any countervailing evidence, the Magistrate Judge concluded that [redacted] *See, e.g.,* Ex. 3, Dec. 3. 2018 Hr'g. Tr. at 8:22-25. *Second*, the Magistrate Judge assumed that the underlying advice from Mr. Butler was privileged, even though it was intended for a third party and does not appear legal in nature. *See id.* at 11:23-12:5. *Third*, because [redacted] refuses to testify on the basis of his purported "legislative immunity," there are no other witnesses who could explain the Board members' efforts to elect or defeat certain candidates for the Board and their knowledge thereof. At a minimum, Plaintiffs respectfully request that the Court hold its final decision on this issue until the parties have a final order from the Second Circuit regarding whether [redacted] must testify at a deposition.

The Magistrate Judge assigned to this matter has handled discovery with great attention and care, but Plaintiffs respectfully submit that the Magistrate Judge's order on these questions are predicated on errors of fact and law, such that this Court should reverse or amend pursuant to Federal Rule of Civil Procedure 72(a). *Sekisui Am. Corp. v. Hart*, 945 F. Supp. 2d 494, 502, 510 (S.D.N.Y. 2013) (reversing a magistrate judge's order pursuant to F.R.C.P. 72(a)).

## BACKGROUND

[redacted]



[redacted]

[redacted]

It is clear from those conversations that these influential members of the white community were concerned that the one minority-preferred member on the Board—[redacted]—was not sufficiently supportive of the white, private school agenda, [redacted]. Informed by those concerns, Mr. Butler recommended that [redacted] *Id.* Essentially, Mr. Butler and the

---

[3] [redacted].

District intend to continue representing to this Court that the presence of minority *candidates* on the Board demonstrates the District is not in violation of the VRA, while working to obscure the fact that minority *voters* lack the opportunity to elect candidates of their choice.

Accordingly, Plaintiffs served narrow and targeted subpoenas on Mr. Butler, seeking non-privileged documents and testimony regarding "communications with non-clients related to: selecting, nominating, or supporting candidates for election or nomination to the Board, including vacancies; and solicitation, receipt, or expression of support or endorsement for candidates for the Board, including suggestions to consider or support candidates based on their race." Ex. 2, Subpoena *Duces Tecum* to D. Butler; Ex. 6, Subpoena *Ad Testificandum* to D. Butler. The District moved to quash the subpoenas, and the Magistrate Judge granted the District's motion. *See* Dec. 3, 2018 Minute Entry.

## ARGUMENT

### I. PLAINTIFFS' DOCUMENT SUBPOENA IS PROPER

Plaintiffs only requested communications between Mr. Butler and non-clients relating to Board elections. *See* Ex. 2, Subpoena *Duces Tecum* to D. Butler. The District has not, and cannot, argue that such communications are privileged or do not exist. N.Y.C.P.L.R. 4503(a)(1) (defining the attorney client privilege as protecting a "confidential communication made between the attorney and . . . the client in the course of professional employment"); Dkt. 223, Dist. Ltr. Reply In Support of Mot. to Quash at *passim* (not addressing the document subpoena). Document subpoenas to attorneys are proper where they seek non-privileged documents. *See e.g.*, *Mendillo v. Prudential Ins. Co. of Am.*, 2014 WL 655297, at *4 (D. Conn. Feb. 20, 2014) (ordering an attorney to produce documents because "[t]he Court agrees with defendant that communications between Attorney Beebe and third parties are not generally protected by the attorney-client privilege"). Moreover, the Magistrate Judge provided no explanation as to why

she granted the motion to quash the document subpoena. *See* Ex. 3, Dec. 3, 2018 Hr'g Tr at 6:12-14:18; *see also* Ex. 2, Subpoena *Duces Tecum* to D. Butler. Because Plaintiffs seek non-privileged communications relevant to this action—and the District has not even attempted to argue otherwise—the Court should reverse the Magistrate Judge's erroneous order quashing the document subpoena.

## II. PLAINTIFFS' DEPOSITION SUBPOENA IS PROPER

Plaintiffs' deposition subpoena is likewise appropriate. Plaintiffs are not interested in attempting to invade any privilege Mr. Butler may have with any client. However, where he was not providing legal advice or where his client (████████) waived any privilege that may have once attached to those communications, testimony is appropriate. Indeed, Mr. Butler's request to ████████████████████████████████ ██████ was not legal advice and is not privileged because it was meant to be shared with a non-client. *See Robbins & Myers, Inc. v. J.M. Huber Corp.*, 274 F.R.D. 63, 83–84 (W.D.N.Y. 2011) (collecting cases and holding that the information in the documents was not intended to remain confidential and therefore was not protected by privilege); *see also In re von Bulow*, 828 F.2d 94, 102 (2d Cir. 1987) ("[C]onversation[s] . . . not intended to be confidential, but . . . meant to be passed on to third parties" are not privileged.). Finally, Mr. Butler's instruction to ████████ implicates issues that are central to this case. Because this information is not privileged and is highly probative of Plaintiffs' claims, Plaintiffs should be permitted to seek limited discovery from Mr. Butler, despite his role in the litigation. *See In re Subpoena Issued to Dennis Friedman*, 350 F.3d 65, 71-72 (2d Cir. 2003) (finding that a "flexible approach . . . is

mandated by the federal rules" in deciding whether to allow a deposition of litigation counsel to proceed).

The Magistrate Judge's order granting the motion to quash the deposition subpoena was predicated on two mistakes: (1) doubting the accuracy of [redacted] Mr. Butler's advice specifically intended for a third party; and (2) concluding that Mr. Butler's advice was privileged. *See* Ex. 3, Dec. 3, 2018 Hr'g Tr. at 11:23-12:5. In addition, the Magistrate Judge did not conduct an analysis pursuant to the "flexible approach" followed in this Circuit with regards to depositions to litigation counsel. *See Friedman*, 350 F.3d at 71-72. The Order was "clearly erroneous," and therefore this Court should reverse and deny the District's motion to quash. Fed. R. Civ. P. 72(a).

**1. The Magistrate Judge Had No Basis to Doubt the Accuracy of the Statements**

As an initial matter, the Magistrate Judge wrongfully discounted the accuracy of [redacted]. *See* Ex. 3, Dec. 3, 2018 Hr'g Tr. at 8:22-25 [redacted]) (emphasis added). The Magistrate Judge improperly refused to accept [redacted] statements as accurate, despite the fact that there was no evidence nor indicia that they lacked credibility. *See New Moon Shipping Co. v. MAN B & W Diesel AG*, 121 F.3d 24, 30 (2d Cir. 1997) (finding it was error for the district court to "disbelieve the factual assertions set forth by [Plaintiff's agent] . . . without an evidentiary hearing"). Indeed, neither Mr. Butler nor the District disputed that [redacted] correctly conveyed Mr. Butler's statements, and the District appeared to concede their accuracy. *See* Dkt. 223 at *passim* (stating that the communications were commonplace "legal advice"). Because the Magistrate Judge doubted the credibility [redacted] statements without evidentiary support, and this doubt was decisive to the Magistrate Judge's reasoning to quash

Mr. Butler's subpoena, the order is "clearly erroneous" and should be overturned. *See* Ex. 3, Dec. 3, 2018 Hr'g Tr. at 11:23-25 ("I don't believe that a third – a statement that is from someone that may or may not be an accurate reflection of what Mr. Butler said is going to allow you to open the door and ask Mr. Butler questions."); *see also* Fed. R. Civ. P. 72(a).

**2. The Communications Between Mr. Butler and [REDACTED] Were Not Confidential and Therefore Are Not Privileged**

The Magistrate Judge also assumed that the advice provided by Mr. Butler to Mr. [REDACTED] was privileged, but that conclusion is belied by the very text of the communication at issue. *See* Ex. 3, Dec. 3, 2018 Hr'g Tr. at 12:3-5 ("I think he's involved in being a zealous advocate on behalf of his client and providing advice to his client under the attorney-client privilege."). [REDACTED] "[I]t is well established that communications between an attorney and his client, though made privately, are not privileged if it was understood that the information communicated in the conversation was to be conveyed to others." *United States v. Tellier*, 255 F.2d 441, 447 (2d Cir. 1958). Because Mr. Butler intended for [REDACTED] to convey the communication to a third party, it is not privileged. *See Robbins & Myers*, 274 F.R.D. at 83–84.

In addition, Mr. Butler's advice to a non-client to put a minority candidate on the Board who would serve the policy goals of the white community is not *legal* advice. Communications from attorneys—even when they are between an attorney and a client—are only privileged to the extent they are made for the purpose of rendering legal advice. *See* Sup. Ct. Std. 503. Courts routinely find that attorney communications which do not relate to the provision of legal advice are not protected by either the attorney-client privilege or the work product doctrine. *See In re Chevron Corp.*, 749 F. Supp. 2d at 165-66 (collecting cases and noting that the work product

doctrine "is not intended, however, to obscure what is essentially a lobbying and political effort, even one undertaken by a lawyer") (internal quotations and citations omitted); *see also NXIVM Corp. v. O'Hara*, 241 F.R.D. 109, 130 (N.D.N.Y. 2007) (when an attorney is "wearing multiple hats and . . . advising . . . on anything and everything other than legal services, whether business, media, public relations, or lobbying, there is no attorney-client privilege"). Just because Mr. Butler may have found it "good for the case" to conduct political and lobbying efforts, that "does not transform [his efforts] into legal advice." *Haugh v. Schroder Inv. Mgmt. N. Am. Inc.*, 2003 WL 21998674, at *3 (S.D.N.Y. Aug. 25, 2003) (finding that an attorney's media campaign efforts were not privileged). Mr. Butler's advice regarding who would best serve the interests of the white community on the Board is better characterized as political advice rather than legal advice, and is therefore not shielded by any privilege.

Moreover, it is the District's burden to establish that Mr. Butler's communications were, in fact, privileged, and neither the District nor Mr. Butler has made any real attempt to do so. *United States v. Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am., AFL-CIO*, 119 F.3d 210, 214 (2d Cir. 1997) ("The burden of establishing the existence of an attorney-client privilege, in all of its elements, rests with the party asserting it."); *see also* Dkt. 223, Dist. Ltr. Reply In Support of Mot. to Quash, at 2 (claiming that the "legal advice attributed to Mr. Butler was a core attorney-client privileged communication about ongoing litigation when it was first communicated" but not addressing whether or not Mr. Butler actually intended for the communication to remain confidential). Where, like here, a party fails to adequately support its

burden in claiming privilege, courts do not hesitate in finding that the privilege does not apply. *Int'l Bhd. of Teamsters*, 119 F.3d at 214.

Accordingly, the non-legal advice that Mr. Butler intended to convey to a third party is not protected by any attorney-client privilege, and the Magistrate Judge's order is contrary to law and should be overturned. *Sekisui Am. Corp*., 945 F. Supp. 2d at 502 ("A magistrate judge's findings may be considered clearly erroneous where on the evidence, the [district court] is left with the definite and firm conviction that a mistake has been committed.").

### 3. The Information Sought By Plaintiffs Is Highly Probative of Issues Critical to Plaintiffs' Claims

Mr. Butler's communications are not privileged, and implicate issues critical to Plaintiffs' claims. ***First***, Mr. Butler's advice to [REDACTED] is not only evidence that there is a "candidate slating process" for the Board elections, which denies access to minority groups, but it suggests that the slating process is *effective*. *Thornburg*, 478 U.S. at 37. If [REDACTED] were not involved with a slating organization, or if those slating efforts did not achieve results, then Mr. Butler would not have given the advice. ***Second***, Mr. Butler's advice to remove a Board member who [REDACTED] and others believed was overly responsive to the minority, public-school community and replace her with a minority candidate who supports the white, private school agenda reflects on the "lack of responsiveness on the part of elected officials to the particularized needs of the members of the minority group." *Id.* ***Third***, Mr. Butler's involvement in the process is all the more probative because, as the District's attorney, he is the District's agent. *Emigrant Bank v. Commonwealth Land Title Ins. Co.*, No. 15-CV-7593 (KMK), 2017 WL 4286335, at *7 (S.D.N.Y. Sept. 26, 2017) ("The relationship between an attorney and the client he or she represents in a lawsuit is one of agent and principal." (quoting *Veal v. Geraci*, 23 F.3d 722, 725 (2d Cir. 1994)). Thus, his knowledge of, and involvement in, the slating

process demonstrates the District's knowledge of and/or participation in the slating process, despite the District's repeated denials that it exists. *See*, *e.g.*, Dkt. 76 at 36-37 ("Plaintiffs have no contrary evidence that a secret 'private school community' slating process exists.").

***Last***, the District, through Mr. Butler, has argued repeatedly that it cannot be in violation of the VRA because there are minorities on the Board. *See, e.g.*, Dkt. 238, Dist. Ltr. Resp. to Dkt. 226 at 2 ("Unlike any other Voting Rights Act case in this circuit, minorities in East Ramapo have had consistent success in running for the school board . . . it weighs decisively in favor of the District."). But the evidence here suggests that there are minorities on the Board only if the white slating organization approves of them, and the District knows as much. Moreover, the slating organization places minority members on the Board at least in part to support the District's claims in this litigation, and at the request of the District's counsel. *See* Ex. 1 [REDACTED] In other words, the District wants to represent to this Court that there is no illegal discrimination because there are minority *members* of the Board, while actively concealing the reality that it has its thumb on the scale, preventing minority *voters* from having a fair chance to elect candidates of their choice. Because these efforts reach issues at the very heart of Plaintiffs' claims, Plaintiffs are entitled to discovery relating to them.

**4. Plaintiffs Should Be Permitted To Depose Mr. Butler Under the Second Circuit's "Flexible Approach"**

The Second Circuit has adopted a "flexible approach" in determining whether litigation counsel can be deposed. *See Friedman*, 350 F.3d at 71-72. In so doing, this Circuit has specifically rejected blanket rules from other circuits that disfavor deposing litigation counsel. *Compare Shelton v. Am. Motors Corp.*, 805 F.2d 1323 (8th Cir. 1986) (announcing a blanket rule

disfavoring the deposition of litigation counsel) *with Friedman*, 350 F. 3d at 71-72 (describing this Circuit's "flexible approach" and specifically rejecting *Shelton*). In the Second Circuit, courts weigh the following in determining whether a deposition of litigation counsel should go forward: (1) "the need to depose the lawyer;" (2) "the lawyer's role in connection with the matter on which discovery is sought and in relation to the pending litigation;" (3) "the risk of encountering privilege and work-product issues;" and (4) "the extent of discovery already conducted." *Friedman*, 350 F.3d at 72. In this case, each of those factors favors discovery.

The first factor looks at the importance of the witness in matters relevant to the proceeding. *See In re Chevron Corp.*, 749 F. Supp. 2d at 162-63 (denying a motion to quash and finding that subpoena was directed at lawyer's "central role" in the case and not out of "pique and personal animosity"). As explained above, Mr. Butler's factual knowledge and involvement in issues of slating and responsiveness, particularly as an agent of the District, are critical to this case.

The second factor weighs "the extent to which the discovery would disrupt the litigation" by involving the lawyer against "whether the lawyer is likely to have first-hand evidence that is important to the resolution of the lawsuit." *Id.* at 163. Plaintiffs seek to ask Mr. Butler solely about non-privileged communications either made to or intended toward third parties. The risk of such a limited deposition "disrupting the litigation" is very small. Moreover, Mr. Butler's apparent role in advising individuals involved in slating Board candidates goes "far beyond the rendition of professional legal services." *Id.* Accordingly, Plaintiffs' subpoena focuses on Mr. Butler's role as a "percipient witness and a principal actor," not on information gained in his role as an attorney, *e.g.,* "interviewing witnesses and reviewing documents and other evidence." *Id.*

The third factor considers the risk of invading privileged material. As explained above, the communications at issue here are not privileged. Not only were the statements not confidential, but the attorney-client privilege does not apply to "obscure what is essentially a lobbying and political effort, even one undertaken by a lawyer." *Id.* at 165 (quotation marks omitted). Defendant has not met its burden of showing that Plaintiffs' proposed discovery relating to Mr. Butler's non-privileged advice to non-attorneys implicates the attorney-client privilege. Moreover, Plaintiffs' document request to Mr. Butler seeks only communications relating to slating with "non-clients." Ex. 2, Subpoena *Duces Tecum* to D. Butler.

The fourth factor looks to whether the subpoenaing party was previously able to obtain the evidence it now seeks from the attorney. *In re Chevron Corp*., 749 F. Supp. 2d at 164 (finding that the lawyer had knowledge not obtainable from other witnesses). In this case, the party receiving and conveying Mr. Butler's directive, ██████████, is currently refusing to sit for deposition.[4] As the District's attorneys have made clear, they do not intend to allow him to sit, and have improperly appealed the issue to the Second Circuit to try and avoid and delay it. *See* Dkt. 243, Amend. Notice of Interlocutory Appeal. So, the District complains that Plaintiffs should seek this discovery elsewhere, while simultaneously preventing Plaintiffs from deposing ██████████. *See* Dkt. 223, Dist. Ltr. Reply In Support of Mot. to Quash at 2-3; *see also* Dkt. 243, Amend. Notice of Interlocutory Appeal. As such, Mr. Butler is the only individual currently available to provide evidence regarding his and the District's role in the slating process.

---

[4] ██████████, too, recently moved to quash subpoenas properly served upon him. The Court denied that motion. *See* Nov. 9, 2018 Minute Entry for proceedings held before Magistrate Judge McCarthy: Telephone Conference on Nov. 9, 2018. Although Plaintiffs plan to question ██████████ on his knowledge of these issues, he was not a participant in the conversation with Mr. Butler and lacks personal knowledge that only Mr. Butler and ██████████ possess.

Here, the "proper course is to allow the process to go forward and to adjudicate the claims of privilege in due course." *In re Chevron Corp*., 749 F. Supp. 2d at 168.[5]

All of the factors this Court should consider weigh in favor of permitting Plaintiffs to depose Mr. Butler. Accordingly, this Court should overturn or amend the Magistrate Judge's order and deny the District's motion to quash, or, in the alternative, enter and continue this motion until the Second Circuit makes a determination regarding whether [REDACTED] must appear at his deposition.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court enter an order (1) directing Mr. Butler to produce non-privileged, responsive communications with non-clients, pursuant to the subpoena issued to him; (2) directing Mr. Butler to testify regarding the issues discussed above; (3) or, in the alternative, that the Court hold its final decision until the parties have a final order from the Second Circuit regarding whether [REDACTED] must testify at a deposition.

---

[5] *See also Versatile Housewares & Gardening Sys. Inc. v. Thill Logistics Inc.*, No. 09 CIV 10182 (KMK)(PED), 2010 WL 11601216, at *6 (S.D.N.Y. Dec. 6, 2010) (agreeing that discovery is warranted where "although [attorney] currently serves as trial counsel, his involvement has not been limited to preparation of the case for trial"); *In re Cty. of Orange*, 208 B.R. 117, 121-22 (Bankr. S.D.N.Y. 1997) (ordering attorney to sit for deposition regarding matters conducted outside his role as attorney); *Oehmke v. Medtronic, Inc.*, Civ. No. 13-2415 (MJD/JSM), 2015 WL 2242041, at *7 (D. Minn. Mar. 26, 2015), *aff'd*, No. CIV. 13-2415, 2015 WL 2242064 (D. Minn. May 12, 2015) (ordering attorney to sit for deposition where he was a "fact witness regarding statements that were made during [a] meeting"); *Rainbow Inv'rs Grp., Inc. v. Fuji Trucolor Missouri, Inc.*, 168 F.R.D. 34, 37 (W.D. La. 1996) (finding information possessed by attorney in his role negotiating business activity was discoverable).

Dated: December 17, 2018

Respectfully Submitted,

**LATHAM & WATKINS LLP**

/s/ Claudia Salomon

Claudia Salomon
885 Third Avenue
New York, NY 10022
Telephone: (212) 906-1200
Facsimile: (212) 751-4864
Email: claudia.salomon@lw.com

*Attorneys for Plaintiffs National Association for the Advancement of Colored People, Spring Valley Branch, Julio Clerveaux, Chevon Dos Reis, Eric Goodwin, Jose Vitelio Gregorio, Dorothy Miller, Hillary Moreau, and Washington Sanchez*