**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE, SPRING VALLEY BRANCH, et al.,** | **ECF CASE** |
| | **Case No. 17 Civ. 8943 (CS)(JCM)** |
| **Plaintiffs,** | |
| | **DISTRICT JUDGE CATHY SEIBEL** |
| **v.** | |
| | **MAGISTRATE JUDGE JUDITH C. McCARTHY** |
| **EAST RAMAPO CENTRAL SCHOOL DISTRICT, et al.,** | |
| **Defendants.** | |

**DEFENDANT EAST RAMAPO CENTRAL SCHOOL DISTRICT'S**
**REPLY BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

## <u>TABLE OF CONTENTS</u>

TABLE OF CONTENTS.................................................................................................. i

TABLE OF AUTHORITIES ........................................................................................... ii

I.     INTRODUCTION ................................................................................................ 1

II.    ARGUMENT ...................................................................................................... 3

    A.    Plaintiffs Have No Admissible Evidence of Racially Polarized Voting............... 3

    B.    Plaintiffs Have No Evidence That Elections Are Driven By Racial Concerns. ... 3

    C.    Plaintiffs' "Safe Candidates" Argument Misstates the Law................................. 7

    D.    The Remaining Senate Factors Do Not Defeat Summary Judgment.................... 9

III.    CONCLUSION ................................................................................................ 10

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Baird v. Consolidated City of Indianapolis,*
 976 F.2d 357 (7th Cir. 1992) .................................................2

*Chisom v. Roemer,*
 501 U.S. 380 (1991)....................................................................1

*Daubert v. Merrell Dow Pharms., Inc.,*
 509 U.S. 579 (1993)...................................................................3

*France v. Pataki,*
 71 F. Supp. 2d 317 (S.D.N.Y. 1999).........................................9

*Goosby v. Town Bd. of Hempstead,*
 956 F. Supp. 326 (E.D.N.Y. 1997) ...........................................4

*Goosby v. Town Bd. of Town of Hempstead,*
 180 F.3d 476 (2d Cir. 1999)............................................1, 3, 4

*Johnson v. De Grandy,*
 512 U.S. 997 (1994)..............................................................4, 8

*League of United Latin American Citizens, Council No. 4434 v. Clements,*
 999 F.2d 831 (5th Cir. 1993) (en banc) ................................5, 6

*Metavante Corp. v. Emigrant Sav. Bank,*
 619 F.3d 748 (7th Cir. 2010) ....................................................3

*N.A.A.C.P., Inc. v. City of Niagara Falls,*
 65 F.3d 1002 (2d Cir. 1995).......................................................5

*Nipper v. Smith,*
 39 F.3d 1494 (11th Cir. 1994) ...................................................4

*Patterson v. Cnty. of Oneida,*
 375 F.3d 206 (2d Cir. 2004)........................................................3

*Thornburg v. Gingles,*
 478 U.S. 30 (1986)........................................................3, 9, 10

*United States v. Vill. of Port Chester,*
 704 F. Supp.2d 411 (S.D.N.Y. 2010)..................................4, 10

**Statutes**

52 U.S.C. § 10301..................................................................................................................1, 2

**Other Authorities**

Fed. R. Civ. P. 56(c)(2)...........................................................................................................3

## I.    INTRODUCTION

Plaintiffs' Opposition to the District's Motion for Summary Judgment fails to raise any genuinely disputed issues of material fact that preclude judgment as a matter of law.

*First*, as set out more fully in the District's briefing on its *Daubert* motion, Plaintiffs fail to rehabilitate their experts' unreliable statistical analysis.    That failure warrants summary judgment, because it is Plaintiffs' burden under the *Gingles* preconditions to prove with reliable statistical evidence that the District's elections are characterized by "racially polarized" voting.

*Second*, even if Plaintiffs experts' opinions on racially polarized voting were admissible, that would not defeat summary judgment.    That's because minority voters' "inability to elect representatives of their choice is not sufficient to establish a violation unless, under the totality of the circumstances, it can also be said that the members of the protected class have *less opportunity to participate* in the political process," *Chisom v. Roemer*, 501 U.S. 380, 397 (1991) (emphasis added), and that minorities are excluded from the political process "on account of race or color." 52 U.S.C. § 10301.  Plaintiffs have not met—and cannot meet—their burden to show *either*.

It is undisputed that three out of the nine current school board members are Black and that there have always been minority members on the board of education.  It is undisputed that for the last several years the District has been politically divided between voters who support higher property taxes and increased public education spending (*i.e.*, "public school community"), and voters who support lower taxes and more spending benefiting private school students (*i.e.,* "private school community).  It is undisputed that both sides regularly recruit and slate minority candidates. And it is undisputed that White voters have supported and elected minority candidates, without regard to race.  On these facts, it is "proper to conclude" that any "divergent voting patterns among white and minority voters are best explained by" non-racial concerns and there is therefore no

Section 2 violation. *Goosby v. Town Bd. of Town of Hempstead*, 180 F.3d 476, 496 (2d Cir. 1999).

Plaintiffs dispute *none of this*, because they cannot. Instead, Plaintiffs contend that they don't have to show that elections in the District are driven by racial concerns to prevail. That is not the law. To adopt Plaintiffs' argument would unfairly empower *political* minorities to overturn the results of fair elections based only on the race of their supporters. All courts reject such a gross distortion of the democratic process. *E.g.*, *Baird v. Consolidated City of Indianapolis*, 976 F.2d 357, 361 (7th Cir. 1992) ("The Voting Rights Act does not guarantee that nominees of the Democratic Party will be elected, even if black voters are likely to favor that party's candidates.").

Alternatively, Plaintiffs argue that elections in the District *are* driven by racial concerns. But their argument is premised entirely on the presumption that because most public school students in the District are Black or Latino, "the racial and political are inherently and intrinsically tied together."[1] Plaintiffs' unsupported presumption does not defeat summary judgment. *Student* demographics are immaterial here. Only *voter* demographics matter to the Voting Rights Act. Those demographics show that minorities are *not excluded* from District politics.

Plaintiffs also argue that the Court should discount or ignore the evidence of minority participation in politics by disparaging the District's many successful minority candidates as "safe candidates." That argument also is meritless. Plaintiffs have *no evidence* that minority candidates' successes were part of efforts to circumvent Section 2. Indeed, Plaintiffs concede that minority candidates ran for and were elected to the Board long before this case was filed.

Plaintiffs' arguments under the other "totality of the circumstances" factors are similarly conclusory and unsupported, but beside the point. Plaintiffs raise no disputed issues of fact that refute the District's showing that minorities are *not* excluded from District politics "on account of

---

[1] ECF No. 390 (Ans. Br.) at 1, 5, 13, 16, 17, 24; ECF No. 389 (Counter-SUMF) ¶¶ 4, 7, 10, 23, 43-44, 46, 47, 95.

race or color." 52 U.S.C. § 10301.  That is all Section 2 requires.  Summary judgment is proper.

## II.    ARGUMENT

### A.  Plaintiffs Have No Admissible Evidence of Racially Polarized Voting.

Plaintiffs bear the burden to satisfy the three *Gingles* preconditions.[2]  *See Thornburg v. Gingles*, 478 U.S. 30, 50–51, 56 (1986).  Plaintiffs claim to have met that burden through the testimony of their experts,[3] but Rule 56(c)(2) requires that material cited to support or dispute a fact on summary judgment be "presented in a form that would be admissible in evidence."[4]  Thus, at the summary judgment stage, Plaintiffs' claim depends on the reliability of their experts' testimony under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).

For all the reasons set forth in the District's memoranda of law[5] and reply brief[6] in support of its *Daubert* motion, Plaintiffs' experts' opinions on racially polarized voting are unreliable.  Even in bench trials, expert testimony must satisfy *Daubert*.  *See Metavante Corp. v. Emigrant Sav. Bank*, 619 F.3d 748, 761 (7th Cir. 2010) (district court's failure to perform any *Daubert* analysis before admitting expert testimony at bench trial deprived its ruling of usual deference and required *de novo* review by court of appeals under *Daubert*).  Application of the *Daubert* factors here shows that Plaintiffs' experts' opinions are unreliable and inadmissible.

### B.  Plaintiffs Have No Evidence That Elections Are Driven By Racial Concerns.

Plaintiffs assert that "this Circuit's precedent explicitly rejects that plaintiffs must show the white community is 'driven by racial bias.'"[7]  Plaintiffs are wrong.  In support of that assertion, Plaintiffs do not cite the *Second Circuit's* decision in *Goosby v. Town Board. of Town of*

---

[2] Ans. Br. at 15.
[3] *Id.*
[4] Fed. R. Civ. P. 56(c)(2); *see also  Patterson v. Cnty. of Oneida*, 375 F.3d 206, 219 (2d Cir. 2004).
[5] ECF No. 362; ECF No. 405.
[6] ECF No. 411.
[7] Ans. Br. at 16.

*Hempstead, N.Y.*, 180 F.3d 476, 493 (2d Cir. 1999).  They cite only the *district court's* decision in *Goosby*.[8]  This is misleading, because it is the Second Circuit's opinion that controls.

In *Goosby*, the Second Circuit *did not* hold that Section 2 plaintiffs need not show that elections are motivated by racial animus in order to prevail.[9]  The *Goosby* court held only that a defendant's non-racial explanations for polarized election results should be considered under the totality of the circumstances analysis, rather than as part of the *Gingles* preconditions.  In doing so, the Second Circuit *agreed with* and *cited Nipper v. Smith*, which stands for the proposition that Section 2 plaintiffs must prove that voters are motivated by racial animus to prevail.[10]  *Goosby v.*, 180 F.3d at 493 (citing *Nipper v. Smith*, 39 F.3d 1494, 1524 (11th Cir. 1994)).  Thus, the rule in the Second Circuit is consistent with the majority rule that a defendant in a Voting Rights Act case "can ultimately prevail by showing, in the 'totality of the circumstances,' that the lessening of plaintiffs' opportunity to elect their preferred candidate did not result from race-based intentions." *Id.* at 503 (Leval, J., concurring) (quoting *Johnson v. De Grandy*, 512 U.S. 997, 1011 (1994)).

While Plaintiffs argue they have no burden to show that District elections are driven by racial issues, they also claim that they have satisfied that burden.  That argument is based exclusively on the legally flawed presumption that because the student body of the District's public schools is 92% Black and Latino, elections in the District *must* be driven by race.[11]  Based solely on the demographics of the public schools, Plaintiffs ask this Court to disregard the admissible evidence showing the opposite—that the elections in the District are driven by non-racial policy issues, like real estate taxes and budgets.  But Plaintiffs refute their own argument by explicitly

---

[8] Ans. Br. at 16 (citing *Goosby*, 956 F. Supp. at 353).
[9] *United States v. Village of Port Chester*, 704 F. Supp. 2d 411, 418 (S.D.N.Y. 2010), is not to the contrary.  The court there held only that discriminatory intent by legislators in adopting or maintaining a challenged election practice of system need not be shown.  *Id.*  Plaintiffs here do not allege any such discriminatory intent.
[10] Plaintiffs agree with the District's description of *Nipper*, but attempt to distinguish the case because it was decided in another jurisdiction.  But the Second Circuit favorably cited and endorsed that portion of *Nipper*.
[11] Ans. Br. at 1–2.

conceding that "White voters in the District support reducing the portion of the school budget that is funded by property taxes, while securing a larger proportion of the remaining budget for the [purportedly] exclusively white private schools."[12]

Substantive opinions about property taxes and allocation of scarce education budgets are not proxies for racial politics. Indeed, there is something perversely undemocratic about Plaintiffs' effort to recast the ordinary substance of political debate into such racially divisive terms. Contrary to Plaintiffs' suggestion, it is indisputable that Black and Hispanic families in the District also use private schools—even including Plaintiffs themselves.[13] Yet Plaintiffs ask this Court to assume, without a shred of evidence, that all of the so-called "private school community" voters inherently are motivated by racial animus. That argument is unacceptable. Plaintiffs' argument assumes the existence of exactly the sort of "racial political orthodoxy" that the Second Circuit forbids courts to indulge. *N.A.A.C.P., Inc. v. City of Niagara Falls*, 65 F.3d 1002, 1018 (2d Cir. 1995).

The Voting Rights Act requires courts to look beyond such conclusory assertions and to test them against the actual, admissible evidence. For example, in *League of United Latin American Citizens, Council No. 4434 v. Clements*, 999 F.2d 831, 860–61 (5th Cir. 1993) (en banc), the plaintiffs argued that partisan affiliations could serve as a proxy for illegitimate racial considerations, because "the Republican and Democratic Parties are proxies for racial and ethnic groups in Texas." *Id.* The Fifth Circuit looked beyond that assertion and found that "white voters constitute[d] the majority of not only the Republican Party, but also the Democratic Party, even in several of the counties in which the former dominates." *Id.* at 861. Those facts rebutted the plaintiffs' presumption that party affiliation was a proxy for race. *Id.* The same is true here.

---

[12] *Id.* at 17. In fact, private schools in the District are not "exclusively white," as Plaintiffs well know. *See, e.g.*, Ex. A (Deposition Transcript of Eustache Clerveaux) at 68:19−69:17 (testifying that students of color attend both public and private schools).

[13] *See* Declaration of Pierre Germain (ECF No. 357-41) ¶¶ 3−4; Ex. B (Dep. Tr. of Hillary Moreau) at 23:23−24:6.

Even crediting Plaintiffs' experts' (unreliable) analysis shows that *White voters* make up the majority of *both sides* of the District's elections—"public school" and "private school."[14] Similarly, and again as established by Plaintiffs' experts' own (unreliable) analyses, a significant percentage—at least 25–30% in most elections—of Black voters supported the *winning* (private school) candidates in most elections.[15]  Thus, even Plaintiffs' own statistics rebut any presumption that support for "public school" vs. "private school" candidates is a proxy for racial politics.

Another determinative factor from *League of United Latin American Citizens* was that both political parties aggressively recruited minority candidates to run on their tickets, such that "the undisputed evidence disclose[d] that white voters in most counties, both Republican and Democratic, without fail supported the minority candidates slated by their parties at levels equal to or greater than those enjoyed by white candidates, even where the minority candidate was opposed by a white candidate."  999 F.2d at 861.  Again, those same facts are present here—both the winning and losing sides have included minority candidates (in fact, more than half of the candidates for school board elections between 2013 and 2018 were minority candidates), and both sides' experts agree that minority candidates were elected with White voter support.[16]

Even more telling are the repeated admissions by Plaintiffs and other former candidates that *race was not a factor in their elections.*  Plaintiff Chevon Dos Reis testified that she does not believe that she lost the 2017 School Board election because of her race.[17]  Plaintiff Eric Goodwin testified that he does not believe that he lost the 2017 School Board election because of his race.[18] Eustache Clerveaux testified that he does not believe he lost the 2013 election because of his race.[19]

---

[14] *See* Collingwood and Barreto's September 14, 2018 report ("B&C II") (ECF No. 357-69) at 6–7; Catalist data sheet (ECF No. 405-04).

[15] B&C II (ECF No. 357-69) at 4–6; Collingwood and Barreto's July 29, 2018 report (ECF No. 357-68).

[16] ECF No. 378-1 (Corrected Statement of Undisputed Material Facts, or "Corrected SUMF").

[17] *Id.* ¶ 11.

[18] *Id.* ¶ 12.

[19] *Id.* ¶17.

Jean Fields testified that she does not believe that she lost her election because she is Black, and that she does not think that the race of the candidates in her election was a motivating factor for any of the voters.[20]  Even the White man behind the slating of "public school" candidates—Steve White—testified that candidates "have to run based on issues.  And there are going to be some people from every different racial ethnic background who are going to agree with your issues or disagree with your issues."[21]  There is no contrary evidence.

In sum, the demographics of the District's *students* says nothing probative about the motives of the District's *voters*, which is the only issue of concern to the Voting Rights Act. Plaintiffs have failed to raise any genuinely disputed issue of material fact that would show the District's electorate is in any sense motivated by racial animus.  The Motion should be granted.

### C.  Plaintiffs' "Safe Candidates" Argument Misstates the Law.

It is undisputed that three of the nine current Board members are Black.[22]  Two of those board members—Bernard Charles and Pierre Germain— won in contested elections.[23]  The third, Sabrina Charles-Pierre, ran unopposed but was elected with the support of virtually all of the District's voters.[24]  Two other minority candidates also won recent elections: Maraluz Corado and Juan Pablo Ramirez.[25]  The unrebutted testimony of Mr. Charles and Mr. Germain is that they ran with Ms. Corado "on a platform that focused on the needs of public school students, but in the spirit of cooperation, understanding and sensitivity to the needs of others in the community as well."[26]  That message was popular.  They obtained support from members of the Orthodox Jewish community because they believed that the best approach "would be to work with the Orthodox and

---

[20] *Id.* ¶ 18.
[21] *Id.* ¶ 31.
[22] *Id.* ¶¶ 22–23, 41, 68, 80, 88, 92.
[23] *Id.* ¶ 84.
[24] *Id.* ¶ 92; 2018 election results (ECF No. 357-11).
[25] Corrected SUMF (ECF No. 378-1) ¶¶ 74, 80.
[26] *Id.* ¶¶ 22–23.

Hasidic members of the board, to find common ground, and to work together to improve the District's performance for the benefit of all residents of the District."[27]  It should surprise no one that the "public school community" candidates who rejected the popular, conciliatory, message espoused by Mr. Germain's slate were handily defeated on election day.

Nevertheless, Plaintiffs argue that the elections of Mr. Charles, Mr. Germain, Ms. Corado, and Mr. Ramirez all should be disregarded because they are merely "safe candidates.[28]  Plaintiffs *concede* there is no evidence that these minority candidates were elected as part of an effort to circumvent enforcement of Section 2.[29]  That resolves any question about whether they were "safe candidates."  Undeterred, Plaintiffs presume that any successful minority candidate who was not a "minority preferred" candidate is a "safe candidate" and should be disregarded.[30]  Plaintiffs have no support for their presumption and it is not the law.  If it were, the "safe candidate" analysis would redundantly duplicate the *Gingles* preconditions' "minority preferred" candidate analysis.

Conflating the "minority preferred" candidate concept with the "safe candidate" concept also distorts the Voting Rights Act.  Whether or not a minority candidate is "minority preferred," the fact that minority candidates regularly campaign for and win elections proves that minorities have *equal political opportunities.*  That is all the Voting Rights Act requires.  *See Johnson*, 512 U.S. at 1014 n.11 ("[T]he ultimate right of § 2 is equality of opportunity, not a guarantee of electoral success for minority-preferred candidates of whatever race.").  To defeat summary judgment, Plaintiffs must do more than resentfully disparage the motives of the District's many successful minority candidates.  They have not done so.

---

[27] *Id.*
[28] Ans. Br. at 12–13.
[29] *Id.* at 20 (arguing that there were *other cases* pending against the District alleging claims that were not under Section 2 and did not involve either voting or elections).
[30] *Cf. Id.* at 12–13, 19–21.

**D.  The Remaining Senate Factors Do Not Defeat Summary Judgment.**

Plaintiffs mischaracterize the District's motion as arguing that there are no disputed material facts with respect to any of the Senate factors,[31] but that isn't the District's position. The District is entitled to judgment as a matter of law because: (1) Plaintiffs have presented no admissible evidence of racially polarized voting; and (2) Plaintiffs have not shown that elections in the District are driven by racial animus.  Both are dispositive.  Any disputed facts that may arise under the other Senate Factors are immaterial and do not prevent summary judgment.[32]

*History of official discrimination bearing on voting.*  Plaintiffs have no admissible evidence of "any history of official discrimination" in the District that has "touched the right of the members of the minority group to register, to vote, or otherwise to participate in the democratic process."  *Gingles*, 478 U.S. at 36–37. Plaintiffs make no effort to tie the few things they mischaracterize as "official discrimination" in any way to voting, registration, or participation.

*Whether members of the minority group are excluded from slating.*  Plaintiffs have no evidence that members of any minority group are excluded from any slating process at work in the District and Plaintiffs don't dispute that minorities can, and do, get on the ballot.  Nothing else is material.  *See France v. Pataki*, 71 F. Supp. 2d 317, 331 (S.D.N.Y. 1999).

*Effects of discrimination hindering political participation.*  Plaintiffs also have no evidence that "members of the minority group" in the District "bear the effects of discrimination in such areas as education, employment and health, which hinder their ability to participate effectively in the political process."  *Gingles*, 478 U.S. at 37.  Their effort to conjure a disputed fact issue fails, because *Plaintiffs' expert* opines that Blacks and Latinos in the District are thriving

---

[31] Ans. Br. at 21 & n.13.

[32] For the same reasons, and for the reasons set forth in Exhibit C attached hereto, all of the assertions in "Plaintiffs' Additional Statement of Material Facts Omitted by the District That Preclude Summary Judgment," ECF No. 389, also are immaterial and/or unsupported by admissible evidence, and do not defeat summary judgment.

socioeconomically, and that Blacks are socioeconomically better off than Whites in the District.[33]

   ***Racial appeals in political campaigns.*** Plaintiffs have *zero* evidence of racial appeals.[34] The most they can point to is a campaign flyer showing an Orthodox man "being scared by a school tax bill,"[35] and another flyer showing an Orthodox man "watching his home being demolished."[36] Neither is a "racial appeal," especially considering that in both instances the campaign flyer supported *minority candidates*: Beverly Paige, in 2007, and Corado, Germain, and Charles in 2013.

   ***Rationale for maintaining election policy.*** Plaintiffs' argument regarding the District's "tenuous" rationale for maintaining at-large elections relies on their baseless argument that school districts in New York may defy the state law that requires at large elections for the school board.

   ***Responsiveness to particularized needs of minority community.*** Plaintiffs' "responsiveness" argument focusing on school budget cuts is misplaced. *First*, whether stated in terms of responsiveness or unresponsiveness, "a political subdivision's responsiveness has little probative value." *Port Chester*, 704 F. Supp. 2d at 446. *Second*, all recent evidence shows that Plaintiffs' budget cut complaints are stale and outdated in light of the District's financial recovery and extensive program of class and service restoration and staffing in the public schools.[37] Plaintiffs do not and cannot dispute those facts. As a result, the responsiveness/unresponsiveness factor is—at best—a wash and immaterial to the Court's totality of the circumstances analysis.

## III.   CONCLUSION

   For all the foregoing reasons, summary judgment for the District should be granted.

---

[33] Corrected SUMF (ECF No. 378-1) ¶ 3.
[34] *See* Counter-SUMF (ECF No. 389) ¶¶ 126–29 (pointing to no evidence of racial appeals).
[35] *Id.* ¶ 129.
[36] *Id.*
[37] Corrected SUMF (ECF No. 378-1) ¶ 7.

Dated:  April 18, 2019

Respectfully submitted,
**MORGAN, LEWIS & BOCKIUS LLP**

s/ David J. Butler
David J. Butler
Randall M. Levine
101 Park Avenue
New York, NY 10178
T: (212) 309-6000
F: (212) 309-6001
     -and-
1111 Pennsylvania Avenue, NW
Washington, DC 20004
T: (202) 739-3000
F: (202) 739-3001
david.butler@morganlewis.com
randall.levine@morganlewis.com

William S.D. Cravens
Stephanie Schuster
Clara Kollm
Adam Adler
1111 Pennsylvania Avenue, NW
Washington, DC 20004
T: (202) 739-3000
F: (202) 739-3001
william.cravens@morganlewis.com
stephanie.schuster@morganlewis.com
clara.kollm@morganlewis.com
adam.adler@morganlewis.com

*Counsel for Defendant East Ramapo Central
School District*

11