UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE, SPRING VALLEY BRANCH; JULIO CLERVEAUX, CHEVON DOS REIS; ERIC GOODWIN; JOSE VITELIO GREGORIO; DOROTHY MILLER; HILLARY MOREAU; AND WASHINGTON SANCHEZ,<br><br>      Plaintiffs,<br><br>  v.<br><br>EAST RAMAPO CENTRAL SCHOOL DISTRICT AND MARYELLEN ELIA, IN HER CAPACITY AS THE COMMISSIONER OF EDUCATION OF THE STATE OF NEW YORK,<br><br>      Defendants. | 17 Civ. 8943 (CS) (JCM) |

**REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR
SANCTIONS UNDER FED. R. CIV. P. 37 AND THE COURT'S INHERENT
AUTHORITY TO REMEDY DEFENDANT'S SPOLIATION OF EVIDENCE AND
FAILURE TO COMPLY WITH DISCOVERY ORDERS**

The District's Opposition to Plaintiffs' Motion for Sanctions focuses exclusively on Plaintiffs' request for an adverse inference under Federal Rule of Civil Procedure 37(e) for spoliation of electronically stored information and fails to respond to Plaintiffs' request for sanctions under Rule 37(b)(2)(A) for the District's failure to comply with *three* Court orders. The District's Opposition underscores the District's failures under Rule 37, and reveals that the District's counsel are equally to blame. Ultimately, regardless of whether the District's and its attorneys' conduct rises to the level of intentional spoliation or "merely" the violation of three Court orders, sanctions—either in the form of an award of costs or an adverse inference—are warranted against the District and its attorneys.

## I. THE DISTRICT AND ITS ATTORNEYS HAD CONTROL OVER THE BOARD MEMBERS' DOCUMENTS.

The District first contends that it cannot be held liable for the failure to preserve or produce communications from individual Board Members, whom the District characterizes as non-parties. But, whether non-parties or not, the District was responsible for preserving documents in the possession of individual Board Members because those documents were ultimately under the District's control. "The concept of control is to be construed broadly." *Funk v. Belneftekhim*, 2019 WL 7603139, at *7 (E.D.N.Y. Jan. 17, 2019). There is no "exact science" to determining control, so courts rely on "common sense." *Id.* "Documents are considered to be under a party's control if the party has the practical ability to obtain the documents from another, irrespective of his legal entitlement." *Ronnie Van Zant, Inc. v. Pyle*, 270 F. Supp. 3d 656, 669 (S.D.N.Y. 2017), *rev'd on other grounds*, 906 F.3d 253 (2d Cir. 2018).

The District and its attorneys had the practical ability to obtain the Board Members' WhatsApp conversations. When faced with this litigation, the District's Board of Education passed a resolution appointing the District's counsel to represent the Board Members. *See* Ex. C,

PX 292_0005. The District's attorneys represent the Board Members at the request and direction of the District itself. Contrary to the District's strained reading of the New York Education Law, numerous courts have held that school board members are agents of their school districts. *See e.g., Cooper v. Aaron*, 358 U.S. 1, 16 (1958) (noting that members of a school board are "agents of the State"); *Wilkerson v. Columbus Separate Sch. Dist.*, 985 F.2d 815, 818 (5th Cir. 1993).

A party and its attorneys may be held responsible for a non-party's or a different party's discovery noncompliance where both are represented by the same counsel. *See, e.g.*, *Perfect 10, Inc. v. Giganews, Inc.*, 2015 WL 12699460 (C.D. Cal., Feb. 4, 2015) (issuing monetary sanctions against a party and its attorneys for the discovery violations of non-party witnesses represented by the party's attorneys); *Keithley v. Homestore.com, Inc.*, 629 F. Supp. 2d 972, 978 (N.D. Cal. 2008) (holding that two defendants could be sanctioned for another defendant's spoliation where all of the defendants "were represented by the same counsel"). *Perfect 10, Inc.* is particularly apposite here. When faced with a motion for sanctions for affiliated third-party witnesses' discovery failings, "Perfect 10 attempted to disavow any connection with the discovery misconduct of third-party witnesses." *Id.* at 24. But, the court noted that (1) the third-party witnesses were affiliated with Perfect 10, *id.* at 1; (2) the third-party witnesses were represented by counsel for Perfect 10, *id.*; (3) counsel for Perfect 10 served objections and responses to the document subpoenas on behalf of Perfect 10-affiliated witnesses, *id.* at *7, and (4) Perfect 10 "took credit" for the third-party discovery responses, "contending that these documents established 'Perfect 10's Massive, Good Faith Efforts To Comply With Discovery,'" *id.* at 24. The court ruled that "Perfect 10's attorneys either 'supervised' the witnesses' noncompliance or their 'failure to supervise' was culpable," and held "Perfect 10 and its attorneys responsible for the Perfect 10-affiliated witnesses' conduct." *Id.*

Similarly, in this case, the District's attorneys (1) represent the third-party Board Members;

2

(2) took responsibility for the Board Members' discovery obligations and represented that the Board Members were in compliance,[1] (3) served objections and responses on behalf of the Board Members; and (4) took credit for the Board Members' discovery responses to argue that *the District* engaged in expansive, good faith discovery. For example, in a September 18, 2018 Letter, the District's counsel argued:

> In your letter, you state that "it is apparent that the District either never collected, or collected but has not yet produced, any text messages or social media documents as requested both in Plaintiffs' First Set of Requests for Production to the District served on February 15, 2018, and Plaintiffs' March 15, 2018 Amended Subpoena Duces Tecum to the non-party Board members." (Ltr. at 2). That is not accurate. As of this time, we have produced almost *two thousand pages* of conversations among multiple users over the social media text communication service "whatsapp."

Ex. A at 3-4 (emphasis in original). The letter represented that "[w]ith respect to all third party subpoena recipients, our document collection and productions are complete," and "[w]ith respect to documents relating to the third party subpoena recipients' candidacy or campaigns for the East Ramapo Central School District's Board of Education, responsive records have been searched for, collected, and produced insofar as they exist." *Id.* at 4-5 (emphasis added).

The Court should reject the District's and its attorneys' attempt to distance themselves from the Board Members. It is undeniable that the District and its attorneys had practical control over the Board Members' documents.

## II. THE DISTRICT AND ITS ATTORNEYS FAILED TO OBEY THE COURT'S ORDERS.

Plaintiffs moved for sanctions both for failing to comply with the Court's discovery orders in violation of Rule 37(b) *and* for failing to preserve digital evidence in violation of Rule 37(e).

---

[1] ECF 139 at 2, June 29, 2018 Letter to Judge McCarthy ("[W]e have collected documents from each of the third-parties we represent, and our collection efforts remain ongoing. . . . [O]ur efforts and production activities are reasonable.")

3

In its Opposition, the District only addressed the Rule 37(e) standard and did not even attempt to explain its failure to comply with the Court's Orders under Rule 37(b). But under Rule 37(b), the Court has "broad authority to impose sanctions for failure to comply with discovery orders." *Joint Stock Co. Channel One Russia Worldwide v. Infomir LLC*, 2018 WL 4760345, at *6 (S.D.N.Y. Sept. 28, 2018). "The only predicates to the imposition of sanctions under Rule 37(b) are (a) a 'court order directing compliance with discovery requests,' and (b) 'non-compliance with that order.'" *Id.* The Court issued three separate orders requiring the production of the WhatsApp conversations in full, but, as they now concede, the District and its attorneys took no steps to produce media and attachments in those conversations for nearly two years. On this basis alone, sanctions are warranted.

The Court first compelled the District to produce relevant documents from the Board Members on April 27, 2018, ECF 124, pursuant to which the District provided an incomplete production of the WhatsApp conversations collected from Harry Grossman only, ECF 194. After Plaintiffs' second motion to compel, the Court unequivocally ordered the production of the "full [WhatsApp] conversation" from *every* Board Member. Nov. 9, 2018 Hr'g Tr at 71-78. But the District failed to comply with that order, forcing Plaintiffs to bring a *third* motion to compel in November 2019. The District's attorneys did not even attempt to defend their incomplete production in response to Plaintiffs' motion, but instead argued the motion was untimely. ECF 442. The Court rejected that argument because it was "not a defense to failing to comply with a Court Order," and granted Plaintiffs' third motion to compel because it was "clear that Defendant did not fully comply" with the Order to produce the "full conversations" of the Board Members' WhatsApp conversations. ECF 445. The District and its attorneys then provided *another* incomplete production. In response to Plaintiffs' requests on January 13 and 15, 2020 that the

4

District's attorneys confirm if they investigated whether custodians other than Mr. Grossman retained copies of the missing content, the District's attorneys represented that the "other custodians do not have Whatsapp attachment files saved to their devices," but stated that they would search the WhatsApp "backup servers." ECF 519-6.  It was not until February 3, 2020 that the District's attorneys represented that they had "fully completed our efforts to collect and produce" the missing WhatsApp content, but stated that they would not produce any additional materials, apparently because whatever attachments once existed were by this time—nearly two years after the Court's initial order—no longer available.[2]  ECF 519-7.

In short, the District and its attorneys ignored the Court's clear mandate to produce the *full* contents of WhatsApp chats—which would include any attachments thereto—for many months, and even when it did make an effort to produce them, the District and its attorneys collected them from only one custodian, Mr. Grossman.  As a result, attachments that might have been available for collection many months ago are no longer available for collection now.  The District's Opposition fails to provide any valid excuse for this non-compliance.  Indeed, if anything, the District's Opposition establishes that the District's attorneys knew or should have known all along that the text export feature used by the Board Members would result in a production that did "not include any of the media or attachments from the chat."  Fascetti Decl. ¶ 6.  The District's contention that the built-in text export feature was "the industry standard way to collect WhatsApp messages" is not supported by the Declaration submitted by its attorneys' Manager of eData Forensics, which states that collections of WhatsApp content is "often performed using advanced

---

[2] The District's argument that Plaintiffs' instant motion is untimely is disingenuous and misleading.  The District claimed to be searching for the missing documents as late as January 29, 2020, and did not inform Plaintiffs that they completed that search until February 3, 2020.  ECF 519-7.  The District cannot be permitted to wait until eve of trial to disclose that evidence has been lost, and then argue that Plaintiffs cannot seek appropriate remedies.

5

forensics tools." Fascetti Decl. ¶¶ 5, 7.

Indeed, the District and its attorneys did not even engage a forensic specialist or utilize any advanced forensic tool to collect WhatsApp conversations from any Board Member until November 2019, by which time the content was apparently irretrievably lost. *See* Fascetti Decl. ¶ 17. Instead, the District and its attorneys relied on self-collection by the Board Members.

It was unreasonable for the District and its attorneys to rely on the Board Members to preserve and collect the WhatsApp conversations, particularly if, as they now claim, collecting WhatsApp content is "challenging." Fascetti Dec. ¶ 5. *See Nat'l Day Laborer Org. Network v. U.S. ICE*, 877 F. Supp. 2d 87, 108 (S.D.N.Y. 2012) (stating that discovery practices that allowed custodians to self-collect documents were not legally sufficient because "most custodians cannot be trusted" to run effective document collection as it "is not part of their daily activities"). The Court's November 2018 Order required the District and its attorneys to produce the WhatsApp conversations in full, and yet they chose to employ a self-collection method that they knew would exclude media and attachments. The District and its attorneys did so even though the forensic tool that they ultimately used, in response the Court's *third* Order in November 2019, was publicly available beginning in October 2018. Fascetti Decl. ¶ 16.

Having repeatedly failed to preserve and collect the WhatsApp conversations in full, the District and its attorneys cannot now argue that they should be exempt from consequences simply because, after two years and three Court Orders, the data is no longer available.

### III. THE DISTRICT AND ITS ATTORNEYS FAILED TO PRESERVE ELECTRONICALLY STORED INFORMATION.

Rule 37(e) provides a separate and independent basis for sanctions. A court may impose sanctions where information that "should have been preserved" was lost due to a failure "to take reasonable steps to preserve it," and where the information cannot be "replaced through additional

discovery." FED. R. CIV. P. 37(e).  That is precisely what occurred here.

The District and its attorneys clearly had a duty to preserve the WhatsApp conversations at issue *in full*.  Even before the Court specifically ordered the production of these conversations, the District had an obligation to preserve this evidence once it knew or should have known that the evidence may be relevant to this litigation.  *See Fujitsu Ltd. v. Fed. Express Corp.*, 247 F.3d 423, 436 (2d Cir. 2001).  The District's counsel, who represented the Board Members, also had an affirmative duty to ensure the preservation of the WhatsApp conversations.  Counsel's obligations "include both the implementation of a litigation hold as well as overseeing compliance with the litigation hold and monitoring the client's efforts to retain and produce relevant documents." *Zubulake v. UBS Warburg LLC*, 229 F.R.D. 422, 432 (S.D.N.Y. 2004).  "Attorneys have a duty to understand the ways in which their clients store documents and information, whether in traditional physical media or electronically."  *Martinez v. City of New York*, 2018 WL 604019, at *27 (E.D.N.Y. Jan. 24, 2018).  "[T]his responsibility is heightened in this age of electronic discovery." *Richard Green (Fine Paintings) v. McClendon*, 262 F.R.D. 284, 290 (S.D.N.Y. 2009).

The District's counsel cannot credibly argue that they did not have notice that the WhatsApp conversations were potentially relevant to Plaintiffs' claims in this case.  Indeed, the District's lead counsel, David J. Butler, was a participant in the WhatsApp chat titled "School Board Support Grp" for nearly two years.[3]  *See* Ex. B at PX080_0157 (entering chat), PX 80_1062 (leaving chat).  Mr. Butler had direct knowledge that the "School Board Support Grp" chat contained information regarding issues that are highly relevant to this case.  *See, e.g.*, Ex. B at PX080_0323-25, 331-34, 737-38, 759, 763-64, 774-75 (discussing school board elections).

---

[3] Notably, the only message sent by Mr. Butler in the "School Board Support Grp" contained media that was omitted from the District's productions and apparently is irretrievably lost.  *See* Ex. B at PX 80_0503 (sending <Media omitted> on November 8, 2016 at 11:15 PM).

7

There is no dispute that "not all attachments to the WhatsApp group chats were preserved." Opp. at 14. Moreover, it is clearer than ever that the WhatsApp media and attachments were lost because the District and its attorneys failed to take reasonable steps to preserve it. *See supra* Part II. Thus, the Court may sanction the District and its attorneys for the failure to preserve electronically stored information pursuant to Rule 37(e).

The only remaining question is what form of sanctions the Court should impose. The District argues that sanctions under Rule 37(e)(1) are not appropriate, claiming that Plaintiffs are not prejudiced because Plaintiffs can prevail on Senate Factor 4 without the missing evidence. *See* ECF 529 at 11-12. The District further argues that sanctions under Rule 37(e)(2) is not appropriate because Plaintiffs have not established that the District acted intentionally. *See* ECF 529 at 13-16. The District is wrong on both counts.

As to Rule 37(e)(1), Plaintiffs have been prejudiced even if they can prevail on Senate Factor 4 without the missing media and attachments. A party may be prejudiced by the loss of evidence even where the lost evidence is not the party's sole means of proving its case. *See Man Zhang v. City of New York*, 2019 WL 3936767, at *9 (S.D.N.Y. Aug. 20, 2019) (finding that party was prejudiced where spoliated evidence would have allowed moving party to "corroborate" other evidence). The WhatsApp conversations Plaintiffs introduced at trial contain omitted media and attachments that undoubtedly would have shed further light on the content of those conversations. Although the District dismissively imagines the missing media and attachments to consist of ".gifs, emojis, and the like," ECF 529 at 5, even a cursory review of the Board Members' WhatsApp conversations shows that they used WhatsApp to share much more than just .gifs and emojis. *See, e.g.*, ECF 518-8, PX074_0003-4 (omitted media containing campaign materials and an election article for the 2017 School Board election exchanged between Mr. Grossman and

8

Shaya Glick); *see also* ECF 519-9, PX080_0752 (sharing materials discussing campaign slogans and plans for the 2017 school board election that were not produced).  As discussed in Plaintiffs' opening motion, and as has come up during trial, the missing media and attachments contain documents highly relevant to Senate Factor 4.  *See, e.g.*, PX080_1630 (multiple missing messages from Rivkie Feiner and unknown source discussing candidates to run in upcoming 2018 School Board election); Trial Tr. 1080:15-1082:18 (discussing PX-080 at 1552, which omitted a March 23, 2018 message from Mort Becker regarding which candidates the private school slate would run in the upcoming 2018 School Board election); Trial Tr. 1474:25-1476:08 (discussing PX-080 at 1306, which omitted messages from Mort Becker and Shaya Glick in a November 8, 2017 discussion on adding polling places for white voters in advance of the 2017 School Board Election).  Accordingly, Plaintiffs were prejudiced by the loss of this information.

As to Rule 37(e)(2), there *is* sufficient evidence for the Court to find that the District and its attorneys acted intentionally.  "[A] party's conscious dereliction of a known duty to preserve electronic data is both necessary and sufficient to find that the party 'acted with the intent to deprive another party of the information's use' under Rule 37(e)(2)." *Ungar v. City of New York*, 329 F.R.D. 8, 13 (E.D.N.Y. 2018); *see also In re Reifler*, 2019 WL 396525, at *6 (S.D.N.Y. Jan. 31, 2019) ("The party seeking sanctions need not produce direct evidence of spoliation; rather, 'circumstantial evidence may be accorded equal weight with direct evidence and standing alone may be sufficient.'").  Here, the District and its attorneys had a duty to preserve the electronic data of the Board Members in this litigation.  But, as described above, the District and its attorneys engaged in a pattern of conduct reflecting a conscious dereliction of their preservation duties, which resulted in the failure to preserve media and attachments from the WhatsApp conversations.

Under the circumstances, an adverse inference is warranted that the deleted media and

9

attachments would have lent further support to Plaintiffs' case on Senate Factor 4. But at a minimum, the Court should impose monetary sanctions against the District's attorneys. The District's attorneys engaged in a pattern of noncompliance by repeatedly failing to produce or preserve the media and attachments in question, which clearly included probative evidence in this case. As a result, Plaintiffs were forced to expend substantial resources litigating the issue, including multiple motions to compel, all of which were granted—yet by the time the District finally took appropriate action in response, the materials sought apparently had been overwhelmingly, and irretrievably, lost. The District's attorneys should not be permitted to benefit from their sanctionable conduct; and certainly Plaintiffs should not have to bear the costs of the fruitless litigation to which it gave rise. Accordingly, the Court should impose a monetary sanction on the District's attorneys for the fees and costs associated with Plaintiffs' efforts to compel the production of the WhatsApp conversations in full. *See Shanchun Yu v. Diguojiaoyu, Inc.*, 2019 WL 6174204, at *5 (S.D.N.Y. Nov. 20, 2019) (sanctioning attorney for failure to comply with an order and under the Court's inherent authority where the attorney's "failure to comply was not isolated but rather part of a pattern of non-compliance"); *Scantibodies Lab., Inc. v. Church & Dwight Co.*, 2016 WL 11271874, at *37 (S.D.N.Y. Nov. 4, 2016), *report and recommendation adopted*, 2017 WL 605303 (S.D.N.Y. Feb. 15, 2017) (imposing monetary sanctions against the party and its counsel for noncompliance with court orders).

Dated: February 26, 2020
      White Plains, New York

Respectfully submitted,

/s/ Claudia T. Salomon
Claudia T. Salomon
Corey A. Calabrese
Meredith A. Cusick
Abhinaya Swaminathan
Claudia.Salomon@lw.com
Corey.Calabrese@lw.com
Meredith.Cusick@lw.com
Abhinaya.Swaminathan@lw.com
Latham & Watkins LLP
885 Third Avenue
New York, NY 10022
Phone: (212) 906-1200

Marc Zubick
Russell Mangas *(admitted pro hac vice)*
Marc.Zubick@lw.com
Russell.Mangas@lw.com
Latham & Watkins LLP
330 N. Wabash Avenue
Chicago, IL  60601
Phone:  (312) 876-7600

Andrew B. Clubok
Andrew.Clubok@lw.com
Latham & Watkins LLP
555 Eleventh Street, NW
Suite 1000
Washington, D.C. 20004
Phone: (202) 637-2200

Arthur Eisenberg
Perry Grossman
aeisenberg@nyclu.org
pgrossman@nyclu.org
New York Civil Liberties Union Foundation
125 Broad Street
New York, NY 10004
Phone: (212) 607-3329

*Attorneys for Plaintiffs*

11