UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
NATIONAL ASSOCIATION FOR THE
ADVANCEMENT OF COLORED PEOPLE,
SPRING VALLEY BRANCH; JULIO
CLERVEAUX; CHEVON DOS REIS; ERIC
GOODWIN; JOSE VITELIO GREGORIO;
DOROTHY MILLER; and HILLARY MOREAU,

                       Plaintiffs,

- against -

EAST RAMAPO CENTRAL SCHOOL
DISTRICT,

                       Defendant.
----------------------------------------------------------------x

**ORDER**

No. 17-CV-8943 (CS)

Appearances:

Claudia T. Salomon
Corey A. Calabrese
Andrej Novakovski
Latham & Watkins LLP
New York, New York

Marc Zubick
Russell Mangas
Latham & Watkins LLP
Chicago, Illinois

Andrew Clubok
Latham & Watkins LLP
Washington, D.C.

Arthur Eisenberg
Perry Grossman
New York Civil Liberties Union Foundation
New York, New York
*Counsel for Plaintiff*

David J. Butler
Randall Levine
Morgan, Lewis & Bockius LLP
New York, New York
Washington, D.C.

William S.D. Cravens
Clara Kollm
Morgan, Lewis & Bockius LLP
Washington, D.C.
*Counsel for Defendant*

Seibel, J.

Before the Court is Defendant's emergency motion to stay the Court's May 25, 2020 Decision and Order pending appeal. (Doc. 571.)

I. **BACKGROUND**

On November 16, 2017, Plaintiffs filed a Complaint alleging that the at-large election system used by Defendant East Ramapo Central School District (the "District") denies to black and Latino voters an equal opportunity to participate in the political process and elect candidates of their choice to the District's Board of Education (the "Board"), in violation of section 2 of the Voting Rights Act ("Section 2"). (Doc. 1.) Plaintiffs sought to enjoin any future elections under the at-large system and compel Defendant to replace the at-large system with a ward system. (*Id.* ¶ 7.)

A bench trial was held before this Court with closing arguments heard March 24, 2020. (*See* Minute Entry dated Mar. 24, 2020.) On May 25, 2020, the Court entered a Decision and Order finding that Plaintiffs had convincingly proved their case of vote dilution, enjoining the Board election scheduled for June 9, 2020, and ordering the District to propose a remedial plan within thirty days. (Doc. 568 ("Decision & Order") ¶¶ 87-88.)

On May 27, 2020, Defendant filed a notice of appeal from the Decision and Order. (Doc. 569.) On May 28, Defendant made an emergency motion to stay the Decision and Order, (Doc. 571), and filed a memorandum of law in support, (Doc. 572 ("D's Mem.")). That same day I ordered Plaintiffs to oppose by May 30, (Doc. 573), and thereafter Plaintiffs timely did so, (Doc. 575 ("Ps' Opp.")).

## II. LEGAL STANDARD

Courts consider four factors when deciding to issue a stay pending appeal:

> "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies."

*In re World Trade Ctr. Disaster Site Litig.*, 503 F.3d 167, 170 (2d Cir. 2007) (footnote omitted) (quoting *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987)). The likelihood of success on the merits and irreparably injury are the most critical factors. *Nken v. Holder*, 556 U.S. 418, 434 (2009). "The party requesting a stay bears the burden of showing that the circumstances justify an exercise of that discretion." *Id.* at 433-34.

## III. DISCUSSION

Defendant contends that the Court should lift its injunction of the District's June 9 election, (*see* D's Mem. at 5-12), and that the Court's Order requiring it to submit a districting proposal should be stayed pending appeal, (*see id.* at 12-21). As to the first request, Defendant's analysis is divorced from the four factors articulated above– so it has not shown that the circumstances justify an exercise of the Court's discretion – but I consider Defendant's arguments in connection with its overall likelihood of success on the merits.

3

### A. Likelihood of Success on the Merits

#### 1. Injunction of the June 9 Election

The District argues that federal courts are generally prohibited from enjoining imminent elections, so it is likely to succeed on the merits of its appeal as to the June 9 injunction. But it is the "unusual case in which a court would be justified in not taking appropriate action to insure that no further elections are conducted under the invalid plan," *Reynolds v. Sims*, 377 U.S. 533, 585 (1964), and although the Supreme Court has "recognized that the substantial risk of voter confusion arising from changes to election law or procedures on the eve of an election *may* warrant a stay pending appeal," *Covington v. North Carolina*, No. 15-CV-399, 2018 WL 604732, at *7 (M.D.N.C. Jan. 26, 2018) (*per curiam*) (emphasis added), such a stay is not required here.

Plaintiffs' intent to seek an injunction has been clear since November 16, 2017. (*See* Doc. 1.) In its opposition to Plaintiffs' motion for a preliminary injunction filed February 19, 2018, Defendant argued "it is generally against the public interest to interfere with upcoming elections unless absolutely necessary," citing preliminary injunction cases. (Doc. 76 at 38-39.) Then, more than two years passed and Defendant failed to raise this issue again. Indeed, Plaintiffs specifically asked for that relief in their pretrial proposed findings of fact and conclusions of law. Defendant had every opportunity to argue that an injunction would not be appropriate – in the run-up to trial, through the motions *in limine*, in its pretrial or posttrial proposed findings of facts and conclusions of law, or at trial – yet it chose not to do so until the instant application. It also had every opportunity to prepare for a possible injunction. Now, after the Decision and Order following the bench trial has issued, Defendant for the first time raises legal objections to what Plaintiffs sought all along. That Defendant chose to put all its eggs in the basket of prevailing at trial is no reason to prolong the disenfranchisement of minority voters.

4

In any event, Defendant's arguments are unavailing. Defendant raises concerns that the injunction will disrupt the election process, create confusion and delays, pose administrative challenges, and cause waste. But the cases Defendant cites have circumstances risking voter confusion or involving complicated changes in voting procedures that are not present here. *See Republican Nat'l Comm. v. Democratic Nat'l Comm.*, 140 S. Ct. 1205, 1206-07 (2020) (*per curiam*) (injunction changed voting rules and imposed gag order on election officials five days before election, granting relief not even requested by plaintiffs); *Purcell v. Gonzalez*, 549 U.S. 1, 3 (2006) (*per curiam*) (Court of Appeals had enjoined voter identification requirements without giving reasons, which could result in voters staying home); *Veasey v. Abbott*, 830 F.3d 216, 272 (5th Cir. 2016) (en banc) (where further findings and conclusions were required as to statewide voter-identification requirements, district court's remedy (if any) would be made effective after next election); *Veasey v. Perry*, 769 F.3d 890, 891-92 (5th Cir. 2014) (staying injunction that required change to statewide voter-identification requirements), *motion to vacate denied*, 135 S. Ct. 9 (2014); *Colon-Marrero v. Conty-Perez*, 703 F.3d 134, 136 (1st Cir. 2012) (*per curiam*) (injunction would have "order[ed] the immediate reinstatement of the more than 300,000 voters [in Puerto Rico] who had been stricken from the registration roll"); *Sw. Voter Registration Educ. Project v. Shelley*, 344 F.3d 914, 919 (9th Cir. 2003) (*per curiam*) (in statewide election, new technology would be needed in numerous counties, and "enormous resources" had already been expended on election materials and hiring and training of poll workers); *Silberberg v. Bd. of Elections*, 216 F. Supp. 3d 411, 421 (S.D.N.Y. 2016) (injunction would affect 5,300 poll sites and 60,000 trained poll workers in a statewide general election); *Konst v. New York*, No. 92-CV-615, 1992 WL 281092, at *2 (W.D.N.Y. Oct. 7, 1992) (at time *pro se* litigant filed complaint, legislature had passed and Justice Department had pre-cleared challenged apportionment plan

months before, filing deadlines had passed, and primary election was five days away; injunction against general election would require primary to be redone).[1]

Here, there is no complication or confusion. The injunction has simply put a full stop to the Board election. There is no change of wording or election protocols; due dates and procedures for returning mail-in ballots are unchanged; no ballots need to be reprinted; no polling place personnel must be trained or retrained. Rather, the election may proceed as planned, and the District simply need not tally any votes received for Board seats.[2] Indeed, given the publicity around the injunction, to stay it now and reinstate the election would likely create more confusion.

Defendant's reliance on *Goosby v. Town Bd. of Hempstead*, 981 F. Supp. 751 (E.D.N.Y. 1997), *aff'd*, 180 F.3d 476 (2d Cir. 1999), is also misplaced. On February 20, 1997, after a bench trial, the court ordered a remedial plan to be proposed. 981 F. Supp. at 754. On September 16, the plaintiffs moved to preliminarily enjoin the election scheduled for November 7. *Id.* at 762. On October 20, the court entered the remedial plan but did not enjoin the election, noting that it was three weeks away. *Id.* at 763. But here, as discussed, Plaintiffs' request for an

---

[1] Some of these and other cases cited by Defendant are inapt because they involve a preliminary injunction, not a posttrial decision on the merits. *See, e.g.*, *Flores v. Town of Islip*, 382 F. Supp. 3d 197, 205 (E.D.N.Y. 2019); *Diaz v. Silver*, 932 F. Supp. 462, 465 (E.D.N.Y. 1996) (*per curiam*). There are other major distinctions between this case and *Flores*, on which Defendant heavily relies. For example, there the plaintiff sought not only a preliminary injunction against the upcoming election under the at-large system but also the imposition of a ward system on a temporary basis, *see* 382 F. Supp. 3d at 228, 246, and the plaintiff had inexcusably delayed in requesting that relief, *see id.* at 250.

[2] I have previously suggested that Defendant may wish to inform the electorate as to the status of this election. (*See* Doc. 573.) The Court is confident that the District can, in a manner not unduly onerous, make voters aware that the votes on the District's budget and the Finklestein Memorial Library trustee will go forward.

injunction comes as no surprise.  As Plaintiffs point out, in October 2019 they requested a trial date "in light of the upcoming May 2020 School Board elections," (Doc. 434 at 1), the Court scheduled trial accordingly, and I informed the parties that a decision would issue before the election.  (Tr. at 2912:20-22.)[3]  And yet, as described above, Defendant failed to object to, or prepare for, a possible injunction.  Further, in *Goosby* the plaintiffs sought an injunction against the imminent election because they believed they would otherwise have to wait two years until the next regular election, and the court felt an injunction was unnecessary because a special election could be held in the interim.  *See* 981 F. Supp. at 763.  As it turned out, however, the appeals did not conclude, and the special election could not be held, until three years later. While I certainly hope no similar delay will occur here, and while keeping the current Board in place indefinitely is not ideal, continuing to hold illegal elections is even less desirable.

Accordingly, Defendant has not shown a likelihood of success on the merits as to lifting the injunction of the June 9 election.[4]

### 2. Districting Proposal Order and Further Proceedings

Essentially for the reasons described by Plaintiffs, (Ps' Opp. at 13-20), Defendant has not shown a likelihood of success as to its appeal from the Court's districting proposal order.  In order to expedite this ruling so that Defendant can appeal if it wishes, I will not elaborate further

---

[3] "Tr." refers to the transcript of the bench trial.

[4] I have also considered Defendant's argument that the changes to the 2020 election necessitated by the COVID-19 pandemic somehow eviscerate or undermine the Court's conclusion that the District's election system violates Section 2, (*see* D's Mem. at 10-12), and I find it to be without merit.  Not only is the notion that the special mail-in process might somehow cleanse the violation speculative – perhaps fanciful – but the problem is the at-large system, which is unchanged under the pandemic election procedures.

except to observe that Defendant's arguments distort the trial record and attempt to recast factual findings as legal decisions.

Defendant suggests that the Court's order directing it to propose a ward system is "potentially unlawful." (D's Mem. at 18.) First, at no point in this litigation has Defendant proposed an alternative election system or even taken on Plaintiffs' repeated requests for a ward system. (*See, e.g.*, Doc. 1 ¶ 7; Doc. 455 ¶ 217.)[5] Second, the *Goosby* court ordered the defendant town to propose a remedial plan dividing the town into six single-member districts, *Goosby v. Town Bd. of Hempstead*, 956 F. Supp. 326, 356 (E.D.N.Y. 1997), *aff'd*, 180 F.3d 476, and the Second Circuit affirmed in all respects, 180 F.3d at 498.

Thus, Defendant has not shown a likelihood of success on the merits as to its appeal from the order directing it to propose a districting system.

**B.     Irreparable Injury to Defendant**

Defendant argues that it will be irreparably harmed absent a stay because it "will have to bear substantial costs and divert administrative and policy maker attention and resources," including by hiring a demographer and working on proposals within thirty days. (D's Mem. at 18.) "[T]he argument that potentially wasted and diverted staff resources constitutes irreparable harm has been held meritless," because it "would almost always result in a finding of irreparable harm." *Nat. Res. Def. Council, Inc., v. U.S. Food & Drug Admin.*, 884 F. Supp. 2d 108, 124 (S.D.N.Y. 2012) (internal quotation marks omitted). The same is true of the monetary cost of

---

[5] If I had jurisdiction to modify my Decision and Order – and I am not sure that I do, given the filing of the notice of appeal – I would entertain an application by Defendant to submit an additional proposal to remedy the Section 2 violation without creating a ward system. If Defendant wishes to make such an application, it should address whether I am permitted to consider it. To be clear, I am referring to an alternative proposal in addition to, not in place of, a proposal for a ward system. To allow only the latter would invite delay.

implementing the injunction. *Church & Dwight Co. v. SPD Swiss Precision Diagnostics, GmbH*, No. 14-CV-585, 2015 WL 5051769, at *2 (S.D.N.Y. Aug. 26, 2015), *aff'd*, 843 F.3d 48 (2d Cir. 2016).[6] Defendant's general and vague objections have suggested no reason to depart from this rule. The District long ago retained a demographer and a political scientist. Commercial redistricting software is readily available. (PX 257 at 28:23-29:23; *see Gill v. Whitford*, 138 S. Ct. 1916, 1941 (2018) (Kagan, J., concurring); *Favors v. Cuomo*, No. 11-CV-5632, 2015 WL 7075960, at *9 (E.D.N.Y. Feb. 8, 2015).)[7] Defendant provides no details as to what burden the Court's order would impose and gives no reason to think that its demographer is unavailable or that it was unaware that such an order might be coming down the pike. Finally, the thirty-day window is reasonable. *See North Carolina v. Covington*, 138 S. Ct. 2548, 2550 (2018) (*per curiam*) (one month); *Pope v. County of Albany*, 94 F. Supp. 3d 302, 353 (N.D.N.Y. 2015) (three weeks). An application for more time, were I to entertain one, would require far more specificity from Defendant.

Thus, Defendant has failed to show irreparable harm.

### C. Substantial Harm to Plaintiffs

In a vote dilution case, "[a] restriction on the fundamental right to vote . . . constitutes irreparable injury." *Mich. State A. Philip Randolph Inst. v. Johnson*, 833 F.3d 656, 669 (6th Cir. 2016) (denying motion to stay pending appeal). Defendant, citing *Goosby*, 981 F. Supp. at 763, argues that because a special election can be ordered in the future, Plaintiffs would not be

---

[6] Further, given that the District has already expended prodigious amounts in litigating this case (which it has every right to do), it is curious that the District has raised a seemingly newfound desire to economize only at the remedy stage – which will entail a relatively small additional cost.

[7] "PX" refers to an exhibit offered by Plaintiffs and received at trial.

9

substantially harmed by a stay. (D's Mem. at 20.) But I agree with Plaintiffs that *Goosby* is, as noted above, a cautionary tale. Nearly four years passed in that case between the plaintiffs' victory on the merits and the first election under a legal election system. If *Goosby* is the model, Plaintiffs will suffer three more illegal Board elections – and black and Latino voters in the District will have been disenfranchised for at least fifteen years. (*See* Decision & Order ¶ 16 (no minority-preferred candidate has won a contested election since 2007).) Here, Plaintiffs' harm is substantial.

### D. Public Interest

Defendant argues that the public interest lies with granting a stay because the thirty-day timeframe "needlessly burdens" the District in light of the COVID-19 pandemic. (D's Mem. at 20-21.) As discussed above, Defendant's arguments related to its administrative responsibilities are unavailing. Plaintiffs ably explain why the public interest weighs in favor of protecting the franchise of minority voters, and I agree. (Ps' Opp. at 24-25; *see Ga. Coal. for People's Agenda, Inc. v. Kemp*, 347 F. Supp. 3d 1251, 1268 (N.D. Ga. 2018); *Fish v. Kobach*, 189 F. Supp. 3d 1107, 1151 (D. Kan. 2016), *aff'd*, 840 F.3d 710 (10th Cir. 2016).) This factor decidedly weighs against a stay because "remedying a Voting Rights Act violation is a compelling state interest." *Goosby*, 180 F.3d at 498.[8]

---

[8] Where a political subdivision's minority constituents have been denied equal access to the electoral process, to call the obligation to right that wrong a "needless[] burden[]" is at least tone-deaf. The "public" whose interests must be considered includes those who would be burdened by another illegal election.

10

### IV. **CONCLUSION**

For the foregoing reasons, Defendant's emergency motion to stay the Court's May 25, 2020 Decision and Order is DENIED. The Clerk of Court is respectfully directed to terminate Doc. 571.

**SO ORDERED.**

Dated: June 1, 2020
      White Plains, New York

                                                          *Cathy Seibel*
                                        CATHY SEIBEL, U.S.D.J.