**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE, SPRING VALLEY BRANCH, et al.,** | **ECF CASE** |
| **Plaintiffs,** | **Case No. 7:17 Civ. 8943 (CS)(JCM)** |
| **v.** | **DISTRICT JUDGE CATHY SEIBEL** |
| **EAST RAMAPO CENTRAL SCHOOL DISTRICT, et al.,** | **MAGISTRATE JUDGE JUDITH C. McCARTHY** |
| **Defendants.** | |

**PROPOSED REMEDIAL PLAN**
**BY THE EAST RAMAPO CENTRAL SCHOOL DISTRICT**

MORGAN, LEWIS & BOCKIUS LLP

David J. Butler
Randall M. Levine
101 Park Avenue
New York, NY 10178
T: (212) 309-6000
F: (212) 309-6001
-and-
1111 Pennsylvania Avenue, NW
Washington, DC 20004
T: (202) 739-3000
F: (202) 739-3001
david.butler@morganlewis.com
randall.levine@morganlewis.com

William S.D. Cravens
Clara Kollm
1111 Pennsylvania Avenue, NW
Washington, DC 20004
T: (202) 739-3000
F: (202) 739-3001
william.cravens@morganlewis.com
clara.kollm@morganlewis.com

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ........................................................................................1

I. THIS COURT'S DIRECTIVE FAILS TO FOLLOW THE PROPER REMEDY PROCEDURES FOR SECTION 2 CASES ........................................................................2

II. CONSTRAINED BY THE COURT'S ORDER, THE DISTRICT PROPOSES PLAINTIFFS' *ILLUSTRATIVE PLAN 2* ....................................................................6

CONCLUSION..........................................................................................................9

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Cane v. Worcester Cty., Md.*,
35 F.3d 921 (4th Cir. 1994) .....3

*Growe v. Emison*,
507 U.S. 25 (1993).....3

*Large v. Fremont Cty., Wyo.*,
670 F.3d 1133 (10th Cir. 2012) .....2

*Lawyer v. Dep't of Justice*,
521 U.S. 567 (1997).....3

*Nipper v. Smith*,
39 F.3d 1494 (11th Cir. 1994) .....3

*North Carolina v. Covington*,
138 S. Ct. 2548 (2018).....5

*Pope v. County of Albany*,
94 F. Supp. 3d 302 (N.D.N.Y. 2015).....5

*U.S. v. Chamberlain Sch. Dist., et. al.*,
Case No. 4:20-cv-04084 (D.S.D., May 28, 2020) .....6, 7

*U.S. v. Euclid City School Bd.*,
632 F. Supp. 2d 740 (N.D. Ohio 2009).....5

*United States v. Vill. of Port Chester*,
704 F. Supp. 2d 411 (S.D.N.Y. 2010).....3, 5

*Uno v. City of Holyoke*,
72 F.3d 973 (1st Cir. 1995).....3

*White v. Weiser*,
412 U.S. 783 (1973).....2, 3

**Other Authorities**

N.Y. Const. art. III § 4(b).....7

N.Y. Const. art. III § 5(b).....7

**PRELIMINARY STATEMENT**

On May 25, 2020, this Court found in favor of Plaintiffs on their claim alleging that the District's use of state-mandated at-large elections to elect school board members violates Section 2 of the Voting Rights Act. ECF No. 568. The District has appealed the Decision and Order. ECF No. 569. Briefing on the District's appeal is proceeding on an expedited schedule, with the opening brief due today, a response due by July 16, and a reply due by July 23. Oral argument is anticipated during the week of August 17, 2020.

In its Decision and Order, this Court ordered the District to propose a remedial plan to replace at-large elections within 30 days, and directed that the proposed plan "shall divide the District into nine voting wards—one for each Board seat—and require that only those residents living in a voting ward may vote for that ward's seat." ECF No. 568 ¶ 88. The Court further observed that "four majority-minority wards appear to be possible, and that a special election would appear to be necessary once the remedial plan is adopted." *Id.*

This Court and the Second Circuit declined to stay the remedial plan directive pending appeal. The District therefore makes this filing in order to comply with this Court's directive. But nothing in this proposed remedial plan should be construed to waive any argument for reversal, nor as a concession that this Court's remedial plan directive is a proper exercise of the Court's equitable jurisdiction under established Voting Rights Act precedent. All such arguments and objections are expressly preserved.

This Court's 30-day directive did not give the District sufficient time to adequately consider and propose a properly developed remedial plan. The Board was not able to hold open hearings, commission and review alternative plans, or canvass constituents. Rather, as the Court's directive appears to have intended, the District has no real choice but to propose the only plan

that could possibly comply with the Court's narrow rules in the time available—the second illustrative plan proposed by Plaintiffs' expert witness, Mr. William Cooper.

## I. THIS COURT'S DIRECTIVE FAILS TO FOLLOW THE PROPER REMEDY PROCEDURES FOR SECTION 2 CASES.

The District has consistently maintained that the imposition of a ward voting system in this case would be inequitable. That was the position taken by the District in its opposition to Plaintiffs' aborted motion for preliminary injunction, where the District argued:

> [T]he requested injunction is not in the public interest and would be anything but equitable. Plaintiffs' claim is at odds with the fundamental purposes of the Voting Rights Act. Plaintiffs admit that the White, "private school" community votes for White, Black, and Latino candidates without regard to race. This is what the Voting Rights Act was intended to achieve, and it is only possible *because* of "at large" voting. Plaintiffs' demand for a "ward voting" system asks the Court to create racial polarization where none currently exists. Imposing a "ward system" would prevent District residents from voting for candidates outside of their ward. That would make it nearly impossible for many residents to vote for anyone except members of their own race. A "ward system" would thus *prevent* White voters from voting for Black candidates who live in different parts of town, and vice-versa. That perverse result is directly at odds with the aim and purpose of the Voting Rights Act, and the Court should have no part in it.

ECF No. 76 at 4. That argument remains as true today as it was in February 2018. After Plaintiffs withdrew their motion for preliminary injunction, however, debate over remedies fell by the wayside. Plaintiffs filed no more motions for preliminary injunction, and Section 2 precedents show that district courts should bifurcate the liability and remedy phases of trial.

That largely uniform practice is an incident of the rule—which this Court has acknowledged, though not followed—that upon a finding of a Section 2 violation, district courts must give the legislative body the first opportunity to devise a remedial plan. *See White v. Weiser*, 412 U.S. 783, 794–95 (1973) ("[J]udicial relief becomes appropriate only when a legislature fails to reapportion according to federal constitutional requisites in a timely fashion after having had an

adequate opportunity to."); *Large v. Fremont Cty.*, 670 F.3d 1133, 1138 (10th Cir. 2012) ("Although in [a Section 2 case] the catalyst for redistricting is a federal-court order, the Supreme Court has routinely cautioned that redistricting and reapportioning legislative bodies is a legislative task which the federal courts should make every effort not to pre-empt"); *United States v. Vill. of Port Chester*, 704 F. Supp. 2d 411, 447 (S.D.N.Y. 2010).

A district court "must" defer to the legislative body's remedial plan "so long as the choice is consistent with federal statutes and the Constitution." *Port Chester*, 704 F. Supp. 2d at 448; *see also Lawyer v. Dep't of Justice*, 521 U.S. 567, 577 (1997) ("[T]he discretion of the federal court [to overturn a legislature's proposal] is limited except to the extent that the plan itself runs afoul of federal law."); *White*, 412 U.S. at 795 ("[A] district court should not pre-empt the legislative task nor intrude upon state policy any more than necessary."). "A district court may not substitute its own remedial plan for defendant's legally acceptable one, even if it believes another plan would be better." *Port Chester*, 704 F. Supp 2d at 448; *see also, e.g.*, *Uno v. City of Holyoke*, 72 F.3d 973, 992 (1st Cir. 1995) ("We think it is a fundamental tenet of voting rights law that, time permitting, a federal court should defer in the first instance to an affected state's or city's choice among legally permissible remedies."). Failing to defer to the local legislature's legally acceptable remedial plan is clear error. *See, e.g.*, *Growe v. Emison*, 507 U.S. 25, 42 (1993).

Even if the district court finds the defendant's proposed plan unacceptable, the district court still may not disregard the proposed plan entirely, and "the appropriate course for the district court to follow is to fashion a remedy that complies with § 2 and effectuates *to the greatest extent possible* the policy judgments expressed by the [legislature]." *Cane v. Worcester Cty.*, 35 F.3d 921, 929 (4th Cir. 1994) (district court "failed to defer to … expressed legislative preference" in adopting remedial plan); *see also Nipper v. Smith*, 39 F.3d 1494, 1533 (11th Cir. 1994). ("[F]rom

the inception of a section 2 case, the existence of a workable remedy within the confines of the state's system of government is critical to the success of a vote dilution claim.").

It was for precisely these reasons that, before trial, the District moved *in limine* to preclude any evidence or argument intended to prove that ward voting, as opposed to any other legally acceptable voting procedure, is the appropriate remedy in this case. ECF No. 488 at 12. In its *in limine* motion, the District argued that "the evidence and argument considered at trial should be limited … only to the question whether Plaintiffs have met their burden to prove the existence of a violation [of Section 2]." *Id.* In response, Plaintiffs represented that they did "not intend to argue issues more properly addressed at the remedy phase of the trial." ECF No. 496. This Court accordingly granted the District's motion *in limine* from the bench, and held "that it must give the Defendant jurisdiction the first opportunity to suggest a legally acceptable remedial plan, based on the theory that the judiciary should not intrude on legislative policy any more than necessary." ECF No. 578 (Jan. 30, 2020 Hr'g Tr.) at 41:19–42:4.

Trial proceeded according to the Court's *in limine* ruling. The District stipulated that Mr. Cooper's report adequately showed that Plaintiffs could satisfy the first *Gingles* precondition (at least as to Black voters). ECF No. 568 ¶ 13. The District otherwise did not engage with the *merits* of Mr. Cooper's proposed ward plans, because it was unnecessary to do so. For instance, the District offered no expert testimony proposing alternative election systems or ward plans. Nor did the District cross-examine Mr. Cooper on whether his proposed ward plans complied with traditional districting considerations and the requirements of the Equal Protection Clause.

In light of this history, the District was especially surprised by that portion of the Court's Decision and Order which simply declared in conclusory fashion that only a ward system with nine single-member districts would be accepted as a remedial plan, and that any such remedial

plan should have at least four minority-majority districts. *See* ECF No. 568 ¶ 88. Even more mystifying was this Court's assertion in its Order denying the District's request for a stay pending appeal that "at no point in this litigation has Defendant proposed an alternative election system or even taken on Plaintiffs' repeated requests for a ward system." ECF No. 576 at 8. Indeed, the District didn't, as that was precisely the purpose for our motion *in limine*, which this Court granted.[1]

If the Court had given the District's Board both the leeway and adequate time[2] to study alternatives to ward voting and hold the necessary public hearings, the District might have been able to propose, for example:

- A cumulative voting system, pursuant to which each voter would be allotted the same number of votes as there were seats up for election, and would be free to allocate them however he or she chose (or its close cousin, the "limited voting system"). Such voting systems have been recognized as lawful means to cure Section 2 violations in appropriate circumstances, and the growing trend appears to favor such systems over ward systems, which are more restrictive and bear unfavorable resemblance to judicially imposed racial

---

1 In its Order denying a stay pending appeal, the Court observed that if it had jurisdiction to modify its Decision and Order, it would be willing to entertain additional proposals. ECF No. 576, at 8 at n. 5. We agree that the Court lacks jurisdiction to amend its Order while that Order is on appeal. But that doesn't change the fact that the 30-day period the Court has allotted for compliance does not provide sufficient time for the Board to conduct a study, or to consider, adopt, and propose alternative plans—especially while counsel is engaged in expedited briefing on the appeal.

2 With regard to timing, the Court previously observed (ECF No. 576) that it thought 30 days sufficient to propose a remedial plan in light of two cases, *North Carolina v. Covington*, 138 S. Ct. 2548, 2550 (2018) (per curium) (one month) and *Pope v. County of Albany*, 94 F. Supp. 3d 302, 353 (N.D.N.Y. 2015) (three weeks). Neither case is similar. In both *Covington* and *Pope*, the defendant jurisdictions already were operating under districting systems, and the only remedy required was to adjust the placement of district lines already in use. That is not comparable to the task that *should be* before the District here, *i.e.*, to propose a new voting system from scratch.

segregation. *See, e.g.*, *Port Chester*, 704 F. Supp. at 448 (adopting village's cumulative voting remedy over plaintiffs' objections); *United States v. Euclid City School Bd*., 632 F. Supp. 2d 740, 756 (N.D. Ohio 2009) (finding "limited and cumulative voting" to be "equally acceptable or unacceptable" for purposes of remedying Section 2 violation).

- A system involving a mixture of at-large and single-member districts. Such systems preserve the benefits of at-large systems, such as having board members who remain politically accountable to the entire voting population instead of just to one neighborhood, while also permitting the creation of minority-majority districts. *See, e.g.*, Joint Mot. for Entry of Consent Decree, *United States v. Chamberlain Sch. Dist., et. al.*, Case No. 4:20-cv-04084 (D.S.D., May 28, 2020) (providing for a method of election involving six members elected from three two-member districts and one member elected at-large).[3]

The Court's Decision and Order, however, and its limited 30-day window, leaves no room or time for the District's Board to properly consider such alternative solutions, which might have been shown to better serve the District's unique demographics and voting population.

## II. CONSTRAINED BY THE COURT'S ORDER, THE DISTRICT PROPOSES PLAINTIFFS' *ILLUSTRATIVE PLAN 2*.

For the foregoing reasons, the Court's Decision and Order leaves the District no practical choice but to propose the second illustrative plan offered by Plaintiffs' expert demographer, Mr. Cooper.[4] DX 63. Mr. Cooper's second illustrative plan combines the CVAP for non-Hispanic Black and Latino voters, and creates four "majority-minority" districts ("Illustrative Plan 2"). *Id.* The Court accepted Plaintiffs' contention that Blacks and Latinos vote cohesively (over the

---

[3] *Available at* https://www.justice.gov/opa/press-release/file/1279746/download (last accessed June 25, 2020).

[4] At trial, the Court accepted Mr. Cooper as an expert on the issues of demographics and redistricting. Trial Tr. 498:5–10.

District's objections and contrary evidence), ECF No. 568 ¶ 13, which appears to compel adoption of Mr. Cooper's Illustrative Plan 2. According to Mr. Cooper, Illustrative Plan 2 "has an overall deviation of 5.45% from the ideal population size," and the "[d]istricts in the plan are reasonably compact and contiguous." DX 63 at ¶ 81. Mr. Cooper also opined that his plan "generally adheres to municipal boundaries or existing ED boundaries." *Id.* While the District might have cross-examined Mr. Cooper on these opinions if it had an opportunity to do so, it presently is aware of no basis to disagree with his opinions on these specific points.

Plaintiffs should have no objection to the District's proposal of their own expert's remedial plan, but there nevertheless remain a few other points to be addressed:

***Redistricting.*** The adoption of Mr. Cooper's Illustrative Plan 2 must be only a temporary measure, because redistricting will be required next year upon release of the 2020 decennial census data.[5] The New York State Constitution requires redrawing of district lines for congressional and state legislative offices after the decennial census, and the same requirement flows down to the state's political subdivisions to the extent they also use election districts. *See* N.Y. Const. art. III §§ 4(b), 5(b). The 2020 census is underway, and the United States Census Bureau is required to deliver apportionment counts to the President in approximately six months. New York's redistricting process already has begun, with the independent redistricting commission having been appointed earlier this year. Any wards imposed by this Court this year (for any election in 2020) must therefore be redrawn to reflect the updated census for the 2021 election.

***Special Election Considerations.*** The Court has observed that a special election appears to be necessary once a ward system has been adopted. *See* ECF No. 568 ¶ 88. In light of the

[5] An argument could be made that, in the interest of preserving resources and avoiding voter confusion, the Court should refrain from ordering any ward system to be implemented until after redistricting is complete in 2021.

Second Circuit's order on the District's Motion for Stay, it appears prudent to wait for the Second Circuit to pass on the Court's Decision and Order before ordering a special election to proceed. App. ECF No. 50 ("It is further ORDERED that the appeal is expedited, and shall be heard as early as the week of August 17, 2020, *in advance of any special election* pursuant to the new plan.") (emphasis added). In all events, in the first election after implementation of the ward system contemplated by the Court's Decision and Order, the District suggests that all nine Board seats should be up for election, so that the ward approach will be implemented District-wide.

Further, in order to preserve the District's staggered terms mandated by state law, in the first election under a ward system, three of the Board's nine seats should be chosen at random to be designated as 1-year term seats, three seats should be designated as 2-year term seats, and three seats should be designated as 3-year term seats. After three years of elections the board members' terms again will be for three-year staggered terms.

Any order directing implementation of a ward system should also allow sufficient time for the District to implement a voter education program to teach voters about the new ward system. Time also will be necessary for new candidates to be nominated for each new ward and for candidates to adequately campaign.

Finally, if by the time a ward system is implemented the Governor's office has lifted restrictions in response to the Coronavirus pandemic sufficiently to permit in person voting, time should be afforded for the District to consider the placement of its current polling sites in case they need to be relocated to better serve voters under a new ward system.

*      *      *

## CONCLUSION

In light of the constraints this Court has imposed on the District's discretion to consider and propose a remedial plan, the District has no choice but to propose Mr. Cooper's Illustrative Plan 2.

Dated: June 25, 2020

Respectfully submitted,

**MORGAN, LEWIS & BOCKIUS LLP**

s/ David J. Butler
David J. Butler
Randall M. Levine
101 Park Avenue
New York, NY 10178
T: (212) 309-6000
F: (212) 309-6001
-and-
1111 Pennsylvania Avenue, NW
Washington, DC 20004
T: (202) 739-3000
F: (202) 739-3001
david.butler@morganlewis.com
randall.levine@morganlewis.com

William S.D. Cravens
Clara Kollm
1111 Pennsylvania Avenue, NW
Washington, DC 20004
T: (202) 739-3000
F: (202) 739-3001
william.cravens@morganlewis.com
clara.kollm@morganlewis.com

*Counsel for Defendant East Ramapo Central School District*