UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

NATIONAL ASSOCIATION FOR THE
ADVANCEMENT OF COLORED PEOPLE,
SPRING VALLEY BRANCH; JULIO
CLERVEAUX; CHEVON DOS REIS; ERIC
GOODWIN; JOSE VITELIO GREGORIO;
DOROTHY MILLER; HILLARY MOREAU;
and WASHINGTON SANCHEZ,

                        Plaintiffs,

    v.

EAST RAMAPO CENTRAL SCHOOL
DISTRICT and MARYELLEN ELIA, IN HER
CAPACITY AS THE COMMISSIONER OF
EDUCATION OF THE STATE OF NEW
YORK,

                        Defendants.

17 Civ. 8943 (CS) (JCM)

---

**DECLARATION OF CLAUDIA T. SALOMON IN SUPPORT OF PLAINTIFFS'
MOTION FOR ATTORNEYS' FEES AND COSTS**

    I,  Claudia T. Salomon, an attorney admitted to practice before this Court, declare under

penalty of perjury, pursuant to 28 U.S.C. § 1746, as follows:

    1.      I am a partner of the law firm of Latham & Watkins LLP, 885 Third Avenue, New

York, New York ("Latham"), attorneys for Plaintiffs, and am a member in good standing of the

bar of the State of New York and of this Court.  I submit this declaration in support of Plaintiffs'

Motion for Attorneys' Fees and Costs.

    2.      Latham, as Plaintiffs' counsel, seeks $7,554,015 in attorneys' fees, $63,544.92 in

expert fees and costs, and $490,259.55  in costs and disbursements, for a total of $8,107,819.47.

Latham has voluntarily reduced its standard hourly rates to match the rates that we understand

(based on the most recent available public information) have been charged by counsel for the East

Ramapo Central School District (the "District") and to fall within the range of hourly rates awarded by courts in other civil rights cases within the Southern District of New York. By discounting these rates from the range that Latham typically charges, Latham is voluntarily reducing its fees by more than $6.7 million.

3.      Latham will not keep any fees for any attorney or other staff member time awarded in connection with this motion. Instead, Latham will donate its fee award to one or more non-profit organizations that benefit(s) the public school students of the District.

4.      Although Latham represented Plaintiffs pro bono, this case involved financial risks for Latham in connection with it paying the significant expenses incurred in litigating this matter, including out of pocket costs for depositions, experts, travel, filing fees, process servers, and logistics, totaling $553,804.47.[1]    Latham took steps to mitigate these expenses, including negotiating and securing discounted "pro bono" rates with each of the experts, the e-discovery services vendor, and the deposition vendors used in this case.

**Legal Services Provided**

5.      During the summer of 2017, Plaintiffs retained Latham to represent them in a potential lawsuit regarding the at-large elections for the District's Board of Education (the "Board"). Between Plaintiffs' retention of Latham and the filing of their complaint, attorneys at Latham devoted extensive time and effort to investigating Plaintiffs' claims, performing pre-litigation discovery, and attempting to resolve the matter without litigation. *See, e.g.*, Ex. B to Calabrese Decl. (Oct. 2, 2017 Ltr.).

6.      On November 16, 2017, Plaintiffs filed their complaint, which alleged that the

---

[1] The District's counsel refused to accept service on behalf of the Board Members, necessitating the hiring of process servers.

District's at-large Board elections violated Section 2 of the Voting Rights Act of 1965.

7.      On December 7, 2017, Plaintiffs moved for a preliminary injunction seeking to enjoin the District from conducting the May 2018 Board elections under the at-large election system.  *See* ECF No. 15.  Simultaneously, the parties engaged in limited discovery in advance of the preliminary injunction hearing, including requests for document production and several depositions.  However, prior to the hearing, Plaintiffs' expert witness, Dr. Cole, suffered a health emergency and had to withdraw from the case.  Plaintiffs subsequently withdrew their preliminary injunction motion while they sought to engage a new expert witness.  *See* ECF No. 119.  Latham has not sought fees for the time it spent drafting the preliminary injunction memoranda or working with Dr. Cole, nor has it sought any costs associated with Dr. Cole's report.

8.      On April 13, 2018, this Court denied the District's motion to dismiss.[2] Subsequently, the parties engaged in extensive discovery concerning the District's at-large system for electing Board members, the political cohesion of the District's black and Latino communities, and the existence of the totality of the circumstances necessary to establish Plaintiffs' claims. Plaintiffs retained three experts, who collectively submitted nine expert reports (including affidavits of direct testimony), however Plaintiffs are not seeking costs and fees related to the three expert reports from Dr. Steven Cole.  The District also retained three experts, who collectively submitted five reports (including affidavits of direct testimony).  Additionally, discovery included the production of tens of thousands of documents and taking 18 witness depositions and defending 18 witness depositions.  Latham deposed the District's experts Drs. John Alford, Peter Morrison, and Randolph Stevenson, and defended the depositions of Plaintiffs' experts Dr. Matthew Barreto,

---

[2] Latham is not seeking fees for the attorneys who primarily worked on the New York Commissioner of Education's motion to dismiss, which this Court granted on April 13, 2018.

Dr. Loren Collingwood, and Mr. William Cooper.[3]

9. Extensive motion practice occurred throughout this litigation, including, *inter alia*, numerous Plaintiffs' letter motions and other motions to compel production of documents and witnesses (*see, e.g.*, ECF Nos. 86, 106, 124, 135, 154, 169, 176, 194, 290, 439, 443); the District's motion for reconsideration (*see, e.g.*, ECF No. 184); the District's interlocutory appeal to the Second Circuit of a non-final discovery order (*see* ECF. No. 225); the District's extensive motion for summary judgment (*see* ECF Nos. 355-357) and Plaintiffs' opposition to that motion (*see* ECF Nos. 384, 389-390); the District's *Daubert* motion to exclude the testimony of Plaintiffs' testifying experts and Plaintiffs' opposition to that motion (*see* ECF Nos. 361-62, 386, 391); and the District's motion *in limine* to exclude Plaintiffs' expert testimony concerning Catalist data—in effect a second *Daubert* motion—and Plaintiffs' opposition to that motion (*see* ECF Nos. 405, 413, 417).

10. Following this Court's denial of the District's motion for summary judgment, both parties readied for trial. Plaintiffs developed substantial pre-trial briefing and submissions, and prepared approximately twenty witnesses for testimony at trial. *See, e.g.*, ECF No. 455 (Plaintiffs' Proposed Findings of Fact and Conclusions of Law). In addition, Plaintiffs spent many hours addressing the District's pre-trial practices, such as the District's circumventing a 12-page limitation for motions *in limine* by submitting a 103-page appendix containing legal arguments in connection with one of its motions. *See* ECF No. 488-1.

11. This litigation culminated in a bench trial, which took place between January 22, 2020 and March 24, 2020. Multiple post-argument briefs were submitted, including, *inter alia*,

---

[3] Latham also defended Dr. Cole, but as noted, is not seeking fees in connection with his deposition.

Plaintiffs' supplemental declaration in support of sanctions (*see* ECF No. 551); Plaintiffs' letter motion concerning the distribution of settlement proposals (*see* ECF No. 553); the District's opposition to Plaintiffs' motion for sanctions (*see* ECF No. 554); and Plaintiffs' and the District's revised Proposed Findings of Fact and Conclusions of law (*see* ECF Nos. 555, 556).  On May 25, 2020, this Court found for the Plaintiffs and awarded them attorneys' fees and costs.  *See* ECF No. 568 ("Decision") ¶¶ 88-89.

### Failed Settlement Attempts Before Trial

12.     Plaintiffs made multiple attempts to resolve this matter prior to trial in order to achieve an equitable resolution, while minimizing the time and resources expended by both parties. *See, e.g.*, *supra* ¶ 5.  Moreover, in the weeks leading up to trial, this Court encouraged the parties to meet and confer regarding settlement.  Although Plaintiffs engaged in settlement negotiations in good faith, evidence discovered at trial showed that the District subverted the settlement process and did not engage in good faith negotiations.  Specifically, Board President Harry Grossman, who the District's counsel selected as the conduit for relaying settlement information to the Board, excluded minority Board Members from settlement discussions, actively discouraged them from attending the negotiations with Plaintiffs by falsely telling them the "Judge wants to talk/yell at" the Board "for not doing what N.A.A.C.P. wants," and only selectively shared settlement information with them.  Decision ¶ 75 n.58.

### Fees for Legal Services

13.     Attached as Exhibit 10 is a true and correct copy of the billing records for certain legal services rendered on behalf of Plaintiffs over the course of Latham's representation of Plaintiffs in this matter (the "Latham Billing Records").  Specifically, the Latham Billing Records contain entries for legal services rendered by the associate attorneys who played stand-up roles at trial, the two lead trial partners, one senior paralegal, and one trial technology consultant.  Latham

is not seeking to recover fees for the services rendered by any of the attorneys who did not stand up at trial, or for the time of several other paralegals and trial technology personnel, all of whom performed valuable work that contributed to Plaintiffs' win at trial. The decision to forego fees for those attorneys and staff equates to a voluntary reduction of more than 9,000 hours in billable time that Latham is not seeking to recover from the District. The Latham Billing Records were compiled from contemporaneously created time records created by Plaintiffs' counsel and support staff during the period from January 2017 to June 2020.[4]

14.     Latham has included in this bill the time of the principal Latham attorneys who worked on this case and stood up at trial: Andrew B. Clubok (Partner), Claudia T. Salomon (Partner), Corey A. Calabrese (Senior Associate), Russell D. Mangas (Senior Associate), Rakim E. Johnson (Senior Associate), Thomas C. Pearce (Senior Associate), Andrej Novakovski (Associate), Abhinaya Swaminathan (Associate), Nicole Scully (Associate), Meredith A. Cusick (Associate), and Elizabeth C. Sahner (Associate, together the "Latham Billing Attorneys"). Additionally, Latham has included in this bill the time of the two principal Latham support staff who worked on this case: Natalie Sagara, a Senior Paralegal, and Jon Walton, a Trial Technology Consultant.

15.     I am an experienced litigator and the Global Co-Chair of Latham's International Arbitration Practice and regularly handle matters on a pro bono basis, recently obtaining the release of a client who was sentenced to life without parole as a juvenile and obtaining a green card for a client under the Violence Against Women Act. I am serving as lead counsel on a pro bono basis, co-counsel with the New York Civil Liberties Union ("NYCLU") on another voting rights case,

---

[4] Plaintiffs reserve the right to seek additional fees for work performed by their counsel after June 17, 2020.

*League of Women Voters of New York v. NYS Board of Elections*, challenging the constitutionality of New York's 25-day voter registration cut-off for disenfranchising tens of thousands of eligible voters.  I previously taught a course on voting and political participation at University of Richmond School of Law and have worked on various other voting rights cases.  I have a global practice, representing clients around the world, and have a single hourly rate that I typically charge my clients regardless of where a given matter is located.

16.     Andrew B. Clubok is a senior litigation partner and serves as the Global Chair of Latham's Securities Litigation & Professional Liability Practice.  He is a current trustee, and past board member, of the Washington Lawyers' Committee for Civil Rights and Urban Affairs, a pro bono organization that partners with law firms to litigate cases to combat discrimination in all aspects of public life.  He is a highly accomplished trial lawyer who has devoted a substantial portion of his 27-year legal career to serving pro bono clients, successfully representing victims of human trafficking, veterans, prisoners, asylum seekers and indigents in need of legal assistance. In addition, he has previously successfully tried an election law case, for which he served as lead counsel.

17.     I supervised the work of all the attorneys on this matter, and I believe that the work performed was necessary, reasonable, and completed efficiently.

18.     Notably, much of the work that Latham performed on this matter was necessitated by the District's dilatory, vexatious, and win-at-all-costs approach to this litigation.  *See, e.g.*, *supra* ¶¶ 5-11.

19.     As this Court is aware, at present this litigation has lasted nearly three years.  At all times, this case was staffed by attorneys with significant litigation experience and proven track records of high-level performance.  At the same time, throughout the case, I took care to ensure

that our staffing model focused on providing efficient legal services while minimizing unnecessary costs.  If needed, new attorneys were substituted for those who left the firm or the New York office.

20.     Because of the voluntary reductions described below, the actual fees for services rendered by Latham are significantly greater than those reflected in the Latham Billing Records and greater than those requested in the instant fee application.

21.     After reviewing the entirety of the billing records in this matter, I have voluntarily eliminated time entries for dozens of timekeepers, including attorneys and staff who individually contributed thousands of hours of significant substantive and administrative support for this matter. Such exclusions include time entered by (1) all associates who did not make appearances in court; (2) all partners except for the two lead trial partners; (3) all summer associates; and (4) all paralegals, project assistants, and support staff except for one senior paralegal and one trial technician who attended trial daily.  This voluntary reduction constitutes more than 9,000 hours and more than $6.8 million in fees that Latham is not seeking to collect from the District.[5]

22.     In a further voluntary reduction, Latham is not seeking to collect the hourly rates that it regularly charges and receives from its clients for similar complex litigation matters and which are consistent with the rates charged by other firms of Latham's size in this jurisdiction. Rather, Latham has voluntarily reduced its hourly rates to match what we understand to be the rates that have been charged to the District by Morgan, Lewis & Bockius, LLP ("Morgan Lewis"), the District's counsel in this case.  The following table summarizes the total amount of fees for each relevant timekeeper at the applicable rate charged by Morgan Lewis.  Latham seeks reimbursement at a rate of $650/hour for partners Claudia T. Salomon and Andrew B. Clubok,

---

[5] This estimate is based on typical billing rates for Latham attorneys, and not the reduced fees Latham is seeking here.

$450/hour for associates Corey A. Calabrese, Russell D. Mangas, Rakim E. Johnson, Thomas C.

Pearce, Andrej Novakovski, Abhinaya Swaminathan, Nicole Scully, Meredith A. Cusick, and

Elizabeth C. Sahner, and $250/hour for support staff Jon Walton and Natalie Sagara.

| Time Keeper | Rate Requested | Total Number of Hours Billed | Total Fees |
|---|---|---|---|
| Andrew B. Clubok | $650.00 | 371.1 | $241,215.00 |
| Claudia T. Salomon | $650.00 | 826.3 | $537,095.00 |
| Corey Calabrese | $450.00 | 2,404.4 | $1,081,980.00 |
| Rakim E. Johnson | $450.00 | 1,466 | $659,700.00 |
| Russell Mangas | $450.00 | 1,814 | $816,300.00 |
| Andrej Novakovski | $450.00 | 2,945.9 | $1,325,655.00 |
| Thomas C. Pearce | $450.00 | 1,011.7 | $455,265.00 |
| Nicole Scully | $450.00 | 1,506.6 | $677,970.00 |
| Abhinaya Swaminathan | $450.00 | 1,543 | $694,350.00 |
| Meredith A. Cusick | $450.00 | 769 | $346,050.00 |
| Elizabeth C. Sahner | $450.00 | 636.3 | $286,335.00 |
| Natalie Sagara | $250.00 | 1,463.6 | $365,900.00 |
| Jon Walton | $250.00 | 264.8 | $66,200.00 |
| **Total** | | **17,022.7** | **$7,554,015.00** |

23.     Each of the billing rates listed above is similar to or below those prevailing in the

Southern District of New York for similar services by attorneys and support staff of comparable

skill, experience, and reputation and are significantly reduced from the rates regularly charged to

and paid by Latham's clients.  These rates are also generally lower than those regularly charged

by Latham's peer firms, as shown by the National Law Journal's 2017 Billing Survey, which

demonstrates that Plaintiffs' counsel's standard rates (which are much higher than the rates used

in this application) reflect the prevailing market rates charged by large law firms in New York

City.  Attached as Exhibit 11 is a true and correct copy of the National Law Journal's 2017 Billing

Survey for firms in New York City.  This voluntary reduction further reduced Plaintiffs' fee request

by $6.7 million.  Taking into account the aforementioned voluntary time exclusions and fee

reductions, Plaintiffs' fee request totals $7,554,015.00.  That amount constitutes a total discount of more than $13.5 million from the actual number of hours incurred by Latham in this case at Latham's standard fees.

### Expert Costs

24.     Plaintiffs retained five testifying expert witnesses to assist Plaintiffs in, among other things, meeting their burden of establishing the *Gingles* factors and Senate factors: (1) Dr. Matthew Barreto, a political science professor at UCLA and the co-founder of the research and polling firm Latino decisions who provided expert opinions regarding the existence of racial polarization in the District's elections; (2) Dr. Loren Collingwood, an associate political science professor at UC Riverside who also provided expert opinions as to racial polarization in the District and served as the lead programmer on all relevant statistical analyses; (3) William Cooper, a redistricting and mapping expert with decades of experience who provided expert opinions as to the District's demographics and the ability to create a ward voting system with at least four majority-minority districts in light of the District's demographics; (4) Dr. Steve Cole who provided expert opinions regarding the existence of racial polarization in the District's elections; and (5) Amy Wells who provided expert opinions on the impact of the District's cuts on public education in the District.

25.     Plaintiffs do not seek expert fees and costs for experts who did not testify at trial, including Dr. Steven Cole and Dr. Amy Stuart Wells.

26.     The District submitted expert reports and declarations from three experts:  Dr. John Alford, Dr. Peter Morrison, and Dr. Randolph Stevenson.  Dr. Barreto, Dr. Collingwood, and Mr. Cooper provided expert reports throughout the course of this litigation, including in order to rebut the conclusions of the District's expert, Dr. John Alford.

27.     Latham and NYCLU split the cost of Dr. Barreto's fees.  Latham therefore seeks a

total of $25,194.92 for Dr. Barreto's fees.  Attached as Exhibit 9 is a true and correct copy of Dr.

Barreto's billing records in this matter for the fees and costs that Latham is seeking. The remainder

of his billing records are attached as Exhibit E to the Declaration of Artthur Eisenberg.

28.     Latham does not seek any reimbursement in connection with Dr. Collingwood's

fees as those were paid by NYCLU.  His billing records are attached as Exhibit E to the Declaration

of Arthur Eisenberg.

29.     Plaintiffs' expert William Cooper billed $38,350 in fees and costs over the course

of this litigation, at a discounted rate of $150/hour.  As such, Latham requests that total amount

for Mr. Cooper's fees and costs.  Attached as Exhibit 9 is a true and correct copy of Mr. Cooper's

billing records in this matter.

30.     The total amount of expert fees and costs that Latham seeks is $63,544.92.

<u>**Costs and Disbursements**</u>

31.     I have voluntarily excluded certain costs from this fee application, including (1) all

electronic legal research databases (*e.g.*, Lexis and Westlaw); (2) in-house duplication; (3) PACER

access; (4) certain travel related expenses, including travel from outside the jurisdiction to

proceedings in the jurisdiction; (5) certain deposition related expenses; (6) and other miscellaneous

costs.  Although Latham clients ordinarily pay these costs, Latham has voluntarily decided not to

seek reimbursement from the District for certain costs totaling approximately $255,500.

32.     The total amount of Latham's costs and disbursements that Latham is seeking

reimbursement for is $490,259.55.[6]  The receipts and invoices for these costs and disbursements

are attached hereto as Exhibits 1-8.  The following table identifies Latham's costs incurred by

---

[6] This does not take into account any costs incurred by NYCLU that are detailed in the
Declaration of Arthur Eisenberg submitted herewith.

category:

| Category | Amount | Exhibit[7] |
|---|---|---|
| Deposition Costs[8] | $87,276.41 | 1 |
| Transcript Costs | $25,888.19 | 2 |
| Computer and Technology Costs[9] | $67,523.18 | 3 |
| Conference Space for Trial | $52,467.86 | 4 |
| Attorney and Client Meals | $12,069.22 | 4.1 |
| Process Server Costs | $27,015.25 | 5 |
| Trial Lodging | $38,584.38 | 6 |
| Travel for Depositions and Trial[10] | | 7 |
|    Dr. Alford Deposition | $1,267.37 | 7.1 |
|    Dr. Barreto Deposition | $2,141.40 | 7.2 |
|    Dr. Barreto Trial Preparation | $3,268.65 | 7.3 |
|    Ms. Castor Trial Preparation | $519.17 | 7.4 |
|    Mr. Cooper Deposition | $1,026.70 | 7.5 |
|    Dr. Ghitza Deposition | $1,198.42 | 7.6 |
|    Ms. Hatton Deposition | $3,341.79 | 7.7 |
| E-Discovery Services[11] | $166,671.56 | 8 |
| **Total** | **$490,259.55** | |

## Conclusion

33.     In summary, the total amount of Latham's attorney and staff fees is $7,554,015; the total amount of Latham's expert costs is $63,544.92; the total amount of Latham's costs and disbursements is $490,259.55; and in total, Latham seeks $8,107,819.47.

---

[7] Exhibits 1-8 include receipts that contain some items for which Latham is not seeking reimbursement.  To assist the Court in its review, Latham has provided a breakdown for each category of costs, which is the first page of each exhibit.

[8] This includes costs for court reporters, videographers, meals, an interpreter for Mr. Oshry, and a conference room space for the three Board Members who refused to come to Latham's offices for their depositions.  Three of the vendors gave Plaintiffs discounted rates: Veritext; TSG; and Quality Translations LLC.

[9] This includes computer and technology costs for Plaintiffs' conference space for trial and for the courtroom.

[10] Dr. Barreto, Dr. Ghitza, Mr. Cooper and Ms. Hatton's depositions were noticed by the District.

[11] This includes costs for Plaintiffs' document collection and review vendor.  Plaintiffs engaged Haystack because of its experience collecting social media and text messages, which the District demanded that Plaintiffs produce.  Plaintiffs engaged Haystack at a discounted rate.

I declare, under penalty of perjury under the laws of the United States of America, that the foregoing is true and correct.

Dated:   June 25, 2020          /s/     Claudia T. Salomon
          New York, New York          Claudia T. Salomon