**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE, SPRING VALLEY BRANCH, et al.,** | **ECF CASE** |
| **Plaintiffs,** | **Case No. 7:17 Civ. 8943 (CS)(JCM)** |
| v. | **DISTRICT JUDGE CATHY SEIBEL** |
| **EAST RAMAPO CENTRAL SCHOOL DISTRICT, et al.,** | |
| **Defendants.** | **MAGISTRATE JUDGE JUDITH C. McCARTHY** |

**PROPOSED COMPROMISE REMEDIAL PLAN**
**BY THE EAST RAMAPO CENTRAL SCHOOL DISTRICT**

MORGAN, LEWIS & BOCKIUS LLP

David J. Butler
Randall M. Levine
101 Park Avenue
New York, NY 10178
T: (212) 309-6000
F: (212) 309-6001
-and-
1111 Pennsylvania Avenue, NW
Washington, DC 20004
T: (202) 739-3000
F: (202) 739-3001
david.butler@morganlewis.com
randall.levine@morganlewis.com

William S.D. Cravens
Clara Kollm
1111 Pennsylvania Avenue, NW
Washington, DC 20004
T: (202) 739-3000
F: (202) 739-3001
william.cravens@morganlewis.com
clara.kollm@morganlewis.com

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT ...................................................................................... 1

BACKGROUND ........................................................................................................... 1

  I.   COMPROMISE WARD PLAN ..................................................................... 2

  II.  IMPLEMENTATION SHOULD BE DELAYED PENDING THE 2020 CENSUS .......... 4

  III.  BOARD PROPOSALS FOR IMPLEMENTATION ...................................................... 5

CONCLUSION .............................................................................................................. 8

## PRELIMINARY STATEMENT

By this submission, Defendant the East Ramapo Central School District amends its prior proposed remedial plan to reflect the Board of Education's ("the Board") unanimous adoption of a "Compromise Ward Plan," which was created by Plaintiffs and proposed to the Board, which would divide the District into nine separate voting districts for future elections.

On May 25, 2020, this Court found in favor of Plaintiffs on their claim alleging that the District's use of state-mandated at-large elections to elect school board members violates Section 2 of the Voting Rights Act.  ECF No. 568.  In its Decision and Order, this Court ordered the District to propose a remedial plan to replace at-large elections, and directed that the proposed plan "shall divide the District into nine voting wards—one for each Board seat—and require that only those residents living in a voting ward may vote for that ward's seat."  ECF No. 568 ¶ 88.  The Court further observed that four minority-majority districts appeared to be possible (based on the data Plaintiffs presented at trial). *Id.*

The District has appealed the Decision and Order.  ECF No. 569.  The expedited appeal has been fully briefed, argued before the Second Circuit, and remains pending.  This submission, which amends in part the District's June 25, 2020 Proposed Remedial Plan (ECF No. 583), is without prejudice to any of the District's appellate rights.  Nothing in this submission should be construed to waive any argument for reversal, nor as a concession that this Court's remedial plan directive is a proper exercise of the Court's equitable jurisdiction under established Voting Rights Act precedent.  All such arguments and objections are expressly preserved.

## BACKGROUND

The District's June 25, 2020 Proposed Remedial Plan adopted the ward plan prepared and introduced at trial by Plaintiffs' demographic expert, Mr. Cooper.  ECF No. 583.  Plaintiffs

objected to the proposed use of Mr. Cooper's ward plan  (*see* ECF No. 636) on the ground that he had relied on outdated data to draw the ward boundaries, i.e. the 2015 American Community Survey ("ACS") data rather than the 2018 ACS data.  ECF No. 636.  Instead, Plaintiffs proposed an entirely new ward plan not previously disclosed by Plaintiffs' experts ("Plaintiffs' July 27, 2020 Proposed Ward Plan").  *Id.*

Upon examination of Plaintiffs' July 27, 2020 Proposed Ward Plan, the District raised specific concerns about the proposed ward boundaries.  The Parties thereafter negotiated and agreed on the boundaries for a proposed ward plan that provides for three minority-majority wards according to 2018 ACS data.  By unanimous vote on September 29, 2020, the District's Board approved the compromise ward boundaries set forth in this submission, and in all other respects the Board confirmed the District's June 25, 2020 Proposed Remedial Plan (ECF No. 583).

The District's June 25, 2020 Proposed Remedial Plan – as amended by this submission to incorporate the Compromise Ward Plan created by Plaintiffs – suffices to remedy the violation of the Voting Rights Act found by this Court and should be ordered by the Court on a conditional basis, pending resolution of the District's appeal.  *See* Aug. 7, 2020 Hr'g Tr. at 11:16–18.

**I.  COMPROMISE WARD PLAN**

After the District expressed concerns about Plaintiffs' July 27, 2020 Proposed Ward Plan, the Parties discussed a number of compromise ward plans to address their respective concerns.  On September 21, 2020, Plaintiffs proposed a compromise ward plan (the "Compromise Ward Plan") that addressed the concerns of all Parties.

The Compromise Ward Plan relies on 2018 ACS data to estimate the minority voter distribution in nine voting wards as shown in Figures 1.

## FIGURE 1

| Ward | % NH Black CVAP | % Latino CVAP | % NH White CVAP | % B + L CVAP |
|------|------|------|------|------|
| **Revised Compromise Plan** | | | | |
| **2014-18 ACS Data** | | | | |
| 1 | 51.63% | 13.09% | 19.34% | 64.7% |
| 2 | 51.82% | 13.13% | 25.61% | 65.0% |
| 3 | 49.71% | 16.07% | 29.33% | 65.8% |
| 4 | 25.68% | 12.06% | 54.55% | 37.7% |
| 5 | 1.63% | 1.97% | 96.24% | 3.6% |
| 6 | 7.34% | 2.17% | 90.95% | 9.5% |
| 7 | 3.25% | 1.77% | 94.76% | 5.0% |
| 8 | 7.05% | 12.07% | 74.94% | 19.1% |
| 9 | 9.16% | 4.61% | 80.53% | 13.8% |

Counsel for the District presented the Compromise Ward Plan to the Board during executive session on September 29, 2020. The Board unanimously approved the Compromise Ward Plan, and authorized the District to submit a proposal to the Court reflecting the ward boundaries created by Plaintiffs in the Compromise Ward Plan, and in all other respects reflecting the remedial plan elements proposed by the District in its June 25, 2020 submission (ECF No. 583), while also expressly reserving all appellate rights. *See* Ex. A, September 29, 2020 Board Resolution.

The key features of the Compromise Ward Plan include the creation of three minority-majority wards shown in Figures 1 and 2, and a ward map that to the greatest extent possible allocates incumbent Board members each to a newly created ward as shown in Figure 3.

3

## FIGURE 2



Plaintiffs' Revised Compromise Plan—Sept. 18

## FIGURE 3

| Incumbent | Allocated Ward |
|---|---|
| Ashley Leveille | 1 |
| Sabrina Charles-Pierre | 2 |
| Yoel T. Trieger | 4 |
| Joel Freilich | 5 |
| Yehuda Weissmandl | 6 |
| Harry Grossman | 7 |
| Mark Berkowitz | 8 |
| Ephraim Weissmandl | 9 |
| B. Carole Anderson | 9 |

## II.    IMPLEMENTATION SHOULD BE DELAYED PENDING THE 2020 CENSUS

The Board's unanimous resolution also instructed the District's counsel to request that

implementation of any remedial plan for District elections be postponed until release of the 2020

census data and allow for reconsideration of the Compromise Ward Plan in light of updated demographic data.  Plaintiffs do not agree to this element of the District's plan.

It remains the Board's position that conducting a special election based on a ward map created using 2014-2018 ACS data would be wasteful and that uncertainty surrounding the District's demographics counsels in favor of waiting to implement a remedial plan until the 2020 census data have been released and evaluated.  Analysis of the 2020 census data may demonstrate, for example, that demographic trends have changed the compositions of the proposed wards such that adjustments must be made to ensure that at least three minority-majority wards exist.  The Board therefore urges the Court to delay implementing a new ward system until after the 2020 census data become available, so that the process of redistricting need not be repeated.

Financial considerations also counsel in favor of maintaining the status quo and retaining the present Board until the regularly scheduled May 2021 election.  Holding a special election in December or January based on the Compromise Ward Plan would require the District to spend an estimated $250,000 of badly needed resources to elect Board members just months before regularly scheduled elections are to take place in May.  That $250,000 would then have to be incurred a second time to conduct the regular Board elections in May of 2021 – totaling approximately $500,000 in a single school year when the District is facing unprecedented needs due to the pandemic and also is constrained by a contingency budget.

## III.    BOARD PROPOSALS FOR IMPLEMENTATION

In all respects other than the ward boundaries reflected in the Compromise Ward Plan, the District's proposed remedial plan remains as set forth in the District's June 25, 2020 submission (ECF No. 583), which are entirely in accord with governing law and in compliance with the Voting Rights Act.  These implementation provisions include as follows:

5

**Voter Education Program.**  Any order directing implementation of a ward system should allow sufficient time for the District to implement a voter education program to teach voters about the new ward system, and sufficient time for candidates to campaign.  *See* ECF No. 583 at 8.  The District anticipates at this time that no less than two months will be necessary to implement an appropriate voter education program, likely longer due to the ongoing pandemic.

**Re-evaluation of Polling Places**.  If by the time a ward system is implemented the Governor's office has lifted restrictions in response to the Coronavirus pandemic sufficiently to permit in-person voting, time should be afforded for the District to consider the placement of its current polling sites in case they need to be relocated to better serve voters under a new ward system.  *See* ECF No. 583 at 8.  The District anticipates at this time that no less than two months will be necessary to evaluate and implement any polling place changes.  Plaintiffs may propose to the District preferred locations for polling places located within the new minority-majority districts if new polling places are deemed necessary.

**Staggered Terms / First Election.**  To preserve the State-mandated staggered 3-year terms, the District proposes all nine Board seats be up for election in the first-election after the ward system has been implemented.  ECF No. 583 at 8.  In the first election under a ward system, three of the Board's nine seats should be chosen at random to be designated as 1-year term seats, three seats should be designated as 2-year term seats, and three seats should be designated as 3-year term seats.  *Id.*  After three years of elections, the board members' terms again will be for 3-year staggered terms.  *Id.*  The random selection is to be conducted by the District Clerk.

**Residency Requirement for Wards**.  The Board believes that if a ward system is to achieve its intended purpose of tying representation on the Board to geographic interests, then it only makes sense for the representative of a ward to reside in the ward he or she represents.  Thus,

a ward residency requirement for candidates was implicit in the District's June 25, 2020 Proposed Remedial Plan.  For avoidance of doubt, the District makes clear that such a residency requirement is an explicit part of its Proposed Remedial Plan in this submission, in that candidates who seek to represent a particular ward shall be required to be residents of the ward they seek to represent.

**Timing of Ward System Implementation.**  The District's position remains that any order of this Court directing implementation of the new ward system and a special election should be stayed pending exhaustion of the District's appellate rights.  *See* ECF No. 583 at 7–8.

**Redistricting**.  As explained above, the Board strongly supports preserving the District's limited resources and proposes that no ward system should be implemented or special election conducted until after the 2020 decennial census data become available.  ECF No. 583 at 7.

*       *       *

## **CONCLUSION**

In light of the foregoing, the District respectfully requests that, if a remedial plan becomes necessary after the exhaustion of all appeals, this Court order the District's June 25, 2020 Proposed Remedial Plan, as amended by this submission to reflect the Board's unanimous adoption of the Compromise Ward Plan created by Plaintiffs

Dated:  October 2, 2020

Respectfully submitted,

**MORGAN, LEWIS & BOCKIUS LLP**

s/ David J. Butler
David J. Butler
Randall M. Levine
101 Park Avenue
New York, NY 10178
T: (212) 309-6000
F: (212) 309-6001
       -and-
1111 Pennsylvania Avenue, NW
Washington, DC 20004
T: (202) 739-3000
F: (202) 739-3001
david.butler@morganlewis.com
randall.levine@morganlewis.com

William S.D. Cravens
Clara Kollm
1111 Pennsylvania Avenue, NW
Washington, DC 20004
T: (202) 739-3000
F: (202) 739-3001
william.cravens@morganlewis.com
clara.kollm@morganlewis.com

*Counsel for Defendant East Ramapo Central School District*

8