Russell Mangas
(312) 876-7697
russell.mangas@lw.com

330 North Wabash Avenue
Suite 2800
Chicago, Illinois  60611
Tel: +1.312.876.7700  Fax: +1.312.993.9767
www.lw.com

**LATHAM & WATKINS LLP**

FIRM / AFFILIATE OFFICES

| | |
|---|---|
| Beijing | Moscow |
| Boston | Munich |
| Brussels | New York |
| Century City | Orange County |
| Chicago | Paris |
| Dubai | Riyadh |
| Düsseldorf | San Diego |
| Frankfurt | San Francisco |
| Hamburg | Seoul |
| Hong Kong | Shanghai |
| Houston | Silicon Valley |
| London | Singapore |
| Los Angeles | Tokyo |
| Madrid | Washington, D.C. |
| Milan | |

October 5, 2020

**VIA ECF & EMAIL**

Hon. Cathy Seibel
United States District Judge
Southern District of New York
300 Quarropas Street
White Plains, New York 10601-4150

      Re: *National Association for the Advancement of Colored People, Spring Valley Branch v. East Ramapo Central School District*, No. 17 Civ. 8943

Dear Judge Seibel:

      We write regarding the District's recently filed Proposed Compromise Remedial Plan (ECF No. 658). Although the District styled its motion as a "compromise," that assertion is misleading to the extent it implies an agreement by Plaintiffs to any provisions of the plan other than the ward map.

      On August 21, 2020, Plaintiffs sent the District a letter offering to "meet and confer and try and reach agreement on the remedial ward plan," as this Court had urged the parties to do. On September 2, 2020, the District responded, expressing an interest in "reaching a mutually agreeable remedial plan for District elections." On the basis of the District's representation, Plaintiffs engaged in good faith in multiple rounds of negotiation, including offering multiple alterations to Mr. Cooper's proposed ward maps to address the District's stated concerns, and granting the District two separate extensions of time to file its brief so that the parties could work towards a compromise.

      On September 21, 2020 Plaintiffs sent the District a letter enclosing Mr. Cooper's second set of revisions to the ward plan, which addressed issues raised by the District. In an email later that day, the District's counsel responded that "[o]n quick look it seems fine" and requested another extension so that the Board could vote on the new plan on September 29, 2020.

      Plaintiffs did not hear back from the District on September 29. Therefore, on the morning of October 2, 2020—the deadline for the District to file its reply—Plaintiffs contacted the District's counsel and requested that if "the District intends to submit an agreed motion today in lieu of its

LATHAM&WATKINS LLP

reply, we ask that you provide that proposed motion soon so that we have time to review and discuss with our client." Counsel for the District responded that "[o]n Tuesday the Board authorized [Morgan Lewis] to submit papers to the Court reflecting their adoption of the proposed ward map in your September 21, 2020 letter" but stated that the District planned to make the submission itself rather than as a joint motion. Plaintiffs responded that the Board vote was "great news and [we] think a great result for both [P]laintiffs and the District." Plaintiffs acknowledged the District's right to file a solo motion but again requested an opportunity to review it before filing so that the parties could "minimize the chance for any misunderstandings and avoid the need to have any further proceedings on this issue." Plaintiffs expressed their desired "goal of reducing the expense of this litigation by avoiding any potential snags/disagreements" and stated that "we would welcome the chance to try and iron those out in advance if possible." The District did not respond and did not give Plaintiffs an opportunity to review its motion before filing it. Instead, the District filed its motion and misleadingly represented to the Court that it was a "compromise."

The District's proposal is not a "compromise" because Plaintiffs never agreed to it. Although the ward map (ECF No. 658 at 2, Fig. 2) was a product of negotiation and agreed to by the parties, the District inserted additional, objectionable and/or new conditions to the ward plan that Plaintiffs have never agreed to. Therefore, Plaintiffs submit this letter to make clear the portions of the District's plan that they did not agree to and in fact object to.

First, Plaintiffs did not agree to delay the implementation of any remedial plan until the release of the 2020 census. To the contrary, Plaintiffs objected to that condition when the District presented it during negotiations. As Plaintiffs explained to the District, "[a]ny remedial districting plan accepted by the Court should be implemented as soon as possible, especially given that two elections have already occurred since the initiation of litigation and the May 2020 election has already been postponed for four months. Further, the results of the 2020 census are likely not to be available until well into 2021. In fact, it is questionable whether the 2020 census results will be available ahead of the May 2021 election. Thus, a special election should be held as soon as practicable." The District's purported concerns about the expense of holding a special election are belied by the District's disregard for expense throughout this litigation, including the fact that they unilaterally filed their purported "compromise" after Plaintiffs had asked for an opportunity to review for the express purpose of avoiding the additional expense *of this exact process*.

Second, Plaintiffs did not agree to the District's request for a several month delay to create a voter education program and new polling places--in fact, the District never even proposed it to Plaintiffs--and that request should be denied. Although Plaintiffs agree a voter education plan and revised polling locations are necessary, additional delay is not. The District has known this special election was a possibility for years and has known with certainty that it was required when the Court ordered it in its May 25, 2020 Decision and Order. ECF No. 568 at ¶ 88. As Plaintiffs noted in their July 27 memorandum, ECF No. 636, at 14 n. 10, the District should have been working on a voter education program and evaluating polling places—or, more vote-by-mail options consistent with the practice implemented by Executive Order for the 2020 election as a public health measure during the pandemic—during the last four months. The District's unconscionable delay is no reason to further delay justice.

**LATHAM & WATKINS** LLP

<u>Third</u>, Plaintiffs did not agree to the District's proposal to open up all nine seats for election at once. As Plaintiffs have previously explained in their pleadings, that proposal unnecessarily violates state law and public policy in at least two respects. *See* ECF No. 636 at 13-14. First, holding a special election for all nine seats at once is incompatible with the Education Law requirement that Board members be elected according to staggered terms. *See* N.Y. EDUC. LAW § 1804(2). Second, the District's proposal, which would cut short the terms of some Board members and provide for unequal terms for Board members in the upcoming elections, intrudes upon state law concerning the uniform duration of Board members' terms as well as policies against increasing or decreasing the terms of incumbent Board members. *See* N.Y. EDUC. LAW § 2502(3). Instead, the Court should limit the special election to the four seats that were supposed to be up for election in May 2020, but ensure that elections for three of those four seats are in the newly created majority-minority wards 1-3. *See* ECF No. 636 at 17-18.

<u>Fourth</u>, Plaintiffs did not agree to a candidate residency requirement for ward elections. The District never even discussed such a proposal with Plaintiffs. From the Board resolution appended to the District memorandum, which contains no mention of a candidate residency requirement, the District's counsel does not appear to have discussed the matter with the Board either. *See* ECF No. 658-1. Although the District claims that a residency requirement "was implicit in the District's June 25, 2020 Proposed Remedial Plan," that claim is misleading at best. To the contrary, in its June 25, 2020 Proposed Remedial Plan, the District said exactly the opposite: "Imposing a 'ward system' would prevent District residents from voting for candidates outside of their ward. That would make it nearly impossible for many residents to vote for anyone except members of their own race. A 'ward system' would thus prevent White voters from voting for Black candidates who live in different parts of town, and vice-versa. That perverse result is directly at odds with the aim and purpose of the Voting Rights Act, and the Court should have no part in it." ECF No. 583 at 2.

The District's about-face attempt to propose a new residency restriction on reply should be rejected. As this Court held during the August 21, 2020 conference, the District is not allowed to propose new additions to its plan on reply. *See* August 21, 2020 Tr. at 10:11-16 ("I am not going to reward what looks at least like a delay tactic. I'm not going to -- I don't find it necessary to go as far as plaintiff and say this is a bad faith proposal, but I'm not going to give defendants a do-over. In other words, I'm not going to give defendants another chance to propose a more acceptable plan."). The District's new proposal should also be rejected because it is an unreasonable and unnecessary departure from New York Education Law which imposes no such residency requirement. *See* N.Y. Educ. Law §§ 2102, 2103. Therefore, the Court should not consider the District's new residency requirement, which the District has already admitted would be "directly at odds with the aim and purpose of the Voting Rights Act, and the Court should have no part in it." ECF No. 583 at 2.

<u>Fifth</u>, the implementation of the new ward plan should not be delayed "pending exhaustion of the District's appellate rights." The District applied for a stay in both this Court and in the Second Circuit and was rejected both times. It has now been well over a decade since the District held fair elections. As this Court has already held, "[f]or too long, black and Latino voters in the

LATHAM&WATKINS LLP

District have been frustrated in that most fundamental and precious endeavor. They, like their white neighbors, are entitled to have their voices heard." ECF No. 568 at 77.

Plaintiffs are available for a status conference or additional proceedings to discuss this matter at the Court's convenience.

Respectfully submitted,

_____
Russell Mangas

cc:   All Counsel of Record (via ECF)