UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
NATIONAL ASSOCIATION FOR THE
ADVANCEMENT OF COLORED PEOPLE,
SPRING VALLEY BRANCH; JULIO
CLERVEAUX; CHEVON DOS REIS; ERIC
GOODWIN; JOSE VITELIO GREGORIO;
DOROTHY MILLER; HILLARY MOREAU;
and WASHINGTON SANCHEZ,

                          Plaintiffs,

             -against-

EAST RAMAPO CENTRAL SCHOOL
DISTRICT and MARYELLEN ELIA, IN HER
CAPACITY AS THE COMMISSIONER OF
EDUCATION OF THE STATE OF NEW
YORK,

                          Defendants.
------------------------------------------------------------X

**REPORT AND
RECOMMENDATION**

17 Civ. 8943 (CS) (JCM)

To the Honorable Cathy Seibel, United States District Judge:

Plaintiffs Spring Valley Branch of the National Association for the Advancement of

Colored People, Julio Clerveaux, Chevon Dos Reis, Eric Goodwin, Jose Vitelio Gregorio,

Dorothy Miller, Hillary Moreau and Washington Sanchez (collectively, "Plaintiffs") commenced

this action against Defendants East Ramapo Central School District ("District") and MaryEllen

Elia ("Elia"), in her capacity as the Commissioner of Education of the State of New York,[1]

seeking injunctive relief pursuant to Section 2 of the Voting Rights Act of 1965, 52 U.S.C.

§10301(a) ("VRA"). (Docket No. 1).  The action proceeded to a bench trial before the Honorable

Cathy Seibel.  Following trial, Judge Seibel found that the at-large system of electing members

---

[1] Ms. Elia was dismissed from this action pursuant to Judge Seibel's April 13, 2018 Bench Order.

to the District's Board of Education ("Board") violated the VRA. (Docket No. 568 ¶ 87) ("Decision").

Before the Court for Report and Recommendation is Plaintiffs' motion for attorneys' fees and costs ("Motion"), (Docket No. 598), accompanied by a memorandum of law, (Docket No. 604), and supporting declarations and exhibits, (Docket Nos. 599, 600, 601, 603). The District opposed Plaintiffs' motion, (Docket No. 631), accompanied by a supporting declaration, (Docket No. 632), and Plaintiffs replied, (Docket No. 649). For the reasons set forth herein, the Court respectfully recommends that Plaintiffs' Motion be granted in part and denied in part, and that Plaintiffs' counsel be awarded a total of $4,333,696.33 in fees and costs.

## I. BACKGROUND

Beginning in approximately January 2017, Latham & Watkins, LLP ("Latham") and the New York Civil Liberties Union ("NYCLU") (collectively, "Plaintiffs' counsel") began developing a litigation strategy to challenge the way in which the District elects members to its Board. (*See* Docket No. 603-21 at 3). During the summer of 2017, Plaintiffs retained Latham and the NYCLU to represent them in connection with a potential lawsuit under the VRA. (Docket No. 604 at 8; *see also* Docket No. 632-9, Ex. I). On November 16, 2017, Plaintiffs commenced this action in the Southern District of New York seeking to enjoin the District from conducting any future Board elections under the existing at-large election system and to compel the District to replace the current system. (Docket No. 1). Plaintiffs also moved for a preliminary injunction ("PI") on December 7, 2017, seeking to enjoin the May 2018 Board elections. (Docket No. 15). The District opposed Plaintiffs' PI motion and moved to dismiss the Complaint. (Docket No. 75). Ultimately, Plaintiffs withdrew their PI motion due to a health

emergency that prevented their expert witness, Dr. Steven Cole ("Cole"), from continuing on the case. (Docket No. 119)  Judge Seibel denied the District's motion to dismiss on April 13, 2018.

The parties engaged in extensive discovery and motion practice. (Docket No. 604 at 9-16)  During discovery, the District produced over 38,000 documents and Plaintiffs produced over 24,000 documents. (*Id.* at 11)  In total, each side took and defended 18 depositions and engaged in contentious discovery disputes. (*Id.*)  For instance, Plaintiffs noticed deposition and document subpoenas on the District's lead counsel, David Butler ("Butler"), (Docket Nos. 208-1, 208-2), prompting the District to move to quash the subpoenas, (Docket No. 208), which Plaintiffs opposed, (Docket No. 219)  The District replied to Plaintiffs' opposition, (Docket No. 223), and, after the District's motion to quash was granted, Plaintiffs filed objections pursuant to Federal Rule of Civil Procedure 72(a) ("Federal Rule 72(a)"), (Docket No. 245), which was fully briefed by the parties, (Docket Nos. 262, 273)  Judge Seibel denied Plaintiffs' motion and affirmed the undersigned's decision. (Docket No. 304)

Additionally, the District vehemently opposed Plaintiffs' attempts to depose several members of the Board, asserting legislative immunity, which necessitated exhaustive motion practice and resulted in the issuance of multiple orders compelling the Board members to sit for depositions. (Docket Nos. 170, 224)  After the undersigned ordered the District to produce the Board members for depositions, (Docket No. 170), the District filed a motion setting forth its objections under Federal Rule 72(a), (Docket No. 184), and after that motion was denied, (Docket No. 224), the District filed an interlocutory appeal, (Docket No. 225), which was summarily dismissed by the Second Circuit, (Docket No. 430).

Moreover, the parties fought ardently over whether Plaintiffs' purported "expert consultant," Steve White ("White"), was subject to discovery, which resulted in protracted

motion practice including: two rounds of cross-motions to quash, (Docket Nos. 206, 280), and compel, (Docket Nos. 210, 277), briefing a motion pursuant to Federal Rule 72(a), (Docket Nos. 312, 329, 334), and letter briefing regarding Mr. White's deposition, (Docket Nos. 346, 348). The Court ultimately concluded that Mr. White was a fact witness and was a proper subject of discovery. (Docket No. 369 at 40:17-41:6).  However, before the Court ruled on the issue, the District entered an agreement with Mr. White's attorney to have a vendor collect his data without notifying Plaintiffs, (*see* Docket Nos. 206, 281 at 11-12), exemplifying the intensity of the dispute over Mr. White's participation in the case, (*see* Docket No. 604 at 12).

These examples are illustrative of both parties' approach to discovery and the litigation as a whole.  At the close of discovery, the District moved for summary judgment. (Docket No. 355).  Plaintiffs opposed summary judgment, (Docket No. 384), and the District replied, (Docket No. 410).  The District additionally filed multiple pretrial motions, (Docket Nos. 361, 404), which Plaintiffs also opposed, (Docket Nos. 386, 413).  The District's motion for summary judgment was denied on November 19, 2019, and the case proceeded to trial.

A bench trial was held on January 22, February 10-14, 18-21, and 24-27, and March 3, 5, and 24, 2020.  On May 25, 2020, Judge Seibel issued a Decision finding that the at-large election system used in the District violated the VRA, and enjoining the District from holding further elections under this system. (Decision ¶ 87).  Judge Seibel further found that Plaintiffs were entitled to attorneys' fees and costs, including expert fees, pursuant to 52 U.S.C. § 10310(e). (*Id.* ¶ 89).  The District appealed. (Docket No. 569).  In addition, the District filed an emergency motion to stay the Decision, (Docket No. 571), which Plaintiffs opposed, (Docket No. 575), and Judge Seibel denied on June 4, 2020, (Docket No. 576).  The Second Circuit heard oral argument

on the District's appeal on August 19, 2020. *NAACP v. E. Ramapo Cent. Sch. Dist.*, No. 20-1668 (2d Cir. argued Aug. 19, 2020).

## II. DISCUSSION

Plaintiffs seek reasonable attorneys' fees, which they are entitled to recover under 52 U.S.C. § 10310(e) as the prevailing party. *See* 52 U.S.C. § 10310(e). "District courts have broad discretion when awarding a fee, but must clearly explain the reasons supporting an award." *Ortega v. JR Primos 2 Rest. Corp.*, 15 Civ. 9183 (JCF), 2017 WL 2634172, at *6 (S.D.N.Y. June 16, 2017). "'Courts ordinarily award a lodestar fee, which is the product of the prevailing market rate for lawyers in the district and the number of hours a reasonable attorney would spend to litigate the case effectively.'" *Id.* (quoting *Tackie v. Keff Enters. LLC*, No. 14-CV-2074 (JPO), 2014 WL 4626229, at *6 (S.D.N.Y. Sept. 16, 2014)). In assessing the reasonableness of attorneys' fees, the court must: "(1) determine the reasonable hourly rate; (2) determine the number of hours reasonably expended; (3) multiply the reasonable hourly rate by the number of hours reasonably expended to determine the presumptively reasonable fee; and (4) make an appropriate adjustment to arrive at the final fee award." *Creighton v. Dominican Coll.*, No. C09-3983Z, 2011 WL 4914724, at *6 (S.D.N.Y. Aug. 16, 2011).

### A. Reasonable Hourly Rate

Plaintiffs seek fees for sixteen timekeepers.[2] (Docket No. 603 ¶ 22 ("Salomon Decl."); Docket No. 600 ¶¶ 2-3 ("Eisenberg Decl."); Docket No. 599 ¶¶ 2-3 ("Grossman Decl.")). With respect to Latham, Plaintiffs seek $7,554,015.00 in fees for the work of two partners, Claudia T.

---

[2] Latham and the NYCLU indicate that they intend to donate any fees that the court awards to "non-profit organizations that support children attending public schools in the District." (Docket No. 604 at 2; *see also* Docket No. 600 ¶ 18). Although commendable, Plaintiffs' counsel's use of their fee award does not affect the Court's analysis.

Salomon ("Salomon") and Andrew B. Clubok ("Clubok"), nine associates, and two support staff members for 17,022.7 hours of work at hourly rates of $650.00, $450.00 and $250.00, respectively. (Salomon Decl. ¶ 22).  Plaintiffs also seek $952,978.00 in fees for three NYCLU attorneys: Arthur Eisenberg ("Eisenberg"), Perry Grossman ("Grossman") and Kevin Jason ("Jason"), based on 1742.56 hours of work at hourly rates of $650.00, $550.00 and $300.00, respectively. (Docket No. 604 at 19; Eisenberg Decl. ¶¶ 2-3; Grossman Decl. ¶¶ 2, 14).

A court evaluating a request for attorneys' fees must base its award on a "'reasonable hourly rate,' *i.e.*, 'the rate a paying client would be willing to pay,'" bearing in mind that a client "wishes to pay the least amount necessary to litigate the case effectively." *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany*, 522 F.3d 182, 184 (2d Cir. 2008); *Salama v. City of New York*, No. 13-cv-9006 (PKC), 2015 WL 4111873, at *1 (S.D.N.Y. July 8, 2015) (quoting *id.*).  A reasonable hourly rate is one "in line with prevailing rates" in the district where the court sits "for similar services by lawyers of reasonably comparable skill, expertise and reputation." *McDonald ex rel Prendergast v. Pension Plan of the NYSA-ILA Pension Tr. Fund*, 450 F.3d 91, 96 (2d Cir. 2006) (alterations omitted) (quoting *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984)). In setting a reasonable hourly rate, "a court should consider all of the 'case-specific variables that [the Second Circuit] and other courts have identified as relevant to the reasonableness of attorneys' fees' . . . including the so-called *Johnson* factors."[3] *New York Youth Club v. Town of Harrison*, 12-CV-7534 (CS), 2016 WL 3676690, at *2 (S.D.N.Y. July 6, 2016) (alterations in

---

[3] The *Johnson* factors, as set forth by the Fifth Circuit, are: "(1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases." *Arbor Hill*, 522 F.3d at 186 n.3 (internal quotations omitted).

original) (quoting *Arbor Hill*, 522 F.3d at 190).  In determining what a reasonable client would

be willing to pay, the Second Circuit in *Arbor Hill* specifically instructs a court to:

> consider factors including, but not limited to the complexity and
> difficulty of the case, the available expertise and capacity of the
> client's other counsel (if any), the resources required to prosecute
> the case effectively (taking account of the resources being
> marshaled on the other side but not endorsing scorched earth
> tactics), the timing demands of the case, whether an attorney might
> have an interest (independent of that of his client) in achieving the
> ends of the litigation or might initiate the representation himself,
> whether an attorney might have initially acted *pro bono* (such that
> a client might be aware that the attorney expected low or non-
> existent remuneration), and other returns (such as reputation, etc.)
> that an attorney might expect from the representation.

522 F.3d at 184.

First, Plaintiffs assert that Mr. Eisenberg should be compensated at a rate of $650.00.

Mr. Eisenberg has worked for the NYCLU for almost 50 years and has served as its Legal

Director for over 25 years. (Eisenberg Decl. ¶ 5).  Mr. Eisenberg has extensive voting rights

litigation experience; he has represented individual litigants and authored and co-authored briefs

and *amicus curiae* submitted to the Supreme Court of the United States on behalf of the ACLU

and/or NYCLU in connection with voting rights matters. (*Id.* ¶¶ 5, 7; Docket No. 600-1, Ex. A).

Additionally, Mr. Eisenberg has written a book, articles and essays on voting rights issues.

(Eisenberg Decl. ¶ 6).

In 2019, Judge Shields determined that $600.00 was a reasonable hourly rate for Mr.

Eisenberg's work in connection with a civil rights matter in the Eastern District of New York[4] in

---

[4] There is a substantial overlap between the prevailing rates in the Southern and Eastern Districts of New York. *See, e.g.*, *Oyster Bay*, 2019 WL 2870721, at *4-5 ("A review of cases decided in the neighboring Eastern and Southern Districts of New York reveals that there is no real bright line between a reasonable Eastern District rate, and an equally reasonable Southern District rate. . . . [J]udges in this district have long lamented the 'artificiality' of a 'rigid forum-based rule in the context of the Eastern District of New York and the Southern District of New York because they form a unitary market for legal services.'") (quoting *Luca v. Cty. of Nassau*, 698 F. Supp. 2d 296, 300-01 (E.D.N.Y. 2010)).  Accordingly, the Court considers rates awarded in both the Southern and Eastern Districts of New York in assessing the reasonableness of Plaintiffs' requested rates.

light of his "unique[] qualifi[cations]" and experience. *See Centro de la Comunidad Hispana de Locust Valley v. Town of Oyster Bay*, CV 10-2262 (DRH) (AYS), 2019 WL 2870721, at *10 (E.D.N.Y. June 18, 2019) ("*Oyster Bay*"). The Court finds that Mr. Eisenberg's rate in the present action should be commensurate with the rate awarded in *Oyster Bay* and recommends the reduction of Mr. Eisenberg's requested rate to $600.00. Although the work conducted by Mr. Eisenberg in the instant action was undertaken more recently than the work he was compensated for in *Oyster Bay*, Mr. Eisenberg had a limited role in the present action; he did not participate at trial nor did he appear on the docket. *See Alicea v. City of New York*, 272 F. Supp. 3d 603, 610 (S.D.N.Y. 2017) (reducing law firm partner's rate from $625.00 to $550.00 where the partner did not participate at trial and noting that "[a] reasonable client would not pay [$625 an hour] for a lawyer just to observe and for his assistance in preparing the case."); *cf Abdell v. City of New York*, No. 05-CV-8453 (RJS), 2015 WL 898974, at *3 (S.D.N.Y. Mar. 2, 2015) (approving a rate of $650.00 as reasonable where, *inter alia*, the attorney "was asked by his co-counsel to be lead counsel" on the case).

Second, Plaintiffs request that Ms. Salomon and Mr. Clubok be compensated at an hourly rate of $650.00. This hourly rate reflects a reduction from Latham's customary rates to match the rates charged by the District's counsel, Morgan, Lewis & Bockius LLP. (Salomon Decl. ¶¶ 2, 22; Docket No. 601-10, Ex. J at 6). Ms. Salomon is the Global Co-Chair of Latham's International Arbitration Practice and regularly handles *pro bono* matters. (Salomon Decl. ¶ 15). She is currently lead counsel on a voting rights matter pending before the New York State Supreme Court, *League of Women Voters of New York v. New York State Board of Elections*, and previously taught a course on voting and political participation at the University of Richmond School of Law. (*Id.*). Mr. Clubok is the Global Chair of Latham's Securities Litigation and

Professional Liability Practice as well as a current trustee and past board member of the Washington Lawyers' Committee for Civil Rights and Urban Affairs, a *pro bono* organization combatting discrimination in public life. (*Id.* ¶ 16).

Plaintiffs' requested rate of $650.00 for Ms. Salomon and Mr. Clubok is at the outer limit of what has been deemed reasonable in this district. *See Alicea*, 272 F. Supp. 3d at 609. Although Ms. Salomon and Mr. Clubok are both distinguished litigators with some civil rights litigation experience, neither are civil rights litigators, nor do they have significant experience litigating voting rights matters. (*See* Salomon ¶¶ 15-16).  Thus, their rates should not be higher than the rate awarded to Mr. Eisenberg last year in *Oyster Bay*, nor the rate recommended for Mr. Eisenberg in the instant matter.  Consequently, the Court recommends that the hourly rates for Ms. Salomon and Mr. Clubok be reduced to $600.00.

Third, Plaintiffs seek fees at an hourly rate of $450.00 for four timekeepers labeled as "senior" associates: Corey A. Calabrese ("Calabrese"), Russell D. Mangas ("Mangas"), Rakim E. Johnson ("Johnson") and Thomas C. Pearce ("Pearce"), and five timekeepers labeled as "associates:" Andrej Novakovski ("Novakovski"), Abhinaya Swaminathan ("Swaminathan"), Nicole Scully ("Scully"), Meredith A. Cusick ("Cusick") and Elizabeth C. Sahner ("Sahner"). (*See* Docket No. 604 at 12; Salomon Decl. ¶ 22).  Plaintiffs request the same rate for all nine associates, regardless of whether the associate is labeled as "senior." (*See* Salomon Decl. ¶ 22).

Plaintiffs do not provide any information regarding these associates' litigation experience or professional backgrounds.  Further, Plaintiffs have not indicated that any of these associates have experience in civil or voting rights litigation. *See Resnik v. Coulson*, 17-CV-676 (PKC) (SMG), 2020 WL 5802362, at *4 (E.D.N.Y. Sept. 28, 2020).  Thus, Plaintiffs have not met their burden of demonstrating the reasonableness of their requested rates through supporting evidence.

*See LV v. New York City Dep't of Educ.*, 700 F. Supp. 2d 510, 521 (S.D.N.Y. 2010).  Further, where a prevailing party fails to provide biographical information on an attorney for whom fees are sought, courts have discretion to lower the requested rate for purposes of the lodestar calculation and award fees at the lower end of the prevailing range. *See, e.g.*, *Nat'l Ass'n for the Specialty Food Trade, Inc. v. Construct Data Verlag Ag*, No. 04 Civ. 2983 (DLC) (KNF), 2006 WL 5804603, at *17-18 (S.D.N.Y. Dec. 11, 2006) (lowering requested rates for paralegals and law clerks where movant failed to provide information on the timekeepers' background and experience, because the court could not assess the reasonableness of the rates requested); *see also Prot. One Alarm Monitoring, Inc. v. Exec. Prot. One Sec. Serv., LLC*, 553 F. Supp. 2d 201, 209 (E.D.N.Y. 2008) ("Where the moving party fails to provide information on the attorneys' and paralegals' backgrounds and experience, courts have used their discretion to award fees at a rate lower than requested."); *cf Resnik*, 2020 WL 5802362, at *4 (lowering rates requested for associates "given the absence of any indication that [the associates] have experience or expertise" in the subject matter of the litigation).  Without any information in the record, the Court must rely on decisional law and its own experience in assessing the reasonableness of Plaintiffs' requested rates. *See LV*, 700 F. Supp. 2d at 521.

In determining a reasonable fee for these associates, the Court takes judicial notice of the years in which each associate graduated law school and was admitted to practice, which is available on Latham and New York State's websites.[5] *See* NEW YORK STATE, *Attorney Lookup*

---

[5] The Court exercises its discretion to take judicial notice of the years in which the aforementioned Latham associates graduated law school and were admitted to practice law in New York. *See* Fed. R. Evid. 201.  When presented with an attorneys' fee application, Federal Rule of Evidence 201 permits courts to take judicial notice of biographical facts about attorneys, including the year that an attorney graduated law school and/or was admitted to practice. *See Bravia Capital Partners, Inc. v. Fike*, 296 F.R.D. 136, 144 n.2 (S.D.N.Y. 2013) ("The Court may take judicial notice of the biographies of [the firm's] attorneys, which are available on the firm's Web site"); *accord Brick v. CSX Transp., Inc.*, No. 06CV622, 2007 WL 4373526, at *3 (W.D.N.Y. Dec. 10, 2007) (taking judicial notice of the year that counsel was admitted to practice law and the year that counsel was admitted to practice in the Western District of New York.)

*New York*, https://data.ny.gov/Transparency/attorney-lookup-new-york/2ea2-qc7r# (last updated Oct. 18, 2020); LATHAM & WATKINS LLP, *People*, https://www.lw.com/people (last visited Dec. 29, 2020).  Calabrese graduated law school in 2010 and was admitted to practice in 2012; Mangas graduated in 2011 and was admitted in 2012; Johnson graduated in 2013 and was admitted in 2014; Pearce graduated in 2015 and was admitted in 2016; Novakovski graduated in 2017 and was admitted in 2018; and Swaminathan, Scully, Cusick and Sahner graduated in 2018 and were admitted in 2019.

Mangas and Calabrese have nine and ten years of experience, respectively, and are thus considered senior associates.  The Court therefore recommends, in light of the dearth of information provided about them, that they be awarded an hourly rate of $300.00, which is at the lower end of the range of prevailing rates for senior associates in this district. *See Black v. Nunwood, Inc.*, No. 1:13-cv-7207-GHW, 2015 WL 1958917, at *6 (S.D.N.Y. Apr. 30, 2015) ("courts in this district have found that $300 is an appropriate hourly rate for a senior associate with at least eight years' experience."); *Clover v. Shiva Realty of Mulberry*, No. 10-cv-1702 (RPP), 2011 WL 1832581, at *5 (S.D.N.Y. May 13, 2011) (finding rate of $300.00 reasonable for an associate with approximately nine years of experience).

The Court further recommends that Johnson and Pearce, who have seven and five years of practice respectively, be compensated at an hourly rate of $275.00. *Cf Ramache v. Mac Hudson Grp.*, 14 CV 3118 (AMD) (RML), 2018 WL 4573072, at *19 (E.D.N.Y. Sept. 7, 2018) (awarding hourly rate of $275 to associates with 4 to 9 years of experience).

Additionally, Novakovski, Swaminathan, Sully, Cusick and Sahner have less than three years of experience and, therefore, the requested rate of $450.00 is excessive.  "Courts have awarded amounts ranging from $125 to $200 per hour for attorneys with less than three years'

experience." *Torres v. City of New York*, No. 07 Civ. 3473(GEL), 2008 WL 419306, at *2

(S.D.N.Y. Feb. 14, 2008); *accord Black*, 2015 WL 1958917, at *6 (in this district, associates

with less than three years of experience are typically awarded rates between $125.00 and

$200.00); *see, e.g.*, *Resnik*, 2020 WL 5802362, at *4 (finding rate of $150.00 reasonable for a

junior associate employed by Nixon Peabody). Moreover, these associates were law clerks for a

substantial part of the time they worked on this matter, further corroborating the propriety of an

award at the lower end of the prevailing range. *See Torres v. City of New York*, 18-CV-03644

(LGS) (KHP), 2020 WL 6561599, at *5 (S.D.N.Y. June 3, 2020) (awarding law clerks a rate of

$100.00 in light of the paucity of information provided to the court about their experience).

Consequently, the Court recommends an hourly rate of $125.00 for Novakovski, Swaminathan,

Sully, Cusick and Sahner.

Fourth, Plaintiffs request an hourly rate of $250.00 for Natalie Sagara ("Sagara"), a

senior paralegal, and Jon Walton ("Walton"), a trial technology consultant. Courts in this district

have found hourly rates between $50.00 and $150.00 reasonable for paralegals. *See Heng Chan

v. Sung Yue Tung Corp.*, No. 03 Civ. 6048(GEL), 2007 WL 1373118, at *5 (S.D.N.Y. May 8,

2007); *see, e.g.*, *Hollander Glass Tex., Inc. v. Rosen-Paramount Glass Co., Inc.*, 291 F. Supp. 3d

554, 562 (S.D.N.Y. 2018) (awarding rate of $75.00 to "principal litigation paralegal" with six-

years of experience); *C.D. v. Minisink Valley Cent. Sch. Dist.*, No. 17 Civ. 7632 (PAE), 2018

WL 3769972, at *7 (S.D.N.Y. Aug. 9, 2018) (finding that $125.00 was a reasonable rate for

paralegals with bachelor's degrees and more than a decade of experience); *N.R. v. New York City

Dep't of Educ.*, No. 11 Civ. 5243(GBD)(FM), 2014 WL 1092847, at *4 (S.D.N.Y. Mar. 17,

2014) ($150.00 was a reasonable hourly rate for a senior paralegal in an IDEA action); *Hnot v.

Willis Grp. Holdings Ltd.*, No. 01 Civ. 6558(GEL), 2008 WL 1166309, at *3 (S.D.N.Y. Apr. 7,

2008) (same).  Plaintiffs have not provided any information on Ms. Sagara's experience, other than labeling Ms. Sagara as a "senior paralegal."  Accordingly, the Court recommends that the rate for Ms. Sagara be reduced to $75.00. *See Torres*, 2008 WL 419306, at *2 ("compensation must be made near the lower end of the market range" where "plaintiff presents no evidence regarding the skills, qualifications, or experience of the paralegal" for whom fees are requested); *cf LV*, 700 F. Supp. 2d at 523 ("If plaintiffs had provided no information about the paralegals' level of experience, an award at the lower end of the range might be appropriate.").

With respect to Mr. Walton, courts in this district commonly reimburse technology "consultants" or support specialists, retained for trial. *See, e.g.*, *J.S. Nicol, Inc. v. Peking Handicraft, Inc.*, No. 03 Civ. 1548(GBD)(AJP), 2008 WL 4613752, at *16 (S.D.N.Y. Oct. 17, 2008) (collecting cases).  Rates for technology consultants should be commensurate with rates for other litigation support staff, such as paralegals. *See id.* (reducing requested rate to "approximate the . . . paralegal or litigation support rate that is commonly accepted in this District.").  Plaintiffs have not provided any background on Mr. Walton.  Accordingly, the Court recommends that Mr. Walton be compensated at an hourly rate of $75.00.

Finally, the Court finds that the rates requested for Mr. Grossman and Mr. Jason, $550.00 and $300.00 respectively, are reasonable.  Mr. Grossman is the Senior Staff Attorney for the NYCLU's Voting Rights Project. (Grossman Decl. ¶ 5).  He is an experienced voting rights litigator with over a decade of experience, (*id.*), and has spoken at numerous universities and before several governmental bodies on voting rights and participation, (*id.* ¶¶ 6-7).  In light of his ample experience litigating voting rights issues, Mr. Grossman's requested hourly rate of $550.00 is reasonable. *See Bailey v. Pataki*, 08-cv-8563 (JSR), 2016 WL 3545941, at *6 (S.D.N.Y. June 16, 2016) (finding an hourly rate of $550.00 reasonable for attorneys with over a

decade of experience, who "undertook some of the key work in the case" and are typically paid such rates).

Mr. Jason's requested rate is also reasonable.  Mr. Jason graduated from Stanford Law School in 2013, then served as a law clerk to both the Honorable Steven M. Gold and the Honorable Andrew L. Carter before commencing his employ at the NYCLU. (Docket No. 600-3, Ex. C).  The Court agrees with Plaintiffs that Mr. Jason's rate should be commensurate with the rate awarded to Jordan Wells ("Wells"), an NYCLU staff attorney with six years of experience, last year in *Oyster Bay*, as Mr. Jason has the same position and amount of experience as Wells, and *Oyster Bay* was a similarly complex civil rights matter. (*See* Eisenberg Decl. ¶ 15); *see also Oyster Bay*, 2019 WL 2870721, at *9.  Therefore, the Court recommends that Mr. Grossman and Mr. Jason be compensated at hourly rates of $550.00 and $300.00, respectively.

## B.  Reasonable Hours Expended

"The party seeking attorneys' fees bears the burden of demonstrating that the claimed . . . number of hours [is] reasonable," and the "amount of time expended" is "adequately supported by contemporaneous time records specifying relevant dates, time spent, and work done." *Creighton*, 2011 WL 4914724, at *6 (internal quotations and citations omitted).  "Adjustments must be made to the number of hours expended based on case-specific factors, including deductions for 'excessive, redundant, or otherwise unnecessary hours.'" *Id.* (quoting *Quaratino v. Tiffany & Co.*, 166 F.3d 422, 425 (2d Cir. 1999)).

Here, Plaintiffs' counsel submitted contemporaneous time records, (Docket Nos. 599-2, 600-2, 600-4, 603-21), seeking payment for approximately 18,764 hours worked, (Salomon Decl. ¶ 22; Eisenberg Decl. ¶¶ 12, 15; Grossman Decl. ¶ 13).  Specifically, Latham seeks compensation for 17,022.7 hours after voluntarily reducing its bill by over 9,000 hours or 34.6%. (Salomon Decl. ¶¶ 21-22).  The NYCLU seeks compensation for 1,742.56 hours and represents

to the court that these hours do not include time spent on Plaintiffs' withdrawn PI motion. (Eisenberg Decl. ¶¶ 12, 15; Grossman Decl. ¶13).

The Court notes that although both Latham and the NYCLU state that they are not seeking fees related to their PI motion or in connection with the retention of their PI expert, Dr. Cole, (Docket No. 604 at 10; Eisenberg Decl. ¶ 11), the record shows that Plaintiffs' billing records contain time that is attributable to either the PI motion or Dr. Cole, (*see* Docket Nos. 631-4, Ex. D; *see also* Docket No. 631 at 10 n.19). The Court finds that the inclusion of these entries on Plaintiffs' counsel's billing records was likely inadvertent. Nonetheless, these fees, as recognized by Plaintiffs, are not compensable. *See Cooper v. Sunshine Recoveries, Inc*., No. 00CIV8898(LTS)(JCF), 2001 WL 740765, at *3 (S.D.N.Y. June 27, 2001) (declining to award attorneys' fees for an abandoned claim).

The Court is mindful that this matter was zealously litigated, requiring the investment of a substantial amount of time and resources from both sides. The parties participated in extensive discovery, litigated numerous discovery disputes, engaged in both dispositive and pretrial motion practice, participated in a bench trial spanning six-weeks, and submitted post-trial briefing, including an emergency motion to stay the Decision. Furthermore, the Court accepts Plaintiffs' counsel's representations that they have voluntarily reduced their requested fees. Upon review of the record, the Court finds that the number of hours requested for the NYCLU, 1,742.56, is reasonable, but for the NYCLU's seemingly accidental inclusion of certain time entries related to the PI, warranting a 2% reduction of the NYCLU's hours. On the other hand, the Court finds that the number of hours requested by Latham, 17,022.7, warrants a larger reduction for several reasons.

At the outset, Latham's team was excessively staffed. *See New York State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1146 (2d Cir. 1983) (trial courts have ample discretion in assessing whether the extent of staffing was appropriate).  It is apparent that Latham used this matter as a training exercise for its junior attorneys.  Although the Court appreciates Latham's commitment to *pro bono* work, it is unlikely that a paying client would have been amenable to the staffing practices employed by Latham. *See Cho v. Koam Med. Servs. P.C.*, 524 F. Supp. 2d 202, 210 (E.D.N.Y. 2007) ("While the Court recognizes that *pro bono* work may result in such duplication of efforts as it provides associates at large law firms with hands-on experience they might not receive otherwise — and the Court commends the attorneys and their firm for taking on such work — it would not be fair to make defendants bear the costs of such training."); *accord Shim v. Millennium Grp.*, No. 08-CV-4022(FB) (VVP), 2010 WL 2772493, at *6 (E.D.N.Y. June 21, 2010) ("the court in no way wishes to dim [the firm's] willingness to perform valuable *pro bono* services for clients in need. . . . However, the court is hard pressed to believe that any reasonable paying client" would pay the fees counsel seeks to recover).

Seventeen attorneys from Latham, *alone*, entered an appearance for Plaintiffs on the docket.  The District contends that another eight attorneys — five of whom are from Latham — entered an appearance during at least one deposition, but were not listed on the docket. (Docket No. 631 at 8 n.12).[6]  Although Latham only seeks fees for thirteen timekeepers in its application, Latham's overstaffing throughout the proceedings necessarily created inefficiencies and a duplication of efforts. *See ACE Ltd. v. Cigna Corp.*, No. 00-cv-9423 (WK), 2001 WL 1286247,

---

[6] According to the District, the following attorneys entered an appearance during at least one deposition but not on the docket:  Lawrence Buterman, Caitlin Feeney, Christopher Harris, Erin Harrist, Jason Hegt, Faust Patkovich, Melissa Pettit and Arthur Eisenberg. (Docket No. 631 at 8 n.12).

at *3 (S.D.N.Y. Oct. 22, 2001) ("It is well-recognized that when more lawyers than are necessary are assigned to a case, the level of duplication of efforts increases.").

Further, with respect to the attorneys for whom fees are sought, many of the tasks on Latham's time sheets are excessive or duplicative. (*See* Docket No. 603-21).  For example, a review of Latham's billing records demonstrates that an excessive number of Latham timekeepers, *thirteen*, billed full days for attending trial. (*See, e.g.*, *id*. at 276); *see Pope v. Cty. of Albany*, No. 1:11-cv-0736 (LEK/CFH), 2015 WL 5510944, at *13 (N.D.N.Y. Sept. 16, 2015) (finding that eight associates billing full or nearly full-days for attending trial was excessive).

This staffing practice was apparent throughout Latham's billing records.  The record further shows that *seven* Latham attorneys billed time for reviewing the Second Circuit's Order denying the District's emergency stay application. (Docket No. 603-21 at 304).  It was also common for three or more attorneys to attend a deposition.  Five attorneys appeared at the deposition of Dr. John Alford, one of the District's experts, including four attorneys for whom fees are sought (Calabrese, Grossman, Novakovski and Scully), and four attorneys appeared at the deposition of the District's Rule 30(b)(6) witness, including three attorneys for whom fees are sought (Calabrese, Grossman and Swaminathan). (Docket No. 631 at 9 n.14).

These are a few examples of a larger pattern of consistent overstaffing, warranting a reduction in fees awarded. *See Pope*, 2015 WL 5510944, at *13.  Aptly stated by the Court in *Pope*, "the proliferation of intra-office conferences is a symptom of this problem." *Id.*  The enormous amount of time devoted to intra-office correspondences could have been avoided by staffing this case with fewer associates. *See id.*; *accord Torres*, 2020 WL 6561599, at *6 (Courts in this district "routinely reduce fees for excessive internal conferences."); *Stevens v. Rite Aid Corp.*, 2016 WL 6652774, at *5 (N.D.N.Y. July 6, 2016) ("The Court also finds it unreasonable

to utilize multiple attorneys for routine tasks such as overseeing the production of discovery materials and preparing for depositions, and to bill at the full rate for the time of the attorneys and paralegals who engaged in inter-office conferences and e-mails with each other."); *Gillberg v. Shea*, No. 95 Civ. 4247 KMW, 1996 WL 406682, at *5 (S.D.N.Y. May 31, 1996) ("Obviously, more lawyers leads to more 'conference' time as well as to a certain amount of repetition or 'learning curve' billing which should not be compensable.").

Moreover, the District argues that Plaintiffs brought unreasonable motions during discovery, generating substantial costs that a paying client would have rejected. (Docket No. 631 at 13). Indeed, a prevailing party may be denied compensation for "motions that were unreasonable or had little chance of success." *Rozell v. Ross-Holst*, 576 F. Supp. 2d 527, 538 (S.D.N.Y. May 29, 2008); *Reiter v. Metro. Transp. Auth. of New York*, No. 01 Civ. 2762(GWG), 2007 WL 2775144, at *10-12 (S.D.N.Y. Sept. 25, 2007). The Court agrees with the District that some of Plaintiffs' motions were unreasonable, specifically, Plaintiffs' motion to compel the discovery record for a previous litigation against the District, *Montesa v. Schwartz*, and Plaintiffs' attempts to subpoena the District's lead counsel, Mr. Butler. (Docket Nos. 208-1, 208-2, 290 at 2-3; *see also* 631 at 11, 13).

With respect to the *Montesa* discovery record, the District offered to produce the record on the conditions that Plaintiffs comply with the *Montesa* protective order and pay the approximately $2,000 in costs necessary to recover the data, which was held in long-term storage. (Docket Nos. 290-4 at 3, 335 at 2). Plaintiffs rejected these conditions and moved to compel production of the *Montesa* discovery record. (Docket No. 290 at 2-3). Plaintiffs' motion was granted, and the District provided Plaintiffs with the discovery record subject to the *Montesa* protective order. (*See* Minute Entries, January 23, 2019, March 14, 2019). Despite the fact that

Plaintiffs seek approximately $44,000 in fees related to their motion to compel the *Montesa* record, Plaintiffs did not use *any* of the *Montesa* discovery documents in their filings or at trial. (*See* Docket No. 631 at 11).  Further, since the District agreed to provide Plaintiffs with the *Montesa* record under certain conditions,[7] the Court finds that Plaintiffs' motion to compel was unreasonably pursued, warranting a reduction in fees. *See Rozell*, 576 F. Supp. 2d 527 at 538. Additionally, the Court finds that the time spent by Plaintiffs attempting to subpoena Mr. Butler, the District's lead counsel, was wholly unjustified and not compensable. *Id.* ("Reasonable paying clients may reject bills for time spent on entirely fruitless strategies . . .").

Finally, the Court considers the District's argument that a sizable fee award imposed on the District in connection with Plaintiffs' Motion will present a financial hardship to the District, and in turn, the District's students. (Docket No. 631 at 6, 22-25).  Although the financial hardship on the losing party is neither an *Arbor Hill* nor a *Johnson* factor, courts in this circuit have admonished, albeit before the Second Circuit's decision in *Arbor Hill*, that "[f]ee awards are at bottom an equitable matter," and courts may appropriately consider a losing party's ability to pay. *Faraci v. Hickey-Freeman*, 607 F.2d 1025, 1028 (2d Cir. 1979).  However, the Court does not find that the hardship on the District warrants reduction in the instant matter.  First, the District's ability to pay is not at issue. *See Toliver v. Cty. of Sullivan*, 957 F.2d 47, 50 (2d Cir. 1992) (a court may take a party's ability to pay into consideration "particularly . . . when it is the *defendant* who seeks a fee award.") (emphasis added).  Second, the District chose to expend

---

[7] The Court finds that the conditions the District sought in connection with providing the *Montesa* discovery record to Plaintiffs were reasonable.  Seeking Plaintiffs' compliance with the *Montesa* protective order was reasonable, since many of the documents in the discovery record contain highly sensitive information about the District's students, including names, addresses, birthdates and individual education plans. (*See* Docket No. 335 at 1-2). Further, the District represented to Plaintiffs that the cost of recovering the record from "cold storage" was approximately $2,000 (plus an additional $1,000 to house the data), (Docket No. 290-4 at 3), which the District offered to split with Plaintiffs, (Docket No. 631 at 11).  The cost of recovering the data pales in comparison to the fees Plaintiffs incurred litigating the motion to compel the *Montesa* discovery.

substantial resources, as it has done in connection with past lawsuits, to procure expensive counsel to defend the way in which it elects members to its Board — a process which was found to violate the VRA and unjustly silence the voices of minority voters. (*See* Decision ¶ 87).  In light of the substantial sum the District spent on this litigation and others, an expense that is also taxed indirectly to the District's students, the Court declines to recommend a further reduction in Plaintiffs' requested fees on the grounds that such an award places an "*unjust* hardship" on the District. (*See* Docket No. 631 at 25 (emphasis added)).

"In lieu of making minute adjustments to individual timekeeping entries, a court may make across-the-board percentage cuts in the number of hours claimed, 'as a practical means of trimming fat from a fee application.'" *Heng Chan*, 2007 WL 1373118, at *5 (quoting *In re Agent Orange Prod. Liability Litig.*, 818 F.2d 226, 237 (2d Cir. 1987)).  Accordingly, for the foregoing reasons, the Court recommends reducing the hours billed by the Latham attorneys by 25%. *See Romeo & Juliette Laser Hair Removal, Inc. v. Assara I, LLC*, No. 08 Civ. 442(TPG)(FM), 2013 WL 3322249, at *8 (S.D.N.Y. July 2, 2013) (reducing fee award by 75% for excessive billing); *see also Medina v. Donaldson*, No. 10 Civ. 5922(VMS), 2015 WL 77430, at *17 (E.D.N.Y. Jan. 6, 2015) (reducing legal hours billed by 55% due to overbilling) (collecting cases); *MPD Accessories, B.V. v. Urban Outfitters, Inc.*, No. 12 Civ. 6501(LTS)(KNF), 2013 WL 5761421, at 9 (S.D.N.Y. Oct. 24, 2013) (reducing applicant's hours by 50% because of excessive billing); *Yea Kim v. 167 Nail Plaza, Inc.*, No. 05 CV 8560(GBD)(GWG), 2009 WL 77876, at *6 (S.D.N.Y. Jan. 12, 2009) (reducing counsel's hours by 40% due to excessive staffing and overbilling); *Whitney v. Jet Blue Airways Corp.*, No. 07-CV-1397 (CBA), 2009 WL 4929274, at *9 (E.D.N.Y. Dec. 21, 2009) (reducing hours billed by 25% for excessive billing and vagueness).

After incorporating the reductions of hourly rates and hours worked, Plaintiffs are entitled to a lodestar amount of $3,714,834.38 in attorneys' fees, as set forth in the following table:

| Timekeeper | Rate | Hours | Fee |
|---|---|---|---|
| Andrew B. Clubok | $600.00 | 278.325 | $166,995.00 |
| Claudia T. Salomon | $600.00 | 619.725 | $371,835.00 |
| Corey Calabrese | $300.00 | 1,803.3 | $540,990.00 |
| Rakim E. Johnson | $275.00 | 1,099.5 | $302,362.50 |
| Russell Mangas | $300.00 | 1,360.5 | $408,150.00 |
| Andrej Novakovski | $125.00 | 2,209.425 | $276,178.13 |
| Thomas C. Pearce | $275.00 | 758.775 | $208,663.13 |
| Nicole Scully | $125.00 | 1,129.95 | $141,243.75 |
| Abhinaya Swaminathan | $125.00 | 1,157.25 | $144,656.25 |
| Meredith A. Cusick | $125.00 | 576.75 | $72,093.75 |
| Elizabeth C. Sahner | $125.00 | 477.225 | $59,653.13 |
| Natalie Sagara | $75.00 | 1,097.25 | $82,293.75 |
| Jon Walton | $75.00 | 198.6 | $14,895.00 |
| Arthur Eisenberg | $600.00 | 181.89 | $109,134.80 |
| Perry Grossman | $550.00 | 1,431.78 | $787,479.00 |
| Kevin Jason | $300.00 | 94.04 | $28,212.24 |
| **TOTAL** | | | **$3,714,834.38** |

## C.  Expert Fees

Plaintiffs request a total of $192,463.92 in fees for three experts: expert demographer William Cooper, and expert political scientists Dr. Barreto and Dr. Collingwood. (Salomon Decl. ¶ 24; Docket No. 604).  Plaintiffs do not seek fees for two other experts, Dr. Cole and Dr. Amy Wells, neither of whom testified at trial. (Salomon Decl. ¶ 24).

Dr. Barreto, a political science professor at the University of California Los Angles and the co-founder of the research and polling firm Latino Decisions opined on the existence of racial polarization in the District's elections at trial. (*Id.*).  Dr. Barreto charged an hourly rate of $300.00 for his services. (*See* Docket No. 600-5, Ex. E).  Dr. Collingwood, an associate political science professor at the University of California Riverside, also charged an hourly rate of $300.00. (*Id.*; Salomon Decl. ¶ 24).  Dr. Collingwood provided expert testimony at trial on racial polarization in the District and served as the lead programmer on all relevant statistical analyses. (*Id.*).  Finally, Mr. Cooper charged a discounted hourly rate of $150.00. (Salomon Decl. ¶ 29).  Mr. Cooper, a redistricting and mapping expert, opined on the District's demographics and the ability to create a ward voting system with at-least four majority-minority districts in light of the District's demographics. (*Id.* ¶ 24).

The District has not challenged the costs and fees expended by Plaintiffs related to the retention of Dr. Barreto, Dr. Collingwood or Mr. Cooper, which appear reasonable to the Court. Accordingly, the Court recommends that Plaintiffs be awarded their requested expert fees connected to the hiring of Dr. Barreto, Dr. Collingwood and Mr. Cooper.

## D.  Costs

The costs sought by the NYCLU are incorporated in its expert fee request, (*see* Eisenberg Decl. ¶¶ 17, 19), which, as discussed, *supra*, is reasonable. *See* Section II(C).  Plaintiffs further seek $490,259.55 in costs expended by Latham for, *inter alia*, transcript requests, process server

fees, meals, technology, lodging, conference space for trial and e-discovery services. (Salomon

Decl. ¶ 32). Latham has voluntarily excluded certain costs totaling approximately $255,500.00

from its fee application, including but not limited to: (1) all electronic legal research database

costs; (2) in-house duplication costs; (3) PACER access; (4) certain travel related expenses; and

(5) certain deposition related expenses. (Salomon Decl. ¶ 31). Plaintiffs "[are] entitled to 'those

reasonable out-of-pocket expenses incurred by attorneys and ordinarily charged to their clients.'"

*Polit v. Glob. Foods Int'l Corp.*, No. 14-CV-07360 (SN), 2017 WL 1373907, at *9 (S.D.N.Y.

Apr. 13, 2017) (quoting *LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 763 (2d Cir. 1998)).

The Court finds that the costs requested by Plaintiffs are reasonable, except those that

Latham requests for its conference space for trial. Latham requests $52,467.86 for conference

space to create a so-called "war room" used at trial. (Salomon Decl. ¶ 32; Docket No. 603-8, Ex.

4). In addition to the conference space itself, Latham spent at least $11,393.66 in "computer and

technology costs" specifically on its war room. (*See* Salomon Decl. ¶ 32 n.9; Docket No. 603-7,

Ex. 3, at 5-7, 8-10). The Court finds that the sums Latham expended on its war room are

excessive. With respect to the conference space itself, the Court notes that Latham's office is in

the same judicial district as the courthouse where trial was held. Latham's office, located at 885

Third Avenue, New York, NY 10022 is roughly twenty-seven miles away from the courthouse; it

is less than a one-hour commute by car. *See* Driving Directions from 885 Third Avenue, New

York, NY to 300 Quarropas Street, White Plains, NY, GOOGLE MAPS,

https://www.google.com/maps (follow "Directions" hyperlink; then search starting point field for

"885 Third Avenue, New York, NY" and search destination field for "300 Quarropas Street,

White Plains, NY"); *see also Houston v. Cotter*, 234 F. Supp. 3d 392, 405 (E.D.N.Y. 2017)

("[w]hile parties to a litigation may fashion it according to their purse and indulge themselves

and their attorneys . . . they may not foist their extravagances upon their unsuccessful adversaries.") (alternations in original) (quoting *ACE Ltd.*, 2001 WL 1286247, at *4). Accordingly, spending over fifty-thousand dollars on conference space appears excessive as Latham's office is easily accessible to the courthouse.  Further, the technology package used in Latham's war room does "not directly assist the bench in the presentation of evidence" and is therefore not compensable. *See Carco Grp., Inc. v. Maconachy*, No. CV 05-6038(ARL), 2011 WL 6012426, at *11 n.11 (E.D.N.Y. Dec. 1, 2011) (declining to award costs for a "war room technology package").  Consequently, the Court recommends that Latham not be awarded $52,467.86 for its conference space for trial, and that its requested computer and technology costs be reduced to $56,129.52.[8]

Therefore, Plaintiffs are entitled to $426,398.03 for costs incurred in the instant matter.

## III.  CONCLUSION

For the foregoing reasons, I respectfully recommend that Plaintiffs' motion be granted in part and denied in part, and that Plaintiffs' counsel be awarded $3,714,834.38 in attorneys' fees, $192,463.92 in expert fees, and $426,398.03 in costs.

## IV.  NOTICE

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b)(2) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from receipt of this Report and Recommendation to serve and file written objections. *See* Fed. R. Civ. P. 6(a) and (d) (rules for computing time).  A party may respond to another party's objections within fourteen (14) days

---

[8] This sum represents the $67,523.18 Latham requests for "computer and technology costs" less the $11,393.66 in technology costs specifically expended on its war room. (*See* Salomon Decl. ¶ 32 n.9; Docket No. 603-7, Ex. 3, at 5-7, 8-10 (adding Aquipt Invoice #115285 and Aquipt Invoice #115392)).

after being served with a copy. *See* Fed. R. Civ. P. 72(b)(2).  Objections and responses to objections, if any, shall be filed with the Clerk of the Court, with extra copies delivered to the chambers of the Honorable Cathy Seibel at the United States District Court, Southern District of New York, 300 Quarropas Street, White Plains, New York, 10601, and to the chambers of the undersigned at said Courthouse.

Requests for extensions of time to file objections must be made to the Honorable Cathy Seibel and not to the undersigned.  Failure to file timely objections to this Report and Recommendation will result in a waiver of objections and will preclude later appellate review of any order of judgment that will be rendered. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(b), 6(d), 72(b); *Caidor v. Onondaga Cty.*, 517 F.3d 601, 604 (2d Cir. 2008).

Dated:    December 29, 2020
          White Plains, New York

RESPECTFULLY SUBMITTED,

JUDITH C. McCARTHY
United States Magistrate Judge