UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

NATIONAL ASSOCIATION FOR THE
ADVANCEMENT OF COLORED PEOPLE,
SPRING VALLEY BRANCH; JULIO
CLERVEAUX; CHEVON DOS REIS; ERIC
GOODWIN; JOSE VITELIO GREGORIO;
DOROTHY MILLER; HILLARY MOREAU;
and WASHINGTON SANCHEZ,

       Plaintiffs,

  v.

EAST RAMAPO CENTRAL SCHOOL
DISTRICT and MARYELLEN ELIA, IN HER
CAPACITY AS THE COMMISSIONER OF
EDUCATION OF THE STATE OF NEW
YORK,

       Defendants.

17 Civ. 8943 (CS) (JCM)

---

**PLAINTIFFS' OBJECTION TO THE REPORT AND RECOMMENDATION OF
MAGISTRATE JUDGE MCCARTHY DATED DECEMBER 29, 2020 CONCERNING
PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND COSTS**

## <u>TABLE OF CONTENTS</u>

**Page**

INTRODUCTION ...................................................................................................................1

LEGAL STANDARD............................................................................................................4

ARGUMENT .........................................................................................................................4

I.      The Court Should Reject The Recommendation To Reduce Latham Attorneys' Fees ............................................................................................................................4

II.     The Court Should Reject The Recommendation To Reduce The Hourly Rates Of Latham Associates ..............................................................................................7

III.    The Court Should Reject The Recommendation To Reduce Latham's Hours ..................13

IV.    Reservation Of Rights.......................................................................................18

CONCLUSION.....................................................................................................................19

## **TABLE OF AUTHORITIES**

**Page(s)**

### CASES

*Adams v. N.Y. State Dep't of Educ.*,
  855 F. Supp. 2d 205 (S.D.N.Y. 2012)........................................................................4

*Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany*,
  522 F.3d 182 (2d Cir. 2008)........................................................... *passim*

*Clerveaux v. E. Ramapo Cent. Sch. Dist.*,
  --- F.3d ----, 2021 WL 42110 (2d Cir. Jan. 6, 2021)....................................6, 13, 17

*Green v. Torres*,
  361 F.3d 96 (2d Cir. 2004).........................................................................6

*Hervochon v. Iona College*,
  2019 WL 1375359 (S.D.N.Y. Mar. 27, 2019) (Seibel, J.)........................................4

*Millea v. Metro-N. R.R. Co.*,
  658 F.3d 154 (2d Cir. 2011)......................................................................5, 6

*Montes v. City of Yakima*,
  2015 WL 11120966 (E.D. Wash. June 19, 2015).................................................5

*Nat'l Ass'n for the Advancement of Colored People v. E. Ramapo Cent. Sch.
  Dist.*,
  776 F. App'x 44 (2d Cir. 2019) ...................................................................18

*New York Youth Club v. Town of Harrison*,
  2016 WL 3676690 (S.D.N.Y. July 6, 2016) ........................................... *passim*

*Ratliff v. Davis Polk & Wardwell*,
  354 F.3d 165 (2d Cir. 2003)......................................................................17

*Schlagenhauf v. Holder*,
  379 U.S. 104 (1964)...............................................................................17

*United States v. Male Juvenile*,
  121 F.3d 34 (2d Cir. 1997)........................................................................4

*Vista Outdoor, Inc. v. Reeves Family Tr.*,
  2018 WL 3104631 (S.D.N.Y. May 24, 2018) ....................................................7

**STATUTES**

28 U.S.C.
    § 636 .......................................................................................................................1, 2, 4
    § 1927 ..........................................................................................................................18

52 U.S.C. § 10310(e) .......................................................................................................1

**RULES**

FED. R. CIV. P.
    72(b) .........................................................................................................................1, 4

Pursuant to 28 U.S.C. § 636 and Federal Rule of Civil Procedure 72(b), Plaintiffs respectfully object to the portion of Magistrate Judge Judith C. McCarthy's December 29, 2020 Report and Recommendation ("R&R"), ECF No. 671, on Plaintiffs' Motion for Attorneys' Fees and Costs (the "Motion" or "Mot."), ECF No. 604, addressing the fees that should be awarded for the work of Plaintiffs' counsel from Latham & Watkins.

## **INTRODUCTION**

Almost three years since the initiation of this lawsuit, this Court ruled that the at-large system of electing the Board of Education (the "Board") of the East Ramapo Central School District (the "District") violated Section 2 of the Voting Rights Act ("VRA"), ECF No. 568 ("Decision") ¶ 87, a ruling that recently was upheld in its entirety by the Second Circuit Court of Appeals.  This Court also held that Plaintiffs are entitled to attorneys' fees and costs, including expert fees, pursuant to 52 U.S.C. § 10310(e).  Decision ¶ 89.  At the Court's behest, Plaintiffs submitted the Motion, seeking a total of $9,189,716.47 in attorneys' fees, expenses, and costs, including expert fees.  Mot. at 2, 12-13.[1]

In the Motion, Plaintiffs explained that the fees and costs sought were reasonable in light of the District's scorched-earth and win-at-all-costs litigation tactics, which included several of its Board members lying at trial, and the extensive effort necessary to address them.  Mot. at 2-12. Plaintiffs' counsel, Latham, submitted a petition for substantially less than the cost of the total work it performed—it sought to recover fees only for attorneys who appeared at trial (foregoing

---

[1] Plaintiffs sought (i) $7,544,015.00 in attorneys' fees for Latham & Watkins ("Latham"), (ii) $952,978.00 in attorneys' fees for the New York Civil Liberties Union Foundation ("NYCLU"), (iii) $192,463.92 in expert fees, and (iv) $490,259.55 in costs.  *See* Mot. at 12, 23-25.  Plaintiffs do not object to Magistrate Judge McCarthy's recommendation regarding NYCLU's attorneys' fees, experts fees, and costs, for which Magistrate Judge McCarthy recommended $924,826.04, $192,463.92, and $426,398.03 respectively.  *See* R&R at 21-22, 24.

reimbursement for over 9,000 hours or more than $6.8 million) and reduced its customary hourly rates to reflect the partner and associate rates charged by the District's counsel in this case (foregoing reimbursement for an additional $6.7 million).  *Id.* at 12.  The total attorneys' fees sought ($8.5 million) fell within the range of $7.2 and $8.9 million that the District paid its counsel in a losing effort.[2]  ECF No. 649 at 1, 2.  Moreover, Latham intends to donate any fees to non-profit organizations that support children attending public school in the District.  Mot. at 2.

While awarding $3,714,834.38 in attorneys' fees, Magistrate Judge McCarthy recommended that the Court decline to award the full requested fee amount in two material respects:  (i) by reducing the hourly rates of Latham associates who had performed substantive roles at trial to rates less than half of the rates of the Morgan Lewis attorneys that they went up against in court, and (ii) reducing the hours that those attorneys spent on winning this case (made more difficult due to the conduct of the District and its lawyers).  *See* R&R at 9-12, 14-20.  The combined impact of these reductions would result in Plaintiffs being reimbursed for only about half of what the District spent to litigate this case unsuccessfully.  Upon a *de novo* review of the R&R, this Court should reject these recommendations for three reasons.  28 U.S.C. § 636(b)(1).

*First*, the R&R effectively ignores unambiguous evidence of what a "reasonable, paying client would be willing to pay" to prosecute this matter.  *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany*, 522 F.3d 182, 184 (2d Cir. 2008).  The District paid its counsel between $7.2 and $8.9 million to *lose* this lawsuit.  It logically follows that a "reasonable, paying client would be willing to pay" at least an amount within that range to *win* this lawsuit.

---

[2] As explained in Plaintiffs' Reply in support of the Motion, the District refused Plaintiffs' request to disclose the total amount of fees and costs the District paid to litigate this case.  ECF No. 649 at 3 n.1; ECF No. 650-5 at 4.  As a result, Plaintiffs were forced to calculate a range based on (inappropriately redacted) invoices they obtained from the District via a New York Freedom of Information Law request.  ECF No. 649 at 3 n.1; *see* ECF Nos. 650-1, 650-2, 650-3, 650-4.

*Second*, in recommending a drastic reduction to the hourly rate of Latham associates, the R&R incorrectly relied exclusively on the civil rights experience of Latham associates, which is but one aspect of one the *Johnson* factors that the Second Circuit has instructed district courts to consider when determining the "reasonable hourly rate." *Id.* at 186 n.3. While that circumstance admittedly bears some pertinence to the inquiry, a careful consideration of the totality of the *Johnson* factors, such as the litigation skill and ability of Latham associates (as exemplified at trial) and the results obtained, mandates a higher hourly rate. *See New York Youth Club v. Town of Harrison*, 2016 WL 3676690, at *2 (S.D.N.Y. July 6, 2016) (Seibel, J.) ("The most critical factor in a district court's determination of what constitutes reasonable attorneys' fees . . . is the degree of success obtained by the plaintiff") (quotation marks and citations omitted).

*Third*, the R&R inappropriately recommended a drastic reduction of the hours expended by Latham attorneys. R&R at 20-21. The R&R did not sufficiently consider Latham's voluntary reduction of its hours by over 9,000 hours (34% of the time spent litigating this case) which sufficiently addressed any purported concerns of overstaffing or duplication. Moreover, the R&R's recommendation is based upon the incorrect findings that (i) Latham's devotion of resources to some of the most important depositions of this case was excessive and (ii) Latham's discovery motions, which were made necessary by the District's vexatious tactics, were "unreasonable." *Id.* at 18-19.

Although Plaintiffs' objections clearly demonstrate that this Court should reject the R&R's recommended reductions and award Plaintiffs the total fees sought, Plaintiffs object solely to the extent the R&R's recommended Plaintiffs' attorneys' fees and costs would result in an award *lower* than the attorneys' fees paid by the District for its counsel to unsuccessfully defend this action. Accordingly, this Court should respectfully reject the R&R's recommendations to further

reduce Latham's rates and hours to the extent such recommendations lower Latham's fees below $5,656,312.[3]

## LEGAL STANDARD

In reviewing a report and recommendation from a magistrate judge, a district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). "The district court 'may adopt those portions of the report to which no "specific, written objection" is made, as long as the factual and legal bases supporting the findings and conclusions set forth in those sections are not clearly erroneous or contrary to law.'" *Hervochon v. Iona College*, 2019 WL 1375359, at *1 (S.D.N.Y. Mar. 27, 2019) (Seibel, J.) (citing *Adams v. N.Y. State Dep't of Educ.*, 855 F. Supp. 2d 205, 206 (S.D.N.Y. 2012) (quoting FED. R. CIV. P. 72(b))). When specific objections are made, however, the district "court must review *de novo* any portion of the report to which a specific objection is made." *Id.* (citing 28 U.S.C. § 636(b)(1)); *see also United States v. Male Juvenile*, 121 F.3d 34, 38 (2d Cir. 1997).

## ARGUMENT[4]

## I.   THE COURT SHOULD REJECT THE RECOMMENDATION TO REDUCE LATHAM ATTORNEYS' FEES

Plaintiffs respectfully object to the R&R's reduction of Latham's attorneys' fees to $2,790,008.34 and respectfully request that this Court award Plaintiffs at least $5,656,312 in attorneys' fees for Latham attorneys, an amount that would lead to a total award commensurate with the low end of what the District paid to litigate this case. R&R at 21; Mot. at 12; ECF No.

---

[3] The R&R recommended that this Court award Plaintiffs $1,543,687.99 for NYCLU's attorneys' fees, expert fees, and costs. R&R at 21-22, 24. Subtracting that from the lower range of the fees paid by the District ($7.2 million) leaves $5,656,312 in attorneys' fees for Latham attorneys.

[4] To avoid repetition, Plaintiffs omit facts discussed in the Motion and repeat only facts that pertain to the present motion. To the extent any of the evidence discussed was not before Magistrate Judge McCarthy, this Court is permitted to "receive further evidence." FED. R. CIV. P. 72(b)(3).

649 at 1. The Second Circuit "and the Supreme Court have held that the lodestar—the product of a reasonable hourly rate and the reasonable number of hours required by the case—creates a 'presumptively reasonable fee.'" *Millea v. Metro-N. R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011) (citing *Arbor Hill*, 522 F.3d at 183). In calculating a "presumptively reasonable fee," the district court must "determine what a *reasonable paying client would be willing to pay* for the legal services, in other words, the appropriate market rate for counsel over the course of the number of hours appropriately worked." *New York Youth*, 2016 WL 3676690, at *2 (quotation marks and citation omitted) (emphasis added).

Here, the District paid its counsel, Morgan, Lewis & Bockius LLP ("Morgan Lewis") and Harris Beach, PLLC, between $7.2 and $8.9 million for representation in a losing effort. *See* ECF Nos. 650-1, 650-2, 650-3, 650-4. If a paying client is willing to expend between $7.2 and $8.9 million in a losing effort, it logically follows that a party would also be willing to expend *at least* $5.6 million (or $7.2 million with NYCLU's attorneys' fees, expert fees, and costs) to *win*.[5] Mot. at 12 (citing ECF No. 603 ("Salomon Decl.")) ¶¶ 21-22).

Moreover, adopting the R&R's reasoning risks establishing a precedent that it is only reasonable for plaintiffs to spend half of what the defendant spent on the same case. Such a decision could harm the ability of plaintiffs with valid civil and voting rights claims to recover fees in the future and/or attract effective legal counsel. Specifically, defendants seeking to avoid

---

[5] To be clear, Plaintiffs are not expressing an opinion one way or another as to whether the amount that the District paid its attorneys is reasonable. However, for purposes of this analysis, the District's choice in what it paid its counsel should be taken into consideration along with the District's willingness to expend such an amount in mounting a scorched-earth defense (which is in large part what necessitated the hours expended by Latham attorneys). *See, e.g.*, *Montes v. City of Yakima*, 2015 WL 11120966, at *12 (E.D. Wash. June 19, 2015) ("[Defendant] chose to litigate this matter tenaciously … it cannot now be heard to complain that an award commensurate to the time Plaintiffs necessarily spent in response to this vigorous defense was unreasonable.").

repercussions could always afford more or better representation without the risk that they would be forced to pay the same rates to plaintiffs should they lose the case. This would run afoul of the "purpose of fee-shifting statutes," namely "assuring that civil rights claims of modest cash value can attract competent counsel." *Millea*, 658 F.3d at 169; *see also Green v. Torres*, 361 F.3d 96, 100 (2d Cir. 2004) ("The general purpose of fee-shifting statutes such as § 1988(b) is to permit plaintiffs with valid claims to attract effective legal representation and 'thereby to encourage private enforcement of civil rights statutes, to the benefit of the public as a whole.'") (citation omitted). Under the reasoning adopted by the R&R, Defendants would also be emboldened to adopt a win-at-all-cost and vexatious litigation strategy, such as the District did here, knowing that they would not be held financially responsible for such tactics should they lose and that most civil rights plaintiffs do not have the resources to mitigate against scorched-earth tactics employed by a firm with resources like Morgan Lewis. *See, e.g.*, Mot. at 2-12 (outlining the District's vexatious litigation antics); Decision ¶ 86 n.62 (recognizing the District's "disturbing win-at-all-costs attitude"); *see also Clerveaux v. E. Ramapo Cent. Sch. Dist.*, --- F.3d ----, 2021 WL 42110, at *20 n.15 (2d Cir. Jan. 6, 2021) (discussing District counsel's "deeply troubling" actions, concluding that "[s]uch deceptive posturing has no place in the legal profession").[6]

---

[6] The District's bad faith actions did not cease after trial. Immediately after the Decision, the District sought to proceed with the 2020 Board elections in spite of the fact that such action would violate the VRA, ECF No. 572, but this Court rejected the District's attempts, ECF No. 576. Then, the District turned to the Second Circuit with yet another emergency motion. *Nat'l Ass'n for the Advancement of Colored People v. E. Ramapo Cent. Sch. Dist.*, No. 20-1668 (2d Cir. June 2, 2020), ECF No. 19. Next, the District sought to avoid remedying its VRA violation—after refusing to work on a remedial proposal with Plaintiffs, the District submitted an illustrative plan prepared by Plaintiffs' expert, ECF No. 583, that it previously dubbed as "hopelessly out of date and unusable to form legally supportable voting districts." ECF No. 572 at 19 n.8. And even after agreeing on a remedy, under which the District agreed to undertake numerous actions in preparation for a special election to be held on February 2, 2021, ECF No. 664, the District filed a procedurally defective appeal to the Second Circuit in an attempt to renew its motion to stay. *Nat'l Ass'n for*

II.   **THE COURT SHOULD REJECT THE RECOMMENDATION TO REDUCE THE HOURLY RATES OF LATHAM ASSOCIATES**

Plaintiffs respectfully submit that the R&R erred in recommending that this Court reduce the (already discounted) hourly rates of Latham associates because the R&R overlooked (i) evidence of the rate a paying client would be willing to pay, namely the $450 hourly rate the District paid for Morgan Lewis associates, and (ii) that many of the *Johnson* factors, such as the ability of the Latham associates and the results obtained, showed that an hourly rate of $450 is reasonable in light of existing precedent in the Southern District of New York.  R&R at 9-11; *see* Mot. at 15-16 (citing *Vista Outdoor, Inc. v. Reeves Family Tr.*, 2018 WL 3104631, at *6-7 (S.D.N.Y. May 24, 2018) (rates above $1,000 for partners in "New York City 'big firm market'" and above $500 for associates are reasonable)).

The Second Circuit has explained that a "reasonable hourly rate" is "the rate a paying client would be willing to pay."  *Arbor Hill*, 522 F.3d at 190.  In setting a reasonable hourly rate, "a court should consider all of the 'case-specific variables that [the Second Circuit] and other courts have identified as relevant to the reasonableness of attorneys' fees' . . . including the so-called *Johnson* factors…."  *New York Youth*, 2016 WL 3676690, at *2 (citation omitted).[7]  When "determining what a reasonable, paying client would be willing to pay," the Second Circuit instructs courts to:

> consider factors including, but not limited to, the complexity and difficulty of the case, the available expertise and capacity of the

---

the Advancement of Colored People v. E. Ramapo Cent. Sch. Dist.*, No. 20-1668 (2d Cir. Dec. 23, 2020), ECF No. 153-1.

[7] The *Johnson* factors are: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.  *Arbor Hill*, 522 F.3d at 186 n.3 (quotation marks omitted).

> client's other counsel (if any), the resources required to prosecute
> the case effectively (taking account of the resources being
> marshaled on the other side but not endorsing scorched earth
> tactics), the timing demands of the case, whether an attorney might
> have an interest (independent of that of his client) in achieving the
> ends of the litigation or might initiate the representation himself,
> whether an attorney might have initially acted pro bono (such that a
> client might be aware that the attorney expected low or non-existent
> remuneration), and other returns (such as reputation, etc.) that an
> attorney might expect from the representation.

*Arbor Hill*, 522 F.3d at 184.  The hourly rate employed should be "based on market rates in line with those [rates] prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation."  *New York Youth*, 2016 WL 3676690, at *2 (quotation marks and citation omitted).

Plaintiffs respectfully submit that, in suggesting a reduction of Latham's hourly rates, the R&R overlooked many of the factors enumerated by the Second Circuit for determining a reasonable hourly rate.  Rather, the magistrate court based its reasoning almost exclusively on Plaintiffs not attaching Latham attorneys' publicly available bios to the pleading (even though the magistrate court appears to have obtained those bios from Latham's public website) and the fact that the Latham attorneys did not have extensive experience litigating civil rights cases.  *See* R&R at 9-11.  In so doing, the magistrate court cut Latham's fees to the "lower end of the range of prevailing rates for [] associates in this district," *id.* at 11,[8] even though those same associates helped Plaintiffs achieve a landmark civil rights victory against a defendant that paid its attorneys

---

[8] The R&R recommended reducing:  (1) Russell D. Mangas's and Corey A. Calabrese's hourly rates from $450 to $300; (2) Rakim E. Johnson's and Thomas C. Pearce's hourly rates from $450 to $275; and (3) Andrej Novakovski's, Abhinaya Swaminathan's, Nicole C. Scully's, Elizabeth C. Sahner's, and Meredith A. Cusick's hourly rates from $450 to $125.  It also recommended reducing Andrew B. Clubok's and Claudia T. Salomon's hourly rates from $650 to $600.  R&R at 7-12.

8

the same rates to engage in scorched-earth litigation tactics during the duration of the case.  *See* Mot. at 2-12.

Plaintiffs respectfully submit that while the degree of experience in civil rights litigation has some pertinence to the inquiry, fealty to Second Circuit precedent and guidance regarding the totality of factors to be examined reveals that, as a whole, the requested hourly rates are warranted.

*First*, the R&R ignores evidence of "the rate a paying client would be willing to pay." *Arbor Hill*, 522 F.3d at 190.  The District—a paying client—paid its counsel at Morgan Lewis a rate of $650 for partners and $450 for associates although it does not appear that any of the District's lawyers have relevant VRA experience.  ECF No. 650-1 at 5.  In the fee petition, Latham lowered its customary rates to match those paid by the District, resulting in an over $6.7 million reduction from what Latham's clients would have paid typically for its representation.  Salomon Decl. ¶ 2.  Thus, Plaintiffs' requested hourly rate for Latham associates is "the rate a paying client would be willing to pay" and is the rate that the District did, in fact, pay.  *See Arbor Hill*, 522 F.3d at 190.  While the R&R acknowledged that Latham reduced the hourly rate of its partners, the R&R overlooked that the hourly rates of Latham associates were also significantly reduced.  *See* R&R at 8.  Indeed, the R&R failed to heed the Second Circuit's guidance that district courts consider "the resources required to prosecute the case effectively (*taking account of the resources being marshaled on the other side* but not endorsing scorched earth tactics)."  *Arbor Hill*, 522 F.3d at 184 (emphasis added).

*Second*, the R&R erroneously fixated on a single of the many applicable *Johnson* factors, which is plainly incorrect.  Specifically, the R&R only analyzed the civil rights experience of the Latham associates.  *See* R&R at 9-12; *cf. Arbor Hill*, 522 F.3d at 186 n.3 (listing "experience" as one of the many factors).  In so doing, the R&R overlooked the deliberate way in which Plaintiffs'

legal team was structured, namely to utilize NYCLU's advice and guidance on VRA law and Latham's institutional resources and deep bench of litigation experience in conducting discovery and trial against a litigation firm like Morgan Lewis.  The R&R also ignored the critical role that each Latham associate played at trial, including the fact that every Latham associate made more substantive, stand-up contributions to the case during deposition discovery and trial than their counterparts at Morgan Lewis who were charging the District the same rate.  *Arbor Hill*, 522 F.3d at 186 n.3 (listing "the level of skill required to perform the legal service properly," "ability of the attorneys," and "results obtained" among the factors); *see also* Mot. at 16-19.  Specifically:

- <u>Ms. Calabrese.</u>  In addition to leading the team from the inception of the case, including delivering the opening and closing arguments (the latter being the very first in the country reported to have been delivered over Zoom), Ms. Calabrese took the deposition of Dr. John Alford and defended the deposition of Eustache Clerveaux.  ECF No. 603-21 ("Time Records") at 92-99, 123-140.  At trial, Ms. Calabrese cross-examined Dr. Peter Morrison and Dr. Alford, and took the direct examination of Olivia Castor, Chevon Dos Reis, and Ashley Leveille.  Tr. at 47, 98, 581, 648, 1771, 2263, 2843.

  The testimony elicited from Dr. Alford and Dr. Morrison was key to this Court's decision to discount the testimony of Dr. Alford and credit Dr. Barreto's testimony.  Decision ¶¶ 18, 23, 23 n.21, 26, 31-35.  This Court also relied heavily upon the evidence Ms. Calabrese elicited during her direct examination in finding that several Senate Factors weighed in Plaintiffs' favor.  *Id.* ¶¶ 49, 73, 80, 83 (responsiveness, safe minority candidates, slating, and tenuousness).

- <u>Mr. Mangas.</u>  Mr. Mangas likewise led Plaintiffs' team and took the depositions of Yair Ghitza, Harry Grossman, Rabbi Hersh Horowitz, Rabbi Yehuda Oshry, and Aron Wieder, and defended the deposition of Dr. Matthew Barreto.  Time Records at 79-83, 85-123, 153-155, 207-212.  At trial, Mr. Mangas took the direct examination of Dr. Barreto over four days and cross-examined Mr. Grossman, Rabbi Horowitz, and Rabbi Oshry.  Tr. at 149, 335, 952, 1409, 1660, 2460.

  In its Decision, this Court relied heavily on testimony Mr. Mangas obtained from these witnesses.  *E.g.*, Decision ¶¶ 54-80 (discussing Mr. Grossman, Rabbi Horowitz, and Rabbi Oshry).  For example, this Court relied extensively on Dr. Barreto's testimony in finding that Plaintiffs satisfied the *Gingles* preconditions and several Senate Factors.  *Id.* ¶¶ 13-38, 53-54, 62-63, 67.  Due to Mr. Mangas's cross-examination, this Court also found that Mr. Grossman was "one of the more incredible witnesses I have encountered."  *Id.* ¶¶ 48, 59 & n.50.

- Mr. Johnson.   Mr. Johnson took the deposition of Yehuda Weissmandl and defended the depositions of Dr. Loren Collingwood, Bill Cooper, José Vitelio Gregorio, and Emilia White.   Time Records at 79-84, 96-100, 117-122, 140-142, 207-211.   Mr. Weissmandl's deposition was used repeatedly at trial to impeach Mr. Weissmandl.   Tr. at 1057:15, 1107:23, 1108:11; *see also* ECF No. 601-6 at 4-6.   At trial, Mr. Johnson took the direct examination of Mr. Cooper, Mr. Trotman, and Oscar Cohen.   Tr. at 495, 1276, 1900.

  This Court relied on Mr. Cooper's testimony in finding that Plaintiffs satisfied the first *Gingles* precondition as well as one of the Senate Factors.   Decision ¶¶ 13 n.10, 65-66.   Moreover, Mr. Trotman's and Mr. Cohen's testimony were crucial in establishing election futility, responsiveness, and slating.   *Id.* ¶¶ 67 n.56, 73, 80, 82.

- Mr. Pearce.   Mr. Pearce took the deposition of Joel Freilich and defended the depositions of Julio Clerveaux, Chevon Dos Reis, Allie Manigo, Hillary Moreau, and Steve White.   Time Records at 33-37, 43-46, 104-106, 156-157, 209-211.   Admissions from Mr. Freilich's deposition were crucial during his cross examination.   Tr. 712-713, 718, 722-723.   At trial, Mr. Pearce cross-examined Mr. Weissmandl and performed the direct examination of Ms. Miller.   Tr. at 819, 1051.

  Mr. Pearce's cross-examination of Mr. Weissmandl was featured prominently in the Decision, including in this Court's finding that Mr. Weissmandl's purported inability to remember certain facts was "utterly unconvincing."   Decision ¶ 48; *see also id.* ¶ 57 (discussing slating).   This Court also relied on Ms. Miller's testimony in analyzing responsiveness and safe minority candidates.   *Id.* ¶¶ 73, 80.

- Mr. Novakovski.   Mr. Novakovski took the depositions of Bernard Charles and Dr. Randy Stevenson, assisted with the depositions of Dr. Alford, Dr. Barreto, and Sabrina Charles-Pierre, and defended the deposition of Peggy Hatton.   Time Records at 79-89, 94-105, 107-113, 133-143, 283.   Dr. Stevenson's deposition was crucial to showing that the District's experts could replicate Dr. Barreto's analysis.   Tr. at 2348-2349.   At trial, Mr. Novakovski cross-examined Pierre Germain and Mr. Charles, during which he relied on admissions from Mr. Charles's deposition, took the direct examinations of Jean Fields and Eric Goodwin, Tr. at 780, 860, 1235, 1798, and assisted with the direct examination of Dr. Barreto and cross-examination of Ms. Charles-Pierre, Time Records at 254-66, 273-274, 285-288.

  Admissions from Mr. Charles and Mr. Germain were key to this Court's findings on slating and safe minority candidates.   Decision ¶¶ 48-49, 57-60, 73-74; *see also id.* ¶¶ 5, 49, 57 n.48, 58, 63, 73, 81-83 (relying on Mr. Goodwin and Ms. Fields). This Court also relied upon their cross-examination to describe credibility problems with Board Member affidavits and contradictions in their live testimony.   *Id.* ¶ 48 (reasoning that Board members' testimony, "especially Charles's and Germain's . . . was so rife with dissembling that it offered scant, if any, value."); *see also id.* ¶¶ 44, 49, 59, 60, 73, 75, 76 (discussing Ms. Charles-Pierre's testimony).

11

- <u>Ms. Scully.</u>  Ms. Scully drafted the proposed Joint Pretrial Order, coordinated the preparation of Plaintiffs' exhibit list, helped with the preparation for the depositions of Mr. Grossman and Dr. Alford, and assisted in the drafting and research in support of numerous discovery motions and the oppositions to the District's summary judgment and *Daubert* motions.  Time Records at 97-132, 137-141, 170-190, 207-212, 225-265.  At trial, Ms. Scully cross-examined Yonah Rothman, Tr. at 1379, and managed Plaintiffs' exhibit list.  Tr. at 146-149, 334-335.

  This Court devoted almost an entire page of the Decision discussing the credibility problems with Mr. Rothman's testimony.  Decision ¶ 48.  Indeed, in its slating analysis, this Court relied upon Mr. Rothman's testimony that he did not do "anything" to get elected.  *Id.* ¶¶ 49, 57; *see also id.* ¶ 60.

- <u>Ms. Sahner.</u>  Ms. Sahner assisted with key research and drafting tasks for various discovery motions, oppositions to the District's *Daubert*, *in limine*, and summary judgment motions, as well as Plaintiffs' Proposed Findings of Fact.  Time Records at 97-130, 170-190, 229-250.  At trial, Ms. Sahner cross-examined Mr. Freilich and helped prepare cross-examinations of Mr. Rothman and Mr. Wieder.  Tr. at 701.

  This Court relied heavily upon Mr. Freilich's testimony that he did not campaign when he ran for the Board.  Decision ¶ 49.  This Court also pointed to Mr. Freilich's testimony evidencing a slating process and showing that Mr. Freilich did not have any policy platform.  *Id.* ¶¶ 49, 57, 60; *see also id.* ¶ 80 (discussing responsiveness).

- <u>Ms. Swaminathan.</u>  Ms. Swaminathan helped with the deposition preparation for the District's 30(b)(6) witness, Dr. Barreto, Julio Clerveaux, Mr. Weissmandl, and Ms. Hatton.  Time Records at 85-90, 93-106, 109-112, 207-212.  Ms. Swaminathan also contributed extensive research and drafting support for various discovery motions and the oppositions to the District's *Daubert* and summary judgment motions.  *Id.* at 97-130, 170-190, 229-250.  Ms. Swaminathan also researched and drafted various motions in connection with the deficient document production by the District's Board members.  *E.g.*, Time Records at 153-163, 265-276.  At trial, Ms. Swaminathan cross-examined Mr. White, took the direct examination of Julio Clerveaux, and assisted with the cross-examinations of Dr. Morrison and Ms. Charles-Pierre.  Tr. at 690, 2079; Time Records at 253-260, 284.  The testimony from Dr. Morrison was crucial to the examination of Dr. Barreto at trial.  *See, e.g.*, Tr. at 202-208.

- <u>Ms. Cusick.</u>  Ms. Cusick assisted with the deposition of Mr. Freilich, research and drafting for *in limine* motions, Plaintiffs' privilege log, opposition to the District's *Daubert* and summary judgment motions, and Plaintiffs' Proposed Findings of Fact.  Time Records at 122-130, 170-180, 210-211, 230-263.  At trial, Ms. Cusick cross-examined Mr. Wieder, Tr. at 1154, and assisted with the cross-examination of Rabbi Oshry, Time Records at 250-272.  Ms. Cusick drafted and argued Plaintiffs' motion for alternate service of Rabbi Oshry.  Tr. at 333-334, 1711-1715.

This court relied heavily upon the admissions Ms. Cusick elicited during Mr. Wieder's cross examination, including Mr. Wieder's admission that the District's public school budget cuts primarily impact minority students. Decision ¶ 46. The Court also relied upon Mr. Wieder's testimony in noting contradictions between his written testimony and his live testimony. *See id.* ¶¶ 48, 57.

Like the District Court, the Second Circuit also relied extensively upon the work and results of Latham associates in affirming the Decision. *See generally Clerveaux*, 2021 WL 42110. In light of these results, this Court should reject the recommendation to reduce the already reduced rates for Latham associates who made critical contributions to Plaintiffs' success at trial. *New York Youth*, 2016 WL 3676690, at *2 ("[T]he most critical factor in a district court's determination of what constitutes reasonable attorneys' fees . . . is the degree of success obtained….") (quotation marks and citation omitted).

## III.   THE COURT SHOULD REJECT THE RECOMMENDATION TO REDUCE LATHAM'S HOURS

Plaintiffs respectfully submit that the R&R erred in recommending that this Court reduce the already reduced hours sought for Latham attorneys by an additional 25%. *See* R&R at 16-17, 20. Specifically, the R&R recommended a reduction of Latham's hours because Latham's team was "excessively staffed," which "created inefficiencies and a duplication of efforts." *Id.*[9] While Plaintiffs do not agree that there was, in fact, excessive staffing, Latham's voluntary reduction of its hours by over 9,000 hours (over $6.8 million) was more than adequate to address any such concerns. Salomon Decl. ¶¶ 21-22. Latham only sought fees for attorneys who played a meaningful role at trial and excluded (i) associates who did not make an appearance in court and

---

[9] Plaintiffs are surprised that the R&R reasoned that "it is unlikely that a paying client would have been amenable to the staffing practices employed by Latham." *Id.* at 16. Again, Plaintiffs won the case. While this statement could have held some truth prior to Latham's voluntary reduction, Latham's reduction brought its total fees within the range that the District—"a paying client"— paid for this matter.

(ii) all partners except for the two lead trial partners. *Id.* ¶¶ 13, 21. These voluntary reductions should have more than mitigated any purported concerns about Plaintiffs employing too many attorneys, particularly in light of the District's exceedingly litigious tactics that Plaintiffs had to counter.

In support of its reduction in Latham's hours, the R&R cited two examples of depositions and two examples of motion practice that it found supported the position that Latham had overstaffed the case or engaged in unreasonable litigation tactics. R&R at 16-19. None of those examples, however, supports those propositions.

*First*, the R&R recommended that this Court reduce Latham's hours because of purported excessive staffing for the depositions of the District's expert (Dr. Alford) and 30(b)(6) witness (Cathy Russell). R&R at 17. Dr. Alford and the District's 30(b)(6) witness, however, were two of the most important witnesses for the District—their testimony was relevant to many of the Senate Factors and, even more importantly, the necessary *Gingles* preconditions. Indeed, this Court relied on their trial testimony and received a significant portion of the District's 30(b)(6) witness's designated deposition as evidence. *See* Decision ¶¶ 18, 21, 28, 31, 33-35, 38; ECF No. 630 at 18. The R&R criticized Plaintiffs for having one NYCLU attorney and 2-3 Latham attorneys at these critical depositions, even though the District sent multiple attorneys to defend those same depositions, including two partners at the District's 30(b)(6) deposition, and regularly had two partners *defending* many other depositions (at $1300/hour combined), far outspending the fees that the R&R recommends for Plaintiffs under similar circumstances.[10]

---

[10] *Compare* Time Records at 83 (Mr. Mangas and Mr. Novakovski attending Mr. Wieder's deposition), *with* ECF No. 650-1 at 343 (Mr. Butler and Mr. Cravens defending Mr. Wieder's deposition); *compare* ECF No. 599-2 at 8 (Perry Grossman attending Ms. Wortham's deposition) *with* ECF No. 650-1 at 344 (Mr. Butler and Mr. Cravens defending Ms. Wortham's deposition); *compare* Time Records at 94 (Ms. Calabrese and Ms. Swaminathan attending the District's

*Second*, the R&R recommended that this Court find Plaintiffs' motion to compel the production of documents from *Montesa et al. v. Schwartz et al.* No. 12. Civ. 6057 (S.D.N.Y.) unreasonable. R&R at 18-19. But Plaintiffs won that motion, and were forced to bring it in the first instance because the District unreasonably withheld and refused to produce this clearly responsive discovery.[11] Jan. 23, 2019 Hr'g Tr. at 47:17-23. Indeed, it was Magistrate Judge McCarthy who granted Plaintiffs' motion to compel over the District's objection. *Id.*; ECF No. 290 at 3. Similarly, the R&R's suggestion that Plaintiffs should have paid the District to produce that discovery, R&R at 19 & n.7, is contrary to Magistrate Judge McCarthy's position on that issue during the case, in which she held that "[c]ost shifting is not justified." Jan. 23, 2019 Hr'g Tr. at 47:17-23 (noting further that the "District has not shown that it will face undue burden shouldering the cost of its own document production").

---

30(b)(6) deposition) & ECF No. 599-2 at 9 (Perry Grossman attending the District's 30(b)(6) deposition), *with* ECF No. 650-1 at 349 (Mr. Butler and Mr. Cravens defending the District's 30(b)(6) deposition); *compare* Time Records at 211 (Mr. Johnson and Ms. Swaminathan attending Mr. Weissmandl's deposition), *with* ECF No. 650-1 at 249 (Mr. Butler and Mr. Cravens defending Mr. Weissmandl's deposition); *compare* Time Records at 211 (Ms. Cusick, Mr. Pearce and Mr. Clubok attending Mr. Freilich's deposition), *with* ECF No. 650-1 at 249 (Mr. Butler and Mr. Cravens defending Mr. Freilich's deposition); *compare* Time Records at 212 (Ms. Scully and Mr. Mangas attending Mr. Grossman's deposition), *with* ECF No. 650-1 at 249 (Mr. Butler and Mr. Cravens defending Mr. Grossman's deposition).

[11] Early in this litigation, on March 9, 2018, this Court held that the types of documents that would have been produced in *Montesa* were relevant to showing responsiveness on the part of the District. ECF No. 141 at 11, 18. The very same day, Plaintiffs served the District with a request for the *Montesa* documents. *See* ECF No. 153 at 3; ECF No. 153-5. On September 20, 2018, Magistrate Judge McCarthy rejected the District's argument that the documents were not relevant and instructed the parties to meet and confer. *See* Ex. A, Sept. 20, 2018 Hr'g Tr. at 21:11-24:25. Citations to "Ex." refer to exhibits attached to the Declaration of Corey A. Calabrese, submitted herewith. Plaintiffs narrowed their requests and search terms in multiple meet and confers and letters with the District, yet the District repeatedly rebuffed Plaintiffs' narrowed requests. ECF No. 290 at 3-4; ECF Nos. 290-2, 290-3; ECF No. 414-3 ("Jan. 23, 2019 Hr'g Tr.") at 46:16-22. Then, on December 19, 2018, the District responded that it would comply only if Plaintiffs agreed to pay for data recovery and hosting. ECF No. 290-4; Jan. 23, 2019 Hr'g Tr. at 46:23-47:1.

Furthermore, the R&R found that Plaintiffs were unreasonable in not accepting the District's demand that Plaintiffs and their attorneys sign the protective order entered in the *Montesa* case (despite the fact that there was an existing protective order in this case).  R&R at 19 & n.7.  But that finding overlooks the logistical impossibility that signing the *Montesa* protective order would have imposed on Plaintiffs.  The terms of the *Montesa* protective order would have prohibited Plaintiffs from using those documents in this case (and arguably would have put Plaintiffs in violation of the order even by reviewing the documents and allowing them to shape Plaintiffs' litigation strategy).  ECF Nos. 337, 337-1.  Plaintiffs also attempted to avoid the time and expense of additional litigation by informing the District that, if it reasonably believed producing the *Montesa* documents pursuant to the protective order in the case would somehow violate the *Montesa* protective order, that Plaintiffs were willing to agree to an unopposed motion in which the District sought an order from this Court providing any relief necessary from the *Montesa* protective order.  That should have ended the issue.  Instead, the District unnecessarily filed a contested motion, riddled with mistruths and inaccuracies about Plaintiffs' position, which forced Plaintiffs to respond.  ECF No. 337.

Finally, the R&R criticized Plaintiffs for not using the *Montesa* documents at trial.  R&R at 19.  As an initial matter, the R&R overlooked that Plaintiffs' ability to develop and use the *Montesa* documents at trial was severely undercut by the fact that the District failed to produce them, even after being ordered to do so, until after Plaintiffs had already taken the depositions of most of the District's witnesses.  *See* Ex. B, March 20, 2019 Email.  Regardless, it would have been impossible for Plaintiffs to prejudge the *Montesa* documents or gauge their value for trial until they received and reviewed them.  Under the rule suggested by the R&R, civil rights plaintiffs would be discouraged from engaging in meritorious discovery under the threat of being penalized

if that discovery did not pan out for trial.  That rule would fly in the face of our legal framework which encourages liberal discovery to allow parties to evaluate the evidence they will use at trial. *See Ratliff v. Davis Polk & Wardwell*, 354 F.3d 165, 170 (2d Cir. 2003) ("Discovery rules 'are to be accorded a broad and liberal treatment [ ] to effectuate their purpose that civil trials in the federal courts no longer need be carried on in the dark.'") (citing *Schlagenhauf v. Holder*, 379 U.S. 104, 115 (1964)) (alterations in original).

*Third*, the R&R recommended that this Court reduce Latham's hours because it found that Plaintiffs' attempt to subpoena David J. Butler, the District's counsel, and their subsequent attempts to compel that discovery were "wholly unjustified."   R&R at 18-19.   This recommendation discounts the importance of that discovery and the critical role that its subject matter played at trial.  Specifically, Plaintiffs sought discovery regarding Mr. Butler's directive to Board President Grossman, during the pendency of this litigation, that the white slating organization and/or the District should racially engineer the results of an upcoming Board election in order to obfuscate and avoid liability under the VRA.  ECF No. 508-6 at 11.  Indeed, both this Court and the Second Circuit recognized the importance of Mr. Butler's instruction.  *See* Decision ¶¶ 59 & n.51, 76; *Clerveaux*, 2021 WL 42110, at *4, *20.  Importantly, the Second Circuit's recent affirmance of this Court's judgment sharply chastised Mr. Butler's actions, which it cited in support of affirming this Court's Decision:

> The fact that the District's counsel purportedly gave this "advice" to the District is deeply troubling.  Considering Section 2 case law directs courts to look past such disingenuous ploys, it is bad legal advice.  More disturbing, however, is that the advice appears to be directed at aiding the District in flouting the well-established and clear intent of the Voting Rights Act.  **Such deceptive posturing has no place in the legal profession**.

*Id.* at *20 n.15 (emphasis added).

Moreover, the R&R overlooked the fact that, at the time Plaintiffs subpoenaed Mr. Butler, Board President Grossman—the only other participant in the conversation—was refusing, despite multiple court orders to the contrary, to sit for a deposition, and discovery from Mr. Butler would have been the only way to obtain that critical evidence.  *See* ECF Nos. 124, 170, 224, 225, 430; *Nat'l Ass'n for the Advancement of Colored People v. E. Ramapo Cent. Sch. Dist.*, 776 F. App'x 44, 45 (2d Cir. 2019).  Indeed, the District and Mr. Butler were actively supporting Mr. Grossman in that fight, which they took all the way to the Second Circuit (which found their inappropriate interlocutory appeal failed to "rais[e] a colorable claim").  *E. Ramapo*, 776 F. App'x at 45; ECF No. 430.  That obstruction forced Plaintiffs to preserve the right to seek discovery from Mr. Butler. To that end, when Plaintiffs objected to Magistrate Judge McCarthy's denial of their motion to compel, they did not seek exclusively to enforce the subpoena, but rather sought in the alternative for this Court to enter and continue the motion pending the Second Circuit's decision on Mr. Grossman's appeal.  ECF Nos. 245, 246.  Plaintiffs' actions to preserve their ability to obtain necessary discovery in light of the District's obstruction were neither excessive nor unreasonable; rather, it was both reasonable and responsible for Plaintiffs to do so.  If the Second Circuit had not dismissed Mr. Grossman's appeal, or if it had not resolved that appeal before trial, Plaintiffs would have been at risk of not being able to admit this critical evidence.

## IV.    RESERVATION OF RIGHTS

Although Plaintiffs' counsel have reduced their rates and fees, Plaintiffs expressly reserve the right to seek recovery (including sanctions) for any portion of those foregone fees directly from Morgan Lewis based on their vexatious and dilatory tactics throughout this litigation, including but not limited to the instances described herein and in the Motion.  *See* 28 U.S.C. § 1927. Plaintiffs also expressly reserve their rights to seek from the District and/or Morgan Lewis the attorneys' fees, expert fees, and other costs already incurred and that may be incurred in connection

18

with the continued litigation of the remedy phase and Second Circuit appeal, and any additional appeals.

## **<u>CONCLUSION</u>**

For the foregoing reasons, Plaintiffs respectfully object to Magistrate Judge McCarthy's Report and Recommendation and submit that this Court should respectfully reject any recommendations to further reduce Latham's rates and hours to the extent such recommendations lower Latham's fees below $5,656,312.

Dated: January 12, 2021
New York, New York

Respectfully submitted,
**LATHAM & WATKINS LLP**

/s/ Corey A. Calabrese
Corey A. Calabrese
Andrej Novakovski
Corey.Calabrese@lw.com
Andrej.Novakovski@lw.com
885 Third Avenue
New York, NY 10022
Phone: (212) 906-1200

Marc Zubick
Russell Mangas (admitted *pro hac vice*)
Marc.Zubick@lw.com
Russell.Mangas@lw.com
330 N. Wabash Avenue
Chicago, IL 60601
Phone:  (312) 876-7600

Andrew Clubok
Andrew.Clubok@lw.com
555 Eleventh Street, NW
Suite 1000
Washington, D.C. 20004
Phone: (202) 637-2200

**NEW YORK CIVIL LIBERTIES UNION FOUNDATION**

Arthur Eisenberg

19

Perry Grossman
aeisenberg@nyclu.org
pgrossman@nyclu.org
125 Broad Street
New York, NY 10004
Phone: (212) 607-3329

*Attorneys for Plaintiffs*