# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

NATIONAL ASSOCIATION FOR
THE ADVANCEMENT OF
COLORED PEOPLE, SPRING
VALLEY BRANCH, et al.,

        **Plaintiffs,**

    v.

EAST RAMAPO CENTRAL SCHOOL
DISTRICT, et al.,

        **Defendants.**

ECF CASE

Case No. 7:17 Civ. 8943 (CS)(JCM)

DISTRICT JUDGE
CATHY SEIBEL

MAGISTRATE JUDGE
JUDITH C. McCARTHY

---

## EAST RAMAPO CENTRAL SCHOOL DISTRICT'S RESPONSE TO PLAINTIFFS' OBJECTIONS TO JUDGE MCCARTHY'S DECEMBER 29, 2020 <u>REPORT AND RECOMMENDATION</u>

MORGAN, LEWIS & BOCKIUS LLP
David J. Butler
Randall M. Levine
101 Park Avenue
New York, NY 10178
T: (212) 309-6000
F: (212) 309-6001
-and-
1111 Pennsylvania Avenue, NW
Washington, DC 20004
T: (202) 739-3000
F: (202) 739-3001

William S.D. Cravens
Clara Kollm
1111 Pennsylvania Avenue, NW
Washington, DC 20004
T: (202) 739-3000
F: (202) 739-3001

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ................................................................................................................. 1

ARGUMENT ..................................................................................................................... 1

I.   PLAINTIFFS MAY NOT RELY ON ARGUMENTS AND EVIDENCE NOT
PRESENTED IN SUPPORT OF THEIR FEE APPLICATION ......................................... 1

    A.  Judge McCarthy's Reductions Were Appropriate And Plaintiffs May Not
Introduce New Arguments Or Evidence To Argue Otherwise ................................ 2

    B.  Plaintiffs' New Arguments Do Not Undermine Judge McCarthy's Report and
Recommendation ..................................................................................................... 5

II.   THE RECORD DOES NOT SUPPORT PLAINTIFFS' OBJECTIONS ............................ 7

CONCLUSION ................................................................................................................. 13

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*ACE Ltd. v. CIGNA Corp.*,
 No. 00 CIV. 9423 (WK), 2001 WL 1286247 (S.D.N.Y. Oct. 22, 2001)...................................3

*Echevarria v. Brandes*,
 No. 19CIV10268PAESLC, 2020 WL 6742782 (S.D.N.Y. Nov. 17, 2020) ............................2

*Gen. Elec. Co. v. Compagnie Euralair, S.A.*,
 No. 96 CIV. 0884 (SAS), 1997 WL 397627 (S.D.N.Y. July 3, 1997) ................................1, 6

*Gillberg v. Shea*,
 No. 95 CIV. 4247 KMW, 1996 WL 406682 (S.D.N.Y. May 31, 1996) .................................6

*Hubbard v. Kelley*,
 752 F. Supp. 2d 311 (W.D.N.Y. 2009) ....................................................................................4

*I.O.B. Realty, Inc. v. Patsy's Brand, Inc.*,
 No. 19 CIV. 2776 (AT), 2021 WL 119017 (S.D.N.Y. Jan. 13, 2021)......................................2

**INTRODUCTION**

Plaintiffs' objections to Judge McCarthy's December 29, 2020 Report and Recommendation are improper and should be disregarded.  Plaintiffs fail to assign any error of fact or law to Judge McCarthy's reasoning or analysis.  Instead, Plaintiffs present new arguments and evidence that were not presented in their fee petition.  That is insufficient.

Even if considered, Plaintiffs' belated arguments and evidence do not undermine Judge McCarthy's findings.  Judge McCarthy's fee reductions were appropriate and either should be affirmed or, for the reasons advanced by the District in its filing, further reduced for broader reasons of policy and equity committed to the discretion of the District Court—not because of any infirmity in Judge McCarthy's Report and Recommendation.

Finally, Plaintiffs' objections rely on certain assertions of fact that are not supported by admissible evidence in the trial record and which in all fairness should be corrected by this Court.

Plaintiffs' objection to Judge McCarthy's December 29, 2020 Report and Recommendation should be denied.

**ARGUMENT**

**I.    PLAINTIFFS MAY NOT RELY ON ARGUMENTS AND EVIDENCE NOT PRESENTED IN SUPPORT OF THEIR FEE APPLICATION.**

As the fee applicant, Plaintiffs bear the burden of documenting the reasonableness of the hourly rates and total hours expended by counsel.  *Gen. Elec. Co. v. Compagnie Euralair, S.A.*, No. 96 CIV. 0884 (SAS), 1997 WL 397627, at *5–6 (S.D.N.Y. July 3, 1997) (approving and adopting R&R applying across-the-board 50% reduction in attorneys' fees for "inadequate proof of the reasonableness of the hourly rate charged, over-staffing, excessive "office conference" time,

1

and excessive hours spent on certain tasks").[1]  Plaintiffs failed to justify with evidence either their

rates or their hours in their fee application.  Plaintiffs' objection to Judge McCarthy's Report and

Recommendation attempts to remedy those deficiencies by including arguments and evidence that

were not previously presented to Judge McCarthy.  Plaintiffs admit as much.  ECF No. 674 at

4 n.4 ("To the extent any of the evidence discussed was not before Magistrate Judge McCarthy,

this Court is permitted to 'receive further evidence.'").

This new evidence and argument, however, should be rejected and the reasoning of Judge

McCarthy's Report and Recommendation largely upheld.[2]  *See I.O.B. Realty, Inc. v. Patsy's*

*Brand, Inc*., No. 19 CIV. 2776 (AT), 2021 WL 119017, at *2 (S.D.N.Y. Jan. 13, 2021) (Torres, J.)

("[N]ew arguments and factual assertions cannot properly be raised for the first time in objections

to the report and recommendation, and indeed may not be deemed objections at all." (citation

omitted)); *Echevarria v. Brandes*, No. 19CIV10268PAESLC, 2020 WL 6742782, at *2 (S.D.N.Y.

Nov. 17, 2020) (Engelmayer, J.) ("In this circuit, it is established law that a district judge will not

consider new arguments raised in objections to a magistrate judge's report and recommendation

that could have been raised before the magistrate but were not." (citation omitted)).

### A. Judge McCarthy's Reductions Were Appropriate And Plaintiffs May Not Introduce New Arguments Or Evidence To Argue Otherwise.

Plaintiffs could have, but chose not to, provide supporting information to justify the hourly

rates for the Latham timekeepers.  Judge McCarthy thus correctly found that "Plaintiffs have not

met their burden of demonstrating the reasonableness of their requested rates through supporting

---

[1] *See also Compagnie Euralair*, 1997 WL 397627, at *5–6 ("[T]he burden is on the fee applicant to produce satisfactory evidence—in addition to the attorney's own affidavits—that the requested [hourly] rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." (citation omitted)).

[2] Subject to the District's limited objection available at ECF No. 676.

evidence." ECF No. 671 at 9. The stark contrast between the attorney declarations submitted in support of the fee petition by Latham (ECF Nos. 601 & 603), and the declarations submitted in support of the same petition by the NYCLU (ECF Nos. 599 & 600) highlights this choice. The NYCLU declarations provided pertinent information about each attorney's background and attached those attorneys' respective resumes. *See generally* ECF Nos. 599 & 600; *see also* ECF No. 599-1 (Grossman Resume); 601-1 (Eisenberg Resume); 603-3 (Jason Resume). The Declaration of Art Eisenberg "focus[ed] primarily upon the professional background and experience that support an hourly rate of $650[,]" as well as "support[ing] the reasonable hourly rate of $300 for Mr. Jason." ECF No. 600 ¶ 3. The Declaration of Perry Grossman likewise "focus[ed] upon [his] professional background and experience, particularly in voting rights matters, that support[ed] the hourly rate sought on [his] behalf." ECF No. 599 ¶ 2.

The two declarations submitted in support of Latham's portion of the fee petition, which spanned over fifteen pages and attached thirty-five exhibits, did not include comparable information. *See generally* ECF Nos. 601 & 603. Instead, those declarations had exactly two paragraphs related to the two Latham partners' respective biographies, but provided *no* biographical information at all concerning the additional *eleven* Latham timekeepers for whom fees are sought. *See* ECF No. 603 ¶¶ 15–16. As observed by Judge McCarthy, "Plaintiffs do not provide any information regarding these associates' litigation experience or professional backgrounds." ECF No. 671 at 9.

With such limited information about the Latham timekeepers, Judge McCarthy could have (and perhaps should have) denied even more of Plaintiffs' fee request with respect to the Latham timekeepers for lack of evidentiary support. *ACE Ltd. v. CIGNA Corp.*, No. 00 CIV. 9423 (WK), 2001 WL 1286247, at *2 (S.D.N.Y. Oct. 22, 2001) ("The court may further reduce the fee request

where the fee applicant has failed to provide adequate information regarding the hourly rate which was charged.").  Instead, Judge McCarthy independently researched, and took judicial notice of each attorney's law school graduation year and professional biography.  ECF No. 671 at 10–13.  She then conformed the hourly rates in accordance with her research, which was more than she was required to do.

Plaintiffs now attempt to supplement their fee application by adding more information about each Latham participant's role in the litigation.  *See* ECF No. 674 at 9.  It is too late for that.  "In this circuit, it is established law that a district judge will not consider new arguments raised in objections to a magistrate judge's report and recommendation that could have been raised before the magistrate but were not."  *Hubbard v. Kelley*, 752 F. Supp. 2d 311, 313 (W.D.N.Y. 2009) (ellipses and citation omitted).  As a result, this Court should not consider arguments and evidence that Plaintiffs chose not to present to Judge McCarthy in support of their fee application.

For the same reasons, Plaintiffs' new argument that their "voluntary reduction of [their] hours by over 9,000 hours (over $6.8 million) was more than adequate to address [the overstaffing, duplication, and inefficiencies found by Judge McCarthy]," (ECF No. 674 at 13) should not be considered.  In fact, Plaintiffs' petition, in contrast to its objection to Judge McCarthy's Report and Recommendation, implies that the 9,000 hours Latham removed from its fee request were from hours expended by the fifteen timekeepers for whom Latham declined to seek fees and *not* to account for the significant inefficiencies found by Judge McCarthy.  ECF No. 604 at 12 ("Latham seeks a total of $7,544,015.00 in attorneys' fees, representing 17,022 hours worked by 13 attorneys and staff, after a voluntary reduction of more than 9,000 hours.").  Judge McCarthy's findings bear this out, noting that "**with respect to the attorneys for whom fees are sought, many tasks on Latham's time sheets are excessive or duplicative.**"  ECF No. 671 at 17

4

(emphasis added).  Judge McCarthy noted that, for example, every timekeeper for whom fees are sought—thirteen—"billed full days for attending trial," which she found to be "excessive."  *Id.* Latham's existing "voluntary reductions" do not account for such duplication.     Moreover,   in their objection, Plaintiffs for the first time argue that adopting the Report and Recommendation will hinder future plaintiffs' ability to recover fees.  ECF No. 674 at 5.  This argument is procedurally improper for the same reasons as above—Plaintiffs may not raise new arguments in objections to a Report and Recommendation that were not raised in their fee application.  In any event, such a factor is irrelevant to this Court's task and therefore is not a basis to over-compensate Plaintiffs.[3]

### B.  Plaintiffs' New Arguments Do Not Undermine Judge McCarthy's Report And Recommendation.

Plaintiffs' new arguments lack merit in any event, as they fail to address  Judge McCarthy's specific findings regarding the lack of evidence to support Plaintiffs' claimed rates, overstaffing, duplicative billing, and unreasonable litigation positions that caused both sides to incur unnecessary costs.

Citing *Arbor Hill*, Plaintiffs claim that their requested rates are appropriate given "the resources required to prosecute the case effectively (taking account of the resources being marshaled on the other side)."  ECF No. 674 at 9.  This conclusory assertion makes no sense in light of the more than 20,000 hours of attorney time expended by Plaintiffs, which is entirely disproportionate to the resources devoted by the District to its defense.  As previously explained

---

[3] As previously noted by the District, fee awards **may not** be used to punish a defendant in any way.  ECF No. 631 at 13–14 (citing *Milwe v. Cavuoto*, 653 F.2d 80, 84 (2nd Cir. 1981)); *see also* ECF No. 676-1 at 3.  Yet, according to Plaintiffs' objections, the fee award in this case is designed to hold the District "financially responsible for [its litigation] tactics."  ECF No. 674 at 6.  This is improper.

in the District's opposition papers, Plaintiffs' 28 different lawyers devoted more hours to this case than any other Voting Rights Act case in history.  ECF No. 631 at 15 n.66.  Although Latham's staffing decisions may have made good sense for training and pedagogical purposes, those objectives have nothing to do with the policy reasons behind fee shifting statutes.[4]  Further, the finger pointing regarding the District's legal representation has no place in the fee shifting analysis, either.  Rather, the burden is on the moving party to present evidence to support its claim.  Plaintiffs have failed to meet that burden.

Plaintiffs also cite their litigation success[5] as justification for the fee award they demand. Plaintiffs have won at trial and before a panel of the Second Circuit, but success also should be measured in real world results.  The ward system resulting from Plaintiffs' efforts will be implemented on February 2, 2021.  Of the nine newly created wards, only <u>two elections</u> are contested.  The result, regardless of the winner of the contested elections, will be a Board with three members that Plaintiffs claim are supported by the "public school community" (i.e., candidates elected from minority-majority wards) and six members that Plaintiffs claim are supported by the "private school community" (i.e., candidates elected from wards that are majority white and have large Orthodox Jewish voting populations).  That result mirrors the present six to

---

[4] Judge McCarthy rightly found that Latham's team "was excessively staffed" and that "Latham used this matter as a training exercise for its junior lawyers."  ECF No. 671 at 16.  She reduced Latham's hours for Latham's "larger pattern of consistent overstaffing" accordingly, providing examples.  *Id.* at 17.  "Obviously, more lawyers leads to more "conference" time as well as to a certain amount of repetition or "learning curve" billing which should not be compensable." *Gillberg v. Shea*, No. 95 CIV. 4247 KMW, 1996 WL 406682, at *5 (S.D.N.Y. May 31, 1996) ("Excessive staffing and "office conferences" have been the basis for courts to reduce fee requests by one-quarter to on third.); *Compagnie Euralair, S.A.*, 1997 WL 397627, at *4 ("It is well recognized, of course, that when more lawyers than are necessary are assigned to a case, the level of duplication of effort increases.").

[5] The appeals have not been exhausted in this litigation and therefore Plaintiffs' arguments remain premature.

three political make-up of the Board of Education—a result that was arrived at through ordinary political compromises and pressures instead of imposed as a result of this litigation.

Put another way, the real-world impact of this litigation at most maintains and perpetuates the status quo and the same political power dynamic that prevailed in the District before Plaintiffs filed their lawsuit. At worst, the end result of this contentious litigation will be that politicians and activists from different communities within the District will have less incentive to compromise with each other going forward. That underwhelming result comes at the cost of dividing the East Ramapo community against itself, and imposing millions of dollars in litigation expenses on the District's public schools.

## II.    THE RECORD DOES NOT SUPPORT PLAINTIFFS' OBJECTIONS.

Plaintiffs' fee application and objections to Judge McCarthy's Report and Recommendation also rest on several assertions of fact that are unsupported by admissible evidence. Two specific examples ought in fairness to be corrected by this Court because the assertions have been repeated both on appeal and outside of this litigation.

*First*, during discovery Plaintiffs conceived a conspiracy theory in which they attempted to portray the District's lead counsel, David Butler, as "a political organizer in the East Ramapo community" with the power to "racially engineer" the District's elections. ECF No. 219. That conspiracy theory was premised entirely on a few lines of a WhatsApp message from the Board of Education's President, Harry Grossman, to a third party. In this single WhatsApp message, Mr. Grossman said he was conveying a message from Mr. Butler regarding the May 2018 board elections—although Mr. Grossman testified at trial that he did not accurately report the message. ECF No. 593 (Tr. Transcript) at 1477:17–1482:21 ("I wasn't comfortable or not comfortable

7

because **the message that he [Mr. Butler] gave wasn't what I said here**." (emphasis added)).  The

April 2, 2018 WhatsApp message read it its entirety:

> Spoke to David Butler today.  He asked me to convey message [*sic*] that it would
> be good for the case to have a minority to run against Sabrina [Charles-Pierre]
> that community [*sic*] could support.  Message conveyed.  Good moed.

PX 88.

Judge McCarthy did not allow Plaintiffs to pursue their conspiracy theory against

Mr. Butler and admonished Plaintiffs for their effort to breach the attorney-client privilege:

> I'm not happy with this motion, as you can see.  I just — I read this, and I was
> shocked.  Shocked.  I expect a lot more from Latham & Watkins than going kind
> of in this—you know, taking an attorney who's been working on this case and
> trying to turn them into a fact witness … I think you're making too much of a
> simple statement you read.  I think you're trying to breach an attorney client
> privilege based on that in an inappropriate way. … I just don't think you factually
> have made it here at all.  … I don't believe that a third — a statement that is from
> someone that may or may not be an accurate reflection of what Mr. Butler said is
> going to allow you to open the door and ask Mr. Butler questions.  **I don't think
> there is any evidence that supports your arguments that Mr. Butler is involved
> in the slating process.  I think he's involved in being a zealous advocate on
> behalf of his client and providing advice to his client under the attorney-client
> privilege.  … I don't think the evidence that you have submitted before me
> supports your arguments at all.**  And I am granting [the] District's motion to
> quash the subpoena[.]

 ECF No. 628 (Dec. 3, 2018 Hr'g Tr.) at 10:16–14:18 (emphasis added).  Judge McCarthy's Report

and Recommendation reaffirmed that Plaintiffs' attempts to subpoena Mr. Butler based on a

snippet of a hearsay were "unreasonable," and "wholly unjustified and not compensable."  ECF

No. 671 at 18–19.

Similarly, this Court rejected Plaintiffs' attempts to take discovery of Mr. Butler to support

their conspiracy theory—first during discovery and then again at trial.  ECF Nos. 628 (Dec. 3,

2018 Hr'g Tr.) at 10:16—14:18; 303 (affirming Judge McCarthy's decision to quash deposition

subpoena directed at Mr. Butler); ECF No. 578 (Jan. 30, 2020 Hr'g Tr.) at 18:22–24 ("[T]here's

no need to call Mr. Butler [as a witness at trial].  But I truly hope we are not going to be wasting

8

our time with nonsense like that at the trial").  As this Court held, "Judge McCarthy concluded, and [this Court] agrees, that Plaintiffs [were] reading too much into Harry Grossman's text message to Hersh Horowitz in arguing that Mr. Butler is a political organizer engaged in activities extraneous to his role as a lawyer in this case."  ECF No. 304 at 3.  This Court further found "Mr. Butler's role was far from that of a mastermind or puppet-master, and his input does not seem to have been particularly important or influential."  *Id.* at 4.  And, as this Court ultimately concluded, "what Mr. Butler said is not nearly as important as what the recipients of his message did, which was apparently nothing."  ECF No. 304 at 5.

As a result, **this Court did not admit the WhatsApp message into evidence at trial for its truth, but only for the fact that it was said by Mr. Grossman.**  ECF No. 589 (Tr. Transcript) at 956:2–16 ("I'll receive it [PX 88] not for its truth"); 999:5–25; 1,437:7–10; *see also* ECF No. 629-1 at 12 (stipulation of admitted trial exhibits).  The Court's limiting instruction should have relegated the WhatsApp message to the farthest margins of potential relevance.

Nevertheless, in their post-trial filings with this Court and again before the Second Circuit, Plaintiffs extensively relied on the same hearsay statement as purported support for an even more extravagant conspiracy theory about the *2019* election.  Specifically, Plaintiffs argued that the same April 2, 2018 hearsay statement supported an entirely different conspiracy theory that the "white slating organization" engineered the results of the *May 2019* election over a year later.  **Not a shred of admissible evidence admitted at trial** supports Plaintiffs' revised conspiracy theory.  *See* ECF No. 568 at 66 n. 58 ("I received this testimony not for its truth but for the fact that it was said.").  The experts in this case did not analyze the results of the 2019 election, nor was the 2019

9

election at issue in the litigation.[6]   While the Court found that Plaintiffs' witnesses may have believed that "the rabbis" in the Orthodox and Hasidic community somehow engineered the election of Ms. Leveille in 2019, this Court held that was not evidence that any such conspiracy existed (much less that it was effective).   *Id.*   It bears repeating: nothing whatsoever connects Mr. Grossman's hearsay WhatsApp message in 2018 with Plaintiffs' conspiracy theory about the 2019 election—not a single document, not a breath of testimony at trial, ***nothing***.

Yet, despite the absence of admissible evidence, Plaintiffs' conspiracy theory about the 2019 election has taken on a life of its own.   Plaintiffs' evidence-free disparagement of Mr. Butler's character and reputation found its way into the Second Circuit's recent decision, and it appears once again in Plaintiffs' objections to Judge McCarthy's Report and Recommendations.[7]   This Court does not have to permit Plaintiffs' personal attacks on Mr. Butler to continue.   They are baseless, the Court knows them to be baseless, and they are completely unnecessary to the Court's judgment under the Voting Rights Act.   This Court has the power to correct the record, and should do so now in the interests of justice and fairness.

*Second*, in support of their fee request Plaintiffs argue that the District "intentionally frustrated settlement negotiations" in a process "that plainly was designed by the District, at the outset, to fail."   ECF No. 604 at 8.   But, once again, **there is not a shred of admissible evidence**—

---

[6] In fact, the unrebutted testimony from both sides was that, in 2019, a group of public and private school advocates worked together to put forth a compromise candidate, who failed to win election. ECF No. 586 (Trial Tr.) at 728:12–731:21 (Frielich); ECF No. 626 (Trial Tr.) at 2551:6–2552:17 (Charles-Pierre).

[7] According to the Second Circuit, this Court's opinion found that the 2018 WhatsApp message supports a finding that the 2019 election was "engineered."   No. 20-1668, Doc. 162-1 at 65 (2nd Cir. Filed Jan. 6, 2021).   But that single WhatsApp message **was not admitted for its truth**.   ECF No. 629-1 at 12.   Neither was the testimony from Ms. Leveille about the 2019 election.   *See* ECF No. 568 at 66 n. 59 ("I received this testimony not for its truth but for the fact that it was said.").

in the trial record or otherwise—that supports Plaintiffs' assertion.  As the Court knows, it was the District's counsel, not Plaintiffs' counsel, who on December 30, 2019 sought to enter settlement negotiations by requesting court-supervised mediation before Judge McCarthy.  ECF No. 450. Plaintiffs *opposed* the request for court-supervised mediation before trial.  ECF No. 451.

Notwithstanding Plaintiffs' rejection of the District's mediation request, the District again initiated direct settlement negotiations with Plaintiffs before trial, and continued those discussions through the beginning of the trial itself.  As demonstrated by the District's privilege log regarding the mandated February 10 meeting with the Court (which was not admitted into evidence at trial) settlement communications were consistently provided to the Board President, Vice President (Ms. Sabrina Charles-Pierre) and Board General Counsel.  ECF No. 545-2; *contra* ECF No. 568 at 65 n.58.  The District's counsel also personally presented the settlement offers during Executive Sessions of the Board for all who attended.  ECF No. 545.  Any further attempt to defend itself against Plaintiffs' baseless allegations would breach the attorney-client privilege, which should of course not be encouraged or accepted.

That a settlement could not be reached here says *nothing* about the parties' good faith in attempting settlement.  As this Court recognized, the District obviously was under no obligation to accept Plaintiffs' settlement offers (ECF NO. 568 at 74 n.62), and its decision not to do so is *not evidence* that it did not negotiate in good faith.  There are good reasons why this Court should refuse to endorse Plaintiffs' notion that failed settlement negotiations can be used against litigants—whether at the liability stage or when considering fee applications.  Plaintiffs' extensive use of the Parties' inability to reach a satisfactory settlement against the District here is a dire warning to future defendants that it may be better not even to attempt negotiating a settlement in the first place.  That result would be profoundly damaging from a public policy perspective, and

the Court does not have to allow it to continue.  While the Court should never have allowed Plaintiffs to make use of anything having to do with failed settlement negotiations between the Parties in their liability case, the Court has a final opportunity now to correct the record and to firmly disapprove Plaintiffs' tactics.  It should do so.

## CONCLUSION

For the foregoing reasons, Plaintiffs' objections to Judge McCarthy's December 29, 2020 Report and Recommendation should be rejected.

Dated:  January 26, 2021

Respectfully submitted,

**MORGAN, LEWIS & BOCKIUS LLP**

s/ Randall M. Levine
David J. Butler
Randall M. Levine
101 Park Avenue
New York, NY 10178
T: (212) 309-6000
F: (212) 309-6001
        -and-
1111 Pennsylvania Avenue, NW
Washington, DC 20004
T: (202) 739-3000
F: (202) 739-3001
david.butler@morganlewis.com
randall.levine@morganlewis.com

William S.D. Cravens
Clara Kollm
1111 Pennsylvania Avenue, NW
Washington, DC 20004
T: (202) 739-3000
F: (202) 739-3001
william.cravens@morganlewis.com
clara.kollm@morganlewis.com

*Counsel for Defendant East Ramapo Central
     School District*