UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

NATIONAL ASSOCIATION FOR THE
ADVANCEMENT OF COLORED PEOPLE,
SPRING VALLEY BRANCH; JULIO
CLERVEAUX; CHEVON DOS REIS; ERIC
GOODWIN; JOSE VITELIO GREGORIO;
DOROTHY MILLER; HILLARY MOREAU;
and WASHINGTON SANCHEZ,

                    Plaintiffs,

       v.

EAST RAMAPO CENTRAL SCHOOL
DISTRICT and MARYELLEN ELIA, IN HER
CAPACITY AS THE COMMISSIONER OF
EDUCATION OF THE STATE OF NEW
YORK,

                    Defendants.

17 Civ. 8943 (CS) (JCM)

---

**PLAINTIFFS' RESPONSE TO DISTRICT'S OBJECTION
TO THE REPORT AND RECOMMENDATION CONCERNING
<u>PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND COSTS</u>**

Pursuant to the Court's January 13, 2021 order (ECF No. 677), Plaintiffs respond to the District's Objection to the Report and Recommendation Concerning Plaintiffs' Motion for Attorneys' Fees and Costs (ECF No. 676-1) (the "District's Objection").

## I. THE DISTRICT CANNOT AVOID VRA LIABILITY BY THREATENING TO HOLD THE PUBLIC SCHOOL STUDENTS HOSTAGE

The District seeks to avoid its full measure of liability under the Voting Rights Act by arguing that holding the District accountable for its actions will harm public school students in the District. *See* District's Objection at 1-4. While Plaintiffs are acutely sensitive to the needs of public school students and the burdens of this protracted litigation—which is why they intend to mitigate any such harm to the extent possible by donating the entirety of Latham & Watkins' ("Latham") fees to programs that will aid and support those students—that burden is a problem entirely of the District's own making. It was the District's (unfortunate and inappropriate) choice to spend millions of dollars from the school budget to perpetuate its discriminatory and unlawful voting scheme and to engage in bad faith during a settlement process in which Plaintiffs offered to waive all fees in exchange for the District agreeing to end those discriminatory practices. *See, e.g.*, Decision, ECF No. 568 ¶ 86 & n.62.[1] The District's choice to now feign concern about the impact of this litigation is belied by its long history of hiring expensive law firms like Morgan, Lewis & Bockius LLP ("Morgan Lewis") to litigate against public school plaintiffs (*cf.* Report And Recommendation, ECF No. 671 at 19-20 (noting the "substantial sum" the District spent on

---

[1] After the Court's Decision to award Plaintiffs reasonable attorneys' fees and costs as a result of Plaintiffs prevailing on their Section 2 claims, Plaintiffs again offered a settlement in which in exchange for the District dropping its appeal, Plaintiffs would agree to waive their fees on a dollar-for-dollar basis, for each dollar that the District's counsel refunded to the District or otherwise donated to support public schools. *See* ECF No. 650-6 at 1, 7-8. On July 8, 2020, the District stated that it had "considered and [was] not interested in pursuing" Plaintiffs' proposal. ECF No. 650-5 at 2.

1

other past litigations); *see also* Plaintiffs' Motion for Fees, ECF No. 604 at 1-2, 18-19 (same)) and lavishing significant sums to pay "unsubstantiated expenses" on behalf of private school interests (Decision ¶ 83), not to mention School Board President Harry Grossman actively advocating for members of the white, private-school community to bring lawsuits against the District and vote down its budget (*id.* ¶ 48).

New York State monitors and this Court have both found that the District's School Board has consistently made "no meaningful effort . . . to distribute [the] pain of deep budget cuts fairly among private and public schools." *Id.* ¶ 83. And the District's Objection merely seeks to perpetuate that despicable practice. Rather than attempt to distribute the burden the District has imposed through its scorched-earth defense of its discriminatory practices, the District's Objection seeks to hold the Court (and public school students) hostage by threatening to impose all of that burden on the public schools if this Court persists in enforcing the law (as it must) and holding the District accountable for its unlawful conduct. *See generally* Declaration of Dr. Ray Giamartino Jr., ECF No. 676-2 (proposing budget cuts exclusively to public school programs and personnel).[2] The District's transparent and disingenuous threat to public school students only confirms the need to award reasonable fees to encourage the incentive structure created by the VRA.[3]

---

[2] Sadly (but predictably), the District focuses its proposed cuts on the public schools while making no attempt to analyze or address noted overspending on unsubstantiated private school transportation. *See generally* PX 214 (November 2019 New York State Comptroller Report recommending that the School Board follow New York State laws and its own policies regarding transportation costs). In addition to scrutinizing those excessive payments to private schools, the District could further avoid the "devastating impact" described by Dr. Giamartino by, for example, issuing a bond and paying the legal fees over time instead of from the current budget or by clawing back some of the millions in fees it has paid Morgan Lewis for this litigation and/or giving priority to paying the fee award before it pays any more money to Morgan Lewis.

[3] As an alternative to levying all of those fees on the District itself, the Court has the power under both 28 U.S.C. §1927 and its inherent powers to levy fees against Morgan Lewis for its many instances of bad faith conduct that vexatiously and unreasonably multiplied the proceedings. *See Reilly v. Natwest Markets Group Inc.*, 181 F.3d 253, 267 (2d Cir. 1999). If it would aid the Court

Holding the District accountable and awarding Plaintiffs their reasonable fees will send a necessary message to civil rights violators that vexatious and obstructionist tactics that increase the cost of litigation will neither be tolerated nor rewarded and will appropriately incentivize civil rights plaintiffs to bring meritorious cases without fear that a defendant will be permitted to just outspend them or litigate them into giving up.  *See Millea v. Metro-N. R.R. Co.*, 658 F.3d 154, 169 (2d Cir. 2011) (holding that the purpose of a fee award is "assuring that civil rights claims of modest cash value can attract competent counsel"); *see also Green v. Torres*, 361 F.3d 96, 100 (2d Cir. 2004) ("The general purpose of fee-shifting statutes . . . is to permit plaintiffs with valid claims to attract effective legal representation and 'thereby to encourage private enforcement of civil rights statutes, to the benefit of the public as a whole.'"); *Kerr v. Quinn*, 692 F.2d 875, 877 (2d Cir. 1982) ("The function of an award of attorney's fees is to encourage the bringing of meritorious civil rights claims which might otherwise be abandoned because of the financial imperatives surrounding the hiring of competent counsel.").

Although the District claims that no fee is necessary here because Plaintiffs intend to donate a major portion of the award to charity and Latham agreed to represent Plaintiffs pro bono (*see* District's Objection at 3-4), that argument misperceives the applicable standard.  The purpose of a mandatory fee award under the VRA is not to compensate plaintiffs or firms for past work— it is to incentivize and enable future plaintiffs to protect their rights.  Indeed, the District correctly

---

in making that apportionment, Plaintiffs can file a separate document identifying additional time and expense created by Morgan Lewis' vexatious conduct.  *See, e.g.*, *Clerveaux v. E. Ramapo Cent. Sch. Dist.*, --- F.3d ----, 2021 WL 42110, at *4, *20 n.15 (2d Cir. Jan. 6, 2021) (Second Circuit holding that David J. Butler's advice to racially engineer an election to "flout" the VRA "has no place in the legal profession"); Decision ¶ 48 (noting the lies contained in several Board Member affidavits filed by Morgan Lewis); *id.* ¶ 75 n.58 (describing bad faith conduct during settlement discussions).  We note that we have previously reserved the right to seek sanctions and continue to preserve that option.

cites the Second Circuit for the very proposition that the purpose of the fee award "is to permit and encourage plaintiffs to enforce their civil rights."   District's Objection at 3 (citing *Milwe v. Cavuoto*, 653 F.2d 80, 84 (2d Cir. 1981)).

Likewise, the District's argument that fees should not be awarded because they would be a "windfall" to Plaintiffs (*see* District's Objection at 2) is wrong and misleadingly cites precedent that does not apply here.   In *Kerr*, which the District cites in support of its "windfall" argument (*see id.*), the Second Circuit reversed the district court's denial of attorneys' fees and remanded the case for an award of such fees.   692 F.2d at 879.   The Second Circuit held that discretion to deny a fee award could be exercised only in the "infrequent" case in which "the plaintiff's claim was so strong on the merits and so likely to result in a substantial judgment that counsel in similar cases could be easily and readily retained."   *Id.* at 877-78.[4]   Such is not the case here.   To the contrary, the merits of this case were vigorously contested over a three-year period with no possibility of a damages judgment (which Plaintiffs never sought).   Therefore, under the rule in *Kerr*, the Court does not have the discretion to deny Plaintiffs a fee award.

Although the District's persistence in maintaining a discriminatory voting system and the burden imposed on the public school children by its vexatious and costly defense in support of that system are truly unfortunate, the District must not be allowed to use its own bad conduct as an excuse to escape accountability.   This Court should uphold the law and honor the incentive structure adopted in the VRA by awarding Plaintiffs a reasonable fee award as requested in Plaintiffs' Objection to the R&R.   *See* ECF No. 674.

---

[4] That evaluation must be conducted at the time counsel is sought, not after trial with the benefit of hindsight.   *Id.* at 878.

II.     **THE COURT SHOULD REJECT THE DISTRICT'S REQUEST TO PAY PLAINTIFFS' COUNSEL LESS THAN THE DISTRICT PAID ITS COUNSEL**

As explained in Plaintiffs' Objection to the R&R, a reasonable fee award, one "a reasonable paying client would be willing to pay," should be no less than the District, a paying client, did pay to litigate this case.  ECF No. 674 at 4-5, 7-9.  Rather than grapple with that binding precedent (or even mention it), the District asks this Court to look past the 34% voluntary reduction in fees Latham took before submitting its invoices, as well as the additional 25% reduction the magistrate recommended, and engage in a piecemeal additional reduction of Latham's invoices.  Not only is the concern motivating that request amply addressed by Latham's voluntary reduction and the magistrate's additional reduction (which Plaintiffs object to in part), but the examples cited by the District are all a reasonable and necessary part of litigating Plaintiffs' claims and do not warrant a reduction.

First, the District inaccurately claims that Plaintiffs submitted over 360 hours in fees related to their withdrawn expert, Dr. Cole, or their withdrawn motion for a preliminary injunction ("PI"), that Plaintiffs had agreed not to submit.  District's Objection at 5 (citing ECF No. 632-4).[5]  That misrepresents both what Plaintiffs agreed to and what Plaintiffs submitted.  Specifically, Plaintiffs represented that they "are not seeking to recover fees incurred in drafting the PI motion, drafting [Dr. Cole's] reports, or preparing and defending [Dr. Cole's] deposition, and [have] removed those

---

[5] Exhibit D to the District's Objection is a chart with the District's own calculations of the hours spent by Plaintiffs on the PI motion and on work with Dr. Cole.  *See* ECF No. 632-4 (citing ECF No. 603-21).  Rather than cite particular time entries in support of its conclusions regarding the time Plaintiffs billed for this work, the District cites to broad page ranges from Plaintiffs' exhibit at ECF No. 603-21 ("Time Records").  *Id.*  Plaintiffs note that the District seems to have cited the page numbers from the PDF of Plaintiffs' Time Records exhibit rather than the pagination at the bottom of each page of the Time Records themselves.  In this Response, as in Plaintiffs' Objection to the R&R, Plaintiffs refer to the pagination found at the bottom of each page of their Time Records.  *See* ECF Nos. 603-21; 674 at 10-13.

entries from its billing records." ECF No. 604 at 4. And indeed, Plaintiffs reviewed their billing records and made a diligent attempt to remove all such time entries.[6] But as Plaintiffs explained in their motion for fees, they submitted invoices for work performed during that time that "materially advanced the litigation and was used towards the ultimate resolution of the case," including work with witnesses who submitted declarations at the PI phase and later testified at trial, and initial expert work that exposed the flawed approach of the District's expert witness at trial. *Id.* Contra the R&R, which characterized the inclusion of the latter set of entries as "likely inadvertent" (ECF No. 671 at 15), they were appropriately included because they materially contributed to Plaintiffs' success at trial. *See New York Youth Club v. Town of Harrison*, 2016 WL 3676690, at *2 (S.D.N.Y. July 6, 2016) (Seibel, J.) ("[T]he most critical factor in a district court's determination of what constitutes reasonable attorneys' fees . . . is the degree of success obtained. . . .").

---

[6] The District asserts that Plaintiffs submitted over 360 hours of fees related to drafting Plaintiffs' PI motion and work with their withdrawn expert, Dr. Cole. *See* District's Objection at 5-6 (citing ECF No. 632-4). That is wrong. In support of that claim, the District cites, for example, time entries where Mr. Novakovski spent 16.1 hours researching VRA Section 2 case law. ECF No. 632-4 (citing ECF No. 603-21 at 21, 27) (Plaintiffs note that according to the PDF pagination in the Time Records exhibit, similar entries by Mr. Novakovski at pages 21 and 27 total 16.7 hours). None of those entries describe any drafting work. While that research may have been relevant to the PI motion, it was also relevant to the remainder of the case and would have been necessary even in the absence of the PI motion. Because it was used towards the resolution of this case, Plaintiffs included it in their submitted invoices, consistent with their representations in their motion for fees. In response to the District's claim, Plaintiffs did re-review their time entries again and have identified a *de minimis* number of inadvertently submitted entries for time spent drafting. *See* ECF No. 603-21 at 19-25, 43-44. In any event, that *de minimis* number of entries—which are less than 40 hours—is more than mitigated by Latham's 34% voluntary reduction of its hours and fees (Report And Recommendation, ECF No. 671 at 14) as well as Plaintiffs' additional concession to lower the amount sought for Latham's fees by an additional $2 million to seek only what Morgan Lewis charged the District (ECF No. 674 at 1-4).

Second, the District claims, wrongly, that discovery costs are not compensable other than discovery taken from the defendant.[7] *See* District's Objection at 6-7.  That argument, which cites no case law from this Circuit, misstates the law.  Two of the cases cited by the District have nothing to do with discovery and do not apply here; rather they disallow fees sought for work on actions that either predate the lawsuit against the defendant or relate to defending an intervenor action. *See id.* at 6-7 (citing *Ford v. Tennessee Senate*, 2008 WL 4724371, at *6 (W.D. Tenn. Oct. 24, 2008) (fees related to senate subcommittee hearings instituted by a third party that predated the lawsuit not recoverable); *Sw. Ctr. for Biological Diversity v. Bartel*, 2007 WL 2506605, at *8 (S.D. Cal. Aug. 30, 2007) (fees expended to litigate merits against intervenor parties not recoverable)).

The third case, although related to discovery, is also factually distinct from this case.  In *Judicial Watch, Inc. v. U.S. Department of Commerce*, the court disallowed certain fees related to third-party discovery disputes because the plaintiff had engaged in excessive third-party discovery, deposing nearly 20 people, many of whom lacked first-hand knowledge relevant to the case, on "tangential" issues that "sidetracked" the case and "eventually proved fruitless."  470 F.3d 363, 365-68, 372 (D.C. Cir. 2006).  Unlike in that case, the fees sought here were for conducting relevant, reasonable third-party discovery that yielded critical evidence for trial.  For example, this Court's Decision cited evidence and testimony obtained from third party Rabbi Yehuda Oshry 15 times in support of the finding that there was an exclusionary white slating organization that

---

[7] The District's Objection argues, without support, that there was a "high level of 'fluff'" in Plaintiffs' billing entries, but cites only one purported example, a 3.2-hour time entry by Plaintiffs' attorney, Claudia Salomon, during which she attended to issues related to the District's Second Circuit appeal and also attended an American Civil Liberties Union webinar.  District's Objection at 4 n.3.  First, Ms. Salomon's attendance at the one-hour webinar on voting rights issues was directly relevant to this matter.  Second, even if it were not, the inclusion of one non-chargeable hour is more than mitigated by Latham's voluntary reduction of thousands of hours and millions of dollars in fees.  The District's unsubstantiated rhetoric should be given no weight.

controlled election outcomes in East Ramapo.  Decision ¶¶ 5, 57 n.48, 59, 60.  The Court also cited Community Connections advertisements placed by third party Kalman Weber and his organization, the South East Ramapo Taxpayers Association ("SERTA"), multiple times in finding an exclusionary white slating organization that controlled the election outcomes.  Decision ¶¶ 59 (citing advertisements Mr. Weber and SERTA made in support of Yehuda Weissmandl that appeared in Community Connections and spelled Mr. Weissmandl's name incorrectly), 60 (citing Mr. Weber and SERTA's fliers and ads for Pierre Germain and Joel Freilich).  Because that evidence was critical to Plaintiffs' success, Plaintiffs' work developing that evidence is compensable and does not warrant a reduction.

Moreover, it was critical to the court's holding in *Judicial Watch* that the third-party discovery was not necessitated or opposed by the government.  470 F.3d at 374.  The court held that only fees that were incurred as a result of "government resistance" were compensable.  *Id.* Here, the situation is quite different.  As explained above, the evidence obtained from Rabbi Oshry and Community Connections was critical to proving the existence and operation of a white slating organization that controlled the District's elections.  The need to obtain and introduce that evidence was directly necessitated by both the District's obstruction of Plaintiffs' discovery efforts on those topics (*see* ECF Nos. 439, 439-2 at 76:9-11, 445 (District failed to preserve or produce WhatsApp chats highly relevant to slating issues)); ECF Nos. 124, 170, 224, 225, 430 (District refusing to allow depositions of key Board Members regarding the topic of slating despite multiple court orders compelling it to do so)), and the District's outright lies aimed at obstructing and hiding the true nature of the slating process (*see* Decision ¶ 48 (noting Grossman's lies about the nonexistence of a slating organization that he "clearly participated in")); *id.* (noting that the District's affidavits, "especially Charles's and Germain's" were contradicted by their live testimony and "rife with

8

dissembling").  When faced with such facts, courts in this jurisdiction hold that fees related to third-party discovery are appropriately included in a reasonable fee award.  *See, e.g.*, *Romeo & Juliette Laser Hair Removal, Inc. v. Assara I LLC*, 2016 WL 1328936, at *2-3 (S.D.N.Y. Apr. 5, 2016) (awarding attorneys' fees where plaintiff "engage[d] in third party discovery" that was "made necessary by the defendants' bad faith litigation tactics"); *Yurman Design, Inc. v. Chaindom Enters., Inc.*, 2003 WL 22047843, at *1-2 (S.D.N.Y. Aug. 29, 2003) (awarding fees related to third party discovery where "third party discovery [was] necessitated by [the defendant's] failure to provide more accurate records").

In summary, not only are the individual time entries challenged by the District both reasonable and appropriate, the District's tactic of nitpicking Plaintiffs' individual time entries misses the forest for the trees.  Plaintiffs responded to the District's vexatious litigation tactics aggressively but reasonably, and Plaintiffs' efforts enabled them to prevail at trial.  Although Plaintiffs' attorneys spent enormous amounts of firm and attorney resources that they do not seek to recover here, Plaintiffs are entitled, at the very least, to recover the same amount that a paying client, the District, paid to litigate this case.  As such, Plaintiffs respectfully request that the Court overrule the District's objection, affirm the R&R with respect to the New York Civil Liberties Union's attorneys' fees, expert expenses, and costs, and grant Plaintiffs' objection seeking $5,656,312 for Latham's work, which would constitute a fee award commensurate with the lowest amount Morgan Lewis and its co-counsel charged the District for this case.

Dated: January 26, 2021
New York, New York

Respectfully submitted,
**LATHAM & WATKINS LLP**

/s/ Corey A. Calabrese
Corey A. Calabrese
Andrej Novakovski
Corey.Calabrese@lw.com
Andrej.Novakovski@lw.com
885 Third Avenue
New York, NY 10022
Phone: (212) 906-1200

Marc Zubick
Russell Mangas (admitted *pro hac vice*)
Marc.Zubick@lw.com
Russell.Mangas@lw.com
330 N. Wabash Avenue
Chicago, IL 60601
Phone:  (312) 876-7600

Andrew Clubok
Andrew.Clubok@lw.com
555 Eleventh Street, NW
Suite 1000
Washington, D.C. 20004
Phone: (202) 637-2200

**NEW  YORK  CIVIL  LIBERTIES  UNION
FOUNDATION**

Arthur Eisenberg
Perry Grossman
aeisenberg@nyclu.org
pgrossman@nyclu.org
125 Broad Street
New York, NY 10004
Phone: (212) 607-3329

*Attorneys for Plaintiffs*